The Honorable Robert S. Lasnik

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ALVIN GREENBERG, MICHAEL STEINBERG, and JULIE HANSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

No. 2:21-CV-00898

**MOTION OF DEFENDANT AMAZON.COM, INC. TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*Note on Motion Calendar*:
November 19, 2021

*Oral Argument Requested*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.  Plaintiffs' Purchases on Amazon.com ..................................................... 2

        1.  Greenberg's Purchase ................................................................. 3

        2.  Steinberg's Purchase .................................................................. 3

        3.  Hanson's Purchase ...................................................................... 4

    B.  Amazon's Pricing Practices ..................................................................... 4

    C.  Plaintiffs' Claims .................................................................................... 6

III.  LEGAL STANDARD .......................................................................................... 8

IV.  ARGUMENT ....................................................................................................... 8

    A.  Plaintiffs Fail to State a Washington Consumer Protection Act Claim ............. 10

        1.  Price Gouging Is Not a Per Se Unfair Trade Practice under the CPA ....................................................................................... 11

        2.  The Price Gouging Allegations Do Not Satisfy the FTC Act's Unfairness Test ....................................................................... 12

    B.  The Court Should Dismiss Plaintiffs' Negligence Claim with Prejudice Because It Depends on Their Allegation of a Duty That Does Not Actually Exist ..................................................................................................... 20

    C.  Plaintiffs Cannot State a Claim for Unjust Enrichment in Derogation of Their Contracts with Amazon .................................................................. 23

V.  CONCLUSION ................................................................................................... 24

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alpert v. Nationstar Mortg. LLC,*
    2019 WL 1200541 (W.D. Wash. Mar. 14, 2019) .......................................................13, 15, 17

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.,*
    75 F.3d 1401 (9th Cir. 1996) ...........................................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................................................8, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................................8

*Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.,*
    132 F. Supp. 3d 1275 (W.D. Wash. 2015)........................................................................10

*Busey v. Wells Fargo Bank, N.A.,*
    2020 WL 5891907 (W.D. Wash. Oct. 5, 2020) .......................................................21, 22, 23

*Casey v. Fla. Coastal Sch. of Law, Inc.,*
    2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ...............................................................17

*Castillo v. United Rentals, Inc.,*
    2018 WL 1382597 (W.D. Wash. Mar. 19, 2018) .............................................................11

*Concord v. Boston Edison Co.,*
    915 F.2d 17 (1st Cir. 1990).................................................................................................23

*Congdon v. Wells Fargo Bank, N.A.,*
    2017 WL 2443649 (W.D. Wash. June 5, 2017).................................................................20

*Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma,*
    522 F.2d 897 (9th Cir. 1975) ..............................................................................................9

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ..................................................................... *passim*

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ...............................................................................................8

*Fed. Power Comm'n v. Texaco, Inc.,*
    417 U.S. 380 (1974).........................................................................................................9, 14

*FTC v. Crescent Pub. Grp., Inc.*,
129 F. Supp. 2d 311 (S.D.N.Y. 2001)................................................................16

*FTC v. Hisp. Glob. Way Corp.*,
2014 WL 12531538 (S.D. Fla. July 1, 2014)......................................................16

*FTC. v. Inc21.com Corp.*,
745 F. Supp. 2d 975 (N.D. Cal. 2010) ...............................................................15

*FTC v. Lundbeck, Inc*.,
2010 WL 3810015 (D. Minn. Aug. 31, 2010),
*aff'd*, 650 F.3d 1236 (8th Cir. 2011)..................................................................12

*FTC v. Neovi, Inc*.,
598 F. Supp. 2d 1104 (S.D. Cal. 2008)...............................................................18

*FTC v. Neovi, Inc*.,
604 F.3d 1150 (9th Cir. 2010) ............................................................................13

*Gen. Motors Corp. v. Tracy*,
519 U.S. 278 (1997)............................................................................................23

*Greenberg, et al. v. Amazon.com, Inc.*,
No. 4:20-CV-02782-JSW, Dkt. 1 (N.D. Cal. Apr. 21, 2020) ............................18

*Gutierrez v. Bean*,
2006 WL 4117064 (D.N.M. Dec. 13, 2006)........................................................13

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
58 F. Supp. 3d 1166 (W.D. Wash. 2014)............................................................24

*Hong v. Bank of Am., N.A.*,
2021 WL 3207684 (W.D. Wash. July 29, 2021) .................................................17

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
2012 WL 836233 (W.D. Wash. March 12, 2012) ..........................................21, 22

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,
2018 WL 6985317 (C.D. Cal. Dec. 3, 2018) ..................................................18, 19

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .............................................................................5

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)........................................................................................14, 19

*Leslie v. Fidelity Nat'l Title Ins. Co.*,
598 F. Supp. 2d 1176 (W.D. Wash. 2009).......................................................11, 12

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Mastaba, Inc. v. Lamb Weston Sales, Inc.*,
23 F. Supp. 3d 1283 (E.D. Wash. 2014) ..................................................................24

*McClellon v. Bank of Am., N.A.*,
2018 WL 4852628 (W.D. Wash. Oct. 5, 2018) .......................................................12

*Minnick v. Clearwire US, LLC*,
683 F. Supp. 2d 1179 (W.D. Wash. 2010) ...............................................11, 12, 24

*Orkin Exterminating Co. v. FTC*,
849 F.2d 1354 (11th Cir. 1988) ...............................................................................18

*Rabago v. Deutsche Bank Nat'l Tr. Co.*,
2011 WL 2173811 (C.D. Cal. June 1, 2011) ...........................................................17

*Sheaffer v. Superior Tank Lines Nw. Div., LLC*,
2019 WL 2476636 (W.D. Wash. June 13, 2019) .......................................................9

*Simpson v. California Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013) ....................................................................16

*United States v. Waste Mgmt., Inc.*,
743 F.2d 976 (2d Cir. 1984) ...............................................................................14, 19

*Ward v. Bank of Am. Nat'l Ass'n*,
2019 WL 2103124 (W.D. Wash. May 14, 2019) .....................................................11

*Wilson v. PTT, LLC*,
2021 WL 211532 (W.D. Wash. Jan. 21, 2021) ........................................................10

**State Cases**

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) ..............................................................................................11

*Hawkinson v. Conniff*,
53 Wn.2d 454 (1959) ................................................................................................23

*Hurlbut v. Crines*,
14 Wn. App. 2d 660, 672 (2020) ..............................................................................24

*Indus. Indem. Co. of the Nw. v. Kallevig*,
114 Wn.2d 907 (1990) ..............................................................................................11

*Klem v. Wash. Mut. Bank*,
176 Wn.2d 771 (2013) ...................................................................................10, 11, 18

*Sedlacek v. Hillis*,
145 Wn.2d 379 (2001) ................................................................................................9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*State v. Jackson*,
      137 Wn.2d 712 (1999) ...................................................................................9, 19

*State v. Pac. Health Ctr., Inc.*,
      135 Wn. App. 149 (2006) ......................................................................................12

*State v. Regan*,
      97 Wn.2d 47 (1982) ...............................................................................................9

**State Statutes**

Ark. Code Ann. § 4-88-303(a) .............................................................................................6

Ark. Code Ann. § 4-88-303(b)(1)(2) ..................................................................................15

Cal. Penal Code § 396 ..........................................................................................................6

Cal. Penal Code § 396(b) ...............................................................................................6, 15

Haw. Rev. Stat. Ann. § 127A-30(a)(1) .................................................................................6

Idaho Code § 48-603(19) ......................................................................................................6

Ky. Rev. Stat. § 367.374(c) .................................................................................................15

RCW 19.86, *et seq.* ....................................................................................................... *passim*

RCW 19.86.020 ...................................................................................................................10

RCW 19.86.920 ...................................................................................................................10

RCW 48.29.140 ...................................................................................................................12

W. Va. Code § 46A-6J-3 .......................................................................................................6

W. Va. Code § 46A-6J-3(b) .................................................................................................15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

Plaintiffs seek to short-circuit an ongoing debate in the Washington Legislature over whether to enact price-gouging legislation.  Their Complaint invites the Court to declare, without any basis in Washington law, that any price increases of 15 percent or more during the COVID-19 pandemic are presumptively "unfair" under the Washington Consumer Protection Act ("CPA"), violate the common law duty of reasonable care, and constitute unjust enrichment.  Compl. ¶¶ 109, 124, 128.  Plaintiffs seek to apply their amorphous price-gouging standards to a *global class* of all of Amazon's customers, while offering no guidance for how the Court should calculate their arbitrary price limit—suggesting only that any price after January 31, 2020, that is 15 percent greater than *any price at any time prior to January 31, 2020,* should be declared unlawful.  Compl. ¶ 93.  But neither the CPA nor the FTC Act standard it incorporates covers price gouging, much less supports the particular standards Plaintiffs ask the Court to impose.  Nor have Washington courts ever recognized a common law duty to avoid excessive pricing during an emergency.  The Court should dismiss, for the following reasons:

*First*, the CPA does not reach the conduct alleged in the Complaint.  The alleged pricing practices described in the Complaint do not constitute a per se unfair trade practice because the Washington Legislature has not enacted a price-gouging statute that classifies violations as unfair under the CPA.  Nor is the conduct unfair as defined by the FTC Act, as Plaintiffs are unable to plead facts showing that the pricing practices alleged in the Complaint cause substantial injury to consumers that they could not avoid by making different choices or mitigating any injury after the fact.  Finally, the Complaint fails to address the countervailing benefits of allowing the market to function without interference, as continuing to distribute goods during an emergency—even at higher prices—can *benefit* rather than harm consumers.

*Second*, Plaintiffs cannot plead a negligence claim against Amazon because a business owes no common law duty of care to manage product pricing in a marketplace for the benefit of shoppers, who have the choice whether to buy at offered prices.  Although Amazon works tirelessly to earn customer trust through fair pricing practices, its customer-centric business

1  model does not give rise to a generalized duty of care.  The same considerations that preclude

2  this Court from engaging in price-regulation through the CPA also weigh against the judicial

3  creation of a common law duty to control pricing.  And no Washington decision has recognized a

4  duty of care owed by a business to its customers to control pricing—a subject properly addressed

5  by the market or, where appropriate, by policymaking legislative and regulatory bodies.

6      *Third*, under Washington law, a plaintiff who is party to a contract may not bring a quasi-

7  contract claim, such as unjust enrichment.  Here, the Complaint acknowledges that a contract

8  governed Plaintiffs' purchases on Amazon.com.  Having paid Amazon what they agreed to pay

9  pursuant to that contract, Plaintiffs cannot state an unjust enrichment claim.

10     Whether the CPA should be *extended* to regulate pricing as Plaintiffs propose presents a

11  question for the Washington Legislature, not this Court.  Washington law authorizes only the

12  Legislature to declare new categories of liability under the CPA and new duties under the law of

13  negligence.  Adherence to that principle is particularly important here to avoid preempting

14  legislative action, given that the Washington Legislature is actively debating the optimal rule for

15  pricing during emergencies.  Courts, on the other hand, have long recognized that they lack the

16  institutional competence to regulate prices.  The Court should decline Plaintiffs' invitation to

17  wade into the morass of judicial price regulation and dismiss Plaintiffs' complaint with

18  prejudice.

## II.    BACKGROUND

19

20  **A.    Plaintiffs' Purchases on Amazon.com**

21     Plaintiffs are three California residents.  Each alleges that he or she purchased an item on

22  Amazon.com in April 2020 and was charged a price that exceeded a price for which the same

23  item was listed for sale on Amazon.com on or before January 31, 2020, the date when the United

24  States Secretary for Health and Human Services "declared a nationwide COVID-19 health

25  emergency."  Compl. ¶¶ 20, 29, 36.  Although the Complaint includes allegations about the

26  prices of other products and generally describes the unfolding of the COVID-19 pandemic (*see,*

27  *e.g.*, Compl. ¶¶ 38–67), Plaintiffs' own claims arise solely from the following three transactions.

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 2

### 1.    Greenberg's Purchase

Plaintiff Alvin Greenberg, a resident of San Rafael, California, alleges that on April 21, 2020, he purchased a three-bottle carton of Clorox Concentrated Germicidal Bleach for $58.19. Compl. ¶¶ 13, 19.  He contends that, prior to making his purchase, he considered the price to be "exorbitant," and alleges that it "represent[ed] a 168% increase above the January 31, 2020 price." *Id.* ¶ 19, 20.  To establish this alleged pricing differential, the Complaint cites a website called "Keepa.com" that purports to track the prices of goods sold on Amazon.com. *Id.* ¶ 20 n.16.  But the Keepa.com data does not distinguish between pricing by Amazon itself and pricing by third-party sellers on Amazon's platform; it tracks the "Lowest New price by 3rd party seller *or* Amazon, shipping not included." *See* https://keepa.com/#!product/1-B06XZJH8XJ (cited by Compl. ¶ 20 n.16) (legend explanation for "New" price data) (emphasis added).  Dr. Greenberg alleges he did not try to purchase bleach from a local retailer before making his online purchase, citing safety concerns and his assumptions about product scarcity. *Id.* ¶ 19.  Dr. Greenberg does not allege that he received an incorrect product, was charged a different price than the listed price, that he contacted Amazon customer service to seek a refund for his purchase, or that he considered alternative disinfecting products.

### 2.    Steinberg's Purchase

Plaintiff Michael Steinberg, a resident of Oakland, California, alleges that on April 3, 2020, he purchased a two-pound pouch of Red Star Active Dry Yeast for $39.97 on Amazon.com from a third-party seller called Bargain Box Inc.  Compl. ¶¶ 21, 26–27.  The Complaint alleges the price he paid "represent[ed] a 469% increase over the January 31, 2020 price," relying again on amalgamated pricing data from Keepa.com. *Id.* ¶ 29.  Mr. Steinberg alleges that, before making this purchase, he tried to buy yeast at local grocery stores but could not find any for sale. *Id.* ¶¶ 25–26.  He further alleges that he attempted to "look[] online at the website of another larger retailer but could not find any yeast for sale." *Id.* ¶ 26.  He does not allege that he sought yeast from more than one online retailer or that he tried to use any grocery delivery service.  Instead, Mr. Steinberg saw the "listing" for $39.97 and "accept[ed] the terms

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   Amazon was offering," ultimately "keep[ing]" the precise product he ordered.  *Id.* ¶¶ 26-28.  He

2   does not allege that he was charged a different price than the listed price, considered any

3   alternatives to homemade bread, or that he could not safely purchase bread from local grocery

4   stores.  Finally, Mr. Steinberg alleges that he "complained to Amazon about the price" after the

5   sale, but received no discount or rebate.  *Id.* ¶ 28.

6        **3.    Hanson's Purchase**

7        Plaintiff Julie Hanson, a resident of Diamond Springs, California, alleges that on April

8   30, 2020, she purchased a 16-ounce bottle of Zodiac Flea & Tick Spray for Dogs, Puppies, Cats,

9   and Kittens for $14.19 on Amazon.com.  *Id.* ¶¶ 30, 35.  She contends the price "represent[ed] a

10  58% increase over the January 31, 2020 price."  *Id.* ¶ 36.  To support this contention, the

11  Complaint again cites Keepa.com data.  *Id.*  Ms. Hanson alleges that, before making this

12  purchase, she searched for a similar product on Chewy.com, but did not find one.  *Id.* ¶ 35.  She

13  does not allege that she received an incorrect product, that she was charged a different price than

14  the listed price, that she tried to buy the product or any alternative products from any other

15  websites or stores, or that she contacted Amazon customer service about her purchase.

16  **B.    Amazon's Pricing Practices**

17       Plaintiffs do not differentiate their claims based on whether they purchased their items

18  from Amazon directly or from a third-party seller on the Amazon.com online store.  Instead, they

19  assert that Amazon is responsible for both its own pricing and "for price gouging on the third-

20  party products it markets to consumers."  Compl. ¶ 68.  In support of this assertion, Plaintiffs cite

21  Amazon's policies and public statements regarding pricing and third-party sellers, and Amazon's

22  response to the COVID-19 pandemic.  *See generally* Compl. ¶¶ 68–88, nn.88, 156, 165, 172,

23  175, 186, 188, 189.  But, significantly, Plaintiffs omit information from these same sources

24  detailing the extensive measures Amazon has taken both before and during the COVID-19

25  pandemic to keep prices as low as possible for its customers.[1]

26

27  _____

[1]  The full contents of the documents on which Plaintiffs rely and incorporate by reference in their Complaint may be considered by the Court for purposes of this motion.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (documents may be considered under the

1    In setting prices for the products Amazon sells in its Amazon.com store, Amazon seeks to

2    offer consistently low pricing to earn and "maintain trust with customers."[2]  Amazon also

3    regularly monitors the prices third-party sellers set for "items on [its] marketplaces … and

4    compares them with other prices available to its customers."  Amazon Marketplace Fair Pricing

5    Policy.  *See* Cox Decl. Ex. A (Amazon Marketplace Fair Pricing Policy) (cited at Compl. ¶ 56

6    n.88).  If Amazon identifies third-party pricing practices on the marketplace that "harm[]

7    customer trust," including "[s]etting a price on a product or service that is significantly higher

8    than recent prices offered on or off Amazon," Amazon can suspend or terminate selling

9    privileges.  *Id.*  Amazon backstops these efforts with its A-to-Z Guarantee, which includes

10   "provid[ing] refunds for items sold by third parties" or Amazon.  Amazon Antitrust

11   Subcommittee Responses at 47.  Under this customer service framework, if a customer is

12   unsatisfied with pricing of any item bought on Amazon.com, that customer may report the issue

13   and seek a refund.  *Id.*

14       Amazon expanded these buyer protections during the COVID-19 pandemic, well before

15   any of the three Plaintiffs made the purchases challenged here.  In March 2020, in the early

16   stages of the pandemic, Amazon announced a policy of "zero tolerance for price gouging."[3]  Its

17   efforts included "[m]onitoring [its] stores 24/7[,] … remov[ing] well over half a million of offers

18   from [Amazon's] stores due to coronavirus-based price gouging," "suspend[ing] more than 3,900

19   selling accounts in [its] U.S. store alone for violating [Amazon's] fair pricing policies," and

20   "actively collaborating with attorneys general in more than ten states, and with numerous federal

21

---

22   "incorporation by reference" doctrine if their content is referenced in the complaint and their
     authenticity is not in dispute); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (doctrine

23   extends to documents "not physically attached to the pleading").

24   [2]  Responses of Amazon to Questions for the Record from the H. Subcomm. on Antitrust, Com.,
     & Admin. Law, Comm. on the Judiciary, 116th Cong. 23 (July 16, 2019) (the "Amazon Antitrust

25   Subcommittee Responses"),
     https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-

26   SD038.pdf (cited at Compl. ¶ 70 n.156).
     [3]  Amazon, *Price gouging has no place in our stores* (Mar. 23, 2020),

27   https://blog.aboutamazon.com/company-news/price-gouging-has-no-place-in-our-stores (cited at
     Compl. ¶ 86 n.189).

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 5

1  prosecutors, as they work to investigate and prosecute alleged price gougers." *Id.*

2  **C.      Plaintiffs' Claims**

3          Plaintiffs assert three Washington state law claims in connection with their April 2020

4  transactions:  violations of the Washington Consumer Protection Act, Ch. 19.86 RCW, *et seq.*

5  ("CPA"), negligence, and unjust enrichment.  Compl. ¶¶ 104-129.

6          Plaintiffs first claim the challenged sales violated the CPA, which generally prohibits

7  "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any

8  trade or commerce."  Compl. ¶¶ 104–16 (citing RCW 19.86.020).  Plaintiffs allege, without

9  citing any Washington case law or statute, that a "price increase of 15% on any consumer good

10  or food item during a declared emergency is 'unfair' for purposes of the CPA." *Id.* ¶ 109.

11  Although Plaintiffs admit the CPA does not explicitly address price gouging, they try to create a

12  per se standard of unfair conduct by referring to *other* states' price-gouging statutes.  *See id.*

13  ¶¶ 6, 109.  They claim that those states' "analogous consumer-protection laws" prohibit increases

14  ranging from 10 percent to any amount during declared emergences.  *Id.* ¶¶ 94, 109 (identifying

15  laws of California, Arkansas, West Virginia, and Hawaii).  But unlike in Washington, the

16  legislatures in the states Plaintiffs identify enacted stand-alone price-gouging statutes setting

17  specific and detailed guidelines for proving a price-gouging violation.  *See* Cal. Penal Code

18  § 396(b), Ark. Code Ann. § 4-88-303(a), W. Va. Code § 46A-6J-3; Haw. Rev. Stat. Ann.

19  § 127A-30(a)(1).  Thus, the relevant price-gouging statute in each of these states addresses, *inter*

20  *alia*, (i) the percentage point at which a price increase is unlawful; (ii) the circumstances that

21  trigger the statute's applicability; (iii) the goods, products or services covered by the statute; (iv)

22  the duration of any price gouging prohibition; (v) whether safe harbors are available; and (vi)

23  when and how the law is enforced within that state, with some authorizing private lawsuits and

24  others reserving enforcement to public prosecutors.  *Compare, e.g.*, Cal. Penal Code § 396

25  (prohibiting price increase of 10 percent for "any commodity or rental facility" during state of

26  emergency declared by governor, President or local authorities, and authorizing private right of

27  action in addition to public prosecutor enforcement) *with* Idaho Code § 48-603(19) (prohibiting

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"exorbitant or excessive increased price(s)" for "fuel, food, pharmaceuticals, or water for human consumption" during disaster or emergency declared by only the governor or President, not local authorities, and reserving enforcement exclusively to public prosecutors).  None of these statutes allows price-gouging prosecutions, civil enforcement actions, or private actions solely under the authority of a general consumer protection statute, as Plaintiffs ask the Court to do here. Washington's Legislature, meanwhile, has considered a specific price-gouging law, SSB 5191, but has not passed it, and may not ultimately do so, Compl. ¶ 6 n.4, demonstrating that the CPA does not address such alleged conduct.

Plaintiffs' negligence claim generally asserts that Amazon has a common law "duty to ensure that, during a declared public emergency, consumer goods or food items are not sold on [Amazon.com] at excessive prices," and that Amazon breached that duty by allegedly "[l]isting products with excessive price increases;" by allegedly failing to detect, investigate, and remediate excessive price increases by others; and by supposedly "[f]acilitating the listing, sale, and delivery of products priced at excessive levels on its platform."  Compl. ¶ 121; *see generally id.* ¶¶ 117-24.  Plaintiffs allege that "Amazon's negligence was the proximate cause and substantial factor in causing Plaintiffs' economic loss."  *Id.* ¶¶ 118, 121, 124.

Finally, Plaintiffs assert Amazon was unjustly enriched by selling products at allegedly excessive and inflated prices, and by retaining a portion of transaction proceeds from supposedly overpriced third-party sales.  Compl. ¶¶ 125-29.

Plaintiffs purport to bring these claims on behalf of a putative class of "*[a]ll* persons who purchased *any* consumer good or food item on Amazon.com after January 31, 2020 at a price at least 15 percent greater than the price charged on Amazon.com for the same consumer good or food item before January 31, 2020."  Compl. ¶ 93 (emphases added).  Plaintiffs' proposed class has no geographic limitation.  Plaintiffs also do not specify which dates "before January 31, 2020" should be used to calculate any alleged overcharges.  Under their proposed class definition, then, unlawful price gouging would occur if a price charged after January 31, 2020, were 15 percent greater than a price for the same item on Amazon.com one, two, five, or even

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

twenty *years* earlier.  Plaintiffs seek to recover compensatory damages, treble damages, punitive damages, restitution, and injunctive relief.  *Id.*, Prayer for Relief.

### III.    LEGAL STANDARD

"To survive a motion to dismiss," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Allegations that "are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  Rather, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Id.* at 995 (quoting *Twombly*, 550 U.S. at 557).  After stripping away any "legal conclusions" and "conclusory statements," a court, relying on its "judicial experience and common sense," *Iqbal*, 556 U.S. at 678–79, must dismiss if the remaining allegations fail to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, 555.

### IV.    ARGUMENT

Plaintiffs' allegations implicate fundamental free-market principles.  In a crisis where certain goods become scarce, prices will often increase for the simplest of reasons:  because retailers and suppliers have difficulty obtaining raw materials or labor to create the products in highest demand.  Plaintiffs' Complaint turns on the notion that the Court should interrupt the functioning of the market by adopting a blanket policy forbidding *all* price increases greater than 15 percent on *all* consumer goods—either through an unprecedented expansion of the CPA or the creation of new common law duties.  Plaintiffs' own experience illustrates the troubling policy implications of their request.  Plaintiffs allege they looked (with varying degrees of diligence) for the products at issue, were unable to find them elsewhere, and then bought them on Amazon.com because the products were important to them.  *See* Compl. ¶¶ 18–20 (Greenberg; bleach); ¶¶ 25–26 (Steinberg; yeast); ¶ 35 (Hanson; flea and tick spray).  But if Amazon had managed its marketplace to comply with Plaintiffs' views, Amazon would have "remove[d

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

these] ... product listings with excessive price increases," *id*. ¶ 121, leaving Plaintiffs with even fewer (and potentially inferior) sources for the products they sought. This may be "counterproductive to the interests of the consumer." *Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 400 (1974).

Although a *legislature* might make the policy judgment that price ceilings make sense in these circumstances despite their impact on seller incentives and product availability, the conflicting economic considerations weigh strongly against imposition of judge-created regulations that would interfere with the ordinary functioning of a free market. Thus, even if the Court were to find that "the present system ... does not effectively serve the state interest," "it is the state legislature's and not the federal courts' role to intervene and adjust the system." *Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma*, 522 F.2d 897, 908 (9th Cir. 1975); *see also State v. Jackson*, 137 Wn.2d 712, 725 (1999). The decision whether (and how) to regulate prices requires decisions on innumerable policy questions, including the percentage point at which a price increase is presumptively unlawful; the circumstances that trigger price-gouging liability; the goods, products, or services covered; the duration of any price-gouging prohibition; whether safe harbors are available; and enforcement mechanisms. Rather than seek to answer these nuanced questions, the Court "must avoid stepping into the role of the Legislature by actively creating the public policy of Washington." *Sedlacek v. Hillis*, 145 Wn.2d 379, 390 (2001); *see also Sheaffer v. Superior Tank Lines Nw. Div., LLC*, 2019 WL 2476636, at *3 (W.D. Wash. June 13, 2019) (court should "avoid stepping into the role of the Legislature by expanding" liability not previously recognized under Washington law). The Court's "appropriate role in this area is to interpret the laws, not to legislate them." *State v. Regan*, 97 Wn.2d 47, 58 (1982) (Utter, J., concurring) (citing *Jepson v. Dep't of Labor & Indus.*, 89 Wn.2d 394, 405 (1977)).

The Legislature should address any concerns over excessive pricing through passage of a price-gouging law that reflects policy judgments to control pricing of specific classes of products in defined circumstances. The Court should dismiss Plaintiffs' claims, which invite broad judicial regulation of pricing untethered to any legislative policy judgment and unsupported by

1  existing law.

2  **A.    Plaintiffs Fail to State a Washington Consumer Protection Act Claim**

3          Plaintiffs' CPA claim fails as a matter of law for the simple reason that the statute does

4  not address price gouging.  The facts allegedly constituting "price gouging" as asserted in the

5  Complaint do not constitute an unfair trade practice under the applicable standards.

6          The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or

7  practices in the conduct of any trade or commerce."  RCW 19.86.020.  "A claim under the CPA

8  requires proof of five elements: '(1) [an] unfair or deceptive act or practice, (2) occurring in trade

9  or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property,

10  [and] (5) causation.'"  *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275,

11  1294 (W.D. Wash. 2015) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

12  105 Wn.2d 778, 780 (1986)).  To allege the first element, Plaintiffs may allege facts constituting

13  a "per se violation of statute, an act or practice that has the capacity to deceive substantial portions

14  of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of

15  public interest."  *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013).  To determine when an

16  act or practice that is not a per se statutory violation is nonetheless an unfair "violation of public

17  interest," Washington courts look to the federal FTC Act, as interpreted by the federal courts and

18  the Federal Trade Commission.  *Klem*, 176 Wn.2d at 787; *see also* RCW 19.86.920 (noting "the

19  intent of the legislature that, in construing this act, the courts be guided by final decisions of the

20  federal courts and final orders of the federal trade commission interpreting the various federal

21  statutes dealing with the same or similar matters").[4]

22          Plaintiffs invoke only the unfair prong of the CPA—not the deceptive act or practice

23  prong—asserting that price gouging constitutes an *unfair* trade practice under the CPA.  *See*

24  Compl. ¶ 109.  But the alleged price gouging described in the Complaint meets neither of the

---

[4]  Although Plaintiffs assert that Amazon's conduct was unfair because it allegedly was
"unethical, oppressive, and unscrupulous" (Compl. ¶ 112), recent decisions have abandoned this
amorphous standard in favor of the three-part FTC Act test.  *See Wilson v. PTT, LLC*, 2021 WL
211532, at *8 (W.D. Wash. Jan. 21, 2021) (rejecting outdated "unfair" formulation and relying
exclusively on FTC Act test).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    CPA's tests for unfair conduct.  It is not "per se" unfair because no Washington statute prohibits

2    it.  *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010).  Nor does it

3    constitute an actionable "violation of public interest."  *Klem*, 176 Wn.2d at 787.

4        **1.    Price Gouging Is Not a Per Se Unfair Trade Practice under the CPA**

5        "A per se unfair trade practice exists when a statute which has been declared by the

6    Legislature to constitute an unfair or deceptive act in trade or commerce has been violated."

7    *Hangman Ridge*, 105 Wn.2d at 786.  Crucially, "the Legislature, not [the] court, is the

8    appropriate body to [deem] a statutory violation to be a per se unfair trade practice."  *Id.* at 787.

9    So, where the Washington "Legislature expressly provide[s] that violations of [a specific statute]

10   are subject to the CPA[,] … a single violation of [that statute] constitutes a per se unfair trade

11   practice."  *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wn.2d 907, 922-923 (1990); *see also*

12   *Ward v. Bank of Am. Nat'l Ass'n*, 2019 WL 2103124, at *6 (W.D. Wash. May 14, 2019).

13       The pricing conduct alleged in the Complaint is not per se unfair because no Washington

14   statute prohibits it.  Although Plaintiffs allege that "[n]umerous states with analogous consumer-

15   protection laws prohibit price increases of 10% or more," they acknowledge Washington is not

16   among them.  Compl. ¶ 109; *see id.* ¶ 6 (referring to California, Oregon, Arkansas, Hawaii, and

17   West Virginia).  And courts regularly reject per se claims under the CPA where the plaintiff does

18   not identify a *Washington statute* addressing the allegedly unfair conduct.  *See, e.g.*, *Castillo v.*

19   *United Rentals, Inc.*, 2018 WL 1382597, at *8 (W.D. Wash. Mar. 19, 2018) ("[C]ourts after

20   *Klem* have continued to recognize a per se violation only when 'a statute that has been declared

21   by the legislature to constitute an unfair or deceptive act in trade or commerce has been

22   violated.'" (quoting *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wn. App. 594, 627

23   (2017)); *Minnick*, 683 F. Supp. 2d at 1186 (dismissing CPA claim alleging that cell phone early

24   termination fees were "per se unfair … under well-established, long-standing common law

25   principles" because plaintiffs failed to "identif[y] a Legislatively recognized per se unfair

26   practice"); *Leslie v. Fidelity Nat'l Title Ins. Co.*, 598 F. Supp. 2d 1176, 1181 (W.D. Wash. 2009)

27   (denying reconsideration of dismissal where "Plaintiff has not directed the Court to any language

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   in RCW 48.29.140, or any other statute or regulation, that provides that a violation … gives rise

2   to a per se CPA violation claim"); *see also McClellon v. Bank of Am., N.A.*, 2018 WL 4852628,

3   at *5 (W.D. Wash. Oct. 5, 2018) (dismissing CPA claim because, even though a Washington

4   statute prohibited the challenged conduct, the Legislature did not specifically "declare[] that a

5   violation of that statute represents a per se violation of the CPA").  Plaintiffs' proposed

6   15 percent price-gouging standard is not a "Legislatively-recognized per se unfair practice that

7   would state a claim and, as such, the claim is incompatible with CPA jurisprudence." *Minnick*,

8   683 F. Supp. 2d at 1186.

9          Plaintiffs' reference to extra-judicial statements by the Washington Attorney General

10  expressing his personal view that the CPA prohibits price gouging do not change this conclusion.

11  *See* Compl. ¶ 7 (citing Bob Ferguson, Wash. Att'y Gen., Notices to Cease and Desist (Mar. 26,

12  2020)).  Only the *Legislature* can declare conduct per se unfair.  *McClellon*, 2018 WL 4852628,

13  at *5; *see State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 156 (2006) (rejecting Attorney

14  General's proposal to declare unlicensed alternative medicine "unfair," holding that to do so

15  would effectively create a new category of per se unfair conduct absent legislative action).

16         Although price-gouging legislation is "being considered" by the Washington Legislature,

17  no such legislation has passed—as the Complaint acknowledges.  Compl. ¶ 6.  Absent actual

18  legislation, price gouging is not per se unfair under the CPA.  *Minnick*, 683 F. Supp. 2d at 1186;

19  *Leslie*, 598 F. Supp. 2d at 1181; *McClellon,* 2018 WL 4852628, at *5.  The Court should dismiss

20  Plaintiffs' CPA claim to the extent it relies on a per se theory.

21         **2.      The Price Gouging Allegations Do Not Satisfy the FTC Act's Unfairness Test**

22         As the FTC has recognized, the FTC Act does not cover alleged price gouging.  *See FTC*

23  *v. Lundbeck, Inc.*, 2010 WL 3810015, at *4 (D. Minn. Aug. 31, 2010), *aff'd*, 650 F.3d 1236 (8th

24  Cir. 2011) (noting FTC argument that "[t]here is no U.S. law against price gouging").  As the

25  FTC Chairman explained to Congress on May 11, 2020, when asked about price-gouging

26  enforcement during the COVID-19 pandemic, "No, we don't really think we have the authority

27

right now.  It's not a good fit for our current statute, that is, the FTC Act."[5]  Indeed, the FTC has never enforced the FTC Act in the price-gouging context.  *See Gutierrez v. Bean*, 2006 WL 4117064, at *3 (D.N.M. Dec. 13, 2006) (court "unable to find any evidence of a claim for price 'gauging' or 'gouging' under federal law").[6]  There is no reasonable argument that the FTC Act extends to the price gouging alleged in the Complaint.

Even if such an argument could be made, Plaintiffs have not alleged sufficient facts to establish unlawful conduct.  In deciding whether a practice is "unfair" under the FTC Act test, Washington courts evaluate whether (1) "the practice causes or is likely to cause substantial injury to consumers," (2) the alleged injury "is not reasonably avoidable by consumers themselves," and (3) the injury is "not outweighed by countervailing benefits."  *Alpert v. Nationstar Mortg. LLC*, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (citing *Klem*, 176 Wn.2d at 787); *see also FTC v. Neovi, Inc*., 604 F.3d 1150, 1155 (9th Cir. 2010) (same) (citing 15 U.S.C. § 45(n)).  The Complaint fails to plead facts to meet these elements.

### a.     The Pricing Practices Plaintiffs Describe Do Not Create a Likelihood of Substantial Injury

Plaintiffs have identified no pricing practice with respect to the products they purchased that is likely to cause "substantial injury to consumers."  *Alpert*, 2019 WL 1200541, at *6.  "An act or practice can cause 'substantial injury' by doing a 'small harm to a large number of people, or if it raises a significant risk of concrete harm.'"  *Neovi*, 604 F.3d at 1157 (quoting *Am. Fin. Servs. Ass'n v. FTC,* 767 F.2d 957, 972 (D.C. Cir. 1985)).  The gist of Plaintiffs' allegations is that sellers raised their prices, purportedly in response to a shortage of certain goods for which there was high demand.  Absent specific legislation or rules prohibiting such practices as a

---

[5]  Teleconference Forum on COVID-19 with FTC Comm'r Simons Before the H. Comm. on Energy and Com., 116th Cong., (May 11, 2020) (Statement of Joseph Simons, Chairman of the FTC), https://www.congress.gov/committees/video/house-energy-and-commerce/hsif00/kalFV_K4G1E.

[6]  In 2020, a Price Gouging Prevention Act was proposed, but Congress has not taken any steps towards enactment.  *See* Price Gouging Prevention Act, S. 3853, 116th Cong. (2020), https://www.congress.gov/bill/116th-congress/senate-bill/3853 (last visited Aug. 19, 2021). Here too, the fact that new legislation is necessary to accomplish this confirms that such conduct is not currently actionable under the existing FTC Act standard on which the CPA relies.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    matter of public policy, raising prices in response to a reduction in supply and/or an increase in

2    demand reflects the normal operation of a competitive market and is *not* intrinsically likely to

3    cause substantial harm to consumers.  *See, e.g.*, *Leegin Creative Leather Prods., Inc. v. PSKS,*

4    *Inc.*, 551 U.S. 877, 896–97 (2007) (noting that it is competitive for a manufacturer to raise prices

5    because it may seek "to improve its product quality or to promote its brand because it believes

6    this conduct will lead to increased demand despite higher prices"); *United States v. Waste Mgmt.,*

7    *Inc.*, 743 F.2d 976, 983–84 (2d Cir. 1984) (noting that increases in price by one firm lead to

8    "lower prices charged by all existing competitors as well as entry by new ones").[7]

9         Simply assuming that all price increases above a certain arbitrary amount are harmful

10   does not meet the FTC Act standard.  The U.S. Supreme Court, for example, long ago

11   acknowledged that controlling prices in times of limited supply could *harm* the interests of

12   consumers like Plaintiffs by altering production incentives: "It may ... be that control of prices in

13   this industry, in a time of shortage, if such there be, is counterproductive to the interests of the

14   consumer in increasing the production of [the product]."  *Texaco*, 417 U.S. at 400.  As the

15   Federal Trade Commission itself has observed, higher prices during emergencies help force

16   necessary market recalibration:

17        [E]ven in periods of severe supply shock, such as during a major reduction
18        in production or distribution caused by natural disasters, higher prices signal
         consumers to conserve and producers to reconfigure operations to better
19        prepare for the next supply shock.  *Thus, the right price for a commodity is
         not necessarily the low price; rather, it is the competitively determined*
20        *market price.*[8]

21   And that is precisely why price gouging is addressed through dedicated legislation and not

22   through general consumer protection statutes such as the CPA or the FTC Act:  because

23   prohibitions on such practices operate to *override* the general procompetitive regime that governs

---

24   [7]  *See also, e.g.*, Walter Nicholson and Christopher Snyder, *Microeconomic Theory: Basic
     Principles and Extensions*, 13 (11th ed. 2012), https://www.albany.edu/~gs149266/NS_11.pdf
25   (noting that under the general market equilibrium analysis, "an increase in demand … increases
     equilibrium price" whereas "an increase in supply … reduces price").

26   [8]  Report of the Federal Trade Commission and Antitrust Division of the U.S. Department of
     Justice on Excessive Pricing (Oct. 4, 2011) at ¶ 24 (emphasis added),
27   https://www.justice.gov/sites/default/files/atr/legacy/2014/05/30/278823.pdf (discussing post-
     Hurricane Katrina studies).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

pricing in a functioning market.  Consistent with this principle, state legislatures typically carve out exceptions in price-gouging statutes for increased prices that reflect increased costs to retailers or suppliers due to constrained supply or increased labor costs, for example, recognizing that continuing to distribute goods during an emergency, even at higher prices, can *benefit* rather than harm consumers.  *See, e.g.*, Cal. Penal Code § 396(b); Ky. Rev. Stat. § 367.374(c); Ark. Code Ann. § 4-88-303(b)(1)(2); W. Va. Code § 46A-6J-3(b).

Plaintiffs' allegation here that *all* prices above Plaintiffs' arbitrarily imposed 15 percent threshold cause "substantial injury," Compl. ¶ 107, even if driven by supply costs or consumer demand, finds no support in the law or in economic principles.

### b.    Plaintiffs Fail to Plead Their Injuries Were Not Reasonably Avoidable

Even if Plaintiffs could allege a practice likely to cause substantial injury, they still would have to allege facts sufficient to show that consumers could not reasonably have avoided any such injury through either "anticipatory mitigation"—the exercise of "a free and informed choice" that would avoid the claimed harm—or later mitigation once the purported harm occurred.  *Alpert*, 2019 WL 1200541, at *6 (citing *Neovi*, 604 F.3d at 1158).  An alleged injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it," or "if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact."  *Id.* (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012)).

Here, Plaintiffs' own allegations demonstrate that any harm allegedly incurred could have been avoided.  *Alpert*, 2019 WL 1200541, at *7.  Most importantly, they were provided with the precise price they would pay for the goods in advance of their purchase and offered the *choice* to buy at that price.  *Davis*, 691 F.3d at 1168 (affirming dismissal when consumer reasonably could have avoided annual fee by reading contract's terms and conditions).  Dr. Greenberg, for example, "recognized immediately that $58.19" was more than he wanted to pay for bleach—but he chose to pay anyway.  Compl. ¶ 19.  That distinguishes this case from, for example, those in which plaintiffs were charged unexpected and substantial fees *after* their purchases.  *Cf. FTC. v.*

1   *Inc21.com Corp.*, 745 F. Supp. 2d 975, 1004 (N.D. Cal. 2010) ("unauthorized billing activity"

2   not reasonably avoidable); *FTC v. Crescent Pub. Grp., Inc.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y.

3   2001) (website access fees not reasonably avoidable where consumers were offered a "free tour"

4   and the site obscured the point at which the "free tour" ended). Plaintiffs here were presented

5   with a price for a good and made a "free and informed choice" to pay that price and received the

6   exact good that was promised. *Davis*, 691 F.3d at 1168; *cf. FTC v. Hisp. Glob. Way Corp.*, 2014

7   WL 12531538, at *2 (S.D. Fla. July 1, 2014) (finding unfair practice where plaintiffs were sent

8   incorrect, incomplete, or defective merchandise).

9          In addition, although two Plaintiffs assert that they wanted to buy specific items and

10  could not find them at other outlets, they do not plead facts to show that they lacked *reasonable*

11  *alternatives*, including the option to defer their purchase decision. *See Am. Bankers Mortg.*

12  *Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1413 (9th Cir. 1996) (where alternative

13  sources for product or service exist, unconscionability cannot be shown by the mere fact that the

14  buyer or seller is the only source "of a particular price advantage" for the product or service);

15  *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026 (S.D. Cal. 2013) (finding

16  harm from purchasing pizza with allegedly toxic ingredient was "reasonably avoidable" where

17  there were "alternative pizza brands and 165 alternative pizza products that do not contain [the

18  ingredient]"). Plaintiff Greenberg, for example, alleges he was looking for bleach for his

19  girlfriend to use for "regularly disinfecting the surfaces of her home" and that he believed bleach

20  to be an effective disinfectant. Compl. ¶ 17. But he does not allege that he was unable to find

21  alternative forms of disinfectant or cleaning products at lower prices—even though the EPA

22  website he claims to have used to conduct his research on bleach provides a list of *576* "COVID-

23  19 Disinfectants" that he could have sought to purchase.[9] Similarly, Plaintiff Steinberg alleges

24  he "attempted to purchase yeast, a necessary ingredient for bread." Compl. ¶¶ 23–25. But

25  nowhere does he plausibly allege that buying yeast in April to bake his own bread was his only

26

27  ---
    [9] *See* U.S. Env't Protection Agency, *List N Tool: COVID-19 Disinfectants*,
    https://cfpub.epa.gov/wizards/disinfectants/ (last visited Sept. 30, 2021).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   reasonable option.  Mr. Steinberg does not even assert he was unable to obtain bread *from*

2   *Amazon*, much less that there was no way to purchase bread (through delivery or otherwise) near

3   his residence in Oakland, California.  Finally, Ms. Hanson alleges she tried to purchase "Zodiac

4   Flea & Tick Spray" elsewhere to "alleviate her daughter's flea infestation," but she identifies

5   only one other website she allegedly searched for the spray, and does not allege that this precise

6   brand was the only product available to accomplish that goal.  Compl. ¶ 35.[10]

7       Plaintiffs made the "free and informed choice" to purchase the goods at prices they allege

8   caused them injury, and their injuries were thus both predictable and reasonably avoidable.

9   *Davis*, 691 F.3d at 1168; *see Alpert*, 2019 WL 1200541, at *6–7 (unfair claim failed because

10  harm was reasonably avoidable and there was no evidence defendant compelled plaintiff to buy

11  "excessive" insurance; "[p]laintiff was free, at any time, to choose his own insurance policy");

12  *Hong v. Bank of Am., N.A.*, 2021 WL 3207684, at *6 (W.D. Wash. July 29, 2021) (dismissing

13  unfairness claim where Plaintiff could have avoided injury by maintaining mortgage insurance);

14  *Rabago v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 2173811, at *4–5 (C.D. Cal. June 1,

15  2011) (dismissing unfairness claim when plaintiff could have reasonably avoided default on

16  mortgage by "investigat[ing] the interest rate, loan payment terms, and costs and fees of the

17  loan"); *Casey v. Fla. Coastal Sch. of Law, Inc.*, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11,

18  2015), *report and recommendation adopted*, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) (finding

19  consumers could have reasonably avoided injury where sources providing accurate information

20  were available).  The Court should dismiss their claim on that basis alone.

21      Plaintiffs' alleged actions *after* discovering their claims likewise show the harm they

22  allege was reasonably avoidable.  An alleged injury is reasonably avoidable "if consumers are

23  aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury

24  after the fact."  *Alpert*, 2019 WL 1200541, at *6 (citing *Davis*, 691 F.3d at 1168-69).  Here, no

25  allegations suggest any of the Plaintiffs took any steps to mitigate their injury *after the fact*—

26

27

---

[10]  A straightforward Google search turns up hundreds of products from various brands, from flea combs, to sprays, to flea and tick shampoos, that all purport to treat pet-borne flea infestations.

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   including by seeking a refund for any alleged price gouging by Amazon or third-party sellers.

2   *Davis*, 691 F.3d at 1169.  Rather, as the litigation history of this case makes clear, they ran to

3   court within days to seek class-wide damages and attorneys' fees.  *Greenberg, et al. v.*

4   *Amazon.com, Inc.*, No. 4:20-CV-02782-JSW, Dkt. 1 (N.D. Cal. Apr. 21, 2020); *see also id.*, Dkt.

5   21 (amending complaint and joining current plaintiffs on July 6, 2020).  In particular, Plaintiffs

6   do not allege they invoked Amazon's A-to-Z guarantee, which would have allowed them to

7   avoid any alleged injury.  *See supra* II.B.3.  Although Plaintiff Steinberg alleges he "complained

8   to Amazon about the price" and made a few phone calls, Compl. ¶ 28, he fails to allege facts

9   showing he ever invoked Amazon's A-to-Z guarantee procedure.  Plaintiffs Greenberg and

10  Hanson, on the other hand, plead no facts suggesting they tried to mitigate their alleged injuries

11  by seeking a refund.

12       Even if mitigation might have required Plaintiffs to exert time and effort, the question "is

13  not whether subsequent mitigation was convenient or costless, but whether it was 'reasonably

14  possible.'"  *Davis*, 691 F.3d at 1169 (citation omitted).  The Complaint's failure to allege an

15  inability to reasonably mitigate harm falls short of what the FTC Act test requires.

16          **c.**     **Plaintiffs Fail to Plead the Absence of Countervailing Benefits**

17       Plaintiffs also do not allege facts sufficient to show that the injury resulting from the

18  supposedly harmful pricing practices were "not outweighed by countervailing benefits" to

19  consumers or competition.  *Klem*, 176 Wn.2d at 787 (quoting 15 U.S.C. § 45(n)).  Such

20  procompetitive benefits can include an "increase in services or benefits to consumers or ...

21  benefits to competition."  *FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1116 (S.D. Cal. 2008)

22  (quoting *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000)); *see also Orkin*

23  *Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988).

24       Here, Plaintiffs fail to plead *facts* to show a lack of countervailing benefits to consumers

25  or competition.  *See Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*,

26  2018 WL 6985317, at *7 (C.D. Cal. Dec. 3, 2018) (dismissing FTC Act claim because

27  conclusory allegation that alleged harm is "not outweighed by countervailing benefits to

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   consumers or to competition" was insufficient).  Their allegations suffer from the same fatal flaw

2   as the allegations in *Kindred Studio*:  the circular and conclusory assertion that "price gouging"

3   has no benefit is plainly a "threadbare recital[] of a cause of action's elements" warranting

4   dismissal.  *Iqbal*, 556 U.S. at 663; *see* Compl. ¶ 111.  Plaintiffs assume *all* price increases of

5   some arbitrary percentage (or more) following the declaration of an emergency are contrary to

6   consumers' interests.  But as shown above, that assumption ignores basic economics, under

7   which rising prices in the face of decreased supply and increased demand often benefit both

8   consumers and competition by increasing investment and quality of goods and incentivizing

9   market entry by other competitors—something particularly helpful during times of product

10  scarcity.  *See Leegin*, 551 U.S. at 896–97; *Waste Mgmt.*, 743 F.2d at 983–84.  Further,

11  unregulated prices benefit consumers by "rationing scarce resources when demand exceeds

12  supply in a market."  Report of the FTC and Antitrust Div. of DOJ on Excessive Pricing, *supra*,

13  at ¶ 8.  In those circumstances, "the price of the product at stake typically rises—leaving only

14  those [like Plaintiffs] who are sufficiently willing and able to pay for it to purchase the product."

15  *Id*.  And finally, when prices increase because of rising raw material and labor costs—an acute

16  issue during the pandemic—consumers benefit from continued distribution, even if at higher

17  prices.  Plaintiffs did not (and cannot) plead the absence of countervailing benefits.

18                                        * * *

19      Plaintiffs fail to allege that the pricing conduct alleged in the Complaint is unfair under

20  the CPA.  It is not per se unfair because no Washington statute prohibits price gouging.  And it is

21  not unfair under the alternative FTC Act test.  "This court should resist the temptation to rewrite

22  an unambiguous statute to suit [Plaintiffs'] notions of what is good public policy, recognizing the

23  principle that 'the drafting of a statute is a legislative, not a judicial, function.'"  *State v. Jackson*,

24  137 Wn.2d 712, 725 (1999) (quoting *State v. Enloe*, 47 Wn. App. 165, 170 (1987)).  The Court

25  should dismiss Plaintiffs' CPA claim with prejudice.

26

27

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    The Court Should Dismiss Plaintiffs' Negligence Claim with Prejudice Because It Depends on Their Allegation of a Duty That Does Not Actually Exist**

Plaintiffs also plead a negligence claim that turns on their assertion of a highly specific duty of care that no Washington court has recognized and that runs counter to common sense and sound public policy.  Specifically, they assert that Amazon owed them "a non-delegable duty to apply a level of reasonable care" to manage pricing in its marketplace.  Compl. ¶ 118.  Plaintiffs allege this duty of care "encompasses a duty to ensure that, during a declared public emergency, consumer goods or food items are not sold on [Amazon.com] at excessive prices."  *Id.* According to Plaintiffs, Amazon was required, among other things, "to detect price increases by third party suppliers" and then to "remove ... third party sellers engaged in" charging excessive prices.  *Id.* ¶ 121.  "Had Amazon exercised reasonable care," Plaintiffs say, they "would not have paid excessive amounts" for the bleach, yeast, and flea-and-tick spray they bought on Amazon.com.  *Id.* ¶ 124.

In effect, Plaintiffs ask the Court to act in a quasi-legislative role to create and retroactively apply a new common law duty of care imposing specific obligations similar to those that would have been imposed in future emergencies had the Legislature passed SSB 5191 or a price-gouging law similar to those in California, Oregon, Arkansas, Hawaii, and West Virginia.  Compl. ¶ 109; *see id.* ¶ 6.  And because Plaintiffs do not allege a breach of any agreement with Amazon, they must find this duty of care outside the parties' contract, contained in the Amazon Conditions of Use ("COUs").[11]  "If there is no independent duty outside of the party's contractual duties, there can be no tort remedy."  *Congdon v. Wells Fargo Bank, N.A.*, 2017 WL 2443649, at *5 (W.D. Wash. June 5, 2017) (Lasnik, J.) (citing *Schwartz v. World Sav.*

---

[11] Plaintiffs acknowledge the COUs govern Amazon's relationship with buyers on its site.  *See* Compl. ¶¶ 12 & 92 (alleging Amazon's COUs govern Plaintiffs' use of the Amazon marketplace); *see* Cox Decl. Ex. B (attaching COUs).  The COUs devote a paragraph to "Pricing," and link to Amazon's pricing policy, which "govern[s] your use of Amazon services."  COUs at 3 ("Pricing"), 5 ("Site Policies," linking to pricing policy); *see also* Cox Decl. Ex. C ("Pricing Policy").  Neither the COUs nor the Pricing Policies impose any contractual duty on Amazon to police the pricing decisions for the benefit of consumers who shop on the site—each of whom may make an independent decision as to whether to accept offered products at the stated prices.

1   *Bank*, 2012 WL 993295, at *7 (W.D. Wash. Mar. 23, 2012) (dismissing negligence claim where

2   allegation that defendant failed to comply with duty of care did not arise independent of

3   contractual duties)). "[T]he court considers common sense, justice, policy, and precedent to

4   determine whether the defendant owed an independent tort duty of care to avoid the plaintiff's

5   risk of economic loss." *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, 2012 WL 836233, at *5

6   (W.D. Wash. March 12, 2012) (Lasnik, J.) (citing *Eastwood v. Horse Harbor Found., Inc.*, 170

7   Wn.2d 380, 389-90 (2010)). "A duty may derive either from statute or common law, but absent

8   a duty, 'an action in negligence will not lie.'" *Busey v. Wells Fargo Bank, N.A.*, 2020 WL

9   5891907, at *4 (W.D. Wash. Oct. 5, 2020) (quoting *Swiss Baco Skyline Logging, Inc., v.*

10  *Haliewicz*, 18 Wn. App. 21, 27 (1977)).

11      Here, none of the relevant factors supports finding a common law duty of the sort

12  Plaintiffs allege. No "precedent" supports such a common law duty, *Kazia Digo*, 2012 WL

13  836233, at *6. To Amazon's knowledge, no Washington court has recognized a wide-ranging

14  common law duty to police seller pricing to ensure that *no* "consumer goods or food items" are

15  sold "at excessive prices." Compl. ¶ 118. Rather, states address price gouging, where

16  appropriate, through legislation, not through the creation of common law duties—as evidenced

17  by the multiple statutes on that subject cited in the Complaint and the proposed price-gouging

18  statute now under consideration by the Washington Legislature. "Common sense," *id.*, likewise

19  counsels against Plaintiffs' proposed duty, which assumes all 15 percent price increases are

20  unlawful, regardless of their cause—a position that no state statutes even adopt, given the many

21  legitimate circumstances that can lead to price increases. Such a standard would both penalize

22  retailers who merely respond to increases in their own costs and potentially short-circuit the

23  functioning of the market to the *detriment* of consumers. *See supra* at 14-15. And it would

24  perversely punish any retailer who had the misfortune to offer products at a discount before the

25  arbitrarily selected January 31, 2020 cutoff, requiring it to maintain for the duration of the

26  pandemic a suppressed price intended only as a temporary promotion.

27      Nor does "justice," *Kazia Digo*, 2012 WL 836233, at *6, counsel the creation of a

AMAZON'S MOTION TO DISMISS
(2:21-CV-00898) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

heretofore unknown common law duty to manage marketplace pricing for the benefit of product purchasers in these circumstances.  Plaintiffs acknowledge that Amazon has expressed "zero tolerance for price gouging," and has publicly emphasized its "longstanding policies and systems to prevent this harmful practice."  Compl. ¶ 86.[12]  Amazon also took visible steps to rid its site of unfair prices and sellers who violate its pricing policies, as Plaintiffs recognize.  Plaintiffs admit, for example, that by the time they made their purchases in April 2020, Amazon already had "suspend[ed] 3,900 United States accounts" because of concerns over excessive prices.  Compl. ¶ 86.  And they acknowledge that an April 16, 2020, shareholder letter from Amazon's CEO "indicated that Amazon had suspended 'more than 6,000 selling accounts globally.'"  *Id*. n.188.[13]  The letter also reported that Amazon had (a) "removed over half a million offers from our stores due to COVID-based price gouging"; (b) "turned over information about sellers we suspect engaged in price gouging of products related to COVID-19 to 42 state attorneys general offices"; and (c) "created a special communication channel for state attorneys general to quickly and easily escalate consumer complaints to us."  *Id.*  These steps, which Plaintiffs do not deny, implement Amazon's commitment to being Earth's most customer-centric company; they negate any notion that justice requires the invention of a new common law duty of care requiring a marketplace (like Amazon.com) to police prices and allowing courts to review pricing decisions.

Finally, "policy" weighs against recognizing a new common law duty in this context. *Kazia Digo*, 2012 WL 836233, at *6.  "Where, like here, there is a contract governing an economic relationship, Courts are ... less likely to recognize a duty in tort and more likely to give deference to contract law."  *Busey*, 2020 WL 5891907, at *4 (citing *Steadman v. Green Tree Servicing, LLC*, 2015 WL 2085565, at * 12 (W.D. Wash. May 5, 2015); Restatement (Third) of Torts: Liab. For Econ. Harm § 1 (2020)).  Courts have long acknowledged that the complex task of pricing supervision lies beyond their competence; they are "institutionally unsuited to gather

---

[12]  Quoting Amazon, *Price gouging has no place in our stores* (Mar. 23, 2020), https://blog.aboutamazon.com/company-news/price-gouging-has-no-place-in-our-stores.
[13]  Quoting Amazon Annual Report, Ex. 99.1 (2020), available at https://www.sec.gov/Archives/edgar/data/1018724/000119312520108427/d902615dex991.htm.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    the facts upon which economic predictions can be made, and professionally untrained to make

2    them." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 308 (1997). By contrast, legislative bodies

3    "ha[ve] the capacity to investigate and analyze facts beyond anything the Judiciary could

4    match[.]" *Id.* at 309. For courts "to inquire into the reasonableness of prices is to 'set sail on a

5    sea of doubt.'" *Concord v. Boston Edison Co.*, 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, C.J.)

6    (quoting *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 283 (6th Cir. 1898) (Taft, J.)).

7    This Court should reject the invitation to embark on such a voyage.

8        The absence of a duty resolves Plaintiffs' negligence claim, because "absent a duty, an

9    action in negligence will not lie." *Busey*, 2020 WL 5891907, at *4 (internal quotation marks

10   omitted, citation omitted). The Court should dismiss Plaintiffs' negligence claim with

11   prejudice.[14]

12   **C.    Plaintiffs Cannot State a Claim for Unjust Enrichment in Derogation of Their
           Contracts with Amazon**

13

14       Plaintiffs also cannot plead an unjust enrichment claim because they have a contract with

15   Amazon that governs their purchases on Amazon.com. Both the COUs and Amazon's pricing

16   policy address product pricing on the Amazon site. *See* Cox Decl. Exs. B (COUs), C (pricing

17   policy); *see also* n.11, *supra*. Through these materials, Amazon generally agrees to charge "the

18   most recent price displayed on the product detail page of the item." *Id.* Ex. C, ¶ 3. Nothing in

19   the Complaint even hints that Amazon did anything other than what it said it would do. To the

20   contrary, the Plaintiffs each allege Amazon charged them only what they agreed to pay. *See*

21   Compl. ¶ 19 (Greenberg "purchased the product at the listed price of $58.19"); ¶¶ 26-27

22   (Steinberg saw "listing" for $39.97 and then "accept[ed] the terms Amazon was offering"); ¶ 35

23   (Hanson found flea and tick spray on Amazon "and purchased it for the price of $14.19").

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [14] Even if the law imposed a duty of care of the sort Plaintiffs advocate, they could not recover

25   from Amazon. Under Washington law, "money voluntarily paid under a claim of right to the
     payment, and with knowledge by the payor of the facts on which the claim is based, cannot be

26   recovered back on the ground that the claim was illegal, or that there was no liability to pay in
     the first instance." *Hawkinson v. Conniff*, 53 Wn.2d 454, 458 (1959). Here, Plaintiffs plead that

27   they voluntarily paid the prices listed on Amazon.com, and they do *not* plead ignorance of any
     relevant facts. *See* Compl. ¶ 19 (Greenberg); ¶¶ 26–27 (Steinberg); ¶ 35 (Hanson).

1    Having received *exactly* what they contracted to receive, Plaintiffs cannot assert a claim

2    for unjust enrichment.  "Under Washington law, a plaintiff who is a party to a 'valid express

3    contract is bound by the provisions of that contract' and may not bring a claim for unjust

4    enrichment for issues arising under the contract's subject matter."  *Hurlbut v. Crines*, 14 Wn.

5    App. 2d. 660, 672 (2020) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604

6    (1943)); *see also Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010)

7    (quoting *Chandler*, 17 Wn.2d at 604).  "Unjust enrichment is the method of recovery for the

8    value of the benefit retained *absent any contractual relationship* because notions of fairness and

9    justice require it."  *Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283, 1295 (E.D.

10   Wash. 2014) (emphasis added).  But where a plaintiff *has* a contract, as these Plaintiffs do, the

11   plaintiff "is bound by the provisions of that contract and may not disregard the same and bring an

12   action on an implied contract relating to the same matter, in contravention of the express

13   contract."  *Hurlbut*, 14 Wn. App. 2d at 672 (quoting *Chandler*, 17 Wn.2d at 604); *see also Hard*

14   *2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1176 (W.D. Wash. 2014)

15   (granting motion to dismiss third-party seller's claim; "it is clear that the issue arises under a

16   contract's express subject matter and may not be the basis of an unjust enrichment claim").

17        The Court should dismiss Plaintiffs' unjust enrichment claim with prejudice.

18                            **V.    CONCLUSION**

19        For these reasons, the Court should dismiss the Complaint in its entirety.  Because

20   Plaintiffs can allege no set of facts sustaining any of their causes of action, the Court should

21   dismiss with prejudice.

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 1st day of October, 2021.

2

3                                              DAVIS WRIGHT TREMAINE LLP
                                               Attorneys for Amazon.com, Inc.
4

5                                              By /s/ Stephen M. Rummage
                                                   Stephen M. Rummage, WSBA #11168
6                                                  James E. Howard, WSBA #37259
                                                   Sarah Cox, WSBA #46703
7                                                  920 Fifth Avenue, Suite 3300
                                                   Seattle, WA 98104-1610
8                                                  Telephone: (206) 622-3150
                                                   Fax: (206) 757-7700
9                                                  E-mail: steverummage@dwt.com
                                                            jimhoward@dwt.com
10                                                          sarahcox@dwt.com

11                                             GIBSON, DUNN & CRUTCHER LLP
                                               Attorneys for Amazon.com, Inc.
12

13                                             By /s/ Kristin A. Linsley
                                                   Kristin A. Linsley, admitted pro hac vice
14                                                 Rachel S. Brass, admitted pro hac vice
                                                   Joseph R. Rose, admitted pro hac vice
15                                                 555 Mission St., Ste. 3000
                                                   San Francisco, CA 94105
16                                                 Telephone: (415) 393-8200
                                                   Fax: (415) 393-8306
17                                                 E-mail: klinsley@gibsondunn.com
                                                            rbrass@gibsondunn.com
18                                                          jrose@gibsondunn.com

19

20

21

22

23

24

25

26

27