UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVIN GREENBERG, MICHAEL STEINBERG, JULIE HANSON, CHRISTINA KING, and RONNELL ROBERTSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

CASE NO. 2:21-cv-00898-RSL

**ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION[1]**

Plaintiffs hereby propose the following provisions regarding the discovery of electronically stored information ("ESI") in this matter. Plaintiffs began with the District's Model ESI Agreement, and have identified departures from the model in a redlined copy, attached as Exhibit 1.

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

[1] The Court declines to enter plaintiff's proposed order regarding expert discovery protocols.

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding the phasing and prioritization of productions.

3. This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Order will be titled sequentially as follows, "First Modified Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Order will supersede the previous Order.

4. Nothing in this Order precludes the parties from reaching further agreements on topics related to this Order, or if agreement cannot be reached, moving the Court for an appropriate discovery order.

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. If a party has employees, directors or officers, that party shall identify the 25 custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a. Prior to running searches:

i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party shall provide unique hit counts for each search query, unless providing such hit counts amounts to an unreasonable burden.

ii. After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

b. Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

3. Format.

a. ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c. Each document image file shall be named with a unique number (Bates Number). Documents produced in native format will be assigned a Bates Number and produced with a corresponding load file. Original file names should be preserved and included in the load file metadata. File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

f. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file. If processing and production is done on a rolling basis, an updated

Duplicate Custodians field with additional values shall be provided in an overlay. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplement them.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

6. Metadata fields. The parties shall timely confer to attempt to reach agreement on appropriate metadata fields.

7. Hard-Copy Documents. The parties elect to produce hard-copy documents in an electronic format. The production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in

the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Automatically saved interim versions of documents and emails (for the avoidance of doubt, this provision does not apply to any final versions of documents and emails whether saved manually or automatically).

f. Dynamic fields of databases or log files that are not retained in the usual course of business.

g. Back-up data that are duplicative of data that are more accessible elsewhere.

h. Server, system or network logs.

i. Data remaining from systems no longer in use that is unintelligible on the systems in use.

j. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

1. The parties agree to abide by Fed. R. Civ. P. 26(b)(5) with respect to documents fully withheld from production on the basis of a privilege or other protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties by the deadline for Substantial Completion of Document Production.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding,

constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

Dated this 16th day of February, 2023.

Robert S. Lasnik
United States District Judge