The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVIN GREENBERG, MICHAEL
STEINBERG, JULIE HANSON, CHRISTINA
KING, and RONNELL ROBERTSON, on behalf
of themselves and all others similarly situated,

               Plaintiffs,

     v.

AMAZON.COM, INC., a Delaware corporation,

               Defendant.

No. 2:21-CV-00898-RSL

**AMAZON.COM, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f)**

NOTE ON MOTION CALENDAR: January 17, 2025

*Oral Argument Requested*

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 3

    A.    Amazon's Online Store and Customer-Centric Pricing. ...................................... 3

    B.    Plaintiffs' Individual Allegations of Pricing Unfairness. .................................... 4

    C.    The Washington Supreme Court's Decision. ....................................................... 5

    D.    Plaintiffs' Reformulated Placeholder Class. ........................................................ 6

III.    ARGUMENT ..................................................................................................... 7

    A.    The Court Should Strike Plaintiffs' Class Allegations. ....................................... 7

        1.    Plaintiffs' Proposed Class Is an Impermissible Fail-Safe Class. .............. 8

        2.    Plaintiffs' Proposed Class Is Not Sufficiently Definite to Satisfy Rule 8. ................................................................................................ 9

        3.    Plaintiffs' Proposed Class Could Not Satisfy Rule 23(b). ..................... 10

    B.    Plaintiffs' Pricing Claim Relies On An Unconstitutionally Vague Construction Of The CPA. ............................................................................. 13

        1.    The Washington Supreme Court Departed from Well-Established Precedent in Interpreting the CPA's "Unfairness" Prong. ..................... 14

        2.    The Washington Supreme Court Established a Standardless Test. ........ 15

        3.    Plaintiffs Do Not Allege any Conduct that Amazon Should Have Understood in Advance Could Be Illegal. ............................................. 18

    C.    Plaintiffs Fail To State Negligence Or Unjust Enrichment Claims. .................. 20

        1.    Plaintiffs Fail to State a Claim for Negligence. ..................................... 21

        2.    Plaintiffs Fail to State a Claim for Unjust Enrichment. .......................... 23

IV.    CONCLUSION ................................................................................................ 24

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4

*Affiliated FM Ins. Co. v LTK Consulting Servs., Inc.*,
5
    170 Wn.2d 442 (2010) .................................................................................... 22

6

*Angulo v. Providence Health & Services*,
7
    2024 WL 3744258 (W.D. Wash. 2024) ........................................................... 8

8  *Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 20
9

10  *Austin v. Ettl*,
    171 Wn. App. 82 (2012) ................................................................................. 22

11

12  *Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 20

13

*Berkshire Hathaway Homestead Ins. Co. v. SQI, Inc.*,
14
    132 F. Supp. 3d 1275 (W.D. Wash. 2015) ..................................................... 8

15

*Bouie v. City of Columbia*,
16
    378 U.S. 347 (1964) ........................................................................................ 13

17  *Bruton v. Gerber Prods. Co.*,
    2018 WL 1009257 (N.D. Cal. 2018) .............................................................. 11
18

19  *Busey v. Wells Fargo Bank, N.A.*,
    2020 WL 5891907 (W.D. Wash. 2020) .......................................................... 21, 22
20

21  *Butcher v. Knudsen*,
    38 F.4th 1163 (9th Cir. 2022) ................................................................... 13, 18, 20
22

23  *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
    556 F.3d 1021 (9th Cir. 2009) ........................................................................ 16, 17
24

25  *Cashatt v. Ford Motor Co.*,
    2020 WL 1987077 (W.D. Wash. 2020) .......................................................... 9, 11

26  *Cashatt v. Ford Motor Co.*,
    2021 WL 1140227 (W.D. Wash. 2021) .......................................................... 7, 8
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Chie v. Reed Elsevier, Inc.*,
   2011 WL 3879495 (N.D. Cal. 2011) .................................................... 9

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ............................................................................. 16

*Congdon v. Wells Fargo Bank, N.A.*,
   2017 WL 2443649 (W.D. Wash. 2017) ............................................... 21

*Conigliaro v. Norwegian Cruise Line Ltd.*,
   2006 WL 7346844 (S.D. Fla. 2006) .................................................... 10

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................ 3

*Dimaya v. Lynch*,
   803 F.3d 1110 (9th Cir. 2015) ........................................................... 13

*Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*,
   179 Wn.2d 84 (2013) ......................................................................... 22

*Earnest v. Gen. Motors Corp.*,
   923 F. Supp. 1469 (N.D. Ala. 1996) .................................................. 10

*Eastwood v. Horse Harbor Found., Inc.*,
   170 Wn.2d 380 (2010) ....................................................................... 22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................. 20

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ........................................................................... 13

*Flores v. Act Event Servs., Inc.*,
   55 F. Supp. 3d 928 (N.D. Tex. 2014) ................................................ 10

*FTC v. Lundbeck, Inc.*,
   2010 WL 3810015 (D. Minn. 2010), *aff'd*, 650 F.3d 1236 (8th Cir. 2011) ................ 14

*Goel v. Coalition Am. Holding Co.*,
   2011 WL 13128300 (C.D. Cal. 2011) .............................................. 9, 10

*Greenberg v. Amazon.com, Inc.*,
   3 Wn.3d 434 (2024) ..................................................................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*,
   2015 WL 9487928 (W.D. Wash. 2015) ................................................................7, 9, 10, 11

*Gutierrez v. Bean*,
   2006 WL 4117064 (D.N.M. 2006) ....................................................................... 14

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
   58 F. Supp. 3d 1166 (W.D. Wash. 2014)................................................................... 24

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011) ........................................................................ 17, 18

*Hurlbut v. Crines*,
   14 Wn. App. 2d 660 (2020) .......................................................................... 24

*In re Amazon Serv. Fee Litig.*,
   705 F. Supp. 3d 1255 (W.D. Wash. 2023).................................................................... 7

*Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irr. Dist.*,
   175 Wn. App. 374 (2013) ........................................................................... 23

*Jamie S. v. Milwaukee Pub. Schs.*,
   668 F.3d 481 (7th Cir. 2012) ........................................................................ 10

*Kreidler v. Pixler*,
   2010 WL 11527333 (W.D. Wash. 2010) .................................................................. 23

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010 ................................................................. 23

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ......................................................................... 8

*Pilgrim v. Univ. Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ......................................................................... 7

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ........................................................................ 8

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 12-13

*Sessions v. Dimaya*,
   584 U.S. 148 (2018).............................................................................. 13, 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*State v. Black*,
    100 Wn.2d 793 (1984) ........................................................ 14

*State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*,
    82 Wn.2d 265 (1973) ........................................................ 14

*State v. Reader's Dig. Ass'n, Inc.*,
    81 Wn.2d 259 (1972) ........................................................ 14

*Steinbock v. Ferry Cnty. Pub. Util. Dist. No. 1*,
    165 Wn. App. 479 (2011) .................................................... 23

*Townsend v. Quadrant Corp.*,
    173 Wn.2d 451 (2012) .................................................. 21, 24

*United States v. L. Cohen Grocery Co.*,
    255 U.S. 81 (1921) ........................................................... 16

*United States v. Poindexter*,
    951 F.2d 369 (D.C. Cir. 1991) .............................................. 16

**Rules and Statutes**

RCW 62A.2-101 ..................................................................... 22

Fed. R. Civ. P. 8 .............................................................. 1, 2, 9

Fed. R. Civ. P. 12 ............................................................... 2, 7

Fed. R. Civ. P. 23 ......................................................... *passim*

**Other Authorities**

Manual for Complex Litigation § 21.222 (4th ed. 2004) ...................... 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## I.    INTRODUCTION

2      The Washington Supreme Court rejected Plaintiffs' theory that the Washington

3 Consumer Protection Act ("CPA") prohibits price increases above a certain percentage threshold

4 after a declared emergency.  Instead, the Court held that to state a CPA claim, Plaintiffs must

5 show that the price paid in each challenged transaction was "'unfair' under a case-specific

6 analysis of that term."  *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 454 (2024).  This holding

7 foreclosed Plaintiffs' class claims, which depended on allegations that 15% or greater price

8 increases were unfair.

9      Forced back to the drawing board, Plaintiffs filed a Second Amended Complaint ("SAC")

10 reasserting their individual claims and seeking to represent a class defined as "all persons who

11 purchased any consumer good or food item" on Amazon.com during the COVID-19 pandemic

12 "whose price was set at an unfair level."  The SAC, however, does not cure the fundamental

13 defects in Plaintiffs' individual or class claims for three reasons:

14      *First*, Plaintiffs' proposed class definition is facially invalid.  For starters, it is an

15 impermissible "fail-safe" class.  The law is clear that a class may not be defined by the alleged

16 legal violation.  Yet that is how Plaintiffs define the class here: it includes only those who

17 purchased goods through Amazon.com at an "unfair" price.

18      Plaintiffs' class definition also fails to plausibly allege the existence of a class that could

19 be certified under Rule 23, as Rule 8 requires.  Plaintiffs offer no objective criteria for

20 determining class membership or a definition of "consumer good" or "food item."  Nor do they

21 define what constitutes an "unfair" price for any of the *billions* of products listed for sale on

22 Amazon.com.  Forced to abandon their claim that any price increase of 15% or more was *per se*

23 "unfair," Plaintiffs leave Amazon, the Court, and putative class members to guess what attributes

24 would cause a price to be "unfair."

25      Plaintiffs' class definition additionally runs afoul of Rule 23 because class membership

26 necessarily turns on individualized issues of "unfairness."  As the Supreme Court made clear,

27 determining "unfairness" in the price-gouging context is a fact-specific and individualized

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

inquiry.  In finding that Plaintiffs sufficiently alleged that their own injuries were not reasonably avoidable, the Court credited Plaintiffs' allegations that they needed the goods in question to stay safe and healthy, made unsuccessful efforts to obtain them from stores in their geographical area, and had no alternative but to pay the allegedly unfair price.  Accordingly, for the class now proposed, the Court would need to examine (i) each product to determine whether its price was justified in light of cost increases and other variables, and (ii) each purchaser to determine whether they could have "reasonably avoided" the allegedly unfair purchase by, among other things, seeking out alternative vendors or deferring their purchase.  Although required by their class definition, this individualized inquiry would be impracticable to conduct for each of the billions of items listed for sale on Amazon.com and for each of the tens of millions of customers who purchased any of those products over a nearly three-year period.

Plaintiffs seemingly recognize this flaw in their class definition because they promise to "refine" it "after discovery and expert analysis."  But that puts the cart before the horse.  Rules 8 and 23 require Plaintiffs to plead a plausible class definition *before* they can maintain a putative class action or obtain class discovery.

*Second*, under the Supreme Court's new interpretation, the CPA is unconstitutionally vague under federal law as applied to claims premised on pricing alone, like those here.  The CPA survived a constitutional challenge 52 years ago because the phrase "unfair or deceptive acts or practices" had a sufficiently well-established meaning in common law and federal trade law.  But the Court's decision in this case deliberately and explicitly departs from that "well-established" meaning by interpreting "unfair" conduct to reach questions of pricing alone.  Under the Fourteenth Amendment, state laws must provide citizens "fair notice of conduct that is forbidden or required."  The Supreme Court's standardless interpretation of the CPA as applied to ordinary economic activity—pricing of legal goods—fails to provide notice that would allow citizens to conform their conduct to the law and invites arbitrariness.

*Third*, Plaintiffs' claims for negligence and unjust enrichment should be dismissed under Rule 12(b).  Plaintiffs admit that a written contract—the Amazon.com Conditions of Use

("COU")—governed their transactions and relationship with Amazon, which forecloses these claims as a matter of law. Their negligence claim also fails because Plaintiffs fail to plead any facts to support it. Plaintiffs do not identify any allegedly negligent conduct by Amazon as it sought to monitor price increases in the early days of the pandemic. Nor do they identify any extra-contractual benefit they conferred by which Amazon has been unjustly enriched. For these reasons, the SAC should be dismissed.

## II.    BACKGROUND

### A.    Amazon's Online Store and Customer-Centric Pricing

Amazon operates an online retail store, Amazon.com. The retail landscape is vigorously competitive across channels (offline, online, omni-channel), with brick-and-mortar stores competing with online stores for sales. Plaintiffs allege that "1.5 billion" individual items are listed for sale on Amazon.com. SAC ¶ 89. According to Plaintiffs, one-third of the store's revenue comes from sales of products from Amazon's retail inventory. *Id.* ¶ 91. The other two-thirds is from sales of products listed by third-parties. *Id.* As Plaintiffs acknowledge, these third-party sellers operate under a range of Amazon policies and practices. *Id.* ¶¶ 102-108. Accordingly, the billions of products Plaintiffs allege were listed on Amazon.com during the COVID-19 pandemic were sold by many different sellers, with varied contractual and business relationships with Amazon.

Amazon seeks to offer consistently low pricing to earn and maintain customer trust.[1] Hundreds of thousands of third parties sell products on Amazon.com,[2] expanding product offerings and availability. Amazon monitors the prices third-party sellers set for "items on [its] marketplaces … and compares them with other prices available to [its] customers."[3] If Amazon

---

[1]    Responses from Amazon to Questions for the Record following the July 16, 2019 H'rg ("Responses from Amazon"), https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-20190716-SD038.pdf (cited at SAC ¶ 104 n.184). The full contents of the documents incorporated by reference in the SAC may be considered by the Court. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

[2]    Responses from Amazon at 49.

[3]    Goldmark Decl., Ex. A ("Fair Pricing Policy") (cited at SAC ¶ 106 n.188).

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

identifies practices that "harm[] customer trust," including "[s]etting a price on a product or service that is significantly higher than recent prices offered on or off Amazon," Amazon can suspend or terminate selling privileges.[4]  Amazon backs these efforts with its A-to-z Guarantee, which allows customers to seek a refund if they are unsatisfied with any purchase from the Amazon.com store.[5]

Amazon expanded these customer protections during the pandemic.  On March 23, 2020, only four days after the first lockdown order in California, Amazon announced a policy of "zero tolerance for price gouging."[6]  Its efforts to police abusive pricing included "[m]onitoring [its] stores 24/7[,] … remov[ing] well over half a million of offers from [Amazon's] stores due to coronavirus-based price gouging," "suspend[ing] more than 3,900 selling accounts in [its] U.S. store alone for violating [Amazon's] fair pricing policies," and "actively collaborating with attorneys general in more than ten states, and with numerous federal prosecutors, as they work to investigate and prosecute alleged price gougers."[7]  Plaintiffs' purchases all occurred in March or April 2020, while Amazon was actively working to stop price gouging by third-party sellers.

**B.    Plaintiffs' Individual Allegations of Pricing Unfairness**

Plaintiffs allege they purchased specific items from Amazon.com in March or April 2020—the very early days of the unprecedented pandemic.  Plaintiffs contend that the prices they voluntarily paid were higher than they had been on or before January 31, 2020.  SAC ¶¶ 20, 29, 36, 46, 48, 51, 56, 59, 65.  Although Plaintiffs do not specify the seller for each transaction, their allegations imply they made most of their purchases from third-party sellers, not from Amazon.  *Compare id.* ¶ 27 ("Mr. Steinberg … purchase[d] yeast on Amazon") *with* ¶ 50

---

[4]    *Id.*

[5]    *See* Responses from Amazon at 47.

[6]    *Price gouging has no place in our stores*, AMAZON (Mar. 23, 2020), https://www.aboutamazon.com/news/company-news/price-gouging-has-no-place-in-our-stores (cited at SAC ¶ 120 n.217).

[7]    *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(Plaintiff King purchased "Vegetable Glycerin … supplied by Amazon itself (not a third-party retailer)").

Plaintiffs' allegations of pricing unfairness rely on two websites called "keepa.com" and "camelcamelcamel.com" that purport to track an amalgamation of Amazon.com prices.  *See id.* ¶¶ 91-101.  Of the products Plaintiffs allege in the SAC were unfairly priced, Plaintiffs only purchased eight: Clorox Bleach; yeast; flea and tick spray; beef ramen noodles; rice; vegetable glycerin; distilled water; and disinfecting wipes.  SAC ¶¶ 18-20, 25-27, 35-36, 45-59, 62-63.  Each Plaintiff alleges numerous, unique circumstances that allegedly made their purchase price unfair.  These include public health guidelines, market conditions (e.g., a national yeast shortage induced by an unexpected spike in home baking), personal circumstances (including heightened vulnerabilities to COVID-19 allegedly precluding them from shopping in person), and lack of alternatives to purchasing on Amazon.com.  *Id.* ¶¶ 18, 19, 25, 41, 62-63.

### C.    The Washington Supreme Court's Decision

Plaintiffs' prior complaint alleged that any price paid during the pandemic that was 15% or more above pre-pandemic levels was *per se* unfair and, therefore, violated the CPA.  FAC ¶¶ 140-66, Dkt. 19.[8]  In response to Amazon's motion to dismiss, this Court certified two questions to the Washington Supreme Court: (1) "Does the Washington Consumer Protection Act's prohibition on 'unfair' acts or practices comprehend a price gouging claim of the type alleged in the First Amended Complaint?" and (2) "If yes, does the Court or the jury determine what percentage increase in the price of goods is 'unfair' for purposes of the statute?"  Order, Dkt. 51.

On August 8, 2024, the Supreme Court answered the certified questions.  *Greenberg*, 3 Wn.3d at 439.  "[B]ecause the plaintiffs advanced both individual claims and class action claims," the Court converted the two certified questions into three "reformulated" questions:

---

[8]    Plaintiffs contend that Washington law "appl[ies] to Plaintiffs' claims by virtue of a Washington choice-of-law provision that is set forth in 'conditions of use' that appear on Amazon's website."  SAC ¶ 129.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(1) Does the CPA comprehend a claim of price gouging, as alleged by the individual plaintiffs in their first amended complaint, as an unfair practice?

(2) Does the CPA's prohibition on unfair acts or practices prohibit price increases of 15 percent or more on any consumer good or food item after a declared emergency?

(3) If yes to either question, then does the court or the jury determine when an alleged claim of 'price gouging' constitutes an unfair trade practice under the CPA?

*Id.* at 441.  On those questions, the Court held:

The first certified question, we answer in the affirmative and hold that price gouging, as alleged in the plaintiffs' first amended complaint, may be an unfair act or practice within the meaning of RCW 19.86.020. The second certified question, we answer in the negative. Finally, the answer to the third certified question depends on whether the defendant's conduct is disputed as explained [in the opinion].

*Id.*  While the Court allowed Plaintiffs' individual CPA claims to proceed, it expressly rejected the 15% price increase on which the FAC's class definition was premised, explaining: "[i]t is beyond this court's wheelhouse to declare that a certain percentage price increase is unlawful because doing so threatens the prerogative of the legislative branch." *Id.* at 471.  The Court noted that the "class-based claims … depend[] on whether a price increase crosses a certain percentage threshold as a basis for their claim." *Id*. at 440-41.  After rejecting the percentage threshold the FAC proposed, and with it the class definition, the Court held that "in the context of case-specific claims of unfairness, the court decides whether an act or practice is unfair if the underlying facts are not in dispute, and where the underlying facts are disputed, a jury decides the matter." *Id.* at 478.  In a concurring opinion, Justice Pro Tempore Keenan, joined by Justices Yu and Montoya-Lewis, emphasized that "Amazon, and any business facing a claim like that presented here, has the opportunity to argue that the alleged acts were reasonable under the circumstances and thus not unfair." *Id.* at 483.

D.    **Plaintiffs' Reformulated Placeholder Class**

On September 20, 2024, Plaintiffs filed the SAC.  Dkt. 66.  It asserts the same three claims as the FAC: violation of the CPA, negligence, and unjust enrichment (the latter two of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

which were not before the Supreme Court.  SAC ¶¶ 141-68.  Plaintiffs seek to represent a class of:

> All persons who purchased any consumer good or food item, including any listed on Appendix A, on Amazon.com between January 31, 2020 and October 20, 2022 whose price was set at an unfair level. The precise identification of unfair prices and when they were in place will be refined after discovery and expert analysis.

*Id.* ¶ 130.

## III.    ARGUMENT

### A.    The Court Should Strike Plaintiffs' Class Allegations.

To survive a motion to strike class allegations under Rule 12(f), plaintiffs must make a *prima facie* showing that the proposed class satisfies Rule 23's prerequisites or that discovery is "likely to produce persuasive information substantiating the class action allegations." *Cashatt v. Ford Motor Co.*, 2021 WL 1140227, at *1 (W.D. Wash. 2021) (Jones, J.) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).  Class allegations are "legally or factually defective" and should be struck where they fail to "state 'plausible' grounds for class certification," or are "so conclusory or formulaic that they should be disregarded." *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, 2015 WL 9487928, at *1 (W.D. Wash. 2015) (Lasnik, J.). Courts strike such allegations to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (motion to strike implements Rule 23's directive to decide class issues early in litigation); Fed. R. Civ. P. 23(c)(1)(A).

Plaintiffs define the class as "[a]ll persons who purchased any consumer good or food item, including any listed on Appendix A, on Amazon.com between January 31, 2020 and October 20, 2022 whose price was set at an unfair level." SAC ¶ 130.  Appendix A lists a grab-bag of products, ranging from individual items (e.g., "GoYoga Yoga Mat") to entire categories of commodities (e.g., "Flour," "Vegetable Glycerin"). SAC Appx. A.  Plaintiffs do not define

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

what constitutes a "consumer good" or "food item."  Nor do they define, or explain how to determine, what constitutes an "unfair" price.

          1.        **Plaintiffs' Proposed Class Is an Impermissible Fail-Safe Class.**

       Plaintiffs' proposed class definition is an impermissible fail-safe class because they define it by a legal element of their CPA claim—whether a person purchased a product at an "unfair" price.  SAC ¶ 130.  An impermissible "fail-safe" class precludes membership "unless the liability of the defendant is established."  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016).  As the Ninth Circuit explains: "[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc) (prohibiting classes that are defined "to include only those individuals who were injured by the allegedly unlawful conduct").

       Courts have struck similarly deficient class definitions.  In *Angulo v. Providence Health & Servs.*, the plaintiffs defined the classes to include hospital patients who were subjected to "medically unnecessary or otherwise improper" procedures and "suffered damages."  2024 WL 3744258, at *7 (W.D. Wash. 2024).  Judge Robart struck the fail-safe classes because "to determine the membership of [the] proposed classes, the court must determine whether each patient" had individually satisfied the elements of the underlying claims.  *Id.* at 7-8.  Similarly, in *Cashatt*, the plaintiffs defined the class to include individuals who "*were injured* from carbon monoxide."  2021 WL 1140227, at *3.  Because "injury and causation [we]re elements that must be established," the proposed class was struck as "an impermissible fail-safe class."  *Id.*

       Plaintiffs' class definition suffers the same infirmity.  They define their class in relation to products "*whose price was set at an unfair level*."  SAC ¶ 130 (emphasis added).  An essential element of the CPA is proof of "injury to plaintiff in his or her business or property."  *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275, 1294 (W.D. Wash. 2015) (quotation omitted).  The injury Plaintiffs allege is purchasing an item on Amazon.com at an "unfair" price.  Just like the classes in *Angulo* and *Cashatt*, Plaintiffs' definition turns on an

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

element of their CPA claim—whether a customer paid an "unfair" price.  In effect, Plaintiffs define the class as anyone who was injured by the alleged conduct, the very defect condemned in *Olean*.

> **2.    Plaintiffs' Proposed Class Is Not Sufficiently Definite to Satisfy Rule 8.**

The SAC falls well short of meeting Plaintiffs' *pleading* obligation under Rule 8 to "state 'plausible' grounds for class certification."  *Grundmeyer*, 2015 WL 9487928, at *1-4 (striking class allegations for failure to plausibly plead certifiable class notwithstanding assumption "that discovery will identify the members of the class").

Any class definition must be "sufficiently definite to permit meaningful notice to be given," which requires "reference to objective criteria."  *Goel v. Coalition Am. Holding Co.*, 2011 WL 13128300, at *8-9 (C.D. Cal. 2011).  "A class definition should also be based on objective criteria that allows the plaintiff to identify its members."  *Cashatt v. Ford Motor Co.*, 2020 WL 1987077, at *4 (W.D. Wash. 2020); *see also* Manual for Complex Litigation § 21.222 (4th ed. 2004); *Chie v. Reed Elsevier, Inc.*, 2011 WL 3879495, at *4 (N.D. Cal. 2011) (proposed class needs "some specificity as to who … the plaintiff seeks to represent").  Courts strike class definitions when they do not contain such objective criteria.  *Goel*, 2011 WL 13128300, at *9.

Under Plaintiffs' definition, class membership requires that one has purchased a "food item" or "consumer good" priced "unfairly."  But Plaintiffs do not define any of these terms.  Plaintiffs allege that Amazon has upwards of "*1.5 billion* items listed for sale," SAC ¶ 89 (emphasis added), but do not say which they consider to be "consumer goods" or "food items." They leave open the question of whether it is the purchaser's intended use (e.g., resale, commercial, personal consumption), the nature of the product, or an unstated weighing of both that determines the products at issue.  Courts have rejected class definitions that rely on far more specific language than what Plaintiffs propose.  In *Goel*, the court held that the terms "cardiologists" and "southern California" in a class definition were insufficiently objective because they have no "universally accepted meaning," and thus struck the class allegations.

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2011 WL 13128300, at *9 ("The geographic boundaries of 'southern California' are not clear to this Court … Who constitutes a 'cardiologist' is similarly unclear.").  Plaintiffs' use of the terms "consumer good" and "food item" provides even less guidance than terms like cardiologist, southern California, and others that courts have found insufficiently objective.  *See, e.g.*, *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 495 (7th Cir. 2012) (class unsustainable because "the relevant criteria for class membership are unknown"); *Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473 (N.D. Ala. 1996) (class allegations struck because key terms "devoid of any definition or description").

Even if it were clear what goods are at issue, Plaintiffs' proposed class purports to include only those transactions that involved "unfair" pricing.  But they offer no objective criteria for determining which transactions would meet that criterion, and therefore fail to give Amazon or the Court notice of the universe of putative class members they propose to represent or transactions they propose to challenge.  The term "unfair" evokes no common experience or quality that could be used to identify the putative class members.  *See Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 WL 7346844, at *4 (S.D. Fla. 2006) (rejecting class definition because "ruined cruise" could "mean anything the plaintiffs want it to mean").  Not only is "unfairness" inherently subjective, even to attempt an objective assessment of whether a price was "unfair" would depend in part on whether the particular individual could have reasonably avoided buying the product on Amazon.com and a host of other factors.  The one objective criterion that could be used—a percentage increase in prices—was rejected by the Supreme Court.  And Plaintiffs' invocation of biblical and medieval authorities on "the issue of 'fair' prices," SAC ¶ 68, is no substitute for an objective class definition.  *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014) (A "broadly defined class fails to provide the defendants with *fair* notice.").  Plaintiffs' failure to satisfy this basic pleading requirement justifies striking Plaintiffs' class allegations.  *See Grundmeyer*, 2015 WL 9487928, at *1-4.

### 3.    Plaintiffs' Proposed Class Could Not Satisfy Rule 23(b).

Plaintiffs' proposed class also fails because it cannot satisfy Rule 23.  A court should

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

strike class allegations where a complaint does not plausibly allege the requirements of Rule 23(a) and at least one of the Rule 23(b) requirements. *Id*. at *2. Plaintiffs assert the proposed class complies with Rule 23(b)(2) and Rule 23(b)(3), SAC ¶ 130, but it satisfies neither.

A Rule 23(b)(2) class is improper because Plaintiffs seek money damages for the alleged unfair prices they paid to Amazon. "[I]f a request for individualized damages predominates over the injunctive or declaratory relief that is sought, certification *must* be considered under Rule 23(b)(3), rather than Rule 23(b)(2)." *Grundmeyer*, 2015 WL 9487928, at *2 (emphasis added). While the SAC makes passing references to "injunctive" or "declaratory relief," in reality Plaintiffs seek "actual damages" or "compensatory and equitable damages." SAC ¶¶ 134, 154, 162. Moreover, Plaintiffs lack standing to seek injunctive relief, as there is no "freestanding right to seek injunctive relief based on conduct that has ended." *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *7 (N.D. Cal. 2018). The proposed class consists of individuals who allegedly purchased products on Amazon.com years ago at prices allegedly inflated during a pandemic that has since ended. Plaintiffs do not allege that the conduct underlying their claims is ongoing; indeed, Plaintiffs' proposed class only covers purchases through October 20, 2022. SAC ¶ 130.

Accordingly, Plaintiffs must plausibly allege that their class complies with Rule 23(b)(3), including by alleging "questions of law or fact common to class members predominate over any [individual] questions." *Grundmeyer*, 2015 WL 9487928, at *3. Courts strike class allegations when complaints fail to meet this burden. *Id.* at *2-4; *Cashatt*, 2020 WL 1987077, at *5.

It is evident from the SAC that individual issues will completely overwhelm any common issues if Plaintiffs are allowed to proceed under their placeholder class definition. Plaintiffs' CPA claim requires them to show that any allegedly unfair price they paid was not outweighed by "countervailing benefits," including that it did not reflect "increased costs." *Greenberg*, 3 Wn.3d at 484 (Keenan, J., concurring). They will also need to show that their "injuries were not reasonably avoidable." *Id*. at 462. These elements will require Plaintiffs to conduct potentially *millions* of mini-trials on specific products, specific geographical regions, and specific time

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    periods.  Likewise, cost, which is only one of the countervailing factors that may justify an

2    increased price, will have to be separately analyzed for every one of the millions of products that

3    Plaintiffs may seek to include in their class.

4        "Reasonable avoidability" will also need to be analyzed separately for each product,

5    geography, and time period.  Plaintiffs will need to present evidence that purchasers were

6    "unable to find [those] essential goods except for on Amazon"—i.e., that they could not have

7    reasonably avoided their alleged injury by buying the goods from another retailer.  *Id.*  Plaintiff

8    King, for example, alleges that she was unable to find vegetable glycerin at "retail stores in her

9    area" in Arizona.  SAC ¶¶ 37, 50.  But whether she could find glycerin in Arizona says nothing

10   about whether glycerin was available in California.  Nor would the unavailability of glycerin in

11   March 2020 show that it remained unavailable through October 2022.  The fact-finder will need

12   to separately consider all of these different geographies and time periods when determining who

13   could recover for their purchase of glycerin.  And this is to say nothing of the inherently

14   individualized nature of determining, as the Supreme Court's analysis requires, whether

15   Plaintiffs "needed [the goods they purchased] to stay safe and healthy."  *Greenberg*, 3 Wn.3d at

16   462.

17       Plaintiffs' counsel has already acknowledged that product-by-product and geography-by-

18   geography inquiries will be necessary to determine "unfairness."  *See* Goldmark Decl., Ex. D, Tr.

19   00:24:38.23-00:24:58.09 ("I think we would put it on product by product … I think an expert …

20   would analyze any geographic area …. Maybe there was an issue in Omaha, Nebraska.  We

21   don't know ….").  Plaintiffs' allegations thus necessarily contemplate countless mini-trials, on

22   every product in the class, with additional mini-trials on specific geographical areas and time

23   periods.  *Id.*  This individualized approach to fact-finding is incompatible with Rule 23(b)(3),

24   and it justifies striking Plaintiffs' class allegations now.  *See Sanders v. Apple Inc.*, 672 F. Supp.

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2d 978, 991 (N.D. Cal. 2009) (need to "inquire[] into the specific facts surrounding each buyer's transaction" justified striking class at pleadings stage).[9]

**B.      Plaintiffs' Pricing Claim Relies On An Unconstitutionally Vague Construction Of The CPA.**

In holding the CPA prohibits "unfair" pricing, the Washington Supreme Court made clear that it answered only a question of state law.  *Greenberg*, 3 Wn.3d at 469-70.  The Court did not consider whether its interpretation of the CPA was consistent with federal due process.  *Id.*  Here, it is not: insofar as the Court has now held that pricing alone can be "unfair" in various, unspecified ways, it is unconstitutionally vague.[10]

A statute violates due process under the U.S. Constitution when it is "impermissibly vague," *i.e.*, when it fails to "provide proper precision and guidance to ensure that those enforcing the law do not act in an arbitrary or discriminatory way" and when it "impermissibly delegate[s] basic policy matters for resolution on an ad hoc and subjective basis." *Butcher v. Knudsen*, 38 F.4th 1163, 1168-69 (9th Cir. 2022) (cleaned up).  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *Butcher*, 38 F.4th at 1169 (laws must "provide a person of ordinary intelligence fair notice of what is prohibited"); *see also Sessions v. Dimaya*, 584 U.S. 148, 183 (2018) ("Fair notice of the law's demands … is 'the first essential of due process.'") (Gorsuch, J., concurring in part) (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)).  Laws cannot be "unforeseeably and retroactively expanded by judicial construction." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964).  "[T]he prohibition on vagueness [] applies to civil statutes." *Dimaya v. Lynch*, 803 F.3d 1110, 1113 (9th Cir. 2015), *aff'd sub nom. Dimaya*, 584 U.S. 148.  The Supreme Court's ruling violates these precepts.

---

[9]      Amazon reserves all rights and defenses regarding class certification, which, if necessary, it will raise at the appropriate time.

[10]      Amazon makes both an as applied and facial vagueness challenge to the CPA as interpreted by the Supreme Court.

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 13

**1.      The Washington Supreme Court Departed from Well-Established Precedent in Interpreting the CPA's "Unfairness" Prong.**

Five decades ago, the CPA's prohibition of "unfair or deceptive acts or practices" withstood a constitutional due process challenge only because those terms had "a sufficiently well established meaning in common law and federal trade law, by which [the Supreme Court was] guided." *State v. Reader's Dig. Ass'n, Inc.*, 81 Wn.2d 259, 275 (1972). The next year, the Supreme Court rejected a similar challenge, again reasoning that the CPA's scope had been guided by preexisting federal standards, including the FTC Act. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 279 (1973). The crux of these decisions was that application of the CPA would be predictable and citizens could avoid violating its prohibitions by conforming their conduct to well-established standards drawn from federal law.

In a sharp reversal from its prior rulings, the Supreme Court's decision in this case expressly unmoors the CPA's unfairness standard from its federal roots. Interpretations of the CPA's unfairness prong now need not be tied to prior federal or common law standards, but are limited only by a plaintiff's imagination in any particular case. *Compare Greenberg*, 3 Wn.3d at 459 ("Unlike the FTC Act, our CPA simply has no limitations on the range of effect the defendant's conduct must have for a plaintiff to state a cognizable claim to relief."), *with State v. Black*, 100 Wn.2d 793, 799 (1984) ("When the Legislature enacted the [CPA], it anticipated that our courts would be guided by the interpretation given by federal courts to their corresponding federal statutes.").

While the CPA may provide sufficient notice of the prohibition of conduct that it has historically regulated because of its grounding in pre-existing federal standards, the statute—as interpreted by the Supreme Court—is unconstitutionally vague as applied to conduct no similar federal or state statute has ever been understood to regulate: pricing. "[T]here is no federal law prohibiting price gouging." *Greenberg*, 3 Wn. 3d. at 442; *see Gutierrez v. Bean*, 2006 WL 4117064, at *3-4 (D.N.M. 2006) (no federal price gouging claim); *FTC v. Lundbeck, Inc.*, 2010 WL 3810015, at *4 n.3 (D. Minn. 2010), *aff'd*, 650 F.3d 1236 (8th Cir. 2011) (FTC arguing

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 14

"[t]here is no U.S. law against price gouging"); *see also* SAC ¶ 69 ("there is no federal law protecting consumers from price gouging"). Since its enactment *eleven decades* ago, the Federal FTC Act has never been interpreted as including a general prohibition on "unfair" conduct based on pricing alone. Nor has any state sought to regulate pricing through laws similar to the CPA that generally target "unfair" business practices.[11] Because the Supreme Court's newly-announced interpretation of the CPA to govern price gouging is not grounded in any pre-existing federal or state standards, it fails to provide businesses with *ex ante* fair notice of the scope of the statute, as due process requires.

### 2.    The Washington Supreme Court Established a Standardless Test.

The Washington Supreme Court's decision not only extended the CPA beyond federal law, it declined to establish any objective standard for evaluating whether pricing was "unfair." Instead, the Court adopted a standardless rubric for "unfair" pricing that invites conduct to be judged subjectively and only in hindsight. Because "unfairness" under the Court's test is evaluated only in hindsight, and without any limiting standard, it is impossible to know whether today's ordinary business practice (for example, dynamic pricing based on demand) will be tomorrow's unfair trade practice subject to treble damages liability. Washington businesses thus have no way to *prospectively* conform their conduct to the law.

In evaluating Plaintiffs' claims, the Court looked first to the three so-called "*S&H* criteria*" derived from federal jurisprudence applying the FTC Act, but since abandoned by the FTC and superseded by an act of Congress. Those criteria are inherently subjective: (1) whether the practice "offends public policy" or "is within at least the penumbra of some common-law, statutory or other established concept of unfairness;" (2) "whether it is immoral, unethical, oppressive, or unscrupulous;" and (3) "whether it causes substantial injury to consumers." *Greenberg*, 3 Wn.3d at 455. After first holding that these criteria "apply in Washington," the

---

[11]    Rather, thirty-seven states have adopted through legislation specific price gouging prohibitions that describe in detail the conduct that is prohibited and the circumstances in which the prohibition applies. *Greenberg*, 3 Wn.3d at 443.

Court went further to hold that a plaintiff could also establish "unfairness" by "show[ing] only that the defendant's conduct is in violation of public interest," and observed that "there may even be additional ways" a plaintiff could show "unfairness." *Id.* at 458-59. The Court then held that when there is a factual dispute, the issue of "unfairness" is a jury question—unguided by any standard other than a particular jury's subjective sense of wrongfulness. *See id.* at 471.

This test for determining whether a price is "unfair" invites arbitrariness. It is the type of standardless prohibition that has, for over a century, been held to offend due process. In 1921, for example, the Supreme Court deemed a statute prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness. *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921). The statute, which provided no objective criteria to allow businesses to "adequately guard against" liability, would have unconstitutionally "punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury." *Id.* Likewise, fact-finders applying the CPA here would be permitted to punish any price changes they deem "immoral" or "unscrupulous" based on their own subjective views.

Since *Cohen Grocery*, courts have routinely invalidated similar prohibitions using undefined terms whose contours would only be delineated after-the-fact based on the moral or subjective beliefs of the beholder. *See Dimaya*, 584 U.S. at 160 (invalidating as unconstitutionally vague clause in statute that required courts to "identify a crime's 'ordinary case'" without providing any objective standard to "help[] courts [] perform that task"); *City of Chicago v. Morale*s, 527 U.S. 41, 56-58 (1999) (invalidating as unconstitutionally vague "loitering" ordinance where definition of "loiter" had no "common and accepted meaning" enabling citizens to determine in advance what was prohibited); *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (holding campaign finance regulations unconstitutionally vague as applied where the statute failed to provide "objective guidance" and the defendant had to "guess" whether its conduct was prohibited); *United States v. Poindexter*, 951 F.2d 369, 378-79 (D.C. Cir. 1991) (finding prohibition of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"corruptly" obstructing a congressional inquiry unconstitutionally vague as applied absent "some narrowing gloss," leaving people to "guess at its meaning").

Determining what price for a given "consumer good" would "offend[] public policy," be "immoral, unethical, oppressive, or unscrupulous," or "cause[] substantial injury to consumers" is "difficult, if not impossible" for a merchant to do, *Hunt v. City of Los Angeles*, 638 F.3d 703, 711 (9th Cir. 2011), with "no objective guidance" on what qualifies, *Canyon Ferry*, 556 F.3d at 1029. Among the key questions left unanswered by either the Supreme Court or the Plaintiffs' allegations here are:

- How significant need a price increase be before it becomes illegally unfair?
- Is it possible to show that prices for a given good are unfair even in the absence of a price increase?
- Does the CPA prohibit price increases solely with respect to necessary goods, or does it extend to entirely discretionary goods—like the yoga mats or elderberries Plaintiffs seek to include here?
- Does the CPA prohibit charging different prices for the same good at different times? In different geographies? To different consumers?
- Does the CPA extend solely to prices charged to consumers, or can a reseller or business claim that it was charged an "unfair" price?
- How much of a cost increase, supply chain restriction, labor shortage, or demand change could justify a price increase, such that it not be deemed "unfair"? Could a business raise prices in anticipation of these issues, or only after they occur?

In states that have adopted express price gouging statutes, the answers to these questions and the path to avoiding liability is clear. Under the Supreme Court's interpretation of Washington's CPA, the reverse is true. Businesses have no way to avoid being subject to lawsuits challenging their pricing practices, and liability will be determined only in hindsight based on the judgment of jurors. As if to underscore the issue, the Court decided to "go further" than even the nebulous *S&H* factors, inviting claims based on bare allegations that pricing

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

violates the "public interest" or any number of "additional ways" that will be left to the ingenuity of the plaintiffs' bar. The Court has outlined a quintessentially vague legal standard. *See Hunt*, 638 F.3d at 711-13 (invalidating as unconstitutionally vague ordinance that "fails to define or provide any examples of when merchandise carries a 'religious, political, philosophical or ideological' message, a[s] these terms have such amorphous meanings that it makes it difficult, if not impossible, for an individual to determine whether his conduct is proscribed by the ordinance").

In finding "unfairness" to be a jury question unconstrained by objective standards, the Court created a necessarily arbitrary framework: whether a price increase is "unfair," it held, "entails numerous social and economic considerations" and is thus "beyond this [C]ourt's wheelhouse" and "best left to the legislature." *Greenberg*, 3 Wn.3d at 471. While the Court held that the lack of guidance from the legislature foreclosed it from adopting objective standards for what constitutes price gouging, it left that very same question to lay jurors to decide on a case-by-case basis, in hindsight. *See id.* That framework only exacerbates the due process problem because it invites arbitrariness: the very same pricing conduct might be viewed as proper by one jury and illegal by another, without reference to any standard that can be applied in advance. *See Butcher*, 38 F.4th at 1168-69.

### 3. Plaintiffs Do Not Allege any Conduct that Amazon Should Have Understood in Advance Could Be Illegal.

Plaintiffs' allegations only compound the problem. Plaintiffs do not challenge any particular act or practice as objectively unfair. Nor do they root their allegations in any act or practice that has historically been understood to be illegal either in Washington or elsewhere. They seemingly acknowledge that prices may rise and fall in response to market forces, including the supply chain disruptions caused by the pandemic. SAC ¶¶ 5, 40. Yet their claim appears to be that during a time of emergency, increased pricing *alone* is unfair. *See id.* ¶¶ 130, 148 (alleging Amazon violated the CPA by "[i]ncreasing prices excessively"). Plaintiffs assert that the "conduct of Amazon" violates "the public interest," "offend[s] public policy," and is

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"immoral," as the Supreme Court invited them to do.  *Id.* ¶¶ 144-45.  But they provide no objective criteria to explain, anchor, or limit those amorphous terms.  Instead, Plaintiffs would ask a jury to apply whatever religious or philosophical standards they find persuasive, or indeed no standard at all, to decide, after-the-fact, what prices were "unfair" or not in the "public interest."  This leaves businesses unable to determine in advance the conduct for which they might be liable.

Even if Plaintiffs' allegations were read to limit their claim to price increases during a declared emergency, which itself would be a substantial narrowing of the test the Supreme Court adopted, that would still leave a substantial notice problem.  Prior to the Court's decision in this case, *no* legal text, case, or other source suggested that it would be illegal to raise prices during a declared emergency in Washington.  If anything, the legislature's failure to adopt express price gouging legislation strongly suggested otherwise.  *See id.* ¶ 6.  And the many unanswered questions discussed above that make the statute unconstitutionally vague would remain.

While Plaintiffs allege that "unfair" pricing has been understood to be immoral throughout the ages, *id.* ¶¶ 67-68, the texts they cite—even if such religious and historical texts could provide the requisite fair notice—contain no objective standard that could guide businesses in conforming their conduct to the CPA.  For example, Plaintiffs say that the "Catechism of the Catholic Church prohibits merchants from making pricing decisions that take unfair advantage of those in need."  *Id.* ¶ 68.  But surely they cannot mean to suggest that any business practice that the Catholic Church might disapprove of is illegal in Washington.  In any event, Plaintiffs' own allegations go far beyond the essential or "need[ed]" goods contemplated by that text, extending to all "consumer good[s]," *id.* ¶ 130, the overwhelming majority of which could not remotely be labeled as necessities.

Plaintiffs' allegations also suffer from the simplistic assumption that price increases are necessarily contrary to the public interest.  But higher prices can lead to stabilized or increased supply because firms are more incentivized to produce the product.  *See* Brief for John B. Kirkwood as Amici Curiae Supporting Respondents, *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

434, 7-12 (2023) (No. 101858-4).  Price ceilings can have the opposite effect, in addition to other negative results like encouraging hoarding.  *See id*.  It is these types of policy considerations that have caused differences in state price gouging statutes, such as "the variation on what level of price increase constitutes unlawful price gouging."  *Greenberg*, 3 Wn.3d at 443.  Plaintiffs' own allegations suggest that the goods they sought were not widely available, and may have only been available from Amazon *because* higher prices discouraged less motivated buyers.  *See, e.g.*, SAC ¶¶ 18, 26.  In the moment, particularly in the case of third-party sellers, Amazon faced the dilemma that *removing* elevated price offerings from its store would make the goods in question *less* available to those who wanted them.  In the grips of an unprecedented pandemic, Amazon could not know whether the "public interest" would favor maximizing the availability of goods or favor policing the prices of those goods at the cost of lower availability.  Neither the Supreme Court's decision nor Plaintiffs' allegations provide any workable framework for avoiding liability.  And the Supreme Court's decision concedes that such economic policy decisions properly belong with the legislature.  *Greenberg*, 3 Wn.3d at 471.  Due process therefore bars Plaintiffs' CPA claim.  *See Butcher*, 38 F.4th at 1169, 1173 (statutes cannot be "so standardless" that a party has no "reasonable opportunity to know what [was] prohibited") (quotation omitted).

## C.    Plaintiffs Fail To State Negligence Or Unjust Enrichment Claims.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Bare conclusions "are not entitled to the assumption of truth."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  Rather, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Id.* at 995 (quoting *Twombly*, 550 U.S. at 557).  After stripping away "legal conclusions" and "conclusory statements," a court, relying on its "judicial experience and common sense," *Iqbal*, 556 U.S. at 678-79, must dismiss if the remaining allegations fail to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, 555.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.    Plaintiffs Fail to State a Claim for Negligence.

When two parties enter into a contract—such as that governing Plaintiffs' purchases on Amazon.com—Washington law will generally not allow one party to use tort law to remedy injuries it suffered as part of the contractual relationship. *Busey v. Wells Fargo Bank, N.A.*, 2020 WL 5891907, at *4 (W.D. Wash. 2020) ("[W]hen parties enter into a contractual relationship, the law of contracts is better suited to govern that relationship so courts should not create recourse in tort that would not exist independent of the contract's term."). "If there is no independent duty outside of the party's contractual duties, there can be no tort remedy." *Congdon v. Wells Fargo Bank, N.A.*, 2017 WL 2443649, at *5 (W.D. Wash. 2017) (Lasnik, J.); *see also Busey*, 2020 WL 5891907, at *4 ("Without a duty outside of the contract [a plaintiff] cannot maintain a claim in negligence.").

Plaintiffs entered into contracts with Amazon, specifically, the COU, which apply to customer purchases on Amazon.com and incorporate Amazon's other policies, including its pricing policies. SAC ¶¶ 12, 129.[12] Plaintiffs acknowledge they are bound by the COU and rely on them as a basis for bringing claims under Washington law, *id.*, which precludes them from disavowing those terms. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 461 (2012) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (cleaned up). However, Plaintiffs also allege that Amazon owed them an independent extracontractual duty "to apply a level of reasonable care" to manage pricing across Amazon.com, which "encompasses a duty to ensure that, during a declared public emergency, consumer goods or food items are not sold on [Amazon.com] at excessive prices." SAC ¶ 156. According to Plaintiffs, Amazon was required, among other things, "to detect and cap price increases by third-party suppliers" and to "investigate reports of excessive price inflation on third-party supplied products[.]" *Id.* ¶ 159. Whether an independent duty exists "depends on mixed considerations of logic, common sense,

---

[12]    *See* Goldmark Decl., Exs. B-C; *supra* n.1.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

justice, policy, and precedent." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389-90 (2010) (quotation omitted). Initially, there is no "precedent" for a common law duty of the type Plaintiffs allege. *Id.* at 389. Specialized design professionals (such as architects and engineers) have sometimes been found to have extra-contractual duties to "avoid causing foreseeable personal injuries or property damage." *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wn.2d 84, 93 (2013); *Affiliated FM Ins. Co. v LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 452-53 (2010) (distinguishing between economic loss claims sounding in contract and independent safety claims sounding in tort). But there is no Washington precedent for finding such an independent duty to control pricing between a merchant and a seller in an ordinary commercial transaction.

Recognizing such an independent duty would be inconsistent with Washington public policy. "Washington law has long endorsed the proposition that absent extraordinary circumstances, buyers and sellers allocate risk through contracts … not tort." *Austin v. Ettl*, 171 Wn. App. 82, 87 n.6 (2012) (discussing independent duty doctrine in the real estate context). "Where, like here, there is a contract governing an economic relationship, [c]ourts are … less likely to recognize a duty in tort and more likely to give deference to contract law." *Busey*, 2020 WL 5891907, at *4. Contract law already supplies the principles governing the pricing, purchase, and delivery of goods. *See generally* Uniform Commercial Code—Sales, RCW 62A.2-101, *et seq.*; cmt to RCW 62A.2-101 ("The arrangement of the present Article is in terms of contract for sale and the various steps of its performance.").

Plaintiffs do not (and cannot) identify any Washington law imposing on Amazon the duties alleged in the SAC, including a duty to ensure that no "consumer goods or food items" are sold "at excessive prices" by third-party sellers utilizing the Amazon.com store. SAC ¶ 156. This Court should decline Plaintiffs' invitation to expand Washington law by creating such a duty. "Lower courts must be cautious in applying the independent duty doctrine to create extra-contractual tort remedies for contracting parties, especially outside the areas where the Supreme

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Court has spoken." *Steinbock v. Ferry Cnty. Pub. Util. Dist. No. 1*, 165 Wn. App. 479, 489 (2011) (citing *Eastwood*, 170 Wn.2d at 406-07 (Chambers, J., concurring)).

In any event, Plaintiffs do not allege conduct that could even be considered a breach of the duties they ask the Court to impose on Amazon. Instead, they point to enormous efforts by Amazon to prevent price gouging. Even accepting as true Plaintiffs' allegations that these efforts were not 100% effective, Plaintiffs must plead that Amazon's conduct fell below some standard of reasonable care in managing its store during an historically unprecedented pandemic. *See, e.g.*, *Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irr. Dist.*, 175 Wn. App. 374, 395 (2013) ("Reasonable minds cannot differ on the conclusion that [defendant] exercised reasonable care and caution in the maintenance and operation of the wasteway as a reasonably careful and prudent person, acquainted with the conditions, would have exercised under like circumstances."). Plaintiffs do not meet this burden.

### 2.    Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claim likewise fails based on their contract with Amazon, which governs their relationship with Amazon and their purchases at issue. "Under Washington law, a plaintiff who is a party to a 'valid express contract is bound by the provisions of that contract' and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter." *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (Pechman, J.) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604 (1943)). Unjust enrichment is "the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it." *Kreidler v. Pixler*, 2010 WL 11527333, at *2 (W.D. Wash. 2010) (Lasnik, J.) (emphasis added); *see also Minnick*, 683 F. Supp. 2d at 1186-87 (dismissing unjust enrichment claim where contract governed parties' relationship).

Plaintiffs admit entering into the COU, which govern their relationship with Amazon. *See* Goldmark Decl., Exs. B-C. Under these terms, Amazon generally agrees to charge "the most recent price displayed on the product detail page of the item." *Id.*, Ex. C ("Shopping Cart

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Prices"). Plaintiffs agree Amazon charged each of them the "price displayed" at the times of their respective purchases. *See* SAC ¶ 19 (Greenberg "purchased the product at the listed price of $58.19"); ¶¶ 26-27 (similar for Steinberg); ¶ 35 (similar for Hanson); ¶¶ 45, 47, 50, 55, 58 (similar for King); ¶ 63 (similar for Robertson).

Having received exactly what they contracted for, Plaintiffs cannot sustain their unjust enrichment claim. As they received the benefits of the contract, and rely on it for their claims, they cannot disavow its terms. *Townsend*, 173 Wn.2d at 461. Plaintiffs are "bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Hurlbut v. Crines*, 14 Wn. App. 2d 660, 672 (2020) (quoting *Chandler*, 17 Wn.2d at 604); *see also Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1176 (W.D. Wash. 2014) (claim "aris[ing] under a contract's express subject matter … may not be the basis of an unjust enrichment claim").

## IV.    CONCLUSION

The Court should strike Plaintiffs' class allegations and dismiss their individual claims with prejudice.

DATED this 4th day of November 2024.

DAVIS WRIGHT TREMAINE LLP

*/s/ John A. Goldmark*
Stephen M. Rummage, WSBA #11168
John A. Goldmark, WSBA #40980
MaryAnn T. Almeida, WSBA #49086
Nicholas A. Valera, WSBA # 54220
Caitlyn G. Cowan, WSBA #62344
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Email: steverummage@dwt.com
        johngoldmark@dwt.com
        maryannalmeida@dwt.com
        nickvalera@dwt.com
        caitlyncowan@dwt.com

AMAZON'S MOTION TO DISMISS AND STRIKE
(2:21-CV-00898-RSL) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

John Freed, *admitted pro hac vice*
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Email: jakefreed@dwt.com

*I certify that this memorandum contains 8,391 words, in compliance with the Local Civil Rules.*

/s/ Jennifer Kennedy Park
Jennifer Kennedy Park, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA
Telephone: (650) 815-4100
Email: jkpark@cgsh.com

Ryan Shores, *admitted pro hac vice*
Nowell D. Bamberger, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Fax: (202) 974-1999
Email: rshores@cgsh.com
          nbamberger@cgsh.com

Charity E. Lee, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
Email: charitylee@cgsh.com

*Attorneys for Defendant Amazon.com, Inc.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax