1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14
15
16
17

ALVIN GREENBERG, MICHAEL STEINBERG, JULIE HANSON, CHRISTINA KING, and RONNELL ROBERTSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

No. 2:21-CV-00898-RSL

**DECLARATION OF JOHN GOLDMARK IN SUPPORT OF AMAZON.COM, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f)**

18    I, John Goldmark, declare as follows:

19    1.    I am a partner of the law firm Davis Wright Tremaine LLP, counsel for

20 Amazon.com, Inc. ("Amazon") in this case.  I make this declaration in support of Amazon's

21 Motion to Dismiss Under Rule 12(b)(6) and Motion to Strike Class Allegations Under Rule

22 12(f).  I am in all ways competent to testify to the information set forth in this Declaration.

23    2.    Attached as **Exhibit A** is a true and correct copy of the Amazon Marketplace Fair

24 Pricing Policy in place at the time of Plaintiffs' allegations.  Plaintiffs' Second Amended

25 Complaint (the "SAC") refers to this Policy at Paragraph 106, note 188.

26    3.    Attached as **Exhibit B** is a true and correct copy of the Amazon.com Conditions of

27 Use in effect as of September 14, 2022, which are publicly available at

DECLARATION OF JOHN A. GOLDMARK
(2:21-CV-00898-RSL) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM.

2  The SAC refers to these Conditions of Use at Paragraph 129.

3      4.      Under the heading "Site Policies, Modification, and Severability," the Conditions

4  of Use link to Amazon's "pricing policy," describing it as among the policies that "govern your

5  use of Amazon Services."  Clicking on that link takes a reader to a page entitled "Payment,

6  Pricing & Promotions," which in turn has a link to a page entitled "Shopping Cart Prices."  I

7  attach as **Exhibit C** a true and correct copy of the "Shopping Cart Prices" page.

8      5.      Attached as **Exhibit D** is a true and correct copy of the transcript of the January

9  18, 2024, oral argument before the Supreme Court of the State of Washington in the matter

10 *Greenberg v. Amazon.com, Inc.*, No. 101858-4, prepared by Morningside Translations.

12     I declare under penalty of perjury under the laws of the United States of America that the

13 foregoing is true and correct.

14     Executed on November 4, 2024, in Medellín, Colombia.

16                                              */s/ John A. Goldmark*
                                               John A. Goldmark

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

This article applies to selling in: **United States**

Help / Manage Inventory / Create a Pricing Rule / Amazon Marketplace Fair Pricing Policy

# Amazon Marketplace Fair Pricing Policy

Sellers are responsible for setting their own prices on Amazon marketplaces. In our mission to be Earth's most customer-centric company, Amazon strives to provide our customers with the largest selection at the lowest price, and with the fastest delivery as sellers play an important role.

Amazon regularly monitors the prices of items on our marketplaces, including shipping costs, and compares them with other prices available to our customers. If we see pricing practices on a marketplace offer that harms customer trust, Amazon can remove the Buy Box, remove the offer, suspend the ship option, or, in serious or repeated cases, suspending or terminating selling privileges.

Pricing practices that harm customer trust include, but are not limited to:

- Setting a reference price on a product or service that misleads customers;
- Setting a price on a product or service that is significantly higher than recent prices offered on or off Amazon; or
- Selling multiple units of a product for more per unit than that of a single unit of the same product.
- Setting a shipping fee on a product that is excessive. Amazon considers current public carrier rates, reasonable handling charges,

as well as buyer perception when determining whether a shipping price violated our fair pricing policy.

Was this article helpful?  ○ Yes  ○ No



**Related articles**

My offer is suppressed after using Automate Pricing

Add SKUs to a pricing rule

Pause, resume, or delete a pricing rule

Move SKUs to a new pricing rule

Modify a pricing rule

Review price history for SKUs with automated pricing

Remove a SKU from a pricing rule

What happens to my price if ...

Stop repricing a SKU in a pricing rule

Amazon Policy on Reference Prices

Match Low Price

Amazon Marketplace Fair
Pricing Policy

**Need more help?** 

See more on Seller Central
_____

Visit Seller Forums



**Reach Hundreds of Millions of Customers**

Start Selling On Amazon

© 1999-2020, Amazon.com, Inc. or its affiliates

# EXHIBIT B

Delivering to New York 10118
Update location

All ⌄    Search Amazon

EN ⌄    Hello, sign in
Account & Lists ⌄

Returns
& Orders    0

All    Medical Care ⌄    Best Sellers    Amazon Basics    Prime ⌄    Today's Deals    New Releases    Music    Groceries ⌄    Customer Service

# Help & Customer Service

‹ All Help Topics

## Legal Policies

Consumer Health Data
  Privacy Disclosure

3rd Party Licensing Notice

AMAZON INFLUENCER
  TERMS & CONDITIONS
  FOR SPONSORED
  CONTENT

**Conditions of Use**

Communications with
  Amazon Employees

Report Suspicious Activity

Amazon.com Privacy Notice

Amazon Group Companies

Amazon Trademark Usage
  Guidelines

Non-Exhaustive List of
  Amazon Trademarks

Amazon.com Gift Card and
  Electronic Message
  Customization Service
  Terms

## Quick solutions


**Your Orders**
Track or cancel orders


**Returns & Refunds**
Exchange or return
items


**Manage Prime**
Cancel or view
benefits


**Payment Settings**
Add or edit payment
methods


**Carrier Info**
Shipping carrier
information


**Account Settings**
Change email or
password

## Find more solutions

Security and Privacy ›    Legal Policies ›

# Conditions of Use

Last updated: September 14, 2022

Welcome to Amazon.com. Amazon.com Services LLC and/or its affiliates ("Amazon") provide website features and other products and services to you when you visit or shop at Amazon.com, use Amazon products or services, use Amazon applications for mobile, or use software provided by Amazon in connection with any of the foregoing (collectively, "Amazon Services"). By using the Amazon Services, you agree, on behalf of yourself and all members of your household and others who use any Service under your account, to the following conditions.

## Please read these conditions carefully.

We offer a wide range of Amazon Services, and sometimes additional terms may apply. When you use an Amazon Service (for example, Your Profile, Gift Cards, Amazon Video, Your Media Library, Amazon devices, or Amazon applications) you also will be subject to the guidelines, terms and agreements applicable to that Amazon Service ("Service Terms"). If these Conditions of Use are inconsistent with the Service Terms, those Service Terms will control.

## PRIVACY

Please review our Privacy Notice, which also governs your use of Amazon Services, to understand our practices.

## ELECTRONIC COMMUNICATIONS

When you use Amazon Services, or send e-mails, text messages, and other communications from your desktop or mobile device to us, you may be communicating with us electronically. You consent to receive communications from us electronically, such as e-mails, texts, mobile push notices, or notices and messages on this site or through the other Amazon Services, such as our Message Center, and you can retain copies of these communications for your records. You agree that all agreements, notices, disclosures, and other communications that we provide to you electronically satisfy any legal requirement that such communications be in writing.

## COPYRIGHT

All content included in or made available through any Amazon Service, such as text, graphics, logos, button icons, images, audio clips, digital downloads, data compilations, and software is the property of Amazon or its content suppliers and protected by United States and international copyright laws. The compilation of all content included in or made available through any Amazon Service is the exclusive property of Amazon and protected by U.S. and international copyright laws.

## TRADEMARKS

Click here to see a non-exhaustive list of Amazon trademarks. In addition, graphics, logos, page headers, button icons, scripts, and service names included in or made available through any Amazon Service are trademarks or trade dress of Amazon in the U.S. and other countries. Amazon's trademarks and trade dress may not be used in connection with any product or service that is not Amazon's, in any manner that is likely to cause confusion among customers, or in any manner that disparages or discredits Amazon. All other trademarks not owned by

Amazon that appear in any Amazon Service are the property of their respective owners, who may or may not be affiliated with, connected to, or sponsored by Amazon.

## LICENSE AND ACCESS

Subject to your compliance with these Conditions of Use and any Service Terms, and your payment of any applicable fees, Amazon or its content providers grant you a limited, non-exclusive, non-transferable, non-sublicensable license to access and make personal and non-commercial use of the Amazon Services. This license does not include any resale or commercial use of any Amazon Service, or its contents; any collection and use of any product listings, descriptions, or prices; any derivative use of any Amazon Service or its contents; any downloading, copying, or other use of account information for the benefit of any third party; or any use of data mining, robots, or similar data gathering and extraction tools. All rights not expressly granted to you in these Conditions of Use or any Service Terms are reserved and retained by Amazon or its licensors, suppliers, publishers, rightsholders, or other content providers. No Amazon Service, nor any part of any Amazon Service, may be reproduced, duplicated, copied, sold, resold, visited, or otherwise exploited for any commercial purpose without express written consent of Amazon. You may not frame or utilize framing techniques to enclose any trademark, logo, or other proprietary information (including images, text, page layout, or form) of Amazon without express written consent. You may not use any meta tags or any other "hidden text" utilizing Amazon's name or trademarks without the express written consent of Amazon. You may not misuse the Amazon Services. You may use the Amazon Services only as permitted by law. The licenses granted by Amazon terminate if you do not comply with these Conditions of Use or any Service Terms.

## YOUR ACCOUNT

You may need your own Amazon account to use certain Amazon Services, and you may be required to be logged in to the account and have a valid payment method associated with it. If there is a problem charging your selected payment method, we may charge any other valid payment method associated with your account. Visit Your Payments to manage your payment options. You are responsible for maintaining the confidentiality of your account and password and for restricting access to your account, and you agree to accept responsibility for all activities that occur under your account or password. Amazon does sell products for children, but it sells them to adults, who can purchase with a credit card or other permitted payment method. If you are under 18, you may use the Amazon Services only with involvement of a parent or guardian. Parents and guardians may create profiles for teenagers in their Amazon Household. Alcohol listings on Amazon are intended for adults. You must be at least 21 years of age to purchase alcohol, or use any site functionality related to alcohol. Amazon reserves the right to refuse service, terminate accounts, terminate your rights to use Amazon Services, remove or edit content, or cancel orders in its sole discretion.

## REVIEWS, COMMENTS, COMMUNICATIONS, AND OTHER CONTENT

You may post reviews, comments, photos, videos, and other content; send e-cards and other communications; and submit suggestions, ideas, comments, questions, or other information, so long as the content is not illegal, obscene, threatening, defamatory, invasive of privacy, infringing of intellectual property rights (including publicity rights), or otherwise injurious to third parties or objectionable, and does not consist of or contain software viruses, political campaigning, commercial solicitation, chain letters, mass mailings, or any form of "spam" or unsolicited commercial electronic messages. You may not use a false e-mail address, impersonate any person or entity, or otherwise mislead as to the origin of a card or other content. Amazon reserves the right (but not the obligation) to remove or edit such content, but does not regularly review posted content.

If you do post content or submit material, and unless we indicate otherwise, you grant Amazon a nonexclusive, royalty-free, perpetual, irrevocable, and fully sublicensable right to use, reproduce, modify, adapt, publish, perform, translate, create derivative works from, distribute, and display such content throughout the world in any media. You grant Amazon and sublicensees the right to use the name that you submit in connection with such content, if they choose. You represent and warrant that you own or otherwise control all of the rights to the content that you post; that the content is accurate; that use of the content you supply does not violate this policy and will not cause injury to any person or entity; and that you will indemnify Amazon for all claims resulting from content you supply. Amazon has the right but not the obligation to monitor and edit or remove any activity or content. Amazon takes no responsibility and assumes no liability for any content posted by you or any third party.

# INTELLECTUAL PROPERTY COMPLAINTS

Amazon respects the intellectual property of others. If you believe that your intellectual property rights are being infringed, please follow our Notice and Procedure for Making Claims of Copyright Infringement.

# RISK OF LOSS

All purchases of physical items from Amazon are made pursuant to a shipment contract. This means that the risk of loss and title for such items pass to you upon our delivery to the carrier.

# RETURNS, REFUNDS AND TITLE

Amazon does not take title to returned items until the item arrives at our fulfillment center. At our discretion, a refund may be issued without requiring a return. In this situation, Amazon does not take title to the refunded item. For more information about our returns and refunds, please see our Returns Center.

# PRODUCT DESCRIPTIONS

Amazon attempts to be as accurate as possible. However, Amazon does not warrant that product descriptions or other content of any Amazon Service is accurate, complete, reliable, current, or error-free. If a product offered by Amazon itself is not as described, your sole remedy is to return it in unused condition.

# PRICING

"List Price" means the suggested retail price of a product as provided by a manufacturer, supplier, or seller. We regularly check List Prices against prices recently found on Amazon and other retailers. Certain products may have a "Was Price" displayed, which is determined using recent price history of the product on Amazon.

With respect to items sold by Amazon, we cannot confirm the price of an item until you order. Despite our best efforts, a small number of the items in our catalog may be mispriced. If the correct price of an item sold by Amazon is higher than our stated price, we will, at our discretion, either contact you for instructions before shipping or cancel your order and notify you of such cancellation. Other merchants may follow different policies in the event of a mispriced item.

We generally do not charge your credit card until after your order has entered the shipping process or, for digital products, until we make the digital product available to you.

# APP PERMISSIONS

When you use apps created by Amazon, such as the Amazon App or Kindle App, you may grant certain permissions to us for your device. Most mobile devices provide you with information about these permissions. To learn more about these permissions, click here.

# SANCTIONS AND EXPORT POLICY

You may not use any Amazon Service if you are the subject of U.S. sanctions or of sanctions consistent with U.S. law imposed by the governments of the country where you are using Amazon Services. You must comply with all U.S. or other export and re-export restrictions that may apply to goods, software (including Amazon Software), technology, and services.

# OTHER BUSINESSES

Parties other than Amazon operate stores, provide services or software, or sell product lines through the Amazon Services. In addition, we provide links to the sites of affiliated companies and certain other businesses. If you purchase any of the products or services offered by these businesses or individuals, you are purchasing directly from those third parties, not from Amazon. We are not responsible for examining or evaluating, and we do not warrant, the offerings of any of these businesses or individuals (including the content of their Web sites). Amazon does not assume any responsibility or liability for the actions, product, and content of all these and any other third parties. You should carefully review their privacy statements and other conditions of use.

# DISCLAIMER OF WARRANTIES AND LIMITATION OF LIABILITY

THE AMAZON SERVICES AND ALL INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) AND OTHER SERVICES INCLUDED ON OR OTHERWISE MADE

AVAILABLE TO YOU THROUGH THE AMAZON SERVICES ARE PROVIDED BY AMAZON ON AN "AS IS" AND "AS AVAILABLE" BASIS, UNLESS OTHERWISE SPECIFIED IN WRITING. AMAZON MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE OPERATION OF THE AMAZON SERVICES, OR THE INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) OR OTHER SERVICES INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE AMAZON SERVICES, UNLESS OTHERWISE SPECIFIED IN WRITING. YOU EXPRESSLY AGREE THAT YOUR USE OF THE AMAZON SERVICES IS AT YOUR SOLE RISK.

TO THE FULL EXTENT PERMISSIBLE BY LAW, AMAZON DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. AMAZON DOES NOT WARRANT THAT THE AMAZON SERVICES, INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) OR OTHER SERVICES INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE AMAZON SERVICES, AMAZON'S SERVERS OR ELECTRONIC COMMUNICATIONS SENT FROM AMAZON ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. TO THE FULL EXTENT PERMISSIBLE BY LAW, AMAZON WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF ANY AMAZON SERVICE, OR FROM ANY INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) OR OTHER SERVICES INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH ANY AMAZON SERVICE, INCLUDING, BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, AND CONSEQUENTIAL DAMAGES, UNLESS OTHERWISE SPECIFIED IN WRITING.

## DISPUTES

Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts. We each waive any right to a jury trial.

## APPLICABLE LAW

By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

## SITE POLICIES, MODIFICATION, AND SEVERABILITY

Please review our other policies, such as our pricing policy, posted on this site. These policies also govern your use of Amazon Services. We reserve the right to make changes to our site, policies, Service Terms, and these Conditions of Use at any time. If any of these conditions shall be deemed invalid, void, or for any reason unenforceable, that condition shall be deemed severable and shall not affect the validity and enforceability of any remaining condition.

## OUR ADDRESS

Amazon.com, Inc.
P.O. Box 81226
Seattle, WA 98108-1226

## ADDITIONAL AMAZON SOFTWARE TERMS

The following terms ("Software Terms") apply to any software (including any updates or upgrades to the software) and any related documentation we make available to you in connection with Amazon Services (the "Amazon Software").

1.  **Use of the Amazon Software.** You may use Amazon Software solely for purposes of enabling you to use the Amazon Services as provided by Amazon, and as permitted by these Conditions of Use and any Service Terms. You may not incorporate any portion of the Amazon Software into other programs or compile any portion of it in combination with other programs, or otherwise copy (except to exercise rights granted in this section), modify, create derivative works of, distribute, assign any rights to, or license the Amazon Software in whole or in part. All software used in any Amazon Service is the property of Amazon or its software suppliers and is protected by United States and international copyright laws.
2.  **Use of Third Party Services.** When you use the Amazon Software, you may also be using the services of one or more third parties, such as a wireless carrier or a mobile software provider. Your use of these third party services may be subject to the separate policies, terms of use, and fees of these third parties.
3.  **No Reverse Engineering.** You may not reverse engineer, decompile or disassemble, tamper with, or bypass any security associated with the Amazon Software, whether in whole or in part.

4. **Updates.** We may offer automatic or manual updates to the Amazon Software at any time and without notice to you.
5. **Government End Users.** If you are a U.S. Government end user, we are licensing the Amazon Software to you as a "Commercial Item" as that term is defined in the U.S. Code of Federal Regulations (see 48 C.F.R. § 2.101), and the rights we grant you to the Amazon Software are the same as the rights we grant to all others under these Conditions of Use.
6. **Conflicts.** In the event of any conflict between these Conditions of Use and any other Amazon or third-party terms applicable to any portion of Amazon Software, such as open-source license terms, such other terms will control as to that portion of the Amazon Software and to the extent of the conflict.

## HOW TO SERVE A SUBPOENA OR OTHER LEGAL PROCESS

Amazon accepts service of subpoenas or other legal process only through Amazon's national registered agent, Corporation Service Company (CSC). Subpoenas or other legal process may be served by sending them to CSC at the following address:

```
Amazon.com, Inc.
Corporation Service Company
300 Deschutes Way SW, Suite 208 MC-CSC1
Tumwater, WA 98501
Attn: Legal Department – Legal Process
```

Please note also that providing detailed and accurate information at the outset will facilitate efficient processing of your request. That information will include, for example, e-mail and/or credit card number used to make purchases for retail purchase information; the name, e-mail, and physical address of a seller for seller information; device serial number for Amazon devices; and IP address and complete time stamps.

## NOTICE AND PROCEDURE FOR MAKING CLAIMS OF INTELLECTUAL PROPERTY INFRINGEMENT

If you believe that your intellectual property rights have been infringed, please submit your complaint using our online form. This form may be used to report all types of intellectual property claims including, but not limited to, copyright, trademark, and patent claims.

We respond quickly to the concerns of rights owners about any alleged infringement, and we terminate repeat infringers in appropriate circumstances.

We offer the following alternative to our online form for copyright complaints only. You may submit written claims of copyright infringement to our Copyright Agent at:

```
Copyright Agent
Amazon.com Legal Department
P.O. Box 81226
Seattle, WA 98108
phone: (206) 266-4064
e-mail: copyright@amazon.com

Courier address:
Copyright Agent
Amazon.com Legal Department
2021 7th Avenue
Seattle, WA 98121
USA
```

Written claims concerning copyright infringement must include the following information:

- A physical or electronic signature of the person authorized to act on behalf of the owner of the copyright interest;
- A description of the copyrighted work that you claim has been infringed upon;
- A description of where the material that you claim is infringing is located on the site;
- Your address, telephone number, and e-mail address;
- A statement by you that you have a good-faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; and
- A statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf.

Was this information helpful?

Yes No

**Get to Know Us**

Careers

Amazon Newsletter

About Amazon

Accessibility

Sustainability

Press Center

Investor Relations

Amazon Devices

Amazon Science

**Make Money with Us**

Sell on Amazon

Sell apps on Amazon

Supply to Amazon

Protect & Build Your Brand

Become an Affiliate

Become a Delivery Driver

Start a Package Delivery Business

Advertise Your Products

Self-Publish with Us

Become an Amazon Hub Partner

› See More Ways to Make Money

**Amazon Payment Products**

Amazon Visa

Amazon Store Card

Amazon Secured Card

Amazon Business Card

Shop with Points

Credit Card Marketplace

Reload Your Balance

Gift Cards

Amazon Currency Converter

**Let Us Help You**

Your Account

Your Orders

Shipping Rates & Policies

Amazon Prime

Returns & Replacements

Manage Your Content and Devices

Recalls and Product Safety Alerts

Registry & Gift List

Help

English     United States

Amazon Music
Stream millions
of songs

Amazon Ads
Reach
customers
wherever
they
spend their
time

6pm
Score deals
on fashion brands

AbeBooks
Books, art
& collectibles

ACX
Audiobook
Publishing
Made Easy

Sell on Amazon
Start a Selling
Account

Veeqo
Shipping
Software
Inventory
Management

Amazon Business
Everything For
Your Business

Amazon
Fresh
Groceries &
More
Right To Your
Door

AmazonGlobal
Ship Orders
Internationally

Home Services
Experienced Pros
Happiness
Guarantee

Amazon Web
Services
Scalable Cloud
Computing
Services

Audible
Listen to Books &
Original
Audio
Performances

Box Office Mojo
Find Movie
Box Office Data

Goodreads
Book reviews
&
recommendations

IMDb
Movies, TV
& Celebrities

IMDbPro
Get Info Entertainment
Professionals Need

Kindle Direct
Publishing
Indie Digital &
Print Publishing
Made Easy

Amazon Photos
Unlimited
Photo Storage
Free With
Prime

Prime Video
Direct
Video
Distribution
Made Easy

Shopbop
Designer
Fashion Brands

Amazon Resale
Great Deals on
Quality Used
Products

Whole Foods
Market
America's
Healthiest
Grocery Store

Woot!
Deals and
Shenanigans

Zappos
Shoes &
Clothing

Ring
Smart Home
Security
Systems

eero WiFi
Stream 4K Video
in Every Room

Blink
Smart Security
for Every Home

Neighbors
App
Real-Time
Crime
& Safety
Alerts

Amazon Subscription
Boxes
Top subscription boxes –
right to your door

PillPack
Pharmacy
Simplified

Amazon
Renewed
Like-new
products
you can trust

Conditions of Use    Privacy Notice    Consumer Health Data Privacy Disclosure    Your Ads Privacy Choices
© 1996-2024, Amazon.com, Inc. or its affiliates

# EXHIBIT C

Hello
Select your address

All

Hello, Sign in
Account & Lists

Returns
& Orders

0

All    Best Sellers    Prime    Customer Service    New Releases    Today's Deals    Pharmacy    Books    Registry    Fashion    **Shop s-s-scary low prices**

# Help & Customer Service

‹ All Help Topics

## Payment Methods

**Shopping Cart Prices**

The Amazon Currency Converter

Monthly Payments Terms & Conditions

Payment Methods We Don't Accept

Currency Converter Supported Currencies

About the Pre-Order Price Guarantee

Select Your Currency in the Amazon Currency Converter

International Credit Cards

Payment Issues and Restrictions

About Amazon Store Card and Amazon Secured Card Restrictions

Using Amazon PayCode

Assign a Checking Account as a Payment Option

Opt Out of PIN-Less Debit

Customer Service for Financial Institutions

Amazon.com Product Voucher Eligibility and Restrictions

Pay with SNAP EBT

How can I start using the Business Prime Membership if I am approved for the Amazon Business Prime American Express Card?

Currency Converter Exchange Rates

Accepted Payment Methods

View the Exchange Rate Used for an Order

Amazon Currency Converter Requirements

Manage Your Amazon Store Card Account or Amazon Secured Card Account Online

Make a Payment on an Amazon Store Card or Amazon Secured Card Account

Strike-Through Pricing and Savings

Amazon Store Card and Amazon Secured Card Promotional Financing

About Amazon Secured Card

Payment Plans

Amazon Credit Cards

Terms & Conditions for Payments from a Bank Account

Price Matching

Multi-Factor Authentication for International Bank Cards

## Quick solutions

## Find more solutions

Payment, Pricing & Promotions  ›  Payment Methods  ›

# Shopping Cart Prices

Items in your Shopping Cart always reflects the most recent price displayed on the product detail page of the item.

This price may differ from the price shown for the item when you first placed it in your cart. Placing an item in your cart doesn't reserve the price shown at that time. The price of an item may increase or decrease between the time you place it in your cart and the time you purchase it.

**Note:**

- You're not charged until your order enters the shipping process.
- If the correct price of an item is higher than our stated price, we will, at our discretion, either contact you for instructions before shipping or cancel your order and notify you of this cancelation. This applies only to products sold and shipped by Amazon.com. Sellers may follow different policies in the event of a mis-priced item.

Was this information helpful?

Yes    No


**Your Orders**
Track or cancel orders


**Returns & Refunds**
Exchange or return items


**Manage Prime**
Cancel or view benefits


**Payment Settings**
Add or edit payment methods


**Carrier Info**
Shipping carrier information


**Account Settings**
Change email or password

Back to top

## Get to Know Us

Careers

Blog

About Amazon

Sustainability

Press Center

Investor Relations

Amazon Devices

## Make Money with Us

Sell products on Amazon

Sell apps on Amazon

Become an Affiliate

Become a Delivery Driver

Start a package delivery business

Advertise Your Products

Self-Publish with Us

Host an Amazon Hub

› See More Make Money with Us

## Amazon Payment Products

Amazon Rewards Visa Signature Cards

Amazon.com Store Card

Amazon Secured Card

Amazon Business Card

Amazon Business Line of Credit

Shop with Points

Credit Card Marketplace

Reload Your Balance

Amazon Currency Converter

## Let Us Help You

Amazon and COVID-19

Your Account

Your Orders

Shipping Rates & Policies

Amazon Prime

Returns & Replacements

Manage Your Content and Devices

Amazon Assistant

Help

| English | United States |
| --- | --- |

Amazon Music
Stream millions of songs

Amazon Advertising
Find, attract, and engage customers

Amazon Drive
Cloud storage from Amazon

6pm
Score deals on fashion brands

AbeBooks
Books, art & collectibles

ACX
Audiobook Publishing Made Easy

Alexa
Actionable Analytics for the Web

Sell on Amazon
Start a Selling Account

Amazon Business
Everything For Your Business

Amazon Fresh
Groceries & More Right To Your Door

AmazonGlobal
Ship Orders Internationally

Home Services
Experienced Pros Happiness Guarantee

Amazon Ignite
Sell your original Digital Educational Resources

Amazon Web Services
Scalable Cloud Computing Services

Audible
Listen to Books & Original Audio Performances

Book Depository
Books With Free Delivery Worldwide

Box Office Mojo
Find Movie Box Office Data

ComiXology
Thousands of Digital Comics

DPReview
Digital Photography

East Dane
Designer Men's Fashion

Fabric
Sewing, Quilting & Knitting

Goodreads
Book reviews & recommendations

IMDb
Movies, TV & Celebrities

IMDbPro
Get Info Entertainment Professionals Need

Kindle Direct Publishing
Indie Digital & Print Publishing Made Easy

Amazon Photos
Unlimited Photo Storage Free With Prime

Prime Video Direct
Video Distribution Made Easy

Shopbop
Designer Fashion Brands

Amazon

Whole Foods

Woot!

Zappos

Ring

eero WiFi

Blink

| Warehouse | Market | Deals and | Shoes & | Smart Home | Stream 4K Video | Smart Security |
| Great Deals on | America's | Shenanigans | Clothing | Security | in Every Room | for Every Home |
| Quality Used | Healthiest | | | Systems | | |
| Products | Grocery Store | | | | | |

| Neighbors | Amazon Subscription | PillPack | Amazon | Amazon Second Chance |
| App | Boxes | Pharmacy | Renewed | Pass it on, trade it in, give |
| Real-Time | Top subscription boxes – | Simplified | Like-new | it a second life |
| Crime | right to your door | | products | |
| & Safety | | | you can trust | |
| Alerts | | | | |

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996–2021, Amazon.com, Inc. or its affiliates

# EXHIBIT D

**[00:00:22.26] - Unidentifiable male**

The Supreme Court is reconvened.

**[00:00:26.17] - Chief Justice González**

Please be seated. We're back for our second and final case for today, here as part of our traveling Court program, Justice Owens is recused and justice pro tem. David S. Keenan from King County Superior Court is joining us today. Thank you for assisting with this case. And to my right, our colleague, Justice Whitener, is on the screen, so you may hear her voice. It won't necessarily sound like it's coming from that direction, but that's who would be speaking. This case is Alvin Greenberg et al. versus Amazon, Inc. Amazon.com, Inc. Defendant opening is Steve Rummage for 15 minutes. Response from Steve Berman of 25 minutes reserved for rebuttal. Counsel, please proceed.

**[00:01:19.27] - Stephen Rummage**

Thank you, Chief Justice González, may it please the Court. I'm Steve Rummage, and I'm appearing this morning on behalf of the defendant, Amazon.com. Your Honors, the plaintiffs today are asking the Court to do something unprecedented. Our CPA is a generally worded consumer protection statute modeled on the FTC Act. No court has ever read such an act to regulate high prices, absent some sort of evidence or allegation of anti-competitive conduct or deceptive conduct. Further, the claim is contrary to the express language of the CPA. The statute directs courts to be guided by precedent under the FTC Act. And in fact, the language in the FTC Act that is identical to the governing language in the CPA has been construed not to regulate pricing. And finally, to read the statute the way the plaintiffs asked the court to read it would usurp the legislature's rule. The reason is that whether to have a law that limits pricing, whether during emergencies or otherwise, whether to do that is uniquely an economic, statewide policy judgment for the legislature, 34 states have had their legislatures pass laws that do regulate prices. This state has not done so despite detailed consideration of a proposed statute in 2021. The statutes that are passed are highly detailed and forward looking that provide guidance to businesses, large and small, as to what is permitted and what is not. And we do not have such a statute, so we have to.

**[00:02:58.17] - Justice Whitener**

So, counsel.

**[00:02:59.10] - Stephen Rummage**

Yes.

**[00:03:00.17] - Justice Whitener**

I noticed in your opening statements to the Court, you referenced deceptive acts, but I believe the opposing side is raising or brought their complaint under the unfairness in regards to the CPA.

**[00:03:17.08] - Stephen Rummage**

Exactly.

**[00:03:18.15] - Justice Whitener**

And I believe there may be a difference in how we look at it under unfairness.

**[00:03:23.20] - Stephen Rummage**

I don't disagree with that, Your Honor. And all I was saying, Justice Whitener, is that prices have not been deemed to be within the scope of the CPA or similar statutes across the country absent evidence of anti-competitive conduct, which may be unfair, for example, or deceptive conduct, either one. So you're absolutely right. This arises under the unfairness prong. So if I may, before I dive into the substance of our argument on the unfairness prong, I want to start with setting the stage in the First Amendment complaint and making clear that what we have here is what I would call a pure pricing claim with no obligation of unfairness beyond the price itself. The plaintiffs bought products in the Amazon store, things like ramen, yeast, and so on. And they say they looked around a little bit other places to find these products, eventually found them at an offered price in the Amazon store, in an impersonal marketplace, no face to face dealing or the like. They agreed to pay that price, and they got the products they wanted. Now they claim the price was too high, and that is the entire basis for their claim. So I call that…

**[00:04:36.24] - Justice Whitener**

Except, counsel, that you're leaving out the fact that we're dealing with the unusual circumstances of the pandemic. Now, what you have indicated to the Court would work well in a normal situation, but how do you place your statements to the Court in the context of a pandemic, and the pricing of goods that have been purchased?

**[00:05:06.02] - Stephen Rummage**

Understood, Your Honor. And, you know, that's a fair point. But of course, what I was saying when I was saying there's no allegation of misconduct on Amazon's part is… I'm saying Amazon didn't create the pandemic. Pandemic is the market in which it operates, but it is not the creation of Amazon. It did nothing wrongful that led to that.

### [00:05:24.29] - Justice Keenan

So we are talking about the market, though? And I, and I ask because Amazon and I think all of the Amici, except for the attorney general, talk about the market price, and they urge this Court not to disturb the market. But that's not what we're talking about here, though, right? And just if I could refer you back to Judge Lasnik's order certifying the questions to this Court. And Judge Lasnik cites some cases, right? One from the First Circuit, which talks about price increases unrelated to costs, and the Mississippi Supreme Court price increases, absent justification in New York, not attributable to the supplier. And I think even Amazon cites an FTC paper that talks about gasoline prices that said this would be fine, but it wouldn't be fine if there weren't additional costs. So if we're talking about that, if we're talking about price increases that are not the market, something opposite of the market is that contemplated as unfair under the CPA?

### [00:06:24.14] - Stephen Rummage

Well, there's a lot to unpack in what Your Honor just asked, and I want to go through each of those, because first of all, the cases that Judge Lasnik cited, to which you just alluded from Mississippi and elsewhere, both were cases dealing with specific statutes that prohibited price increases above a set amount designated by a state legislature, not what we have here. And that's crucial, because we're not saying the state has no power to regulate. We're saying that the legislature has to do it specifically. That's number one. Number two, with due respect, Your Honor, the FTC paper says the opposite. It says literally exactly the opposite. What it says is we do not interfere in pricing, even in times of scarcity, because, and I don't want to get into economic theory with Your Honors, that's part of the point, is that a lot of this has to do with economic theory that the legislature should be dealing with. But the FTC says, in fact, that fiddling with prices during a time of scarcity is, and I want to get the quote exactly right because it's important. What it says is it would harm consumers economic well-being in the long run. And the reason it says that is because high prices in times of scarcity send signals to the market, both to consumers and to producers, and they also serve a function of how you allocate goods. And so the FTC says, we do not touch these. And that, in fact, is the reason why. Well, I shouldn't say the reason why. It is among the reasons why the FTC historically has read the FTC Act in 75 years of its existence, not to reach prices even in times of scarcity. And I can see, Your Honor, still looking at your notes, the report to which I think, Your Honor, you know.

**[00:08:11.20] - Justice Keenan**

What I'm looking at.

**[00:08:15.13] - Stephen Rummage**

The report to which I think your honor is referring is a report that came out after Hurricane Katrina. And it's summarized in that, what we cite as working paper two in page nine and ten of our reply brief. And what that report said was, look at, among other things, one of the problems is that when you drill down and you look at allegations of price gouging, it's really hard to tell what's price gouging and what is a natural response to market scarcity, which we want to encourage. And so that's why, as a matter of policy, that's not what they do. And by the way, I want to kind of go back and backfill a little bit because we're talking about the FTC. Why are we talking about the FTC? The reason is that the Consumer Protection Act is taken verbatim from the FTC Act, verbatim from the 1938 version of the FTC Act. That's what this Court said in Reader's Digest. And what this Court also said was that the meaning of those terms that we're talking about in 1986 020, and I quote, has a meaning well settled in Federal Trade Regulation Law. And that in and of itself tells you that when we look at how we construe those words, we should be looking to Federal Trade Regulation Law. But that's compounded by the fact that the statute itself in RCW 1986 920 says that the purpose of the CPA is to complement that body of federal law. And so the legislature instructed courts to be guided by federal law in this area. Federal law in this area is unquestionably that the FTC Act, the exact words that we have in RCW in 1986 020, the FTC Act, does not cover prices, whether in emergencies, in times of scarcity or otherwise. And that is the reason, principal reason, why we believe the CPA has to be read not to reach pricing at all.

**[00:10:12.23] - Justice Keenan**

Counsel, this Court has held that process of defining what's unfair happens gradually. And so doesn't, doesn't some court, perhaps this court, have to be the first mover? Because it seems like you're kind of begging the question, right? That if the answer to what's unfair is what some prior court has said is unfair, then this court never reaches that issue.

**[00:10:33.08] - Stephen Rummage**

Well, it's not just some prior court. I mean, it would be one thing if it were, for example, a previous decision of this Court or the Superior Court. But here it is, a consistent policy that the FTC, over nearly, well, 75 years, since the 1938 amendments, 75 years through World Wars, through wars in Vietnam, through price shocks from OPEC, from natural disasters, the FTC has said hands off pricing. That is a consistent federal policy, which this Court has said, pardon me,

which the legislature has said in 920, this Court should be guided by. So I don't think that's quite true. That is that we can just disregard it because things evolve. I also want to point out that the language that Your Honor is alluding to that is that talks about the process of gradual evolution of the CPA. It talks about through a process of inclusion and exclusion. And so it recognizes that it's not like an ever expanding CPA. Sometimes the CPA may have to contract. In this case, it's not really a contraction. It would be a recognition of the fact that when this was passed in 1961, it was already settled under federal law, which, by the way, Reader's Digest says, you know, the meaning is well established by federal law. It had already been established then that pricing was not covered by the FTC Act. So I don't think that the fact that, yes, the FTC, pardon me, the CPA has to evolve, necessarily means that every time somebody wants to add something to it, they can.

**[00:12:08.20] - Justice Madsen**

Counsel.

**[00:12:08.29] - Stephen Rummage**

Yes, Your Honor.

**[00:12:09.09] - Justice Madsen**

I wanted to ask, before you run out of time, there are 37 other states that regulate through statutes or regulations or some other method, executive orders, price gouging as we are terming it in this case.

**[00:12:25.10] - Stephen Rummage**

 A term that I hate, Your Honor, but I understand.

**[00:12:28.10] - Justice Madsen**

I understand. That's the term we've been using.

**[00:12:30.23] - Stephen Rummage**

I understand.

**[00:12:31.15] - Justice Madsen**

So I guess what I'm curious about is these other states apparently have CPAs. I mean, the allusion in the briefing is that, that they do it through their CPAs, or sometimes they do it through statutes. But in any event, the FTC, as you say, has not recognized that, and you gave us some reasons like it might, in the long run, damage the public. So how does that square with the states that find that it is in the public interest to prohibit this?

**[00:13:01.23] - Justice Madsen**

Good point, Your Honor. A couple of things about that. First of all, going back to the predicate to that question. I think Your Honor said that some states do it through their CPAs. They actually don't. They don't do it through their generally worded CPAs. They do it through specific statutes that say we are now going to regulate prices. And when you say, how do you square that with the FTC's determination that generally it's not in the economic interest of consumers to do it, you square it by the fact that the legislature sometimes can collect information from various sources, hear from constituents, and decide that in specific circumstances we are going to regulate prices. And that's why, when they do it, they do it in a really detailed way. You know, if you look at the 2021 statute that our legislature considered but then did not pass, it has a lot of the same earmarks that you see in the statutes that have been passed. It tells you exactly when the emergency kicks in, happens to be, by the way, different from what plaintiffs alleged should be the benchmark. They say the benchmark should be the national declaration of emergency. In fact, what the 2021 legislation would have made it is Governor Inslee's declaration of emergency, which happens not to be at the same time, about a month different. They make judgments as to what products are covered. You know, so they tell you, it´s not just everything. Some states only regulate petroleum gas, like Vermont, because of the heating oil issue up in Vermont. Some states regulate only consumer food, pardon me, only food. Some states do it differently. Our 2021 legislation, proposed but not passed, would have regulated food and a list of consumer items. But not all, plaintiffs and their complaint want to make a different policy judgment. They want to make it so that the regulation of is of food plus all consumer goods, different from what is in most states. Those other states also regulate when the emergency ends. And most important, they regulate exactly what kind of price increase is allowed. Some say 10%, some say 15%, some say 25%. That's policy judgment, depending on how they calibrate things. And, Your Honor, that speaks exactly to your point. They may say, we want to let the market move, so we'll let it go up 25%, but we don't want it to move more than that. And so they try to calibrate the judgment between what is good for consumers in the long run and what mitigates the impact of the emergency in the short run. And that's all we're saying here, is that those policy judgments of exactly how far you want to go, what you want to regulate, when you want to regulate it, those policy judgments, if they're going to overrule kind of the general economic principle that we let prices find their own level. Those policy judgments are legislative in nature, and need to be made by the legislature and haven't been made in the CPA, especially

given the FTC's consistent recognition that the same exact language is not covering prices. I have only 20 seconds left. I want to close with just one thought before I sit down. And that is that the principal problem with what… a principal problem with what plaintiffs propose is that essentially they will take all of those policy judgments, and they're not actually asking your honors to make those policy judgments. They want to take all those policy judgments and shove them over for a judge or jury to decide in an individual case. So, for example, Judge Lasnik says, tell me, and this is the second certified question, tell me what percentage increase is unfair. Well, that's a policy judgment that states have made in different ways all across the country. As I said, some have said, 10, 15, 25. Judge Lasnik wants to know, is the judge or jury unit inside that, even though it is a legislative judgment that's made over and over again across the country in specific bills dealing with this issue? So, Your Honor, we ask that the Court answer the first certified question. No, that is the CPA does not cover a price claim like the one plaintiffs asserted. And the Court need not get to the second question because the answer to the first is no. Thank you, Your Honors.

**[00:17:22.14] - Justice Keenan**

Thank you. Response?

**[00:17:33.08] - Stephen Berman**

May it please the Court. Steve Berman, on behalf of the respondents, I think if you look at Judge Lasnik's order certifying this matter to the Supreme Court, it's very illustrative as to how you should answer this question. Judge Lasnik found that there was price gouging, and he defined price gouging as, quote, the imposition of acute and unconscionable increases in the price of basic consumer goods and services, unrelated to costs, during times of market emergency.

**[00:18:07.20] - Chief Justice González**

I heard counsel for Amazon say that we need to allow price gouging for our own good.

**[00:18:16.03] - Stephen Berman**

That would be contrary to, I think, the intent, the liberal intent of the CPA for a number of reasons. Number one.

**[00:18:24.00] - Chief Justice González**

But as he also pointed out, to be even handed in my quip, that we haven't specifically regulated price in this state, unlike other states. What do you say to that?

**[00:18:35.12] - Stephen Berman**

I say two things. One, there's a long history here of two types of consumer protection violations. One is a per se violation. The absence of regulation means it's not a per se. But this court's decisions in Clem and many other cases we cited show that there's a pattern that this court of exclusion and inclusion of matters that are not per se. This falls squarely within that.

**[00:19:01.07] - Justice Gordon McCloud**

Let me ask you a question about some consequences of the rule that you're proposing. Let's say there's the best criminal defense lawyer in town, and she raises her rates to $1,000 an hour during a time when there is a crisis because there is a shortage of public defenders in the state. Is that unfair? Under the CPA?

**[00:19:32.07] - Stephen Berman**

It might be, and it might not be. And the reason I-, Judge it's not a hedge, it is, you have to do what Judge Lasnik did, which is to look at the totality of circumstances that are alleged. This is not just about raising prices. And the key to, I think, this whole issue is page six of his certification order, where Judge Lasnik went through all the factors that a jury would consider to determine whether this was unfair. The factors that he noted were, of course, the public health emergency, which you noted, the extraordinary raising of prices of 15, 50, 100, or even 1000%. Right now in your hypothetical. I don't know if that was a 1000% price increase, but we do know that there were a 1000%. Then-, the allegation is also.

**[00:20:22.27] - Justice Gordon McCloud**

I was trying to do a hypothetical with a really, really high increase. But I don't know. Maybe I've only chosen a New York rate.

**[00:20:33.05] - Stephen Berman**

Well, let me go through some of the other factors that are not in your hypothetical. Judge Lasnik notes that people were driven to shop only online because of the pandemic. People couldn't find alternatives. They couldn't avoid Amazon's prices. Maybe in your hypothetical, people could avoid that criminal defense lawyer's prices by going to some other criminal defense lawyer.

**[00:20:56.23] - Justice Gordon McCloud**

Well, depending on resources, which, of course, depends on the resources of the plaintiffs in your case, in terms of other factors that might be considered, the Chamber of Commerce brief pointed out supply chain problems, dramatic problems during the pandemic, with retaining staff, keeping them safe, keeping them separated enough, and how that impacted those retailers, small business retailers' ability to survive the pandemic. And we all know, walking down main streets, wherever we are, that a lot of them didn't survive the pandemic. Would those all be defenses under your theory, or would they be irrelevant under your theory?

**[00:21:46.15] - Stephen Berman**

Well, first of all, none of those are facts in the complaint before Judge Lasnik.

**[00:21:50.23] - Justice Gordon McCloud**

I'm sorry, say it again.

**[00:21:51.20] - Stephen Berman**

None of those. None of those facts, which you cite from the amicus briefs were before Judge Lasnik at all. We don't know if they're true or not. All that we know is Judge Lasnik focused on what happened with Amazon.

**[00:22:06.03] - Justice Gordon McCloud**

You're asking us to adopt a particular rule, and I'm concerned about the consequences of that rule. If it's an Amazon rule, one consequence, if it's a rule for businesses in general, well, other consequences.

**[00:22:21.01] - Stephen Berman**

Why wouldn't it be fair under the jurisprudence of the CPA for a jury to weigh all those factors?

**[00:22:28.08] - Justice Keenan**

(...) Ask on that point.

**[00:22:30.04] - Stephen Berman**

Sure.

**[00:22:30.27] - Justice Keenan**

What would the jury instruction look like? I was really trying to imagine this. I go back to being a trial judge in about 18 hours. And so I'm just, I'm just trying to think, would it be something like if you find by preponderance of the evidence that the price increased by X, and if you find that costs did not increase by Y, then it's unfair? So I'm just trying to understand, how would a trial court implement this if I think, because I think it's your position that if it's a mixed question of law, in fact, that you would send it to the jury.

**[00:23:02.24] - Stephen Berman**

Yes, and I think the jury would be instructed on all of the four different tests for unfairness that this court has recognized, which I submit the complaint meets. There are four tests. One is substantial injury test, that's out of the FTC versus Neovi case. The other is it offends public policy test. The other is the immoral, unethical, oppressive, and unscrupulous tests under the Clem case. And finally, the jury would be instructed on the unconscionability standard. And so, just like any other piece of complex litigation, the jury would listen to testimony. For example, we would have documents from Amazon saying, why would they raise price increases? We would have experts come in and say, here's the supply factors, here's the demand factors. There was no exigencies with respect to supply. There was no reason Amazon had to raise those prices except to profiteer during our time.

**[00:24:05.06] - Justice Stephens**

A couple of questions related to that. First, just preliminarily as a factual matter, do you agree that no other state has allowed this type of non per se claim under its CPA?

**[00:24:16.09] - Stephen Berman**

No state has addressed this issue either way.

**[00:24:19.24] - Justice Stephens**

Okay, so you don't have any model jury instructions from a trial that took place along these lines anywhere else?

**[00:24:25.03] - Stephen Berman**

No.

**[00:24:25.20] - Justice Stephens**

Okay. The second thing is, would a trial like this proceed product by product? Because the answer to those questions that you say are relevant factors might be different for ramen and toilet paper.

**[00:24:38.23] - Stephen Berman**

Yes. And I think we would put it on product by product as to which products would actually be in this class. That's something we would decide after we did discover.

**[00:24:47.18] - Justice Stephens**

And would it be geographical? Because there may be logistical issues that affect pricing in, you know, Omak that differ from affecting pricing in Bellevue.

**[00:24:58.09] - Stephen Berman**

I think an expert in a case like this would analyze any geographic area that we were trying to cover in our class action, and it could be, as we got down through discovery, we modified the class. Maybe there was an issue in Omaha, Nebraska. We don't know because we're only at the complaint stage. And that's one of the points I want to make to the court. Amazon seeks rather extraordinary relief because we haven't got any facts. We've just made allegations which Judge Lasnik found gave rise to a plausible inference of gouging and unconscionable conduct. Unconscionable conduct has been the hallmark of CPA cases for decades in this state. This is nothing unusual. It's just applying this to the facts that are before.

**[00:25:45.15] - Justice Gordon McCloud**

The CPAG's brief is the one that says Supreme Court. You should recognize that there could be a cause of action for price gouging, but don't say anything further than that without a full trial record. Is that, that sounds like what you're advocating now?

**[00:26:02.26] - Stephen Berman**

That's correct, your honor.

**[00:26:04.24] - Justice Montoya-Lewis**

So, counsel, you were referring to language in your complaint, and I see it in the certified question, around unconscionable words that I think give rise to a sense of, you know, dramatic

action. But there's also language about unfairness that comes up through the statute and also in several of the briefs. What is it that you are asking us to conclude?

### [00:26:36.23] - Stephen Berman

I'm asking you to conclude that the allegations found as true by Judge Lasnik, state acclaim under RCPA, and I think it states (...)

### [00:26:48.27] - Justice Montoya-Lewis

Do we have to do that with a rule? I guess I'm asking what's the rule?

### [00:26:51.05] - Stephen Berman

I think the rule is that this conduct violates the four tests I mentioned earlier, the unfairness test, violation of public policy test, unconscionability test, substantial injury tests. All those tests are recognized as violations of the CPA, and they're all alleged here.

### [00:27:12.21] - Justice Stephens

Can I ask a follow up to that about the second. Oh, I'm sorry, Justice.

### [00:27:16.25] - Justice Montoya-Lewis

Please go ahead.

### [00:27:19.17] - Justice Stephens

Because you're talking about all four of those features, definitions, or ways to show unfairness. We do have the second certified question, which suggests that public policy isn't a up or down question, but must arrive at a number. Is it 15%? Is it 20%? How does that happen? Through a rule? I guess that, because in answer to my earlier question, you acknowledge it's got to be product by product. It's got to be region by region. All the factors are going to differ. Might even be a class, a putative class might be challenging in this situation as well. But I realize that's not the issue. So given the second certified question, that's the one that really gives me pause, is you're not just asking in the ether, is unfair pricing that we could all agree meets a definition of price gouging, potentially subject to the Consumer Protection Act. But what is the public policy in quite specific terms?

### [00:28:20.17] - Stephen Berman

Well, the public policy here would be to prohibit someone like Amazon from taking advantage of consumers in an emergency situation where there's no cost basis for it, when Amazon knows it's wrong. Don't forget, this is a company that told Congress price gouging is bad. This is a company that told Congress it's unconscionable. This is a company that told Congress we're rooting it out. And not only did they not root it out, they actually raise prices on their own goods.

**[00:28:54.06] - Justice Stephens**

But that goes, that's the heart of my question. So is the jury potentially going to say, you know, 15% was too high, but 14% was fine? That's the difficulty I'm having with this as postured in the way you're posturing it, how does that occur? Under the framework of the CPA?

**[00:29:11.07] - Stephen Berman**

Sure. So this, in many ways, is no different than antitrust case, where you're going to have experts who will testify that, the plaintiff's expert will testify this price increase of 5% was unjustified and was a result of price fixing. The defendants will say, no, it wasn't the result of price fixing. It's a result of other factors, supply factors. We get this all the time in antitrust cases. It'd be no different in this case. Both sides would present evidence as to why the price would go up. The jury would be instructed to look at all the facts that Judge Lasnik looked at and to render a decision whether that was unfair or unconscionable. The idea of unfairness or unconscionability, I submit to the court, is not subject to any bright line test. It's subject to the common sense of jurors every day. There is no bright line ever in an unfairness case or an accountability case.

**[00:30:11.21] - Justice Madsen**

Counsel, could I ask you what role the pandemic plays in those factors? Because there's a lot of discussion that this is an extraordinary circumstance, and I guess that in some states, that might be one of the factors in the statutes, that it has to be an extraordinary circumstance. Is there any, is that a new limitation, or is that one of the aspects of one of the factors that you are suggesting would be the tests given to a jury?

**[00:30:39.14] - Stephen Berman**

I think that the pandemic is a factor both sides will use. The plaintiffs will use it to say, you were on notice. This was not the time to take advantage of people. The defendants will say, reasonability defense. We had to raise our prices because there was a supply shortage. They're entitled to put that in on defense totally. And the jury will weigh who's right and who's wrong about that. I want to go (...)

**[00:31:07.15] - Justice Gordon McCloud**

Is that what our opinion should say? That these would be the factors that the plaintiff should bring forward, and the defendant can bring forward other factors in these categories, including supply chain issues, difficulty retaining workers, having to space workers out to avoid contaminat-. Are we supposed to list all of those in the order?

**[00:31:31.00] - Stephen Berman**

I don't think you need to list those because the statute recognizes a reasonability defense, and Amazon is free to raise all those defenses, which I'm sure it will. I don't think it needs to be in your order. The only thing I think needs to be in your order is that if you take the facts as summarized by Judge Lasnik, at page six of his certification order. Those facts state a claim at this stage of the case, under the various tests that I've outlined that this court has recognized.

**[00:32:02.29] - Justice Stephens**

Can I (...) You've said that several times. You referred us to page six. Clearly, Judge Lasnik certified something to us. So if he was confident that this already states a claim under the CPA, what do you think is the question in front of us?

**[00:32:15.05] - Stephen Berman**

The question in front of you is, does it state a claim? Because the court has never addressed the issue. That's why I think he certified it.

**[00:32:22.06] - Justice Stephens**

Then why are you referring to the determinations he made that you reference on page six?

**[00:32:27.29] - Stephen Berman**

I'm just (...)

**[00:32:28.19] - Justice Stephens**

I just see that as saying that there's specific allegations that meet, I guess, I don't know if there's a technical definition of price gouging. We're not referring to any price regulation statute.

**[00:32:41.03] - Stephen Berman**

Well, the point I'm trying to make, your honor, is that Judge Lasnik didn't just look at the 15% or the 20% or the 30%. He didn't see it as a price control case. He never used the word price control. Instead, he looked at these constellations of allegations, which must be accepted as true at this stage, and he said, that appears to me to be unconscionable. Do you, the Washington Supreme Court, agree?

### [00:33:07.11] - Justice Gordon McCloud

But the question, the first question he certified to us is, does the Washington CPA's prohibition on unfair acts or practices comprehend a price gouging claim of the type alleged in the first amended complaint? So then I think we go back to the complaint rather than to Judge Lasnik's summary of the complaint. And there's a lot of 15% all over it, as the rule that you're advancing.

### [00:33:35.13] - Stephen Berman

Well, two responses to that. As to our named plaintiffs, their price gouging was 86% to 836%. We're not alleging 15% as to them. So as to those plaintiffs, the relevant allegations would be those percentages. The 15%, which many states recognize, as Mister Rummage pointed out, is enough. The 15% was put in there largely as an initial attempt to define the class we have to tell.

### [00:34:07.26] - Justice Gordon McCloud

But there it is. And that's the complaint we were asked to comment on.

### [00:34:11.08] - Stephen Berman

But no, you're asked to comment on both: 15% and the price increases that Judge Lasnik referred to, drawn from the complaint, that are as high as 1000%. It's a constellation. And at this point, I don't think the court needs to decide, is 15% unfair or not? That should be after we have discovery. I see my time is getting quick.

### [00:34:36.02] - Justice Madsen

Could I ask one more question about just, you know, what these factors are that we're going to have the jury taking a look at? And you answered Justice Stevens' question by saying that we would look at this on a product by product basis. What do you mean by that? Are there certain products that we would say don't fall within a CPA price? If we said that there is a price gouging sort of claim under the CPA, are there certain products that we would say, no, that's not. We wouldn't include those, because what, they're not, you know, necessities of life or, so can you explain to me what you think? Is there a limitation to the kind of products that could be covered

by a CPA claim? And if there are, what are they? And is that one of the requirements of a CPA claim that we should insert in our, if we were to write an opinion to agree with you?

**[00:35:27.13] - Stephen Berman**

Right now I don't think you need to do that, your honor, because you would say that the complaint, the products identified in the complaint satisfy the initial complaint stage. They suffice. You don't have to decide today which products, but the complaint identifies the products, says all the products were excessively priced, and it'll be for a later day for the court to decide after summary judgment, after class certification, precisely which products in this case survive.

**[00:35:57.15] - Justice Madsen**

But why would there be any products that wouldn't survive regardless? I guess what I'm saying is, are there limitations on what price raises in price on the product? Is it driven by the nature of the product itself, because it's a necessity of life, or is it any product, like, you know, you want to buy a new pair of jeans?

**[00:36:17.28] - Stephen Berman**

Well, right now, the complaint really focuses on essentials, right?

**[00:36:20.26] - Justice Madsen**

I know it does, but does it have to? You're asking us for a broad rule.

**[00:36:24.24] - Stephen Berman**

I'm not asking you.

**[00:36:25.22] - Justice Madsen**

Well, the question does, it says, essentially, is price gouging a claim that can be brought under the Washington CPA and say, as to this product, that product, necessities? So you're asking for a broad rule, and we don't have a statute that limits what those products might be, so (...)

**[00:36:43.09] - Stephen Berman**

All we're asking for is for the court to say, based on the allegations of this complaint, neatly summarized by Judge Lasnik in his order, is there enough to go forward? Is it a prima facie statement of a claim under the CPA? That's all we're asking for. Say two last things, if I may.

Now, Mister rummage said, and I got a question about wouldn't we be interfering with the normal supply and demand, and wouldn't that be a bad thing for courts to do? I refer to the court to statements Amazon has made that we cited in our complaint in our brief. And Amazon told Congress, whenever the demand for basic necessities increases, there are bad actors who try to exploit circumstances by marking up goods in a way that goes far beyond the laws of supply and demand. Amazon knows what's unfair. It told Congress that it's not going to interfere with the laws of supply and demand. And we ask that. See, my time is up. We ask that the court say that the complaint does state a cause of action under the CPA. As to question two, we think the jury can decide these issues based on the constellation of facts I've mentioned, and the judge can review de novo, as a matter of law whether the jury was incorrect or not. Juries make these decisions in courtrooms across this country every day, and there's no reason why they shouldn't in this case.

**[00:38:20.24] - Justice Stephens**

Well, can I ask a follow-up, chief judge?

**[00:38:22.24] - Chief Justice González**

You may, go ahead.

**[00:38:23.25] - Justice Stephens**

I'm not aware of any situation where a jury's specific determination gets de novo review by the court. I mean, typically, the jury, the finder of fact, is there substantial evidence? So explain that to, I think I missed that in the briefing.

**[00:38:37.04] - Stephen Berman**

The de novo part, that's out of the Guijosa case. I'm sure I'm butchering that. It's G U I J O S A, where I believe the court squarely said, the jury makes the initial fact determinations and they're subject to de novo review at the appellate level and by the judge. The trial judge may say, as a matter of law, no, you're wrong. There's no way that verdict can stand. But I think these factual questions, many factual questions, have to be decided by the jury.

**[00:39:05.14] - Justice Keenan**

Thank you.

**[00:39:06.13] - Stephen Berman**

Thank you, your honors.

Rebuttal, please.

Thank you, your honor. I want to do two things in the short time I have remaining. First, I want to kind of do a reset on what exactly we're talking about, because I thought it got a little bit muddled as to what Judge Lasnik did and what he was asking for. And then I want to pivot to the round of answers and questions that were launched by Justice Keenan today. Tomorrow, Judge Keenan's question about how do I instruct a jury, which I think sort of goes to the core of this and implicates a lot of the issues that Justice Stevens and Justice Madsen also raised in follow-up questions. So at first, on kind of the reset, just in terms of what Judge Lasnik did and didn't do. Importantly, he made no findings. Mister Berman refers several times to Judge Lasnik finding this or finding that he made no findings.

But no counsel, but don't we accept the facts? It's true, though, on the twelve essentials.

We do, but of course this isn't before your honors, on a twelve b six. This is before your honor's on a certified question. How that gets treated in the district court after the certified question of law is answered is a matter of federal law for Judge Lasnik to decide. So this isn't here on a motion to dismiss. It's here on a certified question of law limited to that question of law. And I think that's important. So the question before your honors, isn't did plaintiffs state a claim? The question is, as Judge Lasnik posed it, does the CPA comprehend a claim of the type alleged? So I think that's important. I think it's also important to remember, because the question one of the Justices, and I cannot remember which of you are, I apologize, asked the question why did Judge Lasnik certify? Because he says there are competing policy and public interests at stake. And that to me goes to the nub of it. Because that's the problem with the solution plaintiffs proposed, is they want to punt the competing policy and public interest at stake to a jury. They want to, or a judge, depending on how your honors answer the second certified question, if you get that far. And that's wrong, because those are ultimately legislative policy judgments. Let me explain how, what I mean by that in the context of Justice Keenan's question about how do I instruct the jury. So, first of all, Mister Berman's response to how do I instruct the jury was, well, you give them instructions on all four of the tests that you could give for unfairness. There's this

FTC test, there's that FTC test. And then in response to Justice Stevens question, he said, and you do that on a product by product basis. Okay. And so then apparently there's also some sort of geographic element to it, and the jury is then supposed to retire into a room and decide for thousands and thousands of products what the policy of the state of Washington is as to how big a price increase is allowed. Let me make several comments upon that. First of all, the tests that Mister Berman proposes are in fact the FTC tests for unfairness. What Mister Berman forgets, but this court should not, is that those tests were not designed to deal with prices because the FTC has said pricing is outside the scope of the FTC act. So he wants to apply a test, or plaintiffs want to apply a test to this, that the FTC never designed for this purpose. Furthermore, those tests, when you get into the jury room and the jury has to consider those tests, those tests will require, require the jury to make fundamental policy judgments as to, for example, what products are covered. And this was alluded to in dialog with Justice Madsen. Are there some products that will be covered or are all products covered? Mister Berman's complaint actually says not just that essential items are covered, Mister Berman's complaint wants to cover all consumer goods. All consumer goods, all food items. Well, that's a legislative judgment right there. Is that what we want in terms of managing prices during a pandemic or other emergency? He wants to then say, and he did say this morning, we will decide later on which products we want to take to the jury. Well, how is that policy judgment appropriately made in the jury room? So the jury room, that's going to consist of all these decisions being made, no business will have any idea what the law is until the jury makes its decision and comes out. And that is not the way these issues are adjudicated or should be adjudicated. So we ask that the court answer the first certified question, no, and stop there, because the answer to the second certified question is dependent upon a yes answer to the first question. Thank you, your honor.

**[00:44:00.29] - Justice Keenan**

Thank you. Thank you to counsel for the argument and the briefing. The case is submitted. And now we would usually adjourn, but instead, since it's our traveling court program, we open up to questions, and Professor Price is going to help us with that process. Professor Price.

**[00:44:21.10] - Terry Price**

Thank you, chief. Good morning, everyone. For those I have not met, I am associate teaching Professor Terry Price. To echo what Dean Lawson said, we are very pleased and honored to have the Supreme Court here with us today. The Supreme Court has left, I'm particularly not standing here, I'm facing the students like I always do. But the Supreme Court has left time this morning for student questions, for Q and A. And that is why I'm leaving the podium available if students have questions. Remember, we sent out some guidelines. No political questions, no questions about cases pending before the court. And because I suspect there's going to be a lot

of you, kind of be concise. So otherwise we are going to use those red lights on you. Yes. So are there students who have questions?

**[00:45:16.12] - Chief Justice González**

And let me say to counsel, I appreciate it if you can stay, but of course, you're free to leave. If you have other obligations to attend to, your choice.

**[00:45:26.14] - Terry Price**

No takers? All right.

**[00:45:30.07] - Unidentifiable female**

There was a hand over there.

**[00:45:34.19] - Terry Price**

Come on down. That's right.

**[00:45:37.20] - Chief Justice González**

I'm eagerly waiting to see whether my son, who's in the audience, is going to be asking me a question.

**[00:45:45.10] - Unidentifiable female**

Can I borrow the car?

**[00:45:49.28] - Terry Price**

If you can. Your name and what year you are.

**[00:45:52.15] - Caroline Guest**

Hi, my name is Caroline Guest. I am a One L. And thank you again for coming to our school today. I was wondering what the process was for, in the case of Justice Keenan, how do you choose when, if, or who to put on the court when you have someone who is recused for a case?

**[00:46:09.12] - Chief Justice González**

Great question, Justice Madsen. Do you mind answering that one?

### [00:46:12.24] - Justice Madsen

We have a pro tem list. Until recently, only court of Appeals judges were on that pro tem list. And what we would do with the list is we would go down the list and call those. Not we, but our clerk's office would call and see if the judge was available. Recently, we decided to expand that to superior court judges. And that's why Judge Keenan is here, because he is on the superior court. But that is a new aspect of our internal rule. We did ask the King county, or not King county, but the Superior Court Judges' Association, which is a statewide association, to set criteria that they thought might be appropriate for judges of that level of court to sit with the Supreme Court. So not every superior court judge in the state is on list, but there are those who have been designated or, and part of it is voluntary as well, because it's a lot of work to sit on these cases in addition to doing your day job. So we then pick from that list, and it's done on a yearly basis. So you might be called once during a year, but you won't be called twice. And then the next year, you're eligible again to be selected. And it is, as I say, just going down the list to see, and then, if they're not available, on to the next name.

### [00:47:30.20] - Caroline Guest

Thank you.

### [00:47:31.12] - Chief Justice González

Excellent answer. And in addition, before there was a court of appeals, which happened in 1960, 1969, there were only, there were no court of appeals judges to act as pro tems. Once the court of Appeals was established, superior court judges stopped being pro tems and court of appeals judges started. We've simply added them back into the mix. And we alternate one court of appeals judge, one superior court judge, and we try never to draw from the same division of the court of Appeals from which the case derived when cases have gone through the state system.

### [00:48:05.01] - Terry Price

Thanks for being first. Yes. Come on down. And we have some. If there are people who want to be in, be on the next in line, feel free to come on down to these seats. Go ahead

### [00:48:20.19] - Walker McKusick

Good morning, your honors, and thank you for being here. My name is Walker McKusick. I'm a Three L and I'm just curious how you all view this oral argument process as being supplementary to and really helpful to all the briefing you've gotten prior.

**[00:48:37.10] - Chief Justice González**

Thank you, Justice Whitener, do you mind taking that one?

**[00:48:45.20] - Justice Whitener**

Can you hear me now?

**[00:48:46.24] - Chief Justice González**

Yes.

**[00:48:47.29] - Justice Whitener**

Thanks for the question. I think it's important the oral argument process in that, otherwise you have paper, and I think it's important to have councils have the opportunity to argue their position before us. There are cues that can be missed on paper. It can be cold. It's like an email. It doesn't have tone. But I also think more importantly, it's an opportunity for councils who have worked so hard on their briefing to have us as the justices, observe them as they observe us, and have the opportunity to answer questions that we may have after reviewing their briefing. But if they weren't in front of us, we wouldn't have the opportunity to have clarification or, you know, that sort of thing. I enjoy it, having been a litigator and now on the high court, I truly enjoyed because it's very challenging. Councils are very good at what they do, as you found out, and their briefing sometimes is supplemented by their oral advocacy before us and then their interactions with the other justices in responding to the questions is very helpful in coming to a determination on their, on the issue they raise or their case. Very good question. Thank you for asking. Thank you, Chief.

**[00:50:21.11] - Chief Justice González**

Thank you, Justice Whitener.

**[00:50:22.19] - Walker McKusick**

Thank you.

**[00:50:23.17] - Speaker 9**

Thank you.

**[00:50:30.11] - Scott Egnor**

Hello. So I wanted to ask, when you. Have a party that, based on the riefs you've already read and you agree with their position, are you more likely to ask more questions to that party, during all arguments or less likely?

**[00:50:46.23] - Chief Justice González**

Interesting.

**[00:50:49.02] - Terry Price**

And do you want to identify yourself?

**[00:50:50.24] - Scott Egnor**

Oh, and I'm Scott Egnor, I'm One L.

**[00:50:52.02] - Chief Justice González**

Let's ask Justice Gordon McCloud, who asked lots of questions.

**[00:50:57.16] - Justice Gordon McCloud**

I think I'm pretty even handed in asking lots of questions of everybody. You know, I did appellate work as a lawyer before I came onto this court, so I made a lot of predictions as appellate lawyers when I was talking to my clients about, well, they so and so asked a lot of questions. I bet they must have written the prehearing memo. So and so really indicated that. I bet he is writing the opinion afterwards, you know, that was not worth my hourly rate. But I do think that. Right. It was not $1,000, but I do think that you can. I think questions are gifts. I always thought that as a lawyer, because in order for me to have won as a lawyer, I had to get the court to agree with certain things. And if the court told me, well, I'm not sure I'm with you on this, it was like, great. Thank you. Let me do my best job on that one. Thanks for letting me know. If I didn't know, I'd be talking about something else. My questions tend to be about, I really want to understand this better. I really do have a question about this. And I might say, I'm not buying this unless you give me an explanation. And then the lawyer might say something, and I'd say, oh, got it. So I really treated questions as gifts as a lawyer, and I really feel like the opportunity for me to ask questions now is just such a wonderful gift, because I'm almost never certain after I've read the briefs. And I'd really like to share what my concerns are. Maybe the lawyers have an answer, maybe they don't.

**[00:53:07.10] - Scott Egnor**

Thank you.

**[00:53:08.04] - Justice Hu**

Chief, may I add some?

**[00:53:10.04] - Chief Justice González**

Yes, please. Justice Hu.

**[00:53:12.08] - Justice Hu**

The reason why I want to just add something is because I don't ask a lot of questions, and I want to be surethat people would understand. That doesn't translate into lack of interest. And it, some of it has to do with oneself, but sometimes it just has to do with one's practice. Right. I was a trial judge for quite some time, and the posture, often of a child trial judge is listening, and listening very carefully to every single word. And that's not only just of counsel, but I'm really carefully listening to my colleagues. So, again, some things might just pick my interest more, and I might ask a question, or there's something that counsel says that I may want to really push, but I have to just say that the lack of questioning from some justices does not mean interests. It's just different styles.

**[00:54:02.29] - Chief Justice González**

And sometimes the question from a justice is attempting to use counsel to talk to one of our colleagues who might not have that same view.

**[00:54:14.15] - Scott Egnor**

Thank you.

**[00:54:22.21] - Amber Sunset**

Hi, my name is Amber Sunset. I am also a One L. My question kind of piggybacks on that one. I was curious about certain lines of questioning in terms of if there's a pre-meeting where you guys decide or you all decide, kind of who's going to take which angle, or if it really is just a natural progression, just with the way that councils are interrupted to ask certain questions, it seems like there would need to be some sort of strategic plan, but I guess I don't know how that really works.

**[00:54:53.23] - Chief Justice González**

Justice Johnson, would you reveal the strategic (...)

**[00:54:58.05] - Justice Johnson**

I don't know if I've ever employed a general rule. I agree with the chief. Sometimes I'm having a discussion with my colleagues planning a thought that's in my mind that may not be self evident, that sometimes the advocate's response is helpful to whatever I'm thinking about. Sometimes it's not. That isn't the point of my question. I want to get my colleagues to think about what I'm thinking about. The best and the most enjoyable part of oral presentation to me is a conversation, and we think outside of the case presented, and often we have that opportunity and we always have a consideration. Where's this legal theory going? How is it going to develop, and where did it come from? Questioning, to me, it's a reflection that we get a lot of materials in the written form. We've digested it as best we can in a short period of time. We've got some experience and we've got some support help in preparing legal analysis. But really oral arguments, the time for us to mentally focus on that issue, that exact moment. And the parties hit the top of the best arguments they have, and those have to be focused to the benefit of having to write an opinion to resolve the issue. And that's, to me, the aspect of questioning. Where do you want us to go with this? What's the rule you want us to adopt? If you had the pen and you can write the opinion, what would you have it say? That type of thing is very helpful to get the response from the lawyers.

**[00:56:44.00] - Chief Justice González**

Yes, Justice Madsen.

**[00:56:45.17] - Justice Madsen**

I've been on the Court a long time, and we've tried different things. At one point, we did try pre-meet before conference pre-conferencing, essentially, which didn't seem to really work out very well. And I think possibly it's because the arguments do help to kind of focus you, as Justice Johnson said. But there is a lot of informal pre-conferencing that might happen. So I might send an email to one of my colleagues who's reporting on a case and say, I have these concerns, just want you to know so that that can help them to prepare when they, because after this, we're going to go into a conference room and the assignment, justice, is going to talk about their recommendation. So that's informal pre-conferencing. But in terms of strategies, I don't actually think the nine of us do not come together and strategize on how.

**[00:57:44.29] - Chief Justice González**

It wouldn't go well if we tried.

**[00:57:48.13] - Amber Sunset**

Thank you.

**[00:57:49.09] - Justice Stephens**

Can I add one piece of information though that maybe goes without saying? Saying, but maybe not, because you mentioned you are a One L. I think we each have two lawyers who work for us in our chambers as our law clerks. Justice Madsen mentioned that some chambers will have been randomly assigned to help prepare kind of a bench memo summarizing the issues and the arguments. Not every court does it that way. I just want to flag that there are many courts and my understanding from the US Supreme Court is there is no chambers circulated pre-memo. Each chambers does their own work. And some courts, like in Oregon, they do an assignment right after conferencing and the chief assigns a report or actually in circulation, I think in order, they assign out a reporting out memo summarizing the vote. So. And as Justice Madsen mentioned, they've tried different things over the years. So I think that's worth noting. But I just want to, you know, shout out to the law clerks because it's very important. We have, you know, maybe minimum four, up to eight cases a week. And sometimes, you know, you need a lot of things chased down or reactions to one argument or another. Our law clerks are really valuable in helping us work through that.

**[00:59:09.08] - Chief Justice González**

And we also have externs in many of our chambers assisting us with the work and learning at the same time.

**[00:59:15.29] - Amber Sunset**

Thank you.

**[00:59:17.11] - Terry Price**

And if I could just follow on, I think many of them are over here, the law clerks and the externs. And for those of you who may not have seen at 12:30, back in this room after TVW takes its stuff, we are going to have a panel with the law clerks talking about their experience. And a number of you who are interested in clerking may already have signed up for office hours with the law clerks. So we appreciate your being here.

**[00:59:47.24] - Chief Justice González**

Let me ask counsel a question, professor, if that's all right.

**[00:59:51.07] - Terry Price**

Sure.

**[00:59:51.24] - Chief Justice González**

How many hours does it take to prepare for the 20 minutes that you have in front of us? Yes, please.

**[01:00:06.23] - Stephen Berman**

I'll first say, Chief Justice Gonzalez, that my client is sitting at the table with me, so I have to be very careful in how I answer.

**[01:00:16.04] - Chief Justice González**

I didn't ask how many hours are you going to bill.

**[01:00:19.05] - Stephen Rummage**

Well, and of course, then apropos Justice Gordon McCloud's comment, I have to be very careful about that too. It's not 1000. Anyway, the answer obviously varies hugely from case to case. And some cases are narrow issues of textual construction of a statute. And that may just take a few hours. But a case like this where, frankly, there's a lot that could have been brought up in oral argument, because these briefs covered a lot of terrain, including the amicus briefs. So I can't tell you how many hours, but it was a lot. I mean, it probably added up to a week. I don't know, a week's worth of work, but it was more than average, I would say, just because even though the question is narrow, that kind of the terrain it covered is pretty broad. But sometimes it's only a few hours because the issues are very narrow and you know what questions you're going to get yet. I had no idea what your honor should be doing today.

**[01:01:25.29] - Chief Justice González**

Thank you. Mister Berman. Steve.

**[01:01:31.26] - Stephen Berman**

Mister Rummage is a quicker learner than I am, so I spend probably 50 to 60 hours. I say that carefully because I have a bunch of associates here, so that should be the minimum. Again, I think what Mister Rummage says brings true to almost every argument. I have a 25 page outline which covered every issue in this case. I didn't get a word of it, and that usually happens, but that's what you expect. I think it also depends on what kind of court you're in. So, for example, last summer, I did a case in the US Supreme Court where the solicitor general was on my side. So then I had to have four moot courts with the Department of Justice, which took a crazy amount of time. And each time I got done with the moot court, I had to react and do another one. And so I must have spent two months preparing for that argument. And so, you know, the thing is that when you have to do that, if you have a practice like Mister Rummage and I, you know, that's. You know, I got cases all over the place. To spend two months getting ready for something is tough. It's tough. But, you know, when the opportunity comes, it's hugely enjoyable. And I hope all of you get that opportunity one day.

**[01:02:51.08] - Chief Justice González**

Thank you, counsel.

**[01:02:56.03] - Terry Price**

All right, well, if there are no more questions, thank you very much to the Supreme Court for being here today.

**[01:03:01.21] - Chief Justice González**

Thank you again to you.

**[01:03:38.03] - Chief Justice González**

The Supreme Court is adjourned.



# CERTIFICATE OF SERVICE

**Date: 2024/10/18**

To whom it may concern:

This is to certify on behalf of Morningside Translations that:

1. the following service transcription has been executed by a qualified professional;

2. and in our best judgment, the below-referenced services are an accurate representation of the client requirements, and Service completed by this office.

The transcription was completed from:

- English (USA)

To:

- English (USA)

The document(s) are designated as:

- '9728be3e7764c075431882c54ff481463763ad13.mp4'

*Yi-Sheng CHIOU*

Signature of **Yi-Sheng Chiou**, Project Manager