The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ALVIN GREENBERG, MICHAEL STEINBERG, JULIE HANSON, CHRISTINA KING, and RONNELL ROBERTSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:21-cv-00898-RSL<br><br>**PLAINTIFFS' OPPOSITION TO AMAZON'S MOTION FOR PROTECTIVE ORDER UNDER RULE 26(c)(1)**<br><br>NOTE ON MOTION CALENDAR: December 18, 2024<br><br>Oral Argument Requested |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. RELEVANT BACKGROUND ..............................................................................................2

III. LEGAL STANDARD .............................................................................................................5

IV. ARGUMENT ...........................................................................................................................5

    A. Plaintiffs' Class Definition Is Broad Precisely Because That Was the Scope of Amazon's Price-Gouging During the Pandemic. ....................................5

    B. Discovery Regarding All Products in Plaintiffs' Class Is Relevant Based on the Allegations of the Complaint, Including the Wide-Ranging Nature of Amazon's Price Gouging. ........................................................7

    C. Plaintiffs' Discovery Is More Beneficial Than Burdensome Due to Amazon's Prior Productions of the Same Data Requested Here. ............................9

        1. The burden Amazon faces in producing the requested dataset is minimal. ........................................................................................9

        2. If Amazon produces the dataset Plaintiffs have asked for, it will not have to face its own self-imposed burden to manually screen its data. ......................................................................................10

        3. Plaintiffs are not responsible for burdens associated with Amazon's self-imposed third-party discovery. .........................................10

    D. Plaintiffs Would Suffer Significant Prejudice as a Result of the Protective Order ........................................................................................................11

V. CONCLUSION .....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amey v. Cinemark USA Inc*,
 2014 WL 4417717 (N.D. Cal. Sept. 5, 2014) ................................................................................ 6

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
 2017 WL 3433542 (C.D. Cal. Feb. 22, 2017) ............................................................................ 10

*Doninger v. Pac. Nw. Bell, Inc.*,
 564 F.2d 1304 (9th Cir. 1977) ..................................................................................................... 7

*Flynn v. Nevada*,
 345 F.R.D. 338 (D. Nev. 2024) ................................................................................................. 10

*Frame-Wilson v. Amazon.com, Inc.*,
 2023 WL 4201679 (W.D. Wash. Jun. 27, 2023) .................................................................. 9, 10

*Gallegos v. Atria Mgmt. Co.*,
 2017 WL 11743705 (C.D. Cal. Jan. 31, 2017) ............................................................................ 5

*Garner v. Amazon.com, Inc.*,
 2022 WL 716840 ....................................................................................................................... 11

*Greenberg v. Amazon.com, Inc.*,
 553 P.3d 626 (Wash. 2024) ....................................................................................... 3, 7, 8, 9, 11

*Hartman v. United Bank Card, Inc.*,
 291 F.R.D. 591 (W.D. Wash. 2013) ............................................................................................ 6

*Kamm v. City Dev. Co.*,
 509 F.2d 1304 (9th Cir. 1977) ..................................................................................................... 6

*Lyons v. Coxcom, Inc.*,
 718 F. Supp. 2d 1232 (S.D. Cal. 2009) ....................................................................................... 7

*O'Connor v. Boeing N. Am., Inc.*,
 184 F.R.D. 311 (C.D. Cal. 1998) ................................................................................................. 6

*Perez v. Safelite Grp. Inc.*,
 553 F. App'x 667 (9th Cir. 2014) ................................................................................................ 5

*Rivera v. NIBCO, Inc.*,
 364 F.3d 1057 (9th Cir. 2004) ................................................................................................... 11

*In re Roman Catholic Archbishop of Portland in Or.*,
 661 F.3d 417 (9th Cir. 2011) ....................................................................................................... 5

*In re Stubhub Refund Litig.*,
    2022 WL 1640304 (N.D. Cal. May 24, 2022) .......................................................................... 6

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................................................... 5

*In re Wal-Mart Stores, Inc.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .................................................................................... 7

*Whitman v. State Farm Life Ins. Co.*,
    2020 WL 5526684 (W.D. Wash. Sep. 15, 2020) .................................................................. 10

*Wise v. Ring LLC*,
    2022 WL 3083068 (W.D. Wash. Aug. 3, 2022) ..................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 5

Fed. R. Civ. P. 26(b)(2)(iii) ............................................................................................................ 9

Fed. R. Civ. P. 26(c) .................................................................................................................... 10

Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 1, 5

**I.     INTRODUCTION**

More than three and a half years have passed since Plaintiffs filed this action, and despite countless meet-and-confers, Amazon has produced *less than 150 documents*. Now Amazon has moved for a protective order precluding data discovery into products and transactions purchased by unnamed class members *in this class action case*. Amazon's efforts to delay discovery have been persistent, and though its previous efforts have failed, its newly filed motion for a protective order under Rule 26(c)(1) is a clear effort to relitigate them. This motion effectively seeks to stay (if not eliminate) critical class-wide discovery pending resolution of Amazon's Rule 12 motions—a request this Court has already rejected, and which Amazon promised not to revisit. ECF No. 67 at 5. Further, the motion aims to *prelitigate* the sufficiency of Plaintiffs' class definition, almost a year before Amazon's opposition to class certification is due. Both efforts are temporally inappropriate, thinly veiled "second bites at the apple," and Plaintiffs request that the Court reject them and allow Plaintiffs to move forward with class-wide discovery for at least four reasons:

*First,* Plaintiffs' class definition is broad—meriting broad class-wide discovery—precisely because Amazon's price gouging harmed so many consumers. Under Ninth Circuit law, Plaintiffs are entitled to discovery to substantiate their class allegations *before* Amazon challenges the class definition during the class certification stage; it would be harmful to the case and the consumers it seeks to benefit to bypass this stage in favor of a premature challenge to the class definition. *See infra* Section III.A.

*Second*, discovery regarding all products in Plaintiffs' class is independently relevant based on the allegations of wide-spread price gouging in the complaint, which Amazon ignores. The Washington Supreme Court understood Plaintiffs' case to encompass "all consumer goods and food items" on the platform and did not limit it to essential goods, further undermining Amazon's characterization. And transactional data for all products remains relevant regardless of the class definition because it can be used to demonstrate the wide-ranging nature of Amazon's price gouging for purposes of liability. *See infra* Section III.B.

*Third*, Amazon has already produced in a separate case the exact dataset Plaintiffs have requested here—meaning the burden associated with that production is nearly zero—and the other

burdens Amazon proffers are self-imposed and can be avoided by producing the dataset Plaintiffs requested in the first place. To the extent Amazon has identified any cognizable burden, it is substantially outweighed by the value of the data to the claims and defenses asserted in this case. *See infra* Section III.C.

*Fourth*, Plaintiffs would face considerable prejudice from the protective order and would likely have to conclude the case if it were granted. *See infra* Section III.D. In short, Amazon's motion should be denied.

## II.     RELEVANT BACKGROUND

Plaintiffs filed this action in July 2021 alleging widespread price gouging by Amazon during the COVID-19 pandemic. ECF No. 1. In the three and a half years since, the dramatic scale of Amazon's unlawful pricing behavior has continued to drive this lawsuit, with the Court itself describing Plaintiffs' claims as applying to "a vast array of products." ECF No. 51 at 1. Plaintiffs' Second Amended Complaint (ECF No. 66, "SAC") cites studies from both the Public Interest Research Group Education Fund ("PIRG") and Public Citizen demonstrating excessive price increases on Amazon—only some of which were purchased by Named Plaintiffs. SAC ¶¶ 93-101. Indeed, Amazon previously conceded that the "Complaint puts at issue billions of transactions." ECF No. 27 at 7.

Throughout the class period, Amazon knew that price gouging was actively taking place on its platform. This understanding led the company to design and implement its own monitoring system—an automated tool created to identify price gouging across the platform. As of September 2020, this tool reportedly had removed at least ***1,000,000 price-gouged products and 10,000 sellers engaging in price gouging***.[1] However, despite Amazon's awareness that price gouging on its own platform extended far beyond the nine products purchased by Named Plaintiffs, Amazon has yet to produce any information about this monitoring tool and the products it removed.

---

[1] *See* Grace Dean, *Amazon Sellers Are Charging Up to 14 Times More Than Other Retailers for Pandemic Essentials Such as Hand Soap, According to this Price Gouging Report*, BUSINESS INSIDER, Sep. 10, 2020, https://www.businessinsider.com/amazon-price-gouging-sellers-charging-14-times-more-than-competitors-2020-9.

PLS.' OPP'N TO AMAZON'S MOT. FOR
PROTECTIVE ORDER UNDER RULE 26(c)(1) - 2

1   Moreover, Amazon has repeatedly asserted that any price gouging on its site was limited and quickly addressed through its monitoring system. Again, Amazon has yet to produce documents relating to the monitoring system it claimed was in existence to protect consumers. Amazon has further alleged that, despite Plaintiffs' monitoring data showing a spike in "*offer* prices" of various other items on Amazon, Plaintiffs cannot show that anyone other than the Plaintiffs actually *purchased* any products at excessive prices. *See* Appellant's Opening Brief, *Greenberg v. Amazon.com, Inc.*, No. 101858-4, at 11 (Wash. 2023), attached as Ex. F to the Harrington Decl.

Given its centrality to the case, Plaintiffs have requested that Amazon produce offer and transactional data for all products falling within Plaintiffs' class definition. This data—which Amazon now seeks to insulate from discovery[2]—is critical evidence necessary to litigate this case on a class-wide basis and evaluate the claims and defenses asserted, including the extent of Amazon's price gouging during the pandemic, as well as Amazon's asserted efforts to combat the practice. Without this class-wide discovery, Plaintiffs will be unable to establish the widespread nature of the price gouging on Amazon, a central dispute in this case and a showing that must be made to certify a class.

Amazon understands the importance of this discovery, which is why it has resisted each of Plaintiffs' efforts to collect documents and data over the past three and a half years. Plaintiffs issued First Requests for Production ("RFPs") on June 8, 2022, and Amazon immediately filed a motion to stay discovery until a ruling had been made on its motion to dismiss. ECF No. 29. The Court denied Amazon's motion to stay in August of that year, finding that it had "not shown good cause for a protective order." ECF No. 33 at 2. However, Amazon was able to avoid discovery requests for months—both before the Court certified questions to the Washington Supreme Court and stayed the case, and after the Supreme Court ruled in Plaintiffs' favor that price gouging constitutes an "unfair" act or practice under the Washington Consumer Protection Act. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024).

---

[2] Although it is not apparent from Amazon's motion, the parties have reached impasse only as to Plaintiffs' data requests, specifically RFPs 11-13. *See* Harrington Decl. ¶ 2 & Ex. A. Amazon has admitted that it must provide all-products discovery on a number of Plaintiffs' other requests. *See id.*

PLS.' OPP'N TO AMAZON'S MOT. FOR
PROTECTIVE ORDER UNDER RULE 26(c)(1) - 3

To this day, Amazon still has not produced any documents in response to many of the requests propounded in June 2022, including a request to identify the 3,900 price gougers it claimed to have kicked off the platform as of March 2020. It has also not produced any documents or data in response to Plaintiffs' more comprehensive Second RFPs, served on September 13, 2024—including as to the model Amazon used to evaluate price gouging on its platform. Amazon touts in its motion that it "has agreed to produce (and has begun to produce) extensive discovery." Mot. at 5. However, as previously articulated, its production has been considerably more modest. Moreover, Amazon has significantly delayed providing information needed to negotiate basic parameters for discovery, including search terms and custodians. *See* Harrington Decl. ¶ 3.

In sum, while Amazon's prior motion to stay discovery was denied, it is attempting to "back door" a stay, both by delaying productions and, now, by moving for a protective order precluding all class-wide data discovery beyond the nine products purchased by Named Plaintiffs.

Finally, it is notable that Amazon is attempting to limit its data production to nine products while at the same time demanding that Plaintiffs produce discovery for *all* products they purchased from Amazon and *all* products they purchased from other retailers. *See, e.g.*, Harrington Decl. Exs. B (Greenberg RFP No. 4) and C (Greenberg Interrogatory Nos. 6, 8). For example, Amazon has relied on the scope of the class definition to argue that if Plaintiffs "seek to represent a class of all consumers purchasing consumer goods," they must "produce documents reflecting their own purchases of such goods." *See id.* Ex. D at 2 (Nov. 20, 2024 meet-and-confer letter). Amazon explains that "[w]here Plaintiffs insist that all products sold on Amazon.com are properly within the scope of discovery, the probative value of the requested information is clear." *Id*. at 3 And Amazon concludes that its "requests are consistent with [the] breadth of Plaintiffs' proposed class definition and the allegations in their SAC." *Id*. Having staked out this position, in fairness Amazon should likewise produce the class-wide transactional data that Plaintiffs have requested. Amazon cannot have it both ways.

PLS.' OPP'N TO AMAZON'S MOT. FOR
PROTECTIVE ORDER UNDER RULE 26(c)(1) - 4

### III.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).[3] Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). There are certain circumstances in which courts may limit the scope of discovery through the issuance of a protective order, such as "undue burden or expense." Fed. R. Civ. P. 26(c)(1). On a motion for a protective order, the party seeking to limit discovery has the burden of proving "good cause," which requires a showing that "specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). Even if "good cause" exists, the court must balance the interests in allowing discovery against the burdens to the parties. *Id.* at 425. In this case, Plaintiffs' interest in class-wide discovery far outweighs the minimal burden to Amazon of providing discovery that has already been produced in another case.

### IV.     ARGUMENT

**A.     Plaintiffs' Class Definition Is Broad Precisely Because That Was the Scope of Amazon's Price-Gouging During the Pandemic.**

Plaintiffs requested transactional data on all consumer goods and food items sold on Amazon.com between January 31, 2020 and October 20, 2022 because Amazon allegedly engaged in widespread price gouging that affected an entire class of consumers, not just Named Plaintiffs.

"Courts generally recognize the need for pre-certification discovery relating to class issues." *Gallegos v. Atria Mgmt. Co.*, 2017 WL 11743705, at *2 (C.D. Cal. Jan. 31, 2017). Where class-wide discovery is sought, the "plaintiff in a class action bears the burden of showing that discovery is likely to produce substantiation of the class allegations." *Perez v. Safelite Grp. Inc.*, 553 F. App'x 667, 668-69 (9th Cir. 2014) (citing *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985)). But "[o]nce this showing is made, it is an abuse of discretion to deny precertification discovery." *Id.*

Here, the requested data would clearly substantiate Plaintiffs' class allegations. Indeed, "[i]t is difficult to evaluate commonality and predominance without knowing the scale of the conduct at

---

[3] Throughout this memorandum, internal citations and quotations are omitted, and emphasis added, unless otherwise stated.

issue." *In re Stubhub Refund Litig.*, 2022 WL 1640304, at *1 (N.D. Cal. May 24, 2022); *see also Amey v. Cinemark USA Inc*, 2014 WL 4417717, at *3 (N.D. Cal. Sept. 5, 2014) (finding "classwide discovery" necessary for the plaintiffs "to bring their affirmative motion for class certification"). Plaintiffs allege that Amazon engaged in widespread price gouging on the platform throughout the pandemic, and that prices were significantly inflated for the following individuals:

> All persons who purchased any consumer good or food item, including any listed on Appendix A, on Amazon.com between January 31, 2020 and October 20, 2022 whose price was set at an unfair level. The precise identification of unfair prices and when they were in place will be refined after discovery and expert analysis.

SAC ¶ 130. Transactional data will support Plaintiffs' claims that individuals beyond Named Plaintiffs were affected by Amazon's price gouging—and that items beyond the nine purchased by the Named Plaintiffs were sold at excessive prices. And the fact that the class definition may be modified after discovery poses no issue: this happens routinely before class certification. *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 329 (C.D. Cal. 1998) (stating that class definitions are "subject to refinement based upon further development of the record, and can be expanded or contracted if the facts so warrant"); *see also Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013).

In short, it is impossible for Plaintiffs to prove the widespread nature of Amazon's price gouging without the disputed data, making it highly unlikely that the class claims could proceed if Amazon's motion for a protective order were granted. As the Ninth Circuit has long held, the "propriety of a class action cannot be determined in some cases without discovery." *Kamm v. City Dev. Co.*, 509 F.2d 1304, 1313 (9th Cir. 1977).

Amazon argues that Plaintiffs should not be permitted to engage in class-wide discovery because they have not alleged whether each unnamed plaintiff's injuries were reasonably avoidable based on health and safety concerns. Mot. at 6. But this argument is deeply flawed, including because it misinterprets the Washington Supreme Court's opinion. The Supreme Court did *not* restrict liability to items for which there was no reasonable alternative; rather, it affirmed decades of precedent recognizing that litigants can meet their burden of showing "unfair" conduct in a variety of ways.

*Greenberg*, 553 P.3d at 640-41. The Court noted that the question of reasonable avoidance does not even have to be reached if Plaintiffs demonstrate that Amazon's conduct is "in violation of public interest." *Id.* Consequently, Plaintiffs did not have to allege each class member's injuries were reasonably avoidable, much less to get class-wide discovery.

Moreover, it is especially important to permit Plaintiffs their requested discovery because of the information asymmetry present between the parties. In the Ninth Circuit, class-wide discovery is regularly granted when relevant evidence is within the sole possession of the defendant. *See Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Wise v. Ring LLC*, 2022 WL 3083068, at *3 (W.D. Wash. Aug. 3, 2022) (citing *Mantolete*, 767 F.2d at 1424). Here, Amazon has a trove of highly relevant offer and transactional data to which Plaintiffs have no access. And Amazon has pointedly challenged the adequacy of the limited Amazon pricing data that are publicly available, *see* Ex. F, Appellant's Opening Brief, *Greenberg v. Amazon.com, Inc.*, No. 101858-4, at 11 (Wash. 2023), while at the same time attempting to prevent Plaintiffs from getting the comprehensive and higher-quality data in its possession. This is plainly unfair.

Lastly, class certification is the appropriate time for Amazon to challenge Plaintiffs' class definition. Courts have stated that the granting of motions to strike class allegations before discovery has commenced is "rare," because class-wide discovery is necessary to support these claims. *See, e.g., In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("the shape and form of a class action evolves only through the process of discovery"); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009). Amazon has repeatedly tried to circumvent this process, both through its motion to strike class allegations and this motion seeking to preclude the discovery most important to class certification.

**B.  Discovery Regarding All Products in Plaintiffs' Class Is Relevant Based on the Allegations of the Complaint, Including the Wide-Ranging Nature of Amazon's Price Gouging.**

Amazon characterizes Plaintiffs' requested discovery as "virtually all" irrelevant for including billions of transactions purportedly put at issue only by the class definition itself. Mot. at 7-8. But this ignores the actual allegations of the complaint. While the SAC does reference "essential goods"—such as in the context of the CDC advising all Americans to limit in-person shopping excursions to those

for household essentials, *e.g.*, ¶ 80, and explaining the retail scarcity that was occurring due to hoarding, *e.g.*, ¶¶ 81-84, 89, and in discussing studies showing price gouging with respect to certain public-health products, *e.g.*, ¶ 93—Amazon ignores broader references in the SAC:

- ¶ 94 (state attorneys general letter warned Amazon "not [to] take advantage of Americans by selling ***products*** at unconscionable prices");
- ¶ 96 ("Amazon is directly selling ***items*** at significantly above the regular market price despite publicly stating that the company is fighting price gouging.");
- ¶ 97 ("Plaintiffs' independent investigation has confirmed that Amazon sold ***products*** at unlawfully inflated amounts.");
- ¶ 102 ("Amazon is responsible for unlawful price increases on ***all products*** sold on its platform.");
- ¶ 119 (in late February 2020, "Amazon continued to sell ***third-party priced products*** at unconscionably inflated prices");
- ¶ 152 ("Amazon is liable under the WCPA for ***all unlawful prices*** on its platform.");
- ¶ 159 (Amazon is negligent for "[l]isting ***products*** with excessive price increases during the COVID-19 pandemic"); and
- ¶ 165 ("By selling ***consumer goods and food items*** at excessive and inflated prices during the COVID-19 pandemic, Amazon was unjustly enriched.").[4]

Indeed, in *Greenberg*, the Washington Supreme Court repeatedly referred to Plaintiffs' allegations broadly, stating that Plaintiffs alleged Amazon had raised prices on "*many* products," 553 P.3d at 638, and that consumers paid higher prices on "consumer goods and food items," *id.* at 641.

Thus, Plaintiffs' use of the term "essential goods" in the SAC was not meant to limit Plaintiffs' claims, and the proposed class definition affirmatory dispels any such implication. Rather, the term "essential goods" was used for context and to provide additional background on a key driver of Amazon's price gouging. Because individuals were housebound during the COVID-19 pandemic and in-person retail stock was unpredictable, especially hoarded goods, consumers were much more likely to do the bulk of their shopping online. Amazon claims that data related to flowerpots and friendship bracelets would be irrelevant, as items unrelated to health and safety, Mot. at 8, but extreme price

---

[4] *See also* SAC ¶¶ 2, 89, 102.

PLS.' OPP'N TO AMAZON'S MOT. FOR
PROTECTIVE ORDER UNDER RULE 26(c)(1) - 8

increases were likely to have struck consumers regardless of whether they were gardening, crafting, or buying masks—all because they had limited shopping options and Amazon seized the opportunity to hike prices. Further, Amazon has suggested discovery would be irrelevant on items like restaurant supplies or industrial products, because they would not have been purchased by consumers during the pandemic. *Id.* But that is not necessarily the case: for example, some communities bought restaurant supplies in bulk to share with neighbors or run food distribution centers.

Finally, even if certain products were excluded from the class definition, the existence of Amazon's price gouging across all products would remain highly relevant to Plaintiffs' claims. According to the Washington Supreme Court, demonstrating that Amazon's pricing behavior had "widespread impact[]" can support liability under the CPA's unfairness prong. *Greenberg*, 553 P.3d at 641. Accordingly, even in a circumstance in which Plaintiffs' class definition is narrowed, proving that Amazon charged highly inflated prices on a wide array of products is relevant. It shows the scope of Amazon's price gouging, which remains vigorously disputed.

**C.     Plaintiffs' Discovery Is More Beneficial Than Burdensome Due to Amazon's Prior Productions of the Same Data Requested Here.**

A court can limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). Here, production of class-wide discovery is essential if this case is to continue as a class action, and the burdens Amazon asserts are not substantiated and generally self-imposed.

**1.     The burden Amazon faces in producing the requested dataset is minimal.**

Amazon has already produced in other litigation, including to Plaintiffs' law firm, the *exact same dataset* that Plaintiffs have requested here. *See Frame-Wilson v. Amazon.com, Inc.*, 2023 WL 4201679, at *3 (W.D. Wash. Jun. 27, 2023) ("Amazon has already agreed to produce transactional data from completed sales from Amazon's U.S. store for time period 2011 onward."). In nearly-identical circumstances—in which a plaintiff sought to compel the same documents the defendant had already produced to the plaintiff's firm—the Western District of Washington found that production

was *not* burdensome or costly. *See Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684, at *3 (W.D. Wash. Sep. 15, 2020). Plaintiffs are currently awaiting answers from Amazon to determine whether any supplemental fields are required for the production. Supplementation may not be necessary at all, and Amazon may just need to authorize Plaintiffs' counsel to access the data it has already produced in *Frame-Wilson*. However, even if Amazon must supplement its initial *Frame-Wilson* production, it has not offered an argument that supplementation itself would be burdensome, nor could it legitimately. Simply demonstrating that "discovery may involve some inconvenience and expense does not suffice to establish good cause for issuance of a protective order. . . . Some extraordinary justification must be shown to satisfy the good cause requirement of Fed. R. Civ. P. 26(c)." *Flynn v. Nevada*, 345 F.R.D. 338, 343-44 (D. Nev. 2024).

    **2.    If Amazon produces the dataset Plaintiffs have asked for, it will not have to face its own self-imposed burden to manually screen its data.**

Amazon argues that, if it is to identify specific products that could be at issue, it would have to conduct a "labor and time-intensive exercise" to determine whether each of billions of ASINs are an "essential good." Mot. at 9-10. But Amazon *has created that burden itself*. Amazon's burden argument is premised on its insistence that it will not produce all the material Plaintiffs have requested—and that Amazon has produced elsewhere—but rather a narrower subset it asserts is relevant. However, where "hardship is self-imposed, or if [the company] could have avoided it, the fact that it finds itself in an undesirable position will not work against disclosure of the requested information." *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 2017 WL 3433542, at *16 (C.D. Cal. Feb. 22, 2017) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir. 1992)). Simply producing what Plaintiffs have requested—data covering all products in the class definition—would allow Amazon to produce the same document set it previously produced in *Frame-Wilson* without doing any additional screening, manual or otherwise. That would eliminate the asserted burden.

    **3.    Plaintiffs are not responsible for burdens associated with Amazon's self-imposed third-party discovery.**

Amazon argues that producing transactional data for all class members would be burdensome because it would have to issue subpoenas to "thousands of entities" to determine whether each product was available elsewhere. Mot. at 11. As discussed above, however, litigation of the case does not

PLS.' OPP'N TO AMAZON'S MOT. FOR
PROTECTIVE ORDER UNDER RULE 26(c)(1) - 10

require analysis of reasonable alternatives. *Greenberg*, 553 P.3d at 640-41. Again Amazon *has created that burden itself*. Amazon's subpoenas to third parties are not a burden imposed by Plaintiffs—they have been created and disseminated by Amazon as a product of its own legal strategy. Amazon's own discovery plan, and any associated burdens, cannot be used to deny Plaintiffs' class-wide discovery.

### D. Plaintiffs Would Suffer Significant Prejudice as a Result of the Protective Order.

Amazon argues that Plaintiffs would face no prejudice from the protective order, Mot. at 12, but this is both improper burden-shifting and factually incorrect. The burden is upon the party *seeking* the order to "'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). The case to which Amazon cites says the same. *See* Mot. at 12 (citing *Oppenheimer & Co. Inc. v. Mitchell*, 2023 WL 4743909, at *2 (W.D. Wash. July 25, 2023)). Amazon has failed to show that it will be prejudiced by the requested discovery.

In any event, Plaintiffs would suffer significant, irreparable harm as a result of the protective order. If Amazon's argument is that Plaintiffs should never get class-wide discovery, the protective order would end the case. The action is simply not viable as a non-class action suit for nine purchases, as the cost of litigating against Amazon would grossly outweigh any potential individual recovery. On the other hand, if Amazon is arguing that Plaintiffs should acquire this discovery only if the class definition is *not struck* based on Amazon's motion to strike class allegations, it is plainly requesting a stay of discovery—which the Court previously denied, ECF No. 33, and Amazon committed not to renew. ECF No. 67 at 5; *see also Garner v. Amazon.com, Inc.*, 2022 WL 716840, at *1 (W.D. Wash. Mar. 10, 2022 (Lasnik, J.) (observing that a stay would cause prejudice by preventing plaintiffs from working to develop evidence).

### V.     CONCLUSION

Plaintiffs respectfully request that the Court deny Amazon's motion for a protective order.

| | |
|---|---|
| DATED this 13th day of December, 2024 | Respectfully submitted,<br><br>By: /s/*Steve W. Berman*<br>　　Steve W. Berman (SBN 12536)<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>1301 Second Avenue, Suite 2000<br>Seattle, WA  98101<br>Telephone: (206) 623-7292<br>Facsimile:  (206) 623-0594<br>Email: steve@hbsslaw.com<br><br>Ben Harrington (*pro hac vice*)<br>Benjamin J. Siegel (*pro hac vice*)<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>715 Hearst Avenue, Suite 300<br>Berkeley, CA  94710<br>Telephone: (510) 725-3000<br>Facsimile:  (510) 725-3001<br>Email: benh@hbsslaw.com<br>　　　 bens@hbsslaw.com<br><br>*Attorneys for Plaintiffs and the Proposed Class* |

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7(e)(6), I hereby certify that the foregoing memorandum of law was prepared using Microsoft Word, with Times New Roman typeface. The text of the main body of the memorandum of law is 12-point font. The word count of the memorandum of law (excluding the caption, table of contents, table of authorities, signature block, and this certification), as calculated by the word-processing system used to prepare the document, is 4,166 words. Thus, this brief is in compliance with the word count limit set forth in Local Rule 7(e)(2).

Dated: December 13, 2024            By: /s/ *Steve W. Berman*
                                            Steve W. Berman