1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVIN GREENBERG, MICHAEL
STEINBERG, JULIE HANSON,
CHRISTINA KING, and RONNELL
ROBERTSON, on behalf of herself and all
others similarly situated,

                  Plaintiffs,

   and

STATE OF WASHINGTON,

                  Plaintiff-Intervenor,

   v.

AMAZON.COM, INC., a Delaware
corporation,

                  Defendant.

NO. 2:21-CV-00898-RSL

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S OPPOSITION
TO AMAZON.COM, INC.'S MOTION
TO DISMISS

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS....................................................................................... 1

    A.  Amazon's Public Stance Against Price Gouging .................................................. 2

    B.  Plaintiffs' Allegations ........................................................................................... 2

III.  ARGUMENT............................................................................................................. 3

    A.  Amazon Relies Upon the Wrong Standard ......................................................... 3

        1.  The standard for fair notice is especially low for civil statutes like the CPA that only regulate economic activities...................................................... 4

        2.  Amazon's fair notice cases involving criminal penalties or constitutionally protected rights are inapplicable............................................. 5

    B.  The Washington Supreme Court's Response to This Court's Certified Questions Does Not Render the CPA Unconstitutionally Vague ......................... 6

        1.  Washington and federal consumer protection laws consistently have included pricing concerns ........................................................................ 8

        2.  Amazon had constitutionally appropriate notice that price gouging was unfair...............................................................................................13

        3.  The *Greenberg* decision is not a sea change...................................................14

        4.  The substantial injury test is well-accepted and constitutional........................16

    C.  The Washington CPA Has Survived Vagueness Challenges Before .....................17

    D.  Amazon's Vagueness Challenge Would Freeze the CPA in Place .........................19

IV.  CONCLUSION.........................................................................................................21

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - i

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Advance Corp. v. Baltimore Cnty., Maryland,*
No. CV DLB-21-2926, 2022 WL 4225475 (D. Md. Sept. 13, 2022) ...................................14

*Botosan v. Paul McNally Realty,*
216 F.3d 827 (9th Cir. 2000) .........................................................................................4, 5

*Bouie v. City of Columbia,*
378 U.S. 347 (1964) ......................................................................................................4, 5

*Boutilier v. INS,*
387 U.S. 118 (1967) ......................................................................................................4, 5

*Boyce Motor Lines, Inc. v. United States,*
342 U.S. 337 (1952) ..........................................................................................................18

*Brown Fence & Wire Co. v. Fed. Trade Comm'n,*
64 F.2d 934 (6th Cir. 1933) ................................................................................................8

*Butcher v. Knudsen,*
38 F.4th 1163 (9th Cir. 2022) ............................................................................................6

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth,*
556 F.3d 1021 (9th Cir. 2009) ...........................................................................................6

*City of Chicago v. Morales,*
527 U.S. 41 (1999) ..............................................................................................................6

*Coates v. City of Cincinnati,*
402 U.S. 611 (1971) ............................................................................................................5

*Com. by Zimmerman v. Nat'l Apartment Leasing Co.,*
529 A.2d 1157 (Pa. 1987) .................................................................................................18

*Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.,*
219 F. Supp. 3d 878 (S.D. Ind. 2015) ...............................................................................18

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ........................................................................................................3, 6

*Fed. Trade Comm'n v. Algoma Lumber Co.,*
291 U.S. 67 (1934) ............................................................................................................15

*Fed. Trade Comm'n v. Amazon.com, Inc.,*
735 F. Supp. 3d 1297 (W.D. Wash. 2024) ..........................................................................4

*Fed. Trade Comm'n v. Gratz*,
    253 U.S. 421 (1920), *overruling recognized in Fed. Trade Comm'n v. Brown Shoe Co.*, 384 U.S. 316 (1966)..................................................................15

*Fed. Trade Comm'n v. Kochava*,
    671 F. Supp. 3d 1161 (D. Idaho 2023)...........................................................4, 17

*Fed. Trade Comm'n v. Raladam Co.*,
    283 U.S. 643 (1931)........................................................................................7

*Fed. Trade Comm'n v. Sperry & Hutchison Co.*,
    405 U.S. 233 (1972).................................................................................15, 19

*Fed. Trade Comm'n v. Standard Educ. Soc'y*,
    86 F.2d 692 (2d Cir. 1936), *rev'd in part*, 302 U.S. 112 (1937) .........................15

*Fed. Trade Comm'n v. Walmart Inc.*,
    664 F. Supp. 3d 808 (N.D. Ill. 2023), *motion to certify appeal granted,* No. 22 CV 3372, 2024 WL 5054916 (N.D. Ill. Oct. 18, 2024)...........................................17

*Fed. Trade Comm'n v. World Travel Vacation Brokers, Inc.*,
    861 F.2d 1020 (7th Cir. 1988) ......................................................................12

*Fed. Trade Comm'n v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ................................................................3, 4, 5, 14

*Forth v. Walgreen Co.*,
    No. 17-CV-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ............................12

*Greenberg v. Amazon.com, Inc.*,
    3 Wash. 3d 434, 553 P.3d 626 (2024), *as amended* (Aug. 16, 2024) ...............1, 19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778, 719 P.2d 531 (1986) ........................................................20

*Harjoe v. Herz Financial*,
    108 S.W.3d 653 (Mo. 2003) .........................................................................18

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011) ..........................................................................6

*In the Matter of W. Star Beef, Inc., et al.*,
    75 F.T.C. 139 (1969), *modified,* 77 F.T.C. 377 (1970)....................................12

*Ivan's Tire Serv. Store, Inc. v. Goodyear Tire & Rubber Co.*,
    10 Wash. App. 110, 517 P.2d 229 (1973), *aff'd,* 86 Wash. 2d 513, 546 P.2d 109 (1976).........................................................................................................9

*Kaufman v. ACS Sys., Inc.*,
    2 Cal. Rptr. 3d 296 (Cal. Ct. App. 2003) ......................................................18

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974) .................................................................................................8

*Klem v. Wash. Mut. Bank*,
    176 Wash. 2d 771, 295 P.3d 1179 (2013) ................................... 7, 16, 17, 19, 20

*Kucharek v. Hanaway*,
    902 F.2d 513 (7th Cir. 1990) ...............................................................................5

*Leslie v. Quest Diagnostics, Inc.*,
    No. CV171590ESMAH, 2019 WL 4668140 (D.N.J. Sept. 25, 2019) ................12

*Magney v. Lincoln Mut. Sav. Bank*,
    34 Wash. App. 45, 659 P.2d 537 (1983) ......................................................17, 19

*Mellon v. Regional Trustee Servs. Corp.*,
    182 Wash. App. 476, 334 P.2d 1120 (2014) ................................................17, 19

*Nelson v. McGoldrick*,
    127 Wash. 2d 124, 896 P.2d 1258 (1995) .........................................................12

*Nemykina v. Old Navy, LLC*,
    461 F. Supp. 3d 1054 (W.D. Wash. 2020) .......................................................11

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wash. 2d 27, 204 P.3d 885 (2009) .............................................................20

*People by Vacco v. Chazy Hardware, Inc.*,
    675 N.Y.S.2d 770 (N.Y. Sup. 1998) ..................................................................18

*Petstel, Inc. v. King Cnty.*,
    77 Wash. 2d 144, 459 P.2d 937 (1969) .............................................................10

*Reed v. Goertz*,
    598 U.S. 230 (2023) ...........................................................................................16

*Robinson v. Avis Rent A Car Sys., Inc.*,
    106 Wash. App. 104, 22 P.3d 818 (2001) .........................................................11

*Rush v. Blackburn*,
    190 Wash. App. 945, 361 P.3d 217 (2015) ................................................17, 19

*Sabri v. United States*,
    541 U.S. 600 (2004) .............................................................................................3

*Sears, Roebuck & Co. v. Fed. Trade Comm'n*,
    258 F. 307 (7th Cir. 1919) ...........................................................................17, 18

*Seattle Rendering Works, Inc. v. Darling-Delaware Co., Inc.*,
    104 Wash. 2d 15, 701 P.2d 502 (1985) .............................................................11

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - iv

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) .................................................................................................6

*Short v. Demopolis*,
    103 Wash. 2d 52, 691 P.2d 163 (1984) ................................................................11

*State ex rel. O'Connell v. Albertson's, Inc.*,
    68 Wash. 2d 274, 412 P.2d 755 (1966) ............................................................9, 10

*State v. BlueHippo Funding, LLC, et al.*,
    No. 09-2-06785-6 SEA (Wash. Super. Feb. 6, 2009) ...........................................11

*State v. Bunker*,
    169 Wash. 2d 571, 238 P.3d 487 (2010) ..............................................................10

*State v. Ernst Home Center, Inc.*,
    No. 92-2-22809-2, 1992 WL 321057 (Wash. Super. Oct. 2, 1992)........................11

*State v. Kaiser*,
    161 Wash. App. 705, 254 P.3d 850, 859 (2011)...................................................12

*State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*,
    82 Wash. 2d 265, 510 P.2d 233 (1973) ...........................................................11, 18

*State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*,
    87 Wash. 2d 298, 553 P.2d 423 (1976) ...........................................................11, 12

*State v. Reader's Digest Ass'n, Inc.*,
    81 Wash. 2d 259, 501 P.2d 290 (1972) .............................................................6, 19

*State v. Sears*,
    4 Wash. 2d 200, 103 P.2d 337 (1940) ....................................................................9

*Stephens v. Omni Ins. Co.*,
    138 Wash. App. 151 (2007) ..................................................................................16

*Thomas v. Fed. Trade Comm'n*,
    116 F.2d 347 (10th Cir. 1940) ..............................................................................12

*United States v. Backlund*,
    689 F.3d 986 (9th Cir. 2012) .............................................................................5, 14

*United States v. Halverson*,
    No. 22-10057, 2023 WL 4311629 (9th Cir. July 3, 2023) .....................................5

*United States v. L. Cohen Grocery Co.*,
    255 U.S. 81 (1921).................................................................................................6

*United States v. Poindexter*,
    951 F.2d 369 (D.C. Cir. 1991) ...............................................................................6

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - v

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*United States v. Rahimi*,
    144 S. Ct. 1889 (2024) ................................................................................3

*United States v. Raines*,
    362 U.S. 17 (1960) ...................................................................................17

*United States v. Salerno*,
    481 U.S. 739 (1987) ...................................................................................3

*United States v. Sun and Sand Imports, Ltd., Inc.*,
    725 F.2d 184 (2d Cir. 1984) .....................................................................18

*United States v. Vasarajs*,
    908 F.2d 443 (9th Cir. 1990) ....................................................................14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ...............................................................................3, 4

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) .......................................................................3, 16, 17

*Weeks v. Angelone*,
    528 U.S. 225, 120 S. Ct. 727 (2000) ........................................................17

## Statutes

Former Wash. Rev. Code § 19.90.040 (1939) ................................................9

Wash. Laws of 1939, ch. 221 ..........................................................................8

Wash. Laws of 1983, ch. 288, § 1 .................................................................10

Wash. Rev. Code § 19.90.910 (1939) ............................................................10

Wash. Rev. Code Ann. § 19.86.920 ...............................................................20

## Other Authorities

Dave Ross, *Does Washington state need price-gouging laws for natural disasters?*,
    MyNorthwest.com, Sept. 5, 2019 ..............................................................13

H.R. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914) (Conf. Rep.) ...............20

Wash. Attorney General's Office, *AG's Office Warns of Flu Vaccine Price Gouging*
    (Oct. 17, 2004) ..........................................................................................13

Wash. Attorney General's Office, *Attorney General: Watch for Scams in Wake of
    Terrorist Attack* (Sept. 12, 2001) .............................................................13

Wash. Attorney General's Office, *McKenna Announces Energy Crisis Settlement with
    Enron* (July 4, 2005) ................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Wash. Attorney General's Office, *Washington Attorney General aids consumers dunked by BlueHippo*, https://www.atg.wa.gov/news/news-releases/washington-attorney-general-aids-consumers-dunked-bluehippo (Feb. 5, 2009) ....................................................................12

**<u>Regulations</u>**

16 C.F.R. Part 233..............................................................................................12

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - vii

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I.    INTRODUCTION

After trumpeting its efforts to root out price gouging on its platform, Defendant Amazon.com, Inc. now claims that it never could have foreseen that Washington courts would view price gouging as "unfair" under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020 (CPA). In response to a certified question from this Court, the Washington Supreme Court confirmed that the CPA prohibits price gouging. In reaching that conclusion, the court applied long-standing Washington and federal case law, and specifically held that a well-settled standard—the substantial injury test—governs allegations like those at issue in this case. Amazon's purported confusion and surprise at this outcome ring hollow: the CPA has always encompassed unfair pricing conduct, and this latest ruling simply confirms that scope.

The Washington Supreme Court's ruling is a straightforward interpretation of state law. Indeed, Amazon publicly opposes price gouging on its platforms and has pointed its customers and sellers to Washington Attorney General's Office statements that such conduct violates the CPA as support for its stance. Amazon's argument that the CPA as construed by the Washington Supreme Court is both facially and specifically void for vagueness is a constitutional Hail Mary that defies common sense and the facts in the record. It must be rejected.

## II.    STATEMENT OF FACTS

The State has intervened pursuant to 28 U.S.C. § 2403 solely for the limited purpose of defending the constitutionality of the CPA as interpreted and applied by the Washington Supreme Court's decision in *Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 553 P.3d 626 (2024), *as amended* (Aug. 16, 2024).

The parties discuss the underlying factual and procedural background of this matter at length in their briefs. *See* Dkts. 73 and 87. Rather than repeat that discussion, the State focuses on those well-pled facts particularly relevant to the constitutional issue.

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO AMAZON.COM, INC.'S MOTION TO DISMISS - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**A.    Amazon's Public Stance Against Price Gouging**

For years, Amazon has confirmed publicly that price gouging is an unfair practice that it does not tolerate on its platforms. *See, e.g.*, Dkt. 66 (SAC), ¶ 119. During the pandemic, the company announced it had "zero tolerance for price gouging," and had "longstanding policies and systems to prevent this harmful practice." *Id.* ¶ 120; *see also id.* ¶ 1 ("Price gouging has no place in our stores[.]"). In support of its position, Amazon has cited the Washington Attorney General's statements that price gouging violates the CPA and is illegal. *See, e.g.*, Dkt. 88, Exs. A, B, C. These statements include cease and desist letters to at least five Washington-based third-party sellers on Amazon who significantly raised prices on coronavirus-related items during the pandemic. *Id.*, Ex. B. The warnings specifically stated that "[p]rice-gouging during an emergency is morally wrong, *and a violation of the Consumer Protection Act*." *Id.* (emphasis added). Amazon linked to these cease and desist letters from the Attorney General in its own public statements opposing price gouging. *See id.*, Ex. A.

**B.    Plaintiffs' Allegations**

Plaintiffs allege that Amazon exercised significant control over pricing on its platform, including the price of products sold by third-party sellers. *E.g.*, SAC ¶ 115. That control includes certain automated pricing features. *Id.* ¶ 115. Moreover, Plaintiffs allege that Amazon "knew third-party suppliers would increase prices by unconscionable amounts during the pandemic, and knowingly allowed it to happen." *Id.* ¶ 116. This, despite having "dynamic automated technology to proactively seek out and pull down unreasonably priced offers." *Id.* ¶ 121. Importantly, Plaintiffs allege that "Amazon also cannot attribute the price increases on its platform . . . to increased costs," and that the price increases "exceed any plausible cost increase in supplying the price-gouged goods." *Id.* ¶ 123; *see also id.* ¶ 151.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 2

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### III.    ARGUMENT[1]

**A.    Amazon Relies Upon the Wrong Standard**

"Facial challenges are disfavored for several reasons, including the fact that they "often rest on speculation" and "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Moreover, "[f]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. The United States Supreme Court has likewise reaffirmed the "no set of circumstances" requirement for facial challenges, reiterating that a facial challenge "is the 'most difficult challenge to mount successfully[.]'" *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Amazon's request that this Court find the CPA unconstitutional cannot meet these high bars.

A statute is unconstitutionally vague only if it does not provide sufficiently fair notice of the forbidden conduct. Indeed, "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc. ("Fox II")*, 567 U.S. 239, 253 (2012). This principle is grounded in the due process clause of the Fourteenth Amendment. What is sufficient to constitute "fair notice" depends on the subject matter of the statute in question. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249 (3d Cir. 2015). "[E]conomic regulation is subject to a less strict vagueness test" than laws that "threaten[] to inhibit the exercise of constitutionally protected rights" such as "the right of free speech or of

---

[1] The State agrees with Plaintiffs' arguments regarding the constitutionality of the CPA (*see* Dkt. 87 at 12-18) and writes separately to provide the Court with additional authority and historical background regarding the CPA and Washington's laws related to pricing. The State takes no position regarding other issues in this litigation.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

association." *Village of Hoffman*, 455 U.S. at 498-99. Because this case does not involve criminal penalties, protected speech, or another independently protected constitutional right—and instead implicates only routine economic activity—the fair notice standard here is especially low.

### 1. The standard for fair notice is especially low for civil statutes like the CPA that only regulate economic activities

Fair notice concerns are lowest in cases – like this one – where the statute in question is a civil law regulating purely economic activity. *Village of Hoffman*, 455 U.S. at 498-99; *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) ("Because the ADA is a statute that regulates commercial conduct, it is reviewed under a less stringent standard of specificity."); *Wyndham Worldwide*, 799 F.3d at 249 ("The standards are especially lax for civil statutes that regulate economic activities."); *Fed. Trade Comm'n v. Kochava*, 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) (citing *Boutilier v. INS*, 387 U.S. 118, 123 (1967)); *see Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1329-30 (W.D. Wash. 2024). In contrast, Amazon erroneously asks the court to apply a strict fair notice standard here. *See, e.g.*, Dkt. 73 at 19 ("Laws cannot be 'unforeseeably and retroactively expanded by judicial construction.'" (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964) (criminal case))); Dkt. 98 at 10 n.4. Strict application of the fair notice requirement, however, applies only in criminal cases or where the statute threatens to inhibit the exercise of constitutionally protected rights such as free speech or association. *Village of Hoffman*, 455 U.S. at 498-99. Even in such cases, a conviction or finding of liability based on a court's interpretation of the statute would violate due process only "if the defendant could not reasonably foresee that a court might adopt the new interpretation of the statute." *Wyndham Worldwide*, 799 F.3d at 249. Amazon does not contend that the CPA's unfairness prong implicates a constitutionally protected right in this case.

When applying the correct vagueness standard to the CPA, a civil statute regulating economic activity, "a party lacks fair notice [only] when the relevant standard is so vague as to be no rule or standard at all." *Wyndham Worldwide*, 799 F.3d at 250 (internal quotation marks

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    omitted); *see Boutilier*, 387 U.S. at 123. Indeed, precision in the statutory text or judicial

2    interpretation is unnecessary; a civil statute regulating economic activity is not overly vague if

3    it "prohibits conduct according 'to an imprecise but comprehensible normative standard."

4    *Botosan*, 216 F.3d at 836 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

5        Under this standard there will be "borderline cases" where, *ex ante*, it is not entirely clear

6    whether conduct falls within the prohibitions of the civil statute. But that lack of specificity is

7    not a constitutional problem in this context. "[U]nder a due process analysis a company is not

8    entitled to such precision as would eliminate all close calls." *Wyndham Worldwide*, 799 F.3d at

9    255-56; *see Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (Posner, J.) ("A statute

10   may contain a serious ambiguity; this will not in itself make the statute vague . . . . A statute that

11   contains one or several ambiguities that can be dispelled at a stroke by interpretation is not open

12   to that objection and therefore is not vague in the constitutional sense.").

13       Finally, a defendant cannot complain that a statute is vague as applied to them (or

14   facially) if they had actual notice that their conduct was proscribed. *See United States v.*

15   *Backlund*, 689 F.3d 986, 997 (9th Cir. 2012) ("[Defendants . . . had actual notice that their use

16   of National Forest System lands violated Forest Service regulations . . . . Accordingly, there is

17   no due process problem here."); *United States v. Halverson*, No. 22-10057, 2023 WL 4311629,

18   at *2 (9th Cir. July 3, 2023).

19       **2.    Amazon's fair notice cases involving criminal penalties or constitutionally**
20       **protected rights are inapplicable**

21       Defendants ignore critical distinctions in vagueness challenges, citing several criminal

22   and constitutional rights cases in support of their fair notice arguments. The analysis applied in

23   those cases is simply inapplicable here where the court must analyze only whether the statute

24   included "an imprecise but comprehensible normative standard." *Botosan*, 216 F.3d at 836.

25       Many of the cases Amazon cites in support of its fair notice arguments are wholly

26   distinguishable criminal cases. *See* Dkt. 73 at 19 (citing *Bouie*, 378 U.S. at 352), 22

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   (citing *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921); *United States v. Poindexter*,

2   951 F.2d 369 (D.C. Cir. 1991)). Several other of Amazon's cases dealt with civil statutes that

3   implicated constitutional rights. *See* Dkt. 73 at 19 (citing *Butcher v. Knudsen*, 38 F.4th 1163 (9th

4   Cir. 2022) (First Amendment speech); *Fox II*, 567 U.S. at 253 (First Amendment speech)), 23

5   (citing *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021

6   (9th Cir. 2009) (First Amendment speech)).

7          Amazon also cites a concurring opinion by Justice Gorsuch in *Sessions v. Dimaya*,

8   584 U.S. 148, 183 (2018), an immigration removal case. But that case also applied a high bar in

9   its fair notice analysis. *Id.* at 156 (majority op.) ("[W]e long ago held that the most exacting

10  vagueness standard should apply in removal cases."). Here, the constitutional concerns that

11  animate the high standard in criminal or removal cases are simply not present.

12         Two cases on which Amazon relies, *City of Chicago v. Morales*, 527 U.S. 41 (1999), and

13  *Hunt v. City of Los* Angeles, 638 F.3d 703 (9th Cir. 2011), analyzed statutes that involved

14  criminal penalties and "infringed on constitutionally protected rights." *Morales*, 527 U.S. at 55;

15  *Hunt*, 638 F.3d at 712 ("[W]here criminal sanctions are involved and/or the law implicates First

16  Amendment rights such as here, a "more demanding" standard of scrutiny applies."). The CPA

17  in this case, of course, implicates neither the criminal law nor any constitutionally protected

18  right. Indeed, none of the cases Amazon cites involve civil statutes like the CPA that regulate

19  purely economic activity.

20  **B.     The Washington Supreme Court's Response to This Court's Certified Questions
           Does Not Render the CPA Unconstitutionally Vague**

21

22         As detailed above, the standard for fair notice is especially low in this case, and the CPA

23  has survived the same constitutional scrutiny many times in the past. In *Greenberg*, the

24  Washington Supreme Court's opinion followed "'the gradual process of judicial inclusion and

25  exclusion'" of the meaning of the term "unfair" that both the Washington Supreme Court and

26  the U.S. Supreme Court approved decades ago. *State v. Reader's Digest Ass'n, Inc.*,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  81 Wash. 2d 259, 274, 501 P.2d 290 (1972) (quoting *Fed. Trade Comm'n v. Raladam Co.*,

2  283 U.S. 643, 648 (1931)).

3      Amazon's vagueness argument is based on a faulty premise—that somehow the CPA has

4  been "moored" or otherwise constrained by federal law. Dkt. 73 at 20. Amazon cannot credibly

5  have believed the CPA is tethered to federal law when Washington's courts have long been clear

6  "Washington has developed its own jurisprudence regarding application of Washington's CPA."

7  *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179 (2013). Nevertheless, Amazon

8  posits, the concept of unfairness "as interpreted by the [Washington] Supreme Court—is

9  unconstitutionally vague as applied to conduct no similar federal or state statute has ever been

10  understood to regulate: pricing." Dkt. 73, p. 20. This argument fails out of the gate because

11  Washington has regulated pricing since at least 1939, and federal law has regulated pricing for

12  just as long. By stating that these protections include price gouging, the *Greenberg* court merely

13  applied this body of prior case law to the question before it. Simply put, Amazon has been on

14  notice since the company's inception that pricing issues raise consumer protection concerns, and

15  so many states have regulated price gouging for so long that Amazon easily has been able to

16  "*prospectively* conform [its] conduct to the law" for decades. *Id.* at 21 (italics in original).

17  Amazon's long-running and public regulation of price gouging on its own platform and reliance

18  on the Attorney General's statements that price gouging violates the CPA only confirm Amazon

19  had actual notice that the CPA covered price gouging throughout the conduct at issue.

20  *See, e.g.*, Dkt. 88, Exs. A, B, C. For the company to now claim that it had no notice that price

21  gouging is an unfair business practice is absurd.

22      Finally, Amazon's claim that the Washington Supreme Court's opinion in *Greenberg*

23  effectively means there is no test for unfairness is incorrect. The Washington Supreme Court

24  adopted a long-standing, readily ascertainable test taken directly from FTC case law.

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    **1.    Washington and federal consumer protection laws consistently have**
2    **included pricing concerns**

3    Amazon contends that the CPA's unfairness prong, as interpreted by the *Greenberg*
4    court, is unconstitutionally vague because "no similar federal or state statute has ever been
5    understood to regulate [] pricing." Dkt. 73, p. 20. This is demonstrably incorrect.

6    As the U.S. Supreme Court recognized fifty years ago, the "necessity of good faith and
7    honest, fair dealing, is the very life and spirit of the commercial world." *Kewanee Oil Co. v.*
8    *Bicron Corp.*, 416 U.S. 470, 481-82 (1974). This is not a new concept, and Amazon cannot
9    legitimately express surprise that consumer protection laws like the CPA require the company
10   to deal fairly with consumers and utilize honesty and good faith. The fact that consumer
11   protection laws evolve to face and address new and inventive ways to separate consumers from
12   their money is the very lifeblood of the CPA, not its unconstitutional undoing.

13   Moreover, "[p]rice is so fundamental a factor in merchandising, and so persuasive in
14   drawing customers to one competitor and from others," *Brown Fence & Wire Co. v.*
15   *Fed. Trade Comm'n*, 64 F.2d 934, 936 (6th Cir. 1933), that it has played a central role in
16   consumer protection litigation since the very origins of 20th century consumer protection laws.
17   Since the formation of the FTC and the passage of the FTC Act, consumer protection laws—
18   including those in Washington— consistently have covered pricing issues. Amazon cannot claim
19   surprise, let alone surprise of a constitutional magnitude, that the Washington Supreme Court
20   concluded at the motion to dismiss stage that price gouging is included in these long-standing
21   protections.

22   In 1939, the Washington Legislature passed the Unfair Practices Act, codified at
23   Wash. Rev. Code § 19.90.010-.920. *See* Wash. Laws of 1939, ch. 221, at 923. Among other
24   things, the Unfair Practices Act directly prohibited a list of deceptive and unfair pricing acts and
25   practices, such as differential pricing, loss leaders, and secret rebates:

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1
2
3
4
5
6

It shall be unlawful for any person engaged in business within this state to sell any article or product At less than the cost thereof to such vendor, or give away any article or product, for the purpose of injuring competitors or destroying competition, or to use any article or product as a 'loss leader, ' or in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise, or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, or to make or enter into any collateral contract or device of any nature, whereby a sale below cost in effected, to the injury of a competitor, and where the same destroys or tends to destroy competition.

7  Former Wash. Rev. Code § 19.90.040 (1939) (quoted in *Ivan's Tire Serv. Store, Inc. v. Goodyear*

8  *Tire & Rubber Co.*, 10 Wash. App. 110, 114–15, 517 P.2d 229 (1973), *aff'd,* 86 Wash. 2d 513,

9  546 P.2d 109 (1976)). Much like other consumer protection laws, the Unfair Practices Act

10  survived an almost immediate challenge that its terms were unconstitutionally vague. *State v.*

11  *Sears*, 4 Wash. 2d 200, 214–17, 103 P.2d 337 (1940).

12      Although Washington courts did not have frequent occasion to opine on the Unfair

13  Practices Act, Justice Hale's dissent in *State ex rel. O'Connell v. Albertson's, Inc.*, reaffirms that

14  the Unfair Practices Act was, like the CPA after it, a consumer protection statute designed to

15  ensure fair and honest commercial transactions in Washington:

16
17
18
19
20

The Unfair Practices Act was thus designed to exercise the state's police powers in the field of trade and commerce; to convert the predator into a competitor; to curtail the senseless and vicious practices inherent in cut-throat competition and to narrow the areas of competition so that every merchant would have at least a fair start in the race for business; to assure that every competitor began the competitive race at the point of selling his merchandise above cost, and thus reserving for the field of fair competition such activities as planning, buying, advertising, service, courtesy, credit, general efficiency and the multifarious skills inherent in the merchandising process.

21

22  68 Wash. 2d 274, 288, 412 P.2d 755 (1966) (Hale, J., dissenting). Much like the CPA, the Unfair

23  Practices Act also contained a liberal construction mandate:

24
25
26

The Legislature declares that the purpose of this act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    or prevented. This chapter shall be liberally construed that its beneficial purposes
2    may be subserved.

3    Wash. Rev. Code § 19.90.910 (1939) (quoted in *Albertson's*, 68 Wash. 2d at 288 n.3). To be

4    clear, the State is not arguing that the Unfair Practices Act directly prohibited price gouging – it

5    did not. *See Petstel, Inc. v. King Cnty.*, 77 Wash. 2d 144, 160, 459 P.2d 937 (1969) (noting that

6    the Unfair Practices Act did not "attempt[] to directly alleviate injuries to consumers resulting

7    from excessive charges"). Rather, the Unfair Practices Act is one example of the fact that pricing

8    issues long have been part of the fabric of consumer protection laws in Washington and

9    elsewhere.

10        In 1983, the Washington Legislature repealed the Unfair Practices Act, finding that its

11    protections were essentially already integrated into the CPA, which was passed in 1961.

12    Wash. Laws of 1983, ch. 288, § 1 (stating the purposes of the amendments "are to strengthen

13    public and private enforcement of the unfair business practices-consumer protection act,

14    chapter 19.86 RCW, and to repeal the unfair practices act, chapter 19.90 RCW, in order to

15    eliminate a statute which is unnecessary in light of the provisions and remedies of chapter 19.86

16    RCW"). In doing so, the Legislature made clear that the pricing practices outlawed by the Unfair

17    Practices Act continued in the CPA:

18        In repealing chapter 19.90 RCW, it is the intent of the legislature that
         chapter 19.86 RCW should continue to provide appropriate remedies for
19        predatory pricing and other pricing practices which constitute violations of
         federal antitrust law.
20

21    *Id.* Although Amazon wishes the final clause regarding federal antitrust laws to modify both

22    "predatory pricing" and "other pricing practices," this is not correct. Under the last antecedent

23    rule, "qualifying or modifying words and phrases refer to the last antecedent." *State v. Bunker*,

24    169 Wash. 2d 571, 578, 238 P.3d 487 (2010). This comports with the text of the Unfair Practices

25    Act, which did not require a violation of federal antitrust laws. The same is true of the CPA.

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    The fact that the CPA already covered pricing issues by 1983 is borne out by the

2    Washington Supreme Court's decision in *State v. Ralph Williams' N. W. Chrysler Plymouth,*

3    *Inc.*, 87 Wash. 2d 298, 553 P.2d 423 (1976) (*Ralph Williams II*). In that case, the court touched

4    on several different ways that pricing could violate the CPA, including: "refus[ing] to give the

5    prices of other cars or quot[ing] prices lower than the actual sales prices"; "price

6    misrepresentations by presenting evidence which proved that appellants' prices were higher than

7    their advertised prices and higher than their competitors' prices"; and charging "unconscionable

8    prices for a number of their automobiles." 87 Wash. 2d at 306, 317 n.12, and 320.[2]

9    In the years since the 1983 amendments to the CPA, multiple Washington cases have

10   touched on pricing concerns. *See, e.g.*, *Short v. Demopolis*, 103 Wash. 2d 52, 61, 691 P.2d 163

11   (1984) ("how the price of legal services is determined, billed, and collected" is within the scope

12   of the CPA); *Seattle Rendering Works, Inc. v. Darling-Delaware Co., Inc.*, 104 Wash. 2d 15,

13   20-22, 701 P.2d 502 (1985) (predatory pricing is illegal under the CPA); *Robinson v.*

14   *Avis Rent A Car Sys., Inc.*, 106 Wash. App. 104, 115–16, 22 P.3d 818 (2001) (holding that

15   "quoting a car rental price that does not include a concession fee that is also charged" violates

16   the CPA "absent disclosure of that fee"); *see also Nemykina v. Old Navy, LLC*,

17   461 F. Supp. 3d 1054, 1060 (W.D. Wash. 2020) (advertising relating to clothing prices fall

18   within the scope of the CPA). The Attorney General's Office also has prosecuted pricing cases

19   under the CPA. *See, e.g.*, *State v. Ernst Home Center, Inc.*, No. 92-2-22809-2, 1992 WL 321057

20   (Wash. Super. Oct. 2, 1992) [consent decree]; *State v. BlueHippo Funding, LLC, et al.*,

21   No. 09-2-06785-6 SEA (Wash. Super. Feb. 6, 2009) [consent decree at https://agportal-

22   s3bucket.s3.amazonaws.com/uploadedfiles/Home/News/Press_Releases/2009/BlueHippoCons

23

24       [2] The court also noted pricing issues in its earlier decision in that same case: "specific
     prices advertised were not representative or illustrative of defendants' usual range of prices" and
25   "[t]he total prices charged for cars and services were unconscionable and illegal." *See State v.*
     *Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 82 Wash. 2d 265, 269, 510 P.2d 233 (1973)
26   (*Ralph Williams I*).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   entDecree020609.pdf]; Wash. Attorney General's Office, *Washington Attorney General aids*

2   *consumers dunked by BlueHippo*, https://www.atg.wa.gov/news/news-releases/washington-

3   attorney-general-aids-consumers-dunked-bluehippo (Feb. 5, 2009) (last visited Jan. 28, 2025).

4          Cases under the FTC Act are in accord. *See, e.g.*, *Fed. Trade Comm'n v. World Travel*

5   *Vacation Brokers, Inc.*, 861 F.2d 1020, 1023 (7th Cir. 1988) (pricing of airline tickets within the

6   scope of FTC Act); *In the Matter of W. Star Beef, Inc., et al.*, 75 F.T.C. 139 (1969), *modified,*

7   77 F.T.C. 377 (1970) (pricing of beef within the scope of the FTC Act); *Thomas v. Fed. Trade*

8   *Comm'n*, 116 F.2d 347, 349 (10th Cir. 1940) (deceptive pricing of feather quilts amounts to

9   "unfair methods of competition in commerce and unfair and deceptive acts and practices in

10  commerce"). So are cases under other states' consumer protection laws. *See, e.g.*, *Leslie v. Quest*

11  *Diagnostics, Inc.*, No. CV171590ESMAH, 2019 WL 4668140, at *4 (D.N.J. Sept. 25, 2019)

12  (holding that plaintiff's claims of "unreasonable, unfair, or excessive" prices stated a claim under

13  New Jersey and North Carolina consumer protection statutes); *Forth v. Walgreen Co.*, No. 17-

14  CV-2246, 2018 WL 1235015, at *9, 12-13 (N.D. Ill. Mar. 9, 2018) (holding plaintiffs'

15  allegations of fraudulent pricing practices stated a claim under the Ohio Deceptive Trade

16  Practices Act, Texas Deceptive Trade Practices Act, and New York consumer protection laws).

17  The Code of Federal Regulations has contained broad prohibitions of certain pricing practices

18  since 1967. *See* 16 C.F.R. Part 233 (original found at 32 FR 15534 (Nov. 8, 1967) *available at*

19  https://archives.federalregister.gov/issue_slice/1967/11/8/15523-15540.pdf (last visited on Jan.

20  28, 2025)).

21         Additionally, under Washington law, grossly excessive prices can render a contract

22  unconscionable. *Nelson v. McGoldrick*, 127 Wash. 2d 124, 132, 896 P.2d 1258 (1995) ("gross

23  excessiveness of price rendered contracts unconscionable"). It is similarly established that

24  "[g]rossly unfair or unconscionable contracts also violate the CPA." *State v. Kaiser*,

25  161 Wash. App. 705, 722, 254 P.3d 850, 859 (2011) (citing *Ralph Williams II,* 87 Wash.2d at

26  309).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    As these cases show, there is nothing special about prices that removes them entirely

2    from the ambit of state and federal consumer protection statutes. They have long been subject to

3    the nationwide tradition of protecting the public from unfair business practices.

4    **2.    Amazon had constitutionally appropriate notice that price gouging was**
**       unfair**

5

6    The decades of cases and statutes covering pricing concerns in Washington and beyond

7    conclusively establish that Amazon had constitutionally appropriate notice, particularly in light

8    of the low standard for notice discussed in Part III.A.1, *supra*.

9    If constructive notice was not enough, Amazon had actual notice that price gouging

10   violated the CPA. Dkt. 66, ¶¶ 7, 8, 120; Dkt. 87 at 3-4. The Court also can take judicial notice

11   that, for over two decades, the Attorney General's Office has consistently and publicly stated

12   that price gouging violates the CPA. *See* Wash. Attorney General's Office, *Attorney General:*

13   *Watch for Scams in Wake of Terrorist Attack* (Sept. 12, 2001), *available at*

14   https://www.atg.wa.gov/news/news-releases/attorney-general-watch-scams-wake-terrorist-

15   attack ("Gregoire said Attorneys General are taking legal action to stop the excessive price

16   increases. Here in Washington, she has directed her Consumer Protection Division to watch for

17   unusually high prices and take appropriate action.") (last visited Jan. 28, 2025); Wash. Attorney

18   General's Office, *AG's Office Warns of Flu Vaccine Price Gouging* (Oct. 17, 2004), *available*

19   *at*    https://www.atg.wa.gov/news/news-releases/ag-s-office-warns-flu-vaccine-price-gouging

20   (last visited Jan. 28, 2025); Wash. Attorney General's Office, *McKenna Announces Energy*

21   *Crisis Settlement with Enron* (July 4, 2005), *available at* https://www.atg.wa.gov/news/news-

22   releases/mckenna-announces-energy-crisis-settlement-enron (last visited Jan. 28, 2025);

23   Dave Ross, *Does Washington state need price-gouging laws for natural disasters?*,

24   MyNorthwest.com, Sept. 5, 2019 (quoting Sept. 2019 statement by former Attorney General

25   Rob McKenna: "We don't have a separate price gouging statute because we think that our

26   consumer protection law — which prohibits unfair, deceptive acts or practices by a business —

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   is all we need."), *available at* https://mynorthwest.com/1501485/washington-state-price-

2   gouging-laws-mckenna/ (last visited Jan. 28, 2025).

3          Statements from the Attorney General's Office on whether the CPA covers price gouging

4   should be considered when evaluating Amazon's vagueness challenge. *See Wyndham*

5   *Worldwide*, 799 F.3d at 257 (in assessing fair notice in a vagueness challenge "courts regularly

6   consider materials that are neither regulations nor adjudications on the merits"). "Where, as here,

7   a party has pled actual notice of the proscribed conduct . . . a void for vagueness challenge fails."

8   *Advance Corp. v. Baltimore Cnty., Maryland*, No. CV DLB-21-2926, 2022 WL 4225475, at *8

9   (D. Md. Sept. 13, 2022)*; accord Backlund*, 689 F.3d at 997 (finding "no due process problem"

10  where the defendant had actual notice of the proscribed conduct because "the Forest Service

11  explicitly informed him that his residency was not authorized by the mining laws and

12  regulations"); *United States v. Vasarajs*, 908 F.2d 443, 449 (9th Cir. 1990) (rejecting vagueness

13  challenge where the defendant received actual notice by virtue of posted signs).

14         **3.     The *Greenberg* decision is not a sea change**

15         Amazon next argues that the *Greenberg* court's "newly announced interpretation of the

16  CPA to govern price gouging is not grounded in any pre-existing federal or state standards, it

17  fails to provide businesses with *ex ante* fair notice of the scope of the statute, as due process

18  requires." Dkt. 73 at 21. As detailed above, though, Amazon has known since the company's

19  inception that the CPA and the FTC Act cover pricing concerns. The *Greenberg* decision is but

20  the most recent in a century's worth of expansion and contraction at the edges of what constitutes

21  unfair and deceptive acts and practices in consumer protection law. In this way, *Greenberg* is

22  not the sea change Amazon proclaims. Instead, it is just part of the sea itself.

23         Although Amazon seems to express shock and disdain at the judicial conclusion that

24  price gouging violates the CPA, the iterative process is not only long-established in Washington,

25  it is part of the fabric of the FTC Act long ago woven by the U.S. Supreme Court. The first

26  threads of this fabric were put in place by Justice Brandeis more than a century ago:

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 14

> Experience with existing laws had taught that definition, being necessarily rigid, would prove embarrassing and, if rigorously applied, might involve great hardship. Methods of competition which would be unfair in one industry, under certain circumstances, might, when adopted in another industry, or even in the same industry under different circumstances, be entirely unobjectionable. Furthermore, an enumeration, however comprehensive, of existing methods of unfair competition must necessarily soon prove incomplete, as with new conditions constantly arising novel unfair methods would be devised and developed.

*Fed. Trade Comm'n v. Gratz*, 253 U.S. 421, 436-37 (1920) (Brandeis, J., dissenting), *overruling recognized in Fed. Trade Comm'n v. Brown Shoe Co.*, 384 U.S. 316 (1966). Justice Brandeis' dissent went on to become the majority opinion of the U.S. Supreme Court a little over a decade later.

Since that time, the U.S. Supreme Court has stressed that this process of gradual inclusion and exclusion is as much based upon the values of the public at large as anything else. *See, e.g.*, *Fed. Trade Comm'n v. Sperry & Hutchison Co*. 405 U.S. 233, 244 (1972) (in evaluating what amounts to unfairness under the FTC Act, the FTC "like a court of equity, considers public values beyond simply those enshrined in the letter or encompassed in the spirit of the antitrust laws"); *Fed. Trade Comm'n v. Standard Educ. Soc'y*, 86 F.2d 692, 696 (2d Cir. 1936), *rev'd in part*, 302 U.S. 112 (1937) (the role of the FTC "in part at any rate, is to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop"). Thus, from the earliest days of the FTC, courts have repeatedly rejected the contention that a violation of the FTC Act must be based upon some prior precedent. *See, e.g.*, *Fed. Trade Comm'n v. Algoma Lumber Co.*, 291 U.S. 67, 79-80 (1934) ("According to the law as then adjudged, many competitive practices that today may be suppressed . . . were not actionable wrongs, the damage to the complainants being classified often as collateral and remote;" noting that "[s]ilence up to that time is not even a faint token that the" complained-of behavior was acceptable.).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 15

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Washington law has always followed suit because it "is impossible to frame definitions

2    which embrace all unfair practices." *Klem*, 176 Wash. 2d at 786*; accord Stephens v. Omni Ins.*

3    *Co.*, 138 Wash. App. 151, 172 (2007) ("The absence of regulation specifically directed" at a

4    defendant's conduct does not mean that the conduct is "exempt from suit under the [CPA].").

5    "Even if all known unfair practices were specifically defined and prohibited, it would be at once

6    necessary to begin over again." *Klem* at *id.*[3]

7    As detailed above, the conscience of the community long ago decried price gouging, as

8    courts and legislatures in other states made explicit its illegality. The fact that the Washington

9    Supreme Court recently made its pronouncement explicit does not negate the illegality of the

10   practice. Washington law has always forbidden price gouging; *Greenberg* simply said it out loud.

11   *Reed v. Goertz*, 598 U.S. 230, 261 (2023) (Alito, J., dissenting) ("When a State's high court

12   interprets a state law, it generally settles what the law always meant, and therefore it is hard to

13   see the difference between a claim that the text of a state statute is unconstitutional and a claim

14   that the text is unconstitutional as interpreted by the State's highest court.").

15       **4.    The substantial injury test is well-accepted and constitutional**

16   Finally, Amazon argues that the Washington Supreme Court's decision in *Greenberg* is

17   unconstitutionally vague because it "adopted a standardless rubric for 'unfair' pricing that invites

18   conduct to be judged subjectively and only in hindsight." Dkt. 73 at 15. In its reply, Amazon

19   doubles down on this argument by claiming that, after *Greenberg*, "[b]usinesses have *no notice*

20   of what the law requires for pricing consumer goods." Dkt. 98 at 2 (italics in original). To the

21   contrary, the *Greenberg* court applied in this case the well-accepted "substantial injury" test

22   directly from the FTC case law Amazon claims the court ignores.[4]

23       [3] For this reason, Amazon's attempt to distinguish pricing cases by arguing that they dealt

24   with deception and not unfairness misses the mark. Dkt. 98 at 8-9.

         [4] The *Greenberg* court's decision to identify additional legal tests that could—in some

25   future cases—apply to "unfair" conduct under the CPA does not change the analysis here.

     *See Washington State Grange*, 552 U.S. at 449-50 ("In determining whether a law is facially

26   invalid, we must be careful not to go beyond the statute's facial requirements and speculate about

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 16

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   In any event, Amazon's argument is easily dismissed because "[u]nfairness tied to

2   substantial consumer injury is a knowable, judicially administrable concept." *Fed. Trade*

3   *Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 834 (N.D. Ill. 2023), *motion to certify appeal*

4   *granted,* No. 22 CV 3372, 2024 WL 5054916 (N.D. Ill. Oct. 18, 2024)*; accord Kochava*,

5   671 F. Supp. 3d at 1177-78 (upholding the "substantial injury" test in the face of a void for

6   vagueness challenge). Indeed, the substantial injury test has been part of Washington CPA law

7   for decades. *See Magney v. Lincoln Mut. Sav. Bank*, 34 Wash. App. 45, 57, 659 P.2d 537 (1983);

8   *Klem*, 176 Wash. 2d at 786; *Mellon v. Regional Trustee Servs. Corp.*, 182 Wash. App. 476, 490,

9   334 P.2d 1120 (2014); *Rush v. Blackburn*, 190 Wash. App. 945, 962-63, 361 P.3d 217 (2015).

10   Amazon also suggests, without citing any authority, that the involvement of a jury in

11   applying this test raises additional subjectivity concerns. It is axiomatic, however, that juries are

12   presumed to follow the law as instructed by courts. *See Weeks v. Angelone,* 528 U.S. 225, 234,

13   120 S. Ct. 727 (2000) ("A jury is presumed to follow its instructions.").

14   **C.      The Washington CPA Has Survived Vagueness Challenges Before**

15   Amazon's argument is not new. With slight variations, the same argument has been made

16   by businesses—and rejected by the courts—for over a hundred years. In 1919, just five years

17   after the FTC Act was enacted, Sears, Roebuck—the Amazon of its time—argued that the FTC's

18   broad prohibition against "unfair methods of competition" was too indefinite to be enforced and

19   void for vagueness. *Sears, Roebuck & Co. v. Fed. Trade Comm'n*, 258 F. 307, 310-11 (7th Cir.

20   1919). The Seventh Circuit rejected this argument, holding:

21       [T]he phrase is no more indefinite than "due process of law." The general idea of
22       that phrase as it appears in constitutions and statutes is quite well known; but we
         have never encountered what purported to be an all-embracing schedule or found
23       a specific definition that would bar the continuing processes of judicial inclusion

24   ──────────────
     'hypothetical' or 'imaginary' cases."); *see also id.* at 450 ("Exercising judicial restraint in a facial
25   challenge 'frees the Court not only from unnecessary pronouncement on constitutional issues,
     but also from premature interpretations of statutes in areas where their constitutional application
26   might be cloudy.'") (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 17

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   and exclusion based upon accumulating experience. If the expression "unfair
2   methods of competition" is too uncertain for use, then under the same
    condemnation would fall the innumerable statutes which predicate rights and
3   prohibitions upon "unsound mind," "undue influence," "unfaithfulness," "unfair
    use," "unfit for cultivation," "unreasonable rate," "unjust discrimination," and the
4   like.

5   *Id.* at 311. Not only does this case put a stake in the heart of Amazon's argument that some kind

6   of prior precedent is required lest an unfairness claim be constitutionally vague (given that no

7   such prior precedents for what constituted an "unfair method of competition" existed in 1919),

8   it is the first of countless rejections of vagueness challenges to consumer protection laws in the

9   last century. *See, e.g.*, *United States v. Sun and Sand Imports, Ltd., Inc.,* 725 F.2d 184, 187

10  (2d Cir. 1984) (there are "'few words [which] possess the precisions of mathematical symbols,

11  [and] most statutes must deal with untold and unforeseen variations in factual situations.'")

12  (quoting *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 342 (1952)); *Consumer Fin.*

13  *Prot. Bureau v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 904-05 (S.D. Ind. 2015) (even

14  though novel compared to the FTC Act, the term "abusive" in Consumer Financial Protection

15  Act is not void for vagueness); *Kaufman v. ACS Sys., Inc.,* 2 Cal. Rptr. 3d 296

16  (Cal. Ct. App. 2003) (upholding Telephone Consumer Protection Act against vagueness

17  challenge); *Harjoe v. Herz Financial,* 108 S.W.3d 653 (Mo. 2003) (same); *Com. by Zimmerman*

18  *v. Nat'l Apartment Leasing Co.*, 529 A.2d 1157, 1160-61 (Pa. 1987) (holding that the terms

19  "fraud," "unfair practices" and/or "deceptive practices" in Penn. Unfair Trade Practices and

20  Consumer Protection Law not unconstitutionally vague); *People by Vacco v.*

21  *Chazy Hardware, Inc.,* 675 N.Y.S.2d 770 (N.Y. Sup. 1998) (price gouging statute not void for

22  vagueness).

23      In Washington, this argument has also been made and rejected repeatedly, specifically

24  with respect to the CPA's use of the terms "unfair or deceptive acts or practices" and "unfair

25  methods of competition" under section 19.86.020. *See Ralph Williams I,* 82 Wash. 2d at 278-79

26  (rejecting argument that prohibitions against "unfair or deceptive acts or practices" and "unfair

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 18

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    methods of competition" are unconstitutionally vague, finding that they have "sufficiently well-
2    established meaning in common law and federal trade law to meet any constitutional challenge
3    of vagueness"); *Reader's Digest*, 81 Wash. 2d at 271-76 (rejecting vagueness argument, citing
4    FTC case law).

5         Yet despite all of these cases rejecting the same or virtually identical vagueness
6    arguments under the CPA, the FTC Act, and the CFPA, Amazon argues that it did not know its
7    alleged price gouging was "unfair" under the CPA. *See* Dkt. 73 at 15-16; Dkt. 98 at 6-9. But the
8    "substantial injury" test and *S&H* criteria that the Court has now reaffirmed as a proper test for
9    determining whether Amazon engaged in "unfair" price gouging, *Greenberg*, 3 Wash. 3d
10   at 455-59, has been a key part of Washington's CPA law for over forty years. *See Magney*,
11   34 Wash. App. at 57 (holding that when determining whether a business's challenged practice
12   is "unfair" under the CPA, courts may consider "(1) whether the practice . . . offends public
13   policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is
14   immoral, unethical, or unscrupulous; [and] (3) whether it causes substantial injury to consumers
15   . . .") (citing *Sperry*, 405 U.S. at 244 n.5); *Klem*, 176 Wash. 2d at 786 (discussing the substantial
16   injury test at length, citing *Magney* and *Fed. Trade. Comm'n v. Sperry & Hutchison*); *Mellon*,
17   182 Wash. App. at 490 (same); *Rush*, 190 Wash. App. at 962-63 (same). Thus, whether
18   Amazon's challenged pricing practices constituted "unfair" price gouging can properly be
19   determined using this long-established standard for judging unfairness under the CPA.

20   **D.    Amazon's Vagueness Challenge Would Freeze the CPA in Place**

21        Because of the constant evolution of business practices and the endless number of ways
22   that businesses can act unfairly to consumers, "unfairness" under the CPA cannot be defined by
23   prohibiting specific acts or practices that were deemed unlawful in the past. If that type of
24   precision were required, it would render the CPA toothless and make it impossible to use the law
25   to protect consumers in new situations as they arise. As the Washington Supreme Court noted in

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 19

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 204 P.3d 885 (2009), quoting from the original legislative history of the FTC Act:

> It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin all over again. If Congress were to adopt this method of definition, it would undertake an endless task.

*Id*. at 48 (quoting H.R. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914) (Conf. Rep.)) (other citations omitted); *see also Klem*, 176 Wash. 2d at 776 ("Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA"); *Panag*, 166 Wash. 2d at 49 ("the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation").

Amazon's argument that the CPA's prohibition against "unfair . . . acts or practices" is "standardless" and unconstitutionally vague, *see* Dkt. 73 at 13-20, ignores this essential feature of the CPA. Amazon's vagueness argument, if accepted, would apply equally to the FTC Act, 15 U.S.C. § 45(a)(1), the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5536(a)(1)(B), and all the other "little FTC Acts" across the country which, like the CPA, prohibit businesses from engaging in "unfair or deceptive" practices in trade or commerce. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash. 2d 778, 783, 719 P.2d 531 (1986) (discussing history of the CPA and other "little FTC Acts" modeled on the FTC Act); Wash. Rev. Code Ann. § 19.86.920 (noting that the CPA is intended to complement federal law and that when construing the CPA, courts should "be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters").

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 20

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## IV.    CONCLUSION

The Washington Supreme Court conclusively answered the question of whether price gouging is prohibited by the Washington Consumer Protection Act and held that the substantial injury test applies to the allegations in this case. That answer—although not what Amazon hoped for—was entirely foreseeable. Amazon itself claims to have opposed price gouging on its platforms and has pointed to public statements by the Washington Attorney General's Office that price gouging violates the CPA. None of this offends the U.S. Constitution, and the State respectfully requests the Court deny Amazon's motion to dismiss with respect to its vagueness challenge.

DATED this 29th day of January, 2025.

NICHOLAS W. BROWN
Attorney General

*/s Ben Brysacz*
BEN BRYSACZ, WSBA #54683
BOB HYDE, WSBA #33593
BRET FINKELSTEIN, WSBA #48845
MATTHEW GEYMAN, WSBA #17544
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*I certify that this memorandum contains 7,187 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
AMAZON.COM, INC.'S MOTION TO
DISMISS - 21

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744