The Honorable Robert S. Lasnik

1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
9                                       AT SEATTLE

10

11   ALVIN GREENBERG, MICHAEL              No. 2:21-CV-00898-RSL
     STEINBERG, JULIE HANSON, CHRISTINA
12   KING, and RONNELL ROBERTSON, on behalf   **AMAZON'S RESPONSE TO**
     of themselves and all others similarly situated,   **PLAINTIFF-INTERVENOR STATE**
                                              **OF WASHINGTON'S OPPOSITION**
13                      Plaintiffs,           **TO AMAZON'S MOTION TO**
                                              **DISMISS**
14          v.

15   AMAZON.COM, INC., a Delaware corporation,   NOTE ON MOTION CALENDAR:
                                              February 26, 2025
16                      Defendant.
                                              Oral Argument Requested
17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................2

I.    The AG Does Not Defend The Constitutionality Of Plaintiffs' Immorality/Public Interest Test........................................................................2

II.   The AG Agrees All Statutes, Including The CPA, Must Provide Fair Notice Of What Is Prohibited. ..........................................................................4

III.  Neither The AG Nor Plaintiffs Have Defined "Price Gouging."..........................6

IV.   The AG's Arguments Demonstrate That There Is No History Of Applying The CPA To Regulate Pricing Of Non-Essential Goods. ..................................8

      A.   The AG Cites No CPA or FTC Act Case That Involved Only a Price Increase......9

      B.   The AG Cites No Enforcement Actions Applying the CPA Only to Price Increases Absent a Deceptive Scheme.....................................................12

      C.   The Legislative History Does Not Show the CPA Was Meant to Apply to Price Increases Alone. .................................................................13

V.    The AG Does Not Show Amazon Had Actual Notice That The CPA Regulates Pricing Of Non-Essential Goods. ...................................................14

VI.   Plaintiffs' Claims Would Not Be Saved By Confining The CPA To The Substantial Injury Test. ................................................................16

CONCLUSION .....................................................................................................18

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)............................................................................................4

5

6

*Botosan v. Paul McNally Realty*,
   216 F.3d 827 (9th Cir. 2000) ...........................................................................5

7

8

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
   556 F.3d 1021 (9th Cir. 2009) .............................................................6, 13, 17

9

*Chalmers v. City of Los Angeles*,
   762 F.2d 753 (9th Cir. 1985) ...........................................................................4

10

11

*City of Chicago v. Morales*,
   527 U.S. 41 (1999)........................................................................................6, 8

12

13

*Coates v. City of Cincinnati*,
   402 U.S. 611 (1971) .........................................................................................6

14

*Dimaya v. Lynch*,
   803 F.3d 1110 (9th Cir. 2015), *aff'd sub nom. Sessions v. Dimaya*, 584 U.S. 148 (2018)........5

15

16

*FCC v. Fox Television*,
   567 U.S. 239 (2012) (quoted at AG Br. )...........................................................5

17

18

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)..........................................................................................4

19

*Forbes v. Napolitano*,
   236 F.3d 1009 (9th Cir. 2000) .....................................................................8, 16

20

21

*Forth v. Walgreen Co.*,
   2018 WL 1235015 (N.D. Ill. Mar. 9, 2018).....................................................12

22

*FTC v. World Travel Vacation Brokers, Inc.*,
   861 F.2d 1020 (7th Cir. 1988) .......................................................................11

23

24

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) .........................................................................................5

25

26

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)............................................................................................17

27

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) ............................................................................7

*IDK, Inc. v. Clark Cnty.*,
  836 F.2d 1185 (9th Cir. 1988) ..........................................................................4

*In the Matter of W. Star Beef, Inc.*,
  75 F.T.C. 139 (1969), *modified by* 77 F.T.C. 377 (1970)................................11

*Koldender v. Lawson*,
  461 U.S. 352 (1983)............................................................................................8

*Leslie v. Quest Diagnostics, Inc.*,
  2018 WL 1535235 (D.N.J. Mar. 29, 2018)..............................................11, 12

*Leslie v. Quest Diagnostics, Inc.*,
  2019 WL 4668140 (D.N.J. Sept. 25, 2019) .....................................................12

*Nemykina v. Old Navy, LLC*,
  461 F. Supp. 3d 1054 (W.D. Wash. 2020)......................................................10

*Thomas v. Fed. Trade Comm'n*,
  116 F.2d 347 (10th Cir. 1940) ........................................................................11

*Union Square Supply Inc. v. DeBlasio*,
  572 F. Supp. 3d 15 (S.D.N.Y. 2021)...............................................................13

*United States v. Approximately 64,695 Pounds of Shark Fins*,
  520 F.3d 976 (9th Cir. 2008) .....................................................................4, 8, 9

*United States v. Backlund*,
  689 F.3d 986 (9th Cir. 2012) ..........................................................................15

*United States v. Halverson*,
  2023 WL 4311629 (9th Cir. July 3, 2023)......................................................15

*United States v. L. Cohen Grocery Co.*,
  255 U.S. 81 (1921)..............................................................................................8

*United States v. Poindexter*,
  951 F.2d 369 (D.C. Cir. 1991) ........................................................................15

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982)............................................................................................6

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..........................................................16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**State Cases**

*Greenberg v. Amazon.com, Inc.*,
    3 Wn.3d 434 (2024) .................................................................2, 3, 4, 7, 17

*Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778 (1986) .......................................................................17

*Martin v. Aleinikoff*,
    63 Wn.2d 842 (1964) .........................................................................14

*Nelson v. McGoldrick*,
    127 Wn.2d 124 (1995) .......................................................................10

*Panag v. Farmers Ins. Co. of Washington*,
    166 Wn.2d 27 (2009) .........................................................................13

*Petstel, Inc. v. King Cnty.*,
    77 Wn.2d 144 (1969) .........................................................................14

*Robinson v. Avis Rent A Car Sys., Inc.*,
    106 Wash. App. 104 (2001) ..............................................................10

*Seattle Rendering Works, Inc. v. Darling-Del. Co., Inc.*,
    104 Wn.2d 15 (1985) ...........................................................10, 11, 14, 17

*Short v. Demopolis*,
    103 Wn.2d 52 (1984) .........................................................................11

*State v. BlueHippo Funding, LLC*,
    No. 09-2-06785-6 SEA (Wash. Super. Ct. Feb. 6, 2009) .......................12

*State v. Ernst Home Ctr., Inc.*,
    1992 WL 321057 (Wash. Super. Ct. Oct. 2, 1992) ..............................12

*State v. Kaiser*,
    161 Wash. App. 705 (2011) ..............................................................10

*State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*,
    87 Wn.2d 298 (1976) .......................................................................9, 10

**Federal Statutes**

15 U.S.C. § 45 ......................................................................................17

**State Statutes**

N.Y. Gen. Bus. Law § 396-r (1979) ........................................................13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

RCW § 19.86.080 ...................................................................................................5

RCW § 19.86.090 ...................................................................................................5

RCW § 19.86.140 ...................................................................................................5

**Regulations**

16 C.F.R. pt. 233 .................................................................................................12

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................5

**Other Authorities**

Daniel B. Rice, *Reforming Variable Vagueness*, 23 U. Pa. J. Const. L. 960 (2021) ......................6

Press Release, Wash. State Off. of the A.G., AG Ferguson-Requested Bill Prohibiting Price
    Gouging During an Emergency Passes Senate (Mar. 3, 2021),
    https://www.atg.wa.gov/news/news-releases/ag-ferguson-requested-bill-prohibiting-price-
    gouging-during-emergency-passes ......................................................................... 15

Dave Ross, *Does Washington state need price-gouging laws for natural disasters?*, (0:53) (Sept.
    5, 2019, 4:20 PM), https://mynorthwest.com/dave-ross-blog/washington-state-price-gouging-
    laws-mckenna/1501485 .........................................................................................7

Press Release, Wash. State Off. of the A.G., Washington Attorney General Aids Consumers
    Dunked by BlueHippo (Feb. 5, 2009), https://www.atg.wa.gov/news/news-
    releases/washington-attorney-general-aids-consumers-dunked-bluehippo ............................12

Governor Bob Ferguson, Proclamations, https://governor.wa.gov/office-governor/office/official-
    actions/proclamations ...........................................................................................7

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# INTRODUCTION

The Attorney General ("AG") intervened in this case to address the constitutionality of applying the Washington Consumer Protection Act ("CPA") to what he calls "price gouging." But the AG does not address the constitutional issue before this Court. Plaintiffs argue that the "substantial injury" test "does not control" their claims. Instead, Plaintiffs rely on the Washington Supreme Court's opinion to assert that the CPA bans *any* price increase on *any* good that violates the "public interest" or is "immoral." Amazon filed this Motion because the CPA— as Plaintiffs seek to apply it—provides no objective standard for determining when a price increase is sufficiently "immoral" or against the "public interest" as to be illegal and, therefore, does not provide fair notice of what price increases the law prohibits. The AG does not defend the constitutionality of applying the CPA in this manner, let alone identify an objective standard by which Washington businesses could determine if their prices are legal.

The AG makes one argument: that it would be constitutional to apply the substantial injury test to price increases during an emergency. But that is beside the point. Plaintiffs are relying on a *different* legal test: the immorality/public interest test. Inexplicably, the AG dismisses that test as a "hypothetical" to be addressed in "future cases," but it is no such thing. It is the basis for Plaintiffs' class claims *in this case*. Indeed, Plaintiffs pivoted to this amorphous test because the substantial injury test requires individualized inquiries into issues of necessity and avoidability that would defeat their class claims. The AG's failure to address the constitutionality of applying the immorality/public interest test to Amazon's alleged price increases renders his entire opposition brief irrelevant.

Rather than address the relevant constitutional issue, the AG devotes much of his brief to arguing that Amazon's constitutional argument is disingenuous in light of Amazon's efforts to combat excessive prices during the pandemic. But there is nothing disingenuous about Amazon's efforts and its argument here. Amazon undisputedly undertook enormous efforts during the pandemic to combat excessive pricing in its store, to ensure that supplies of essential goods were maintained, and to comply with the specific price-gouging laws in other states. But

that does not mean Amazon had fair notice of what prices were "immoral" or against the "public interest" and thus illegal under the CPA.  The AG argues that Amazon had active or constructive notice that "price gouging" was illegal, but nowhere does the AG (or any of the authorities he cites) define that term, despite using it more than 30 times in his brief.  The AG points to cases, enforcement actions, and legislative history that involved what he loosely calls "pricing issues," but all of the "pricing issues" in those cases resulted from deceptive or anticompetitive conduct.  None involved only a price increase, and none provided an objective standard by which a Washington business could determine whether a price increase violates the "public interest" or is "immoral."  Even today, the AG himself does not identify such a standard, let alone show that Amazon had notice of it.

The Washington Supreme Court left to the federal courts whether its reading of the CPA was consistent with constitutional due process principles.  Amazon, like every Washington business, has the constitutional right to know ahead of time what conduct would be unlawful.  The AG has not established that Amazon had constitutionally fair notice of what price increases on the billions of goods sold on Amazon.com could violate the "public interest" or be "immoral" such that they would be "unfair" under the CPA.  The Court should grant Amazon's Motion to Dismiss and Motion to Strike.

## ARGUMENT

### I.    The AG Does Not Defend The Constitutionality Of Plaintiffs' Immorality/Public Interest Test.

Plaintiffs' position in this case is that the substantial injury test "does not control."  Dkt. 87 at 12.  They argue that the controlling test is whether Amazon's prices were "immoral" or contrary to "public interest."[1]  *Id.* at 5, 11–12.  The AG does not defend that amorphous, undefined test.  Instead, the AG focuses *exclusively* on the constitutionality of the substantial

---

[1]    Plaintiffs pivoted to this vague test because they recognize that the substantial injury test is incompatible with their class claims.  The substantial injury test prevents class certification because it requires individualized inquiries into whether a particular purchase was reasonably avoidable, among other things.  *Greenberg*, 3 Wn.3d at 459, 461–62.

injury test.  *See* Dkt. 73 ("AG Br.") at 1, 16–17, 21.  By doing so, the AG addresses the claims

Plaintiffs argued to the Washington Supreme Court but not the claims they now assert.  Before

the Washington Supreme Court, Plaintiffs argued that their claims were about "price gouging"

on "essential" goods during the pandemic.  *See Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434,

452–53 (2024).  The Washington Supreme Court ruled that "under" the substantial injury test,

"price gouging, as alleged" by Plaintiffs, "may be an unfair act or practice within the meaning of

our CPA."  *Id.* at 459–62 (stating each plaintiff must show a consumer injury, that the injury was

not "reasonably avoidable," and that there were no "countervailing benefits" to satisfy the

substantial injury test).  In its opinion, the Supreme Court relied on Plaintiffs' allegations that

they "were unable to find their essential goods," "which they needed to stay safe and healthy,"

"except for on Amazon."  *Id.* at 462.  Plaintiffs, in other words, "had *no meaningful choice* but to

purchase their products" on Amazon.  *Id.* (emphasis added).

The Washington Supreme Court also explained that "our CPA simply has no limitations

on the range of effect the defendant's conduct must have for a plaintiff to state a cognizable

claim to relief," and therefore that "plaintiffs may satisfy the first element of a private CPA

claim—an unfair or deceptive act—in a number of ways."  *Id.* at 459.  Seizing on that language,

Plaintiffs switched horses.  They no longer pursue claims limited to "essential goods," or focus

on transactions that were not "reasonably avoidable."  Instead, they assert "the term 'essential

goods' was used [in the Complaint] *for context*" and therefore "*was not meant to limit* [their]

claims" in any way.  Dkt. 83 at 7–8 (emphasis added).  And in discovery, Plaintiffs have refused

to even define what they contend were "essential goods" on the grounds that the definition is no

longer relevant to their claims.  Instead, Plaintiffs' class claims now purport to encompass price

increases on countless non-essential, widely-available goods that are not "needed to stay safe and

healthy."  *Greenberg*, 3 Wn.3d at 462.  This is literally every product sold in the Amazon store.

Consumers *had* a "meaningful choice" to purchase or not the vast majority of products under

Plaintiffs' revised theory, like friendship bracelets and flowerpots, because they did not need

those items.  *See id.*; Dkt. 83 at 8–9.  Plaintiffs chose to vastly expand their claims beyond

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

essential goods, which required they abandon the substantial injury test.  All purchases of non-essential goods are, by definition, reasonably avoidable because the consumer can simply choose not to purchase the good.

Ordinarily, courts construe laws to avoid constitutional challenges.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).  In this case, the Washington Supreme Court expressly declined to consider whether its interpretation of the CPA was consistent with federal due process guarantees.  *Greenberg*, 3 Wn.3d at 470.  Having abandoned the limits imposed by the substantial injury test, Plaintiffs now assert that the factfinder need only determine that the alleged price increases are "immoral" or "in violation of the public interest" to find a violation of the CPA.  *See* Dkt. 87 at 4–5 (quoting *Greenberg*, 3 Wn.3d at 459).  This application of the CPA would be unconstitutional, and the AG fails to address this issue at all.  Though the AG claimed it is a "hypothetical" question to be answered in "future cases," AG Br. at 16–17 n.4, that is inaccurate.  Plaintiffs are pursuing that very application now.  Thus, the AG's arguments about the substantial injury test are irrelevant to the constitutional issue that is actually before this Court.

## II.    The AG Agrees All Statutes, Including The CPA, Must Provide Fair Notice Of What Is Prohibited.

The AG ultimately agrees with Amazon that any statute must provide "fair notice of the forbidden conduct."  *Id.* at 3; *see IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1197 (9th Cir. 1988) (affirming that due process requires statutes "to give adequate notice of what conduct is prohibited" "[r]egardless of whether" it is criminal or "impinges on" constitutional rights); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir. 1985) (same).[2]  He also agrees that the minimum due process required for any statute is notice of what the law prohibits and the opportunity to conform one's conduct to the law.  *See United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008) (in civil forfeiture action, confirming

---

[2]    "The fact that [Amazon] is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands … impose[d] on the conduct of its business."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 585 (1996).

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

that statutes "must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly'") (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). And he agrees these same fundamental principles apply in civil cases like this one, even if the standard may be heightened in criminal and First Amendment cases. *See FCC v. Fox Television*, 567 U.S. 239, 253 (2012) (quoted at AG Br. at 3); *Dimaya v. Lynch*, 803 F.3d 1110, 1113 (9th Cir. 2015), *aff'd sub nom. Sessions v. Dimaya*, 584 U.S. 148 (2018); *see also Dimaya*, 584 U.S. at 183 (Gorsuch, J., concurring in part) ("I cannot see how the Due Process Clause might often require any less than that in the civil context either.").[3] The question for the Court, therefore, is the question Amazon framed: whether Amazon had fair notice that the conduct challenged here was unlawful. That means determining whether Plaintiffs' immorality/public interest test would give "fair notice" to business owners in Washington of what price increases are prohibited.

The AG's other arguments regarding what standard the Court should apply are strawmen. First, Amazon does not argue that the CPA is facially unconstitutional. *See* AG Br. at 3. Second, the AG argues that the "fair notice standard here is especially low" because this case "implicates only routine economic activity." AG Br. at 4. But as the AG concedes, while economic regulations in the abstract may be less prescriptive, they still must at minimum provide "comprehensible normative standard[s]." AG Br. at 5 (quoting *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000)). The problem here is that there is no such "comprehensible normative standard." Pricing is an everyday business activity. Plaintiffs' interpretation of the CPA does not allow anyone to know what price is "unfair" until a jury decides years later. A business cannot even know in advance what factors a jury would consider. And prices of goods,

---

[3]     The minimal due process analysis that the AG suggests is sufficient for the CPA also ignores that the CPA is similar to a penal statute. While it permits private rights of action, the principal enforcement mechanism is an action by the State itself. RCW § 19.86.080. The statute also authorizes the imposition of substantial penalties—effectively punitive treble damages—in addition to simple recovery of loss. RCW §§ 19.86.140, 19.86.090. The AG also distinguishes *Dimaya* in particular because it is an immigration removal case. AG Br. at 6. But Justice Gorsuch's concurrence referred to the "civil context" more broadly.

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

particularly non-essential goods, can be "immoral" or against "public interest" to some people but not others. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (ordinance specified no standard of conduct at all and therefore was unconstitutionally vague where it prohibited conduct that was "annoying," but "[c]onduct that annoys some people does not annoy others"). These standards are "inherently subjective." *City of Chicago v. Morales*, 527 U.S. 41, 56, 62 (1999).[4]

Accordingly, there is no amount of analysis one could undertake *before* a transaction that would reveal what is and is not prohibited. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982) (explaining that "economic regulation is subject to a less strict vagueness test" in part because a business "can be expected to consult relevant legislation in advance of action" and "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process"); Daniel B. Rice, *Reforming Variable Vagueness*, 23 U. Pa. J. Const. L. 960, 978 (2021) ("If the relevant legal materials are intolerably unclear, then merely knowing that they exist—and examining them 'in advance' of actual enforcement—cannot rectify the preexisting due-process problem."). That is precisely why Plaintiffs' immorality/public interest standard is unconstitutionally vague.

### III.    Neither The AG Nor Plaintiffs Have Defined "Price Gouging."

Plaintiffs have not articulated any "objective guidance" by which a fact-finder could determine when price increases become "immoral" or violate the "public interest." *See Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009). The AG makes no effort to do so either. Instead, both repeatedly refer to "price gouging" as the price increase that would be "immoral" or against the "public interest." Despite using the term "price gouging" over and over again, the AG does not say what it means, particularly in the context of the pricing of non-essential goods. Plaintiffs assert that the term could include *any*

---

[4]    For the same reason, the issue here is not how to classify conduct in "borderline cases" as the AG contends. AG Br. at 5. In any event, the AG does not explain how this case is "borderline" or a "close call[]." *See id.*

price increases on *any* goods during *any* sort of emergency.[5]  Neither the AG nor Plaintiffs have

proposed any standard for when transparent pricing on billions of non-essential goods would be

"in violation of the public interest" or be "immoral, unethical, oppressive, or unscrupulous."

*Greenberg*, 3 Wn.3d at 455, 459.

Amazon is not asserting it was entitled to engage in "price gouging" during the

pandemic.  In fact, Amazon undisputedly undertook enormous efforts to work with the AG (and

other state attorneys general) during the pandemic to combat excessive pricing, ensure that

supplies of essential goods were maintained, and comply with the specific price-gouging laws in

other states.  SAC ¶¶ 8, 119–120.  Plaintiffs assert that, notwithstanding those efforts, Amazon

engaged in "price gouging."  But this undefined term has such an amorphous meaning "that it

makes it difficult, if not impossible, for an individual to determine whether his conduct is

proscribed."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 711 (9th Cir. 2011).

The AG does not point to a single case in which a court defined "price gouging" under a

general consumer protection law.  This is not surprising.  Price increases during an emergency

are not inherently "immoral" or against "public interest."  They can, for example, lead to

stabilized or increased supply.[6]  Absent objective criteria, businesses do not know whether they

should artificially restrict price increases but risk lower availability or allow prices to increase.

Either could arguably promote the "public interest."[7]  Neither the AG nor Plaintiffs have defined

how significant a price increase must be before it becomes "immoral" or violates the "public

---

[5]     States declare emergencies with relative frequency and for a variety of reasons.
Washington declared a state of emergency eight times during 2024, including for fires, damaged
bridges, storms, and a spongy moth infestation.  *See* Governor Bob Ferguson, Proclamations,
https://governor.wa.gov/office-governor/office/official-actions/proclamations.

[6]     In the 2019 interview with former Attorney General McKenna that the AG cites,
McKenna describes that the specific price-gouging laws of other states may not be effective
because sometimes "higher prices are a rational way to allocate scarce resources."  Goldmark
Decl., Ex. B, Dave Ross, *Does Washington state need price-gouging laws for natural disasters?*,
MyNorthwest.com, (0:53) (Sept. 5, 2019, 4:20 PM), https://mynorthwest.com/dave-ross-
blog/washington-state-price-gouging-laws-mckenna/1501485.

[7]     The Washington Supreme Court itself determined that these "numerous social and
economic" questions are "best left to the legislature" to decide.  *Greenberg*, 3 Wn.3d at 471.

---

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

interest."  Nor have they articulated when such price increases would be prohibited (e.g., during declared emergencies or in other circumstances).  Nor have they explained which products would be subject to that prohibition (e.g., essential goods or all goods).  They also fail to offer any case law or other authority that provides guidance on these questions.  Plaintiffs' theory would permit jurors to answer these inherently subjective questions in hindsight based on no defined test, case, or history.  That is unconstitutional.  *See 64,695 Pounds of Shark Fins*, 520 F.3d at 980 (statutes must give people the opportunity to conform their conduct to the law in advance); *City of Chicago*, 527 U.S. at 61–62 (holding law criminalizing loitering, defined as remaining in a place "with no apparent purpose," violated due process because it was "inherently subjective … whether some purpose is 'apparent'") (citing *Koldender v. Lawson*, 461 U.S. 352, 358–60 (1983); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (holding law prohibiting grocers from charging an "unjust or unreasonable rate" violated due process, as it would "merely penalize[] and punish[] all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury").  The AG's brief does not rebut this.

## IV.    The AG's Arguments Demonstrate That There Is No History Of Applying The CPA To Regulate Pricing Of Non-Essential Goods.

The AG argues that "consumer protection laws—including those in Washington—consistently have covered pricing issues."  AG Br. at 8.  But that does not resolve the question before the Court: whether the immorality/public interest test, as applied to pricing alone, is constitutional.  Instead, the AG's discussion of history makes two things abundantly clear.  First, Washington has never regulated pricing alone.  It has only prohibited unfair trade practices that *affect* prices.  Second, there is no history of the AG or private plaintiffs applying the CPA to pricing alone.  CPA cases historically were not about just price increases.  Instead, they all involved some deception or other misconduct.  The AG's inability to point to *any* precedent that addresses pricing alone shows that Amazon did not have constructive notice of Plaintiffs' theory.  *See Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000) (constructive notice requires that individuals are given a reasonable opportunity to discern whether their conduct is proscribed).

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 8

The distinction is important because, unlike deception, setting prices for goods and services based on supply and demand is not thought of as "unfair." Instead, it is how a free market works. If a business's price for any non-essential good (e.g., a kiddie pool) during an emergency seems too high, a customer does not have to buy it. The customer who chooses to buy the product anyway after seeing truthful information about the product and its price was not subjected to an unfair trade practice, regardless of whether someone else considers the price to be "immoral." Allowing a jury in hindsight to decide that the price violated the "public interest" does not provide businesses with constitutionally sufficient notice.

### A. The AG Cites No CPA or FTC Act Case That Involved Only a Price Increase.

The AG says that the CPA and FTC Act have always "covered pricing issues." AG Br. at 8–12. His use of the loose phrase "pricing issues" is telling because *all* of the AG's CPA and FTC Act cases involved pricing resulting from a deceptive scheme or other definable unfair trade practice. None held that price increases alone were "unfair" under the CPA. A person of reasonable intelligence could not have anticipated that truthful pricing in a transparent market was prohibited. *See 64,695 Pounds of Shark Fins*, 520 F.3d at 980.

*First*, the AG's chief CPA case, *Ralph Williams*, "touched on several different ways that pricing" resulting from misrepresentations and manipulative sales conduct "could violate the CPA." AG Br. at 11. In that case, a car dealership violated the CPA by engaging in a long course of deceptive and manipulative conduct. That conduct included false and misleading advertising, concealing defects in used cars, charging undisclosed fees, lying about the need for insurance, and intimidating customers to prevent complaints. *See State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 305–09 (1976).

The AG cherry-picks quotes to suggest that *Ralph Williams* involved a claim about prices in isolation. The AG notes the dealership "refused to give the prices of other cars or quoted prices lower than the actual sales prices." AG Br. at 11. But he omits that the court described these actions as part of a "comprehensive sales system d*esigned to confuse and deceive* the customer." *Ralph Williams*, 87 Wn.2d at 306 (emphasis added). The AG notes that the

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

dealership "charged unconscionable prices for a number of their automobiles." AG Br. at 11. But he again omits that the court elsewhere said these prices were unconscionable "[*i*]*n light of the above deceptive acts and practices*." *Ralph Williams*, 87 Wn.2d at 309, 320 (emphasis added).[8]

**Second**, the AG cites to "multiple" other CPA cases that he says "have touched on pricing concerns." AG Br. at 11. But these cases also involved pricing resulting from deceptive or manipulative conduct. *Robinson* held that if a car rental company quoted a car rental price without disclosing an additional concession fee that it would later charge, such conduct "would have the capacity to *deceive the purchasing public*." *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wash. App. 104, 116, 123 (2001) (emphasis added). The Washington Court of Appeals affirmed summary judgment in favor of the defendant car rental companies, holding that there was no CPA violation because the companies fully disclosed their prices inclusive of the concession fee. *See id*.

Similarly, *Nemykina* was not about simple "advertising relating to clothing prices," as the AG asserts. AG Br. at 11. To the contrary, Old Navy was accused of *falsely* advertising its clothing prices. *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1060 (W.D. Wash. 2020) ("Old Navy's marketing plan is to *trick its customers* into believing that its products are worth, and have a value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain") (emphasis added). Finally, the AG relies on *Seattle Rendering Works* for the proposition that "predatory pricing is illegal under the CPA." AG Br. at 11. But as the Supreme Court in that case explained, "predatory pricing" does not refer to pricing in

---

[8]    The AG's contract unconscionability cases are off-point for the same reason. *See* AG Br. at 12. Courts look to more than a contract's pricing terms to determine unconscionability. *State v. Kaiser*, 161 Wash. App. 705, 722–23 (2011). Courts consider, among other things, "whether a party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." *Id*. (cleaned up) (holding that defendant's overage pay agreements were unfair and unconscionable because defendant induced vulnerable property owners to enter into these agreements based on misrepresentations and withholding of material facts). *Kaiser* and *Nelson* also did not apply the CPA's "unfairness" prong to prices alone. *See id.*; *Nelson v. McGoldrick*, 127 Wn.2d 124, 132 (1995).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

isolation. *Seattle Rendering Works, Inc. v. Darling-Del. Co., Inc.*, 104 Wn.2d 15, 21–22 (1985). Rather, this term has an established meaning in federal antitrust law: pricing below cost for the purpose of "driving out competitors." *Id.* at 21–22. The Supreme Court held that the defendant did not violate the CPA because there was no evidence of below-cost pricing that violated antitrust laws. *Id.*[9]

**Third**, the AG similarly selectively cites FTC Act cases. *See* AG Br. at 12. The AG claims that *World Travel Vacation Brokers* held that the "pricing of airline tickets" was within the scope of the FTC Act. AG Br. at 12. But that case was about the defendant travel company's allegedly *false* advertising of vacation packages that misrepresented the cost of airline tickets. *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1023, 1028 (7th Cir. 1988) (noting that the defendants "used false and deceptive advertising to induce consumers to purchase Hawaiian vacations" and referring to the scheme as "a routine fraud"). *Western Star Beef* and *Thomas* similarly involved *false* representations that affected pricing. *See In the Matter of W. Star Beef, Inc.*, 75 F.T.C. 139 (1969), *modified by* 77 F.T.C. 377 (1970) (consent decree requiring meat retailers to cease "*misrepresenting* the price, quantity and quality of their products") (emphasis added); *Thomas v. Fed. Trade Comm'n*, 116 F.2d 347, 349 (10th Cir. 1940) (concluding that customers were "*misled and deceived*" by a quilt company's advertisements that quilts were on sale) (emphasis added).

**Fourth**, the AG points to cases applying other states' consumer protection laws, none of which involved pricing alone. *See* AG Br. at 12. In *Leslie*, the court first held that "allegations

---

[9]     The AG also relies on *Short v. Demopolis*, 103 Wn.2d 52 (1984). That case is equally inapposite. The defendant was sued by his former law firm for fees and brought a CPA counterclaim against the plaintiff law firm. He alleged among other things that he hired a partner "to handle personally his legal matters but that without his consent or knowledge [the partner] had a younger partner [] and an associate [] do the legal work." *Id.* at 53–54. He also argued that the partner unlawfully threatened to withdraw. *Id.* The Washington Supreme Court held that "certain entrepreneurial aspects of the practice of law may fall within the 'trade or commerce' definition of the CPA." *Id.* at 61. That is not at issue here. The court then remanded to determine if the conduct did in fact violate the CPA. *Id.* at 66.

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

of high pricing, by themselves, do not constitute unfair or deceptive trade practices." *Leslie v. Quest Diagnostics, Inc.*, 2018 WL 1535235, at *4 (D.N.J. Mar. 29, 2018).  The court denied the motion to dismiss the amended complaint only after the plaintiffs alleged a "deceptive or fraudulent" two-tiered pricing scheme that charged some customers more than others with no relationship to costs actually incurred by Quest.  *Leslie v. Quest Diagnostics, Inc.*, 2019 WL 4668140, at *5 (D.N.J. Sept. 25, 2019).  And *Forth*, as the AG acknowledges, was about fraud. *Forth v. Walgreen Co.*, 2018 WL 1235015, at *9, *12–13 (N.D. Ill. Mar. 9, 2018) (sustaining consumer protection claims based on allegations that Walgreens engaged in a fraudulent pricing scheme by charging some customers more than others for the same drug).[10]

## B. The AG Cites No Enforcement Actions Applying the CPA Only to Price Increases Absent a Deceptive Scheme.

The AG claims that his office "has prosecuted pricing cases under the CPA."  AG Br. at 11.  But the two enforcement actions he cites did not involve prices alone.  *See State v. Ernst Home Ctr., Inc.*, 1992 WL 321057, at *1 (Wash. Super. Ct. Oct. 2, 1992) (noting, in a settlement about deceptive advertising, that the AG believed "that retail businesses need to be informed as to the permissible methods of advertisement by way of comparative pricing"); *State v. BlueHippo Funding, LLC*, No. 09-2-06785-6 SEA (Wash. Super. Ct. Feb. 6, 2009)[11] (resolving a complaint against a company that allegedly targeted misleading and deceptive practices towards low income individuals with poor credit).  The AG is best positioned to discern the AG's own enforcement history, so it is telling that his only two citations to enforcement actions are fraud cases and none of his other cited authorities found CPA violations based on price increases in isolation.  This highlights the vagueness problem.  The AG cannot find a single time when he has

---

[10]    The AG's citation to the Code of Federal Regulations is equally unpersuasive.  *See* AG Br. at 12.  As indicated by the title of the section—"Guides Against *Deceptive* Pricing"—these rules pertain to practices beyond just price increases.  *See* 16 C.F.R. Part 233 (emphasis added).

[11]    Goldmark Decl., Ex. F, Press Release, Wash. State Off. of the A.G., Washington Attorney General Aids Consumers Dunked by BlueHippo (Feb. 5, 2009), https://www.atg.wa.gov/news/news-releases/washington-attorney-general-aids-consumers-dunked-bluehippo.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

enforced the CPA statute as to pricing alone.  Two enforcement cases not even close to on point are not sufficient to give Washington businesses the required constitutional notice.  *See Canyon Ferry*, 556 F.3d at 1029.

The AG says accepting Amazon's fair notice argument would "make it impossible" to adapt the CPA to "new situations as they arise."  AG Br. at 19–20.  But even if the CPA is permitted to evolve, it still must be subject to constitutional limits.  It cannot evolve so far that it fails to provide fair notice.

The AG's concern is also misplaced.  Amazon does not dispute that the CPA needs to be flexible to expand to "conduct that inventively evades regulation."  *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 49 (2009).  But as the AG and Plaintiffs concede, there is nothing new or inventive about increasing prices.  The AG notes that Washington has regulated specific unfair pricing practices since the 1930s.  *See* AG Br. at 7.  And he acknowledges that statutes specifically prohibiting price gouging have been on the books in other states for decades.  *See, e.g.*, N.Y. Gen. Bus. Law § 396-r (1979).[12]  Plaintiffs allege that price gouging is as old as the Bible.  SAC ¶ 67.  The CPA is not inflexible if it does not cover Plaintiffs' new theory that any price increases on any goods at any time are illegal when a jury in hindsight determines them to be "immoral."  Instead, interpreting the CPA not to cover Plaintiffs' new theory simply ensures that citizens are not held liable for conduct they could not have known was prohibited.

### C.  The Legislative History Does Not Show the CPA Was Meant to Apply to Price Increases Alone.

The AG is wrong that legislative history supports applying the CPA to pricing decisions alone.  The AG describes the now-repealed Unfair Practices Act ("UPA") in Washington and argues that its prohibitions carried over to the CPA.  AG Br. at 10.  But the UPA "did not

---

[12]    Price-gouging regulations have withstood vagueness challenges in part because they include the very details lacking in the CPA.  *See Union Square Supply Inc. v. DeBlasio*, 572 F. Supp. 3d 15, 22 (S.D.N.Y. 2021) (rejecting the argument that New York's price-gouging regulation was unconstitutionally vague because it set forth "a comprehensive list of categories of covered goods that includes exemplar items, as well as a numerical benchmark for prohibited price increases (10 percent or more) and a temporal benchmark for when the Rule applies").

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    'attempt[] to directly alleviate injuries to consumers resulting from excessive charges.'"  AG Br.

2    at 10 (quoting *Petstel, Inc. v. King Cnty.*, 77 Wn.2d 144, 160 (1969)).  Rather, "[w]oven into the

3    fabric of the" UPA was a requirement that the conduct "must *result in the injury of a competitor*

4    *or destroy, or tend to destroy, competition.*"  *Martin v. Aleinikoff*, 63 Wn.2d 842, 844 (1964)

5    (emphasis in original).  Thus, even if the UPA's prohibitions carried over to the CPA, only

6    anticompetitive conduct is incorporated, but price increases alone are not.  That ends the

7    relevance of the UPA to this case.

8        The AG goes on to point out that when the Legislature repealed the UPA, it stated that it

9    intended the CPA to continue regulating "predatory pricing and other pricing practices which

10   constitute violations of federal antitrust law."  *Id.*  The AG argues that as a matter of grammatical

11   construction, this statement means that the UPA prohibited "predatory pricing" regardless of

12   whether that predatory pricing constituted a violation of federal antitrust law.  *Id.*  But the

13   grammatical construction does not matter.  The phrase "predatory pricing" *itself* refers to a type

14   of antitrust violation where a business prices below cost to drive out competitors.  It does not

15   refer to price increases that violate the "public interest."  *Supra* Section IV(A); *see Seattle*

16   *Rendering Works*, 104 Wn.2d at 20–21 (quoting the same legislative history, then explaining that

17   predatory pricing violates federal antitrust law).  Prohibitions on predatory pricing have no

18   relevance to this case.

19       Thus, the AG's legislative history argument holds no water.  A business considering

20   whether to increase its prices could not look to this legislative history and understand what is and

21   is not lawful under the CPA.

22   **V.    The AG Does Not Show Amazon Had Actual Notice That The CPA Regulates**
         **Pricing Of Non-Essential Goods.**

23

24       The AG argues that Amazon had "constitutionally appropriate notice" in four different

25   ways.  AG Br. at 13.  Each is meritless.

26       ***First***, the AG claims that the cases and legislative history he cites provided Amazon

27   "constructive notice" that price increases could violate the CPA.  AG Br. at 13.  That is wrong

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for all the reasons discussed above.  None of the cases or enforcement actions dealt with pricing alone.

**Second**, the AG says that three of the State's pre-pandemic press releases and one pre-pandemic news article gave Amazon actual notice.  AG Br. at 13–14.  None are on point.  The AG also omits that, in one of his other press releases, the sponsor of Washington's now-defunct price-gouging bill publicly expressed "shock[] that Washington does not have a law prohibiting price gouging during emergencies."[13]  Simply put, the AG's cited statements either address price increases as part of a deceptive or fraudulent scheme, mention "price gouging" only on essential goods without defining price gouging, or both.  *See* Goldmark Decl., Exs. C–E.

None of these sources describe when price increases on non-essential goods are "immoral" or violate the "public interest."  *Cf. United States v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991) ("Immoral, and its synonyms … afford an almost boundless area for individual assessment of the morality of another's behavior.") (cleaned up).  And none provide notice of what level of price increase constitutes an "unfair" one.

Accordingly, these sources do not establish that Amazon had actual notice that the CPA outlawed the conduct here.  *Cf., e.g.*, *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012) (defendant "explicitly informed" his conduct "was not authorized" by relevant laws); *United States v. Halverson*, 2023 WL 4311629, at *2 (9th Cir. July 3, 2023) (defendant warned his "conduct was clearly and legitimately proscribed").

**Third**, the AG points out that Amazon is aware that other states regulate price gouging with specific statutes.  AG Br. at 7, 16.  But as to those states, Amazon knows what "price gouging" is because they have defined it.  Amazon can and does monitor for compliance with those laws because they provide specific categories of goods and specific price thresholds.  *See,*

---

[13]    Goldmark Decl., Ex. A, Press Release, Wash. State Off. of the A.G., AG Ferguson-Requested Bill Prohibiting Price Gouging During an Emergency Passes Senate (Mar. 3, 2021), https://www.atg.wa.gov/news/news-releases/ag-ferguson-requested-bill-prohibiting-price-gouging-during-emergency-passes.

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 15

1     *e.g.*, AG Br. at 2 (citing Dkt. 88-1 (Amazon explaining how "some states define price gouging as

2     a price ranging from 10% to 25% above average sales prices")).

3           But other states' laws did not put Amazon on notice that, under Washington's CPA,

4     undefined price increases on non-essential goods could be "immoral" or violate the "public

5     interest." Such a prohibition would be fundamentally different from those state statutes. Notice

6     that one course of conduct is prohibited in one state is not notice that a different course of

7     conduct is prohibited in another state. *See Forbes*, 236 F.3d at 1011.

8           **Fourth**, the AG repeats Plaintiffs' arguments that Amazon voluntarily informed states,

9     including Washington, of its effort to suppress some high prices during the pandemic and the AG

10     responded with cease-and-desist letters to some sellers on Amazon. AG Br. at 2, 7. That the

11     Washington AG acted on that information by sending cease-and-desist letters to parties other

12     than Amazon did not give Amazon actual notice of anything. It certainly did not give Amazon

13     notice that *Amazon's* conduct violated the CPA. And critically, the letters did not define price

14     gouging or when price increases would be deemed "immoral" or against "public interest." *Cf.*

15     *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (notwithstanding

16     prior FDA "warning letters" to other companies "based on specific factual circumstances," the

17     defendant "was simply not on notice" of non-compliance given "ambiguity" in the rule).

18     Further, the letters were limited to core essential goods, not the billions of non-essential,

19     discretionary purchases that are now within Plaintiffs' revised theory. *See* Dkt. 98 at 7.

20           Taken together, none of the AG's cited cases, press releases, cease-and-desist letters, or

21     other state statutes gave Amazon or any other Washington business actual notice that price

22     increases alone on non-essential goods violate the Washington CPA. Nor do any of those

23     authorities provide objective guidance on what price increases would violate the CPA.

24     **VI.**     **Plaintiffs' Claims Would Not Be Saved By Confining The CPA To The Substantial Injury Test.**

25

26           The AG's primary argument is that the CPA may constitutionally apply to pricing if a

27     plaintiff satisfies the substantial injury test. If the Court adopts that position, it must strike

1   Plaintiffs' class allegations because they are incompatible with the substantial injury test.  The

2   substantial injury test requires individualized determinations of necessity and reasonable

3   avoidability.  *See* Dkt. 73 at 7–13.

4   But confining the CPA in this case to the substantial injury test does not fix the

5   constitutional vagueness problem.  The starting point for the analysis under that test is whether

6   the challenged conduct "causes or is likely to cause substantial injury to consumers."

7   *Greenberg*, 3 Wn.3d at 458 (quoting 15 U.S.C. § 45(n)).  Deceptive conduct clearly can cause

8   injury by inducing a consumer to purchase something they did not intend to or that was of lesser

9   value than advertised.  *See, e.g., Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co.*,

10  105 Wn.2d 778, 785 (1986) (defining the test for "deception" under the CPA).  Similarly,

11  predatory pricing removes potential competitors from the market, reducing choice and distorting

12  market prices.  *See Seattle Rendering*, 104 Wn.2d at 20–21 (applying federal law to define

13  predatory pricing claim under the CPA).

14  But here, Amazon sold billions of products to willing buyers after those buyers saw

15  *complete and accurate information* about the product and its price.  In this situation, applying the

16  substantial injury test to determine what prices violate the CPA does not provide fair notice to

17  retailers.  The CPA prohibits any form of deception.  But it does not prohibit any form of pricing.

18  The AG does not explain how the substantial injury test informs businesses when a price causes

19  "substantial injury."  *See* AG Br. at 16–17.  Nor does the AG explain how this test could be

20  applied to billions of products sold at different times in different geographies.  Applying a

21  general statute like the CPA to otherwise lawful activity like pricing without objective standards

22  is unconstitutional.  *See Canyon Ferry*, 556 F.3d at 1029 (there must be some objective standard

23  for what conduct is prohibited); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 20–21

24  (2010).

25  The AG does not solve this uncertainty by importing the substantial injury test from

26  federal law because there are still no objective criteria for a business to know in advance what

27  price increase is permissible.  *See Canyon Ferry*, 556 F.3d at 1029.  That federal test has *never*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  been applied to pricing decisions alone. *Supra* Section IV. Thus, as applied here, the substantial

2  injury test provides no workable framework for Washington businesses, courts, or juries to

3  distinguish lawful from unlawful conduct. Dkt. 73 at 19–20.

**CONCLUSION**

5     The AG's brief does not address Plaintiffs' claims. His arguments and authorities only

6  prove that Amazon could not have known in advance what price increases were prohibited. For

7  the reasons stated above and in Amazon's moving papers, the Court should grant Amazon's

8  Motion to Dismiss and Motion to Strike.

9     DATED this 26th day of February 2025.

DAVIS WRIGHT TREMAINE LLP

*/s/ John A. Goldmark*
John A. Goldmark, WSBA #40980
MaryAnn T. Almeida, WSBA #49086
Nick Valera, WSBA # 54220
Caitlyn G. Cowan, WSBA #62344
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Email: johngoldmark@dwt.com
        maryannalmeida@dwt.com
        nickvalera@dwt.com
        caitlyncowan@dwt.com

John Freed, *admitted pro hac vice*
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Email: jakefreed@dwt.com

*I certify that this memorandum contains 6,645 words, in compliance with the Local Civil Rules.*[14]

---

[14]     Due to the procedural posture of the AG's third-party intervention, Amazon understands this submission to be a response brief that is subject to the 8,400 word limit under LCR 7(e)(3). To the extent the Court views this submission as a reply brief, Amazon respectfully requests leave to file an over-length brief containing 2,445 additional words—542 words less than the AG's submission.

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

/s/ Jennifer Kennedy Park
Jennifer Kennedy Park, *admitted pro hac vice*
Matthew M. Yelovich, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA
Telephone: (650) 815-4100
Email: jkpark@cgsh.com
          myelovich@cgsh.com

Ryan Shores, *admitted pro hac vice*
Nowell D. Bamberger, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Fax: (202) 974-1999
Email: rshores@cgsh.com
          nbamberger@cgsh.com

Charity E. Lee, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
Email: charitylee@cgsh.com

*Attorneys for Defendant Amazon.com, Inc.*

AMAZON'S RESPONSE TO AG'S OPP. TO MOT. TO DISMISS
(2:21-CV-00898-RSL) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax