The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ALVIN GREENBERG, MICHAEL STEINBERG, and CHRISTINA KING on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:21-cv-00898-RSL<br><br>**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**<br><br>NOTE ON MOTION CALENDAR:<br>May 15, 2025 |

PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
CASE NO.: 2:21-CV-00898-RSL
010923-11/3182107 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  BACKGROUND .........................................................................................................3

III. ARGUMENT ...............................................................................................................5

    A.    Both Nonparties and Plaintiffs Have Standing to Challenge the Subpoenas. ........................................................................................................5

    B.    Good Cause Exists for a Protective Order. ...............................................5

        1.    Amazon's Family Subpoenas are Improperly Cumulative Because the Only Arguably Relevant Discovery they Seek is Being Produced By Named Plaintiffs. .......................................6

        2.    To the Extent Not Duplicative, Amazon's Family Subpoenas Seek Irrelevant, Intrusive, and Disproportionately Burdensome Discovery ...................................7

            a.    Nonparties' Adherence to Public Health Guidance Is Not Relevant and the Discovery Amazon Seeks On this Topic is Purposefully Intrusive. ..........................................8

            b.    Nonparties' Purchase Histories are Irrelevant and Not Proportional.....................................................................9

            c.    Nonparties' Communications with Counsel are Not a Proper Subject of Discovery. .......................................10

            d.    Any Efforts by Nonparties to Resell Plaintiffs' Purchases Are Not Relevant. .........................................10

        3.    Amazon's Family Subpoenas Improperly Harass Named Plaintiffs and Nonparties.................................................................11

IV.  CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ........................................................................................... 6

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
    2010 WL 11527270 (W.D. Wash. Jan. 4, 2010) .................................................................... 5

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) .................................................................................................. 6

*Eric v. Van Cleave*,
    2017 WL 553276 (W.D. Wash. Feb. 10, 2017) ...................................................................... 5

*F.T.C. v. Neovi, Inc.*,
    604 F.3d 1150 (9th Cir. 2010) ........................................................................................ 8, 10

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024), *as amended* (Aug. 16, 2024) ................................................ 8, 9

*Grund & Mobil Verwaltungs AG v. Amazon.com, Inc.*,
    2023 WL 5533575 (W.D. Wash. Aug. 28, 2023) .............................................................. 2, 6

*Johnson v. U.S. Bancorp*,
    2012 WL 6726523 (W.D. Wash. Dec. 27, 2012) ................................................................... 5

*Monster Energy Co. v. Vital Pharm., Inc.*,
    2020 WL 2405295 (C.D. Cal. Mar. 10, 2020) ................................................................. 2, 10

*Moran v. Dutra*,
    2014 WL 4344274 (E.D. Cal. Aug. 29, 2014) ....................................................................... 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................................... 1

*Roberts v. Cnty. of Riverside*,
    2020 WL 5913852 (C.D. Cal. July 14, 2020) ........................................................................ 7

*Robertson v. Cath. Cmty. Servs. of W. Wash.*,
    2020 WL 1819842 (W.D. Wash. Apr. 10, 2020) ................................................................... 5

*In re Roman Cath. Archbishop of Portland in Or.*,
    661 F.3d 417 (9th Cir. 2011) .................................................................................................. 5

*Rucker v. Air Ventures Hawaii*,
    LLC, 2017 WL 4158201 (D. Haw. Sept. 19, 2017) ............................................................. 11



*In re Subpoena to Recs. Custodian for Rossi Cox Vucinovich Flaskamp PC*,
  2009 WL 10676364 (W.D. Wash. June 19, 2009)..........................................................6

*Walker v. AIU Ins. Co.*,
  2024 WL 4607473 (D. Ariz. Oct. 29, 2024)................................................................7

**Statutes**

15 U.S.C. § 15 45(n) ...............................................................................................8

**Other Authorities**

Fed. R. Civ. P. 23.....................................................................................................1

Fed. R. Civ. P. 26..............................................................................................1, 5, 6

Fed. R. Civ. P. 45.....................................................................................................6

Plaintiffs Alvin Greenberg and Michael Steinberg ("Plaintiffs" or "Named Plaintiffs") along with their family members and familiars Julie Hoemke and David Mickey Chu ("Nonparties"), bring this motion for a protective order pursuant to Rule 26(c)(1) against duplicative and abusive discovery Amazon is pursuing via subpoenas directed to the Nonparties.

### I. PRELIMINARY STATEMENT

One of the most indispensable checks on illegal behavior is when the people harmed seek accountability. This is why courts carefully scrutinize litigation tactics that, in purpose or effect, deter injured persons from maintaining lawsuits to obtain redress. This is nowhere more imperative than in class actions, such as this one, where individual class representatives are essential to challenge corporate wrongdoing harming a great number of people, but in modest amounts. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (observing that the goal of Rule 23 is to "permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Class representatives in this case, as in many class actions, stand to gain little by way of compensable individual damages. And if the burdens of service are too great, no one will champion the interests of a class to ensure that Amazon's alleged price-gouging receives appropriate judicial scrutiny.

Amazon knows this and is doing everything in its power to overwhelm the class representatives with burdens that go far beyond anything Rules 23 or 26 contemplate. In particular, while seeking a protective order that would foreclose class-wide discovery of its own unlawful conduct, *see* ECF No. 78, Amazon is pursuing grossly overbroad discovery from the Named Plaintiffs, including requests for personal photographs and all documents relating (in any way) to "COVID-19." Yet, the Named Plaintiffs persist. Unable to deter Plaintiffs' involvement with *this* overbroad party discovery, Amazon has now opened a new frontier—issuing overbroad, intrusive, and duplicative subpoenas to Plaintiffs' family members and loved ones.

Amazon's subpoenas (together "Family Subpoenas") are improper and should be withdrawn. Amazon is getting all the discovery it could reasonably hope for from the Named Plaintiffs, including *any relevant communications between Plaintiffs and the subpoenaed Nonparties*. Beyond duplicative requests for these same communications, Amazon's Family Subpoenas target broad swaths of

irrelevant and tangential information, including without limitation (a) years of Nonparties' transaction and product search records, (b) "All Documents and Communications" relating to government orders, announcements, and guidance related to Covid-19, and even (c) "All Documents and Communications" relating to compliance with such public health guidance.

In addition to pursuing irrelevant and intrusive information, Amazon's Family Subpoenas are indefensibly overbroad. They are styled as "all documents" requests akin to party discovery, imposing an enormous burden of compliance on Nonparties who have never elected to join this case or subject themselves to discovery. Even if there were some minimal relevance to the information sought (there is not), that relevance would be significantly outweighed by the burden, which is an independent basis to grant this motion. Courts have explained that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *See Monster Energy Co. v. Vital Pharm., Inc.*, 2020 WL 2405295, at *6 (C.D. Cal. Mar. 10, 2020); *accord Grund & Mobil Verwaltungs AG v. Amazon.com, Inc.*, 2023 WL 5533575, at *5 (W.D. Wash. Aug. 28, 2023) (Lasnik, J.) ("[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue").

With no legitimate purpose, the subpoenas should be called out for what they are—an attempt to intimidate Named Plaintiffs by raising the collateral consequences of pursuing their claims. In terms of *in terrorem* effect, the Family Subpoenas are achieving their objective. Plaintiffs have confirmed that they will need to seriously reevaluate their participation in this case should the subpoenas be permitted to stand, and at least one representative has indicated he is already inclined to withdraw. This is understandable and unfortunate. The cost of participating in a lawsuit as a class representative has never entailed, and should not entail, subjecting one's family and familiars to vexatious discovery. If Amazon subpoenas are permitted, there is a realistic possibility that this case ends there, with Named Plaintiffs withdrawing to protect their family and loved ones from the unwarranted intrusion. Amazon will have won, and the merits of this important litigation—which has already generated a landmark decision in the Washington Supreme Court—will never be adjudicated.

Respectfully, the Court should enter a Protective Order barring Amazon's abusive Family

Subpoenas.

## II. BACKGROUND

The subpoenaed Nonparties have not asserted any claims in this case. Nonparty Julie Hoemke received a product (bleach) that Plaintiff Dr. Greenberg purchased from Amazon in 2020 for her use. ECF No. 66 ¶¶ 17-19. Ms. Hoemke did not pay for the bleach and is not seeking any damages in connection with Dr. Greenberg's purchase. *See id.* ¶ 19. The other subpoenaed Nonparty—David Mickey Chu—is not mentioned in the complaint. His connection to this case is limited to the fact that his husband is Plaintiff Michael Steinberg, who was price gouged on yeast he purchased from Amazon in 2020. *Id.* ¶ 29.

Amazon subpoenaed these Nonparties despite Plaintiffs' agreement to produce all documents relating to the transactions on which Plaintiffs were allegedly price-gouged, as well as the searches leading up to those purchases. This includes, without limitation, any related communications Plaintiffs may have had with the subpoenaed Nonparties, and any documents concerning such communications. *See* Exs. A at Nos. 1-3, 20; Ex. B at Nos. 1-5.[1] Plaintiffs' productions will also include any communications between Plaintiffs and the subpoenaed Nonparties (or any other person) regarding the larger "issues in the Action." *See* Ex. A at No. 11; Ex. B at 13; Ex. C at 3 (agreeing to produce these communications). To gather these and additional materials, Plaintiffs have conducted a broad search of more than three years of the Plaintiffs' emails, texts, and social media posts. If there are relevant communications between Plaintiffs and the subpoenaed Nonparties, Amazon is getting them.

After Amazon raised the threat of these subpoenas, Plaintiffs objected before they were even served, noting that Amazon's stated plan to subpoena family members was "improper and troubling." Ex. C at 1. Amazon served the subpoenas over Plaintiffs' objections on March 11, 2025. Exs. D, E. Plaintiffs served further written objections to the subpoenas on April 10, 2025. Ex. G. The parties conferred on the subpoenas on multiple occasions (both before and after service). Despite meet and

---

[1] Unless other stated, all Exhibit ("Ex.") references are to exhibits attached to the Declaration of Ben M. Harrington in Support of Plaintiffs' Motion for Protective Order, concurrently submitted herewith.

PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 3
CASE NO.: 2:21-CV-00898-RSL

confer attempts, Amazon's requests remain overbroad and improper, and the parties have reached impasse on the issues outlined in this motion. *See* Harrington Decl. ¶ 13.

In addition to *facially duplicative requests* for Plaintiffs' communications with Nonparties,[2] and Plaintiff purchase records,[3] Amazon's Family Subpoenas seek large swaths of irrelevant, intrusive and overbroad nonparty discovery, all of it falling within four broad categories:

- **Nonparties' Adherence to COVID-19 Public Health Guidance**: Amazon requests from Nonparty Julie Hoemke any and all documents relating to "government orders, announcements, and guidance related to the COVID-19 Pandemic," as well as her "practices following or disregarding" such public-health guidance. *See* Ex. D at Nos. 1-2.

- **Nonparties' Product Purchase Histories**: Amazon seeks all documents relating to Nonparties' search, purchase, or supply of various products, including (but not limited to) the products on which Plaintiffs were price gouged. *See* Ex. D at Nos. 4-7, 9, 14; Ex. E at Nos. 4, 5, 7-9, 10, 13, 15.

- **Nonparties' Communications with Counsel**: Amazon seeks all of Nonparties' communications with counsel[4] concerning this Action predating the formation of an attorney-client relationship. *See* Ex. D at No. 10, Ex. E at No. 16 (as modified by Exhibit F).

- **Nonparties' Efforts to Resell Products:** Amazon seeks any and all documents regarding any attempt by Nonparties to resell the products on which Plaintiffs were price gouged. *See* Ex. D at No. 12; Ex. E at No. 11.

Amazon knows that subpoenaing Named Plaintiffs' family and relations places enormous pressure on Named Plaintiffs to abandon this case. Amazon has even reserved the right to issue *additional* subpoenas on the family of Plaintiff Christina King. Amazon is holding these subpoenas in abeyance, but only for the time being because Ms. King's mother has received a serious cancer diagnosis. Amazon has asked whether Ms. King will continue as a class representative and has reserved the right to subpoena her mother if she does not drop out. Ex. H at 1-2.

Ms. King is inclined to proceed as a representative, but she will need to reevaluate her participation should Amazon subpoena her family members. *Id.* at 1. Ms. King is not alone. The

---

[2] Ex. D at Nos. 8, 11; Ex. E at Nos. 6, 14, 17.

[3] Ex. D at No. 13; Ex. E at No. 12.

[4] Nonparties are represented by proposed class counsel for purposes of these subpoenas, and thus these requests seek all communications between proposed class counsel and the Nonparties.

remaining Named Plaintiffs believe this is an important case, but given the intrusiveness of the Family Subpoenas, each will need to reconsider their participation in the case should the subpoenas stand. *See* Greenberg Decl. ¶ 4; Steinberg Decl. ¶ 4.

### III.    ARGUMENT

#### A.    Both Nonparties and Plaintiffs Have Standing to Challenge the Subpoenas.

Fed. R. Civ. P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." As "person[s] from whom discovery is sought," Nonparties have standing to seek a protective order in this Court.

Named Plaintiffs likewise have standing to challenge Amazon's Family Subpoenas. *First*, "[a] party has standing to challenge a subpoena issued to third parties where its own interests may be implicated." *Johnson v. U.S. Bancorp*, 2012 WL 6726523, at *2 (W.D. Wash. Dec. 27, 2012). This Court has considered parties "protect[ing] themselves against annoyance and embarrassment stemming from purportedly overbroad subpoenas served on their business associates" to have standing on these grounds. *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 2010 WL 11527270, at *1 (W.D. Wash. Jan. 4, 2010). Named Plaintiffs' interests are far more acute here. The Family Subpoenas impact Plaintiffs' privacy interests, because much of the information sought is about them. The subpoenas also impact Plaintiffs' ability and willingness to continue with their claims in this litigation. Greenberg Decl. ¶¶ 3-4; Steinberg Decl. ¶¶ 3-4.

*Second*, courts regularly hold that parties have standing to move for a protective order where nonparty subpoenas seek irrelevant information or other information outside the scope of Rule 26. *See, e.g.*, *Eric v. Van Cleave*, 2017 WL 553276, at *6 (W.D. Wash. Feb. 10, 2017); *Robertson v. Cath. Cmty. Servs. of W. Wash.*, 2020 WL 1819842, at *5 (W.D. Wash. Apr. 10, 2020). Amazon's Family Subpoenas target information that is irrelevant and for an improper purpose, all in violation of Rule 26. Plaintiffs have standing to demonstrate so.

#### B.    Good Cause Exists for a Protective Order.

Under Rule 26(c)(1), a protective order may be issued "for good cause," to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). Subpart 26(b)(2)(C) offers

additional grounds to limit discovery, including that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," and that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

These standards are applied with particular care when discovery is sought from nonparties. Discovery from nonparties is inherently "more limited" to protect them from "harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *accord Grund*, 2023 WL 5533575, at *5. Parties must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

**1. Amazon's Family Subpoenas are Improperly Cumulative Because the Only Arguably Relevant Discovery they Seek is Being Produced By Named Plaintiffs.**

Courts routinely quash subpoenas that seek information obtainable from a party to the case. *In re Subpoena to Recs. Custodian for Rossi Cox Vucinovich Flaskamp PC*, 2009 WL 10676364, at *2 (W.D. Wash. June 19, 2009) (declining to "sanction the use of non-party discovery when the same evidence can be obtained from a party"); *accord Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014); *Moran v. Dutra*, 2014 WL 4344274, at *4 (E.D. Cal. Aug. 29, 2014).

The only potentially relevant discovery sought by Amazon's Family Subpoenas are communications between Plaintiffs and the Nonparties on issues related to the case. Plaintiffs have already agreed to produce these communications. Indeed, Plaintiffs have agreed to produce relevant communications with anyone, including those family members and familiars Amazon has subpoenaed for the same communications. *See* Ex. A at No. 11; Ex. B at No. 13; Ex. C at 3.

Accordingly, if Dr. Greenberg communicated with Nonparty Julie Hoemke about his purchase of bleach for her, the search leading up to it, price gouging generally, product scarcity, or any other "issue in the Action," Plaintiffs have agreed to search for the communication and produce it. Similarly, while Nonparty David Chu is not even mentioned in the complaint, any relevant communications he had with his husband, Mr. Steinberg, will be produced. Amazon has no good-

faith basis to request that Nonparties conduct a search for the same communications Plaintiffs have agreed to provide. Yet, that is precisely what Amazon is demanding. *See, e.g.,* Ex. D at Nos. 8, 11; Ex. E at Nos. 6, 14, 17.

Similarly, Plaintiffs have already agreed to conduct broad searches for any purchases they made from Amazon or other retailers of the same or closely similar products they were price gouged upon. *See* Ex. I at 1-2. While Plaintiffs question the relevance of this discovery, Plaintiffs have nevertheless agreed to provide it. Again, Plaintiffs are conducting a broad search for any purchase records, searching emails, text messages, and order histories for online retail accounts they maintain. Because Amazon is receiving this information from Plaintiffs themselves, Amazon has no good-faith basis to demand it from Nonparties as well, which they are doing. Ex. D at No. 13; Ex. E at No. 12.

Amazon essentially admits that it is seeking duplicative information. In response to Plaintiffs pointing out that requests ask for the same documents sought from Plaintiffs—such as written communications between the Named Plaintiffs and these Nonparties—Amazon says it only wants production of any "unique" documents a search uncovers, after combing through responsive documents that were not already produced by Plaintiffs. *See* Ex. F. Searching for the proverbial needle in a haystack does not make these requests any less "cumulative or duplicative" in violation of Rule 26(b)(1) or contrary to the case law cited above, and it certainly does not justify subjecting Nonparties to burdensome discovery, which would include identifying and then deduplicating responsive documents already produced by Plaintiffs.

    **2.    To the Extent Not Duplicative, Amazon's Family Subpoenas Seek Irrelevant, Intrusive, and Disproportionately Burdensome Discovery.**

"[I]t is a generally accepted rule that standards for non-party discovery . . . require a stronger showing of relevance than for simple party discovery." *Roberts v. Cnty. of Riverside*, 2020 WL 5913852, at *3 (C.D. Cal. July 14, 2020); *Walker v. AIU Ins. Co.*, 2024 WL 4607473, at *1 (D. Ariz. Oct. 29, 2024) (noting that "relevance standard is heightened" for non-party subpoenas). Beyond the duplicative discovery addressed above (and further below), Amazon's Family Subpoenas seek four categories of information that are entirely irrelevant, purposefully intrusive, and/or not remotely proportional to the needs of the case.

        **a.**     **Nonparties' Adherence to Public Health Guidance Is Not Relevant and the Discovery Amazon Seeks On this Topic is Purposefully Intrusive.**

Amazon has propounded requests seeking all of Nonparty Julie Hoemke's communications and documents related to COVID public health guidance and/or her compliance with such guidance. Ex. D at Nos. 1-2. Amazon has not demonstrated the relevance of this invasive Nonparty discovery. Amazon's only asserted justification is that Ms. Hoemke's views on social distancing might bear on the "reasonable avoidability" of Plaintiffs' purchases, because, the argument goes, if Ms. Hoemke was shopping outside the home, Mr. Greenberg may not have needed to purchase anything from Amazon for her use. Putting aside that Plaintiffs need not establish "reasonable avoidability" to prevail on their CPA claims,[5] Amazon's theory of relevance is specious.

Dr. Greenberg purchased bleach for Ms. Hoemke, his girlfriend, but he has never alleged she was homebound and unable to look for bleach herself. Rather, the Complaint acknowledges that he bought bleach for her after she had visited several retailers in search of disinfectants. ECF No. 66 ¶ 17. Requests for her communications about COVID-19 health guidance, and "All Documents" regarding Ms. Hoemke's "practices in following or disregarding government orders, announcements, and guidance regarding the COVID-19 Pandemic" do not provide any support for Amazon's arguments, since Plaintiffs already acknowledge that Ms. Hoemke *did* shop in-person during that time. Moreover, Amazon's requests would cover a broad range of personal information related to COVID-19 public-health guidance, without any conceivable bearing on the case.

To the extent there is any marginal relevance to Ms. Hoemke's communications about and,

---

[5] The "reasonable avoidability" inquiry stems from the FTC's substantial injury test for an "unfair" practice, under which the court asks whether consumers had a "free and informed choice" to make a purchase, and whether the injuries they faced were "reasonably avoidable by consumers themselves." *See* 15 U.S.C. § 15 45(n); *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). But as the Washington Supreme Court made clear, under the Consumer Protection Act, the substantial injury test is just "one of many ways" an act or practice can be "unfair." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 639 (Wash. 2024) (*en banc*), *as amended* (Aug. 16, 2024). Courts can also look to criteria—so-called *S&H* criteria—which call for (among other things) consideration of whether the conduct at issue is "immoral, unethical, oppressive, or unscrupulous." *See id.* Conduct can also be "unfair" under the CPA if it is "in violation of the public interest," and that showing is not necessarily "dependent on the federal *S&H* criteria." *Id.* at 459. Consequently, while the Washington Supreme Court found that Plaintiffs *can* meet the substantial injury test, *id.*, their claims do not turn on it.

adherence to, public-health guidance, it is grossly outweighed by the burden and intrusiveness of Amazon's requests for every document and communication on the topic.

### b. Nonparties' Purchase Histories are Irrelevant and Not Proportional.

Amazon has also propounded exceptionally broad requests concerning Nonparties' purchasing habits, including requests for nearly three years of documents relating, in any way, to Nonparties' search, purchase, or supply of various products—including disinfectants, yeast, bread, and an undefined set of "substitute or alternative product[s]." *See* Ex. D at Nos. 4-7, 9, 14; Ex. E at Nos. 4, 5, 7-9, 10, 13, 15. Amazon asserted basis for these requests is that if the *Nonparties* had alternative supply of the products *Plaintiffs* purchased from Amazon, or related products, then Plaintiffs' injuries were self-inflicted. Amazon's relevance theory is again specious and does not begin to justify this onerous Nonparty discovery.

Amazon ignores that, to the extent Nonparties had an alternative supply of relevant products and communicated that to Plaintiffs, the communications will be produced by the Parties. That is, if Ms. Hoemke told Dr. Greenberg anything about her search or supply or need for bleach or other disinfectants, that communication will be produced by Dr. Greenberg. This is all the discovery the "reasonable avoidability" inquiry could reasonably require.

Yet with these subpoenas, Amazon is requesting broad information on Nonparties' purchasing history that was *not communicated* to Named Plaintiffs. This information is entirely irrelevant. If Nonparties had an alternative supply of the products at issue, but did *not* convey this to Plaintiffs, this would have no bearing on whether Plaintiffs' injuries were "reasonably avoidable," even under the legal standard advocated for by Amazon. What matters under the reasonable avoidability rubric, to the extent it is applies in this case, is whether the *Named Plaintiffs*—the parties asserting CPA claims—had reasonable and complete means of avoiding their injuries. If the Nonparties were secretly stockpiling products and not communicating this to Plaintiffs—a peculiar practice for which there is no evidence—this would not make Plaintiffs' injuries avoidable because, by definition, Plaintiffs did not know about the alternative supply. *See Greenberg*, 553 P.3d at 642 (CPA injuries avoidable if "consumers ***are aware of***" means of avoiding them) (emphasis added).

1  Indeed, the Ninth Circuit has explained that "[i]n determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free ***and informed*** choice." *Neovi*, 604 F.3d at 1158 (emphasis added).

Amazon's relevance argument is further belied by the scope of its own requests. Amazon is seeking broad discovery of Nonparties' purchasing and product-search histories from January 1, 2020 to October 20, 2022, whereas Plaintiffs allege to have been price gouged in spring 2020. Amazon cannot explain how any Nonparty purchases made months and years *after* Plaintiffs were price gouged might bear on the avoidability of Plaintiffs' antecedent injuries. For example, if Mr. Chu happened to buy yeast or bread in 2021 or 2022, this would have no conceivable relationship to any claim asserted by his husband (or defense thereto), and yet Amazon is demanding that Mr. Chu produce all documents and communications related to any such purchases (as well as the purchase of any "substitute or alternative product(s)"). *See* Ex. E at Nos. 4-5, 7, 8.

Any relevance to Plaintiffs' purchase histories is also significantly outweighed by the burden of Amazon's requests. *See Monster Energy Co.*, 2020 WL 2405295, at *6. Amazon's requests seek nearly three years of documents and communications related in any way to Nonparties' purchase, search or supply of various products. These are styled as party "all documents" requests, calling for any written record, including internet search histories, transaction records, social medial posts, texts, and emails. Compliance with these requests would impose an enormous burden on Nonparties, with no legitimate litigation use for the materials they would need to painstakingly collect.

          **c.**    **Nonparties' Communications with Counsel are Not a Proper Subject of Discovery.**

Amazon also requests that Nonparties produce all of their communications with class counsel relating in any way to this case predating formation of attorney-client relationship. Ex. D at No. 10; Ex. E at No. 16; *see* Ex. F (modifying request). This is a fishing expedition for privileged and sensitive communications, and it should be rejected.

          **d.**    **Any Efforts by Nonparties to Resell Plaintiffs' Purchases Are Not Relevant.**

Amazon's Family Subpoenas also ask the Nonparties to produce all documents regarding any attempts they made to resell the products Plaintiffs were price-gouged upon. Ex. D at Nos 12; Ex. E

at Nos. 11. Ostensibly, these requests go to mitigation, but Nonparties have nothing to mitigate. They did not pay for the products on which Plaintiffs were price gouged. Plaintiffs did, and only Plaintiffs are seeking damages for these purchases. *See* ECF No. 66 ¶¶ 19, 35. Plaintiffs have agreed to provide documents relating to any efforts they made to resell (or obtain a refund for) those products. *See* Ex. J at n.2; Ex. A at No. 24; Ex. B at No. 29. Accordingly, while courts routinely reject CPA mitigation defenses, Amazon is nevertheless already getting all the mitigation discovery it could hope for.

### 3. Amazon's Family Subpoenas Improperly Harass Named Plaintiffs and Nonparties.

The facial overbreadth, duplication, and irrelevance of Amazon's Family Subpoenas demonstrates that they were not drawn to elicit probative evidence. They were designed to harass the Nonparties and discourage Named Plaintiffs from maintaining their claims. *See Rucker v. Air Ventures Hawaii*, LLC, 2017 WL 4158201, at *2 (D. Haw. Sept. 19, 2017) (noting that "overbreadth and irrelevance of the subpoenas demonstrated that they were issued for an improper purpose").

This is the subpoenas' effect. Plaintiffs are understandably reluctant to subject their family and loved ones to intrusive discovery. As noted, at least one remaining class representative is inclined to withdraw from the case if the Family Subpoenas are not invalidated, and others will reconsider their involvement. This includes Ms. King. While Amazon has deferred its subpoenas directed to Ms. King's mother and other relatives in light of Ms. King's mother's cancer diagnosis, Amazon has made clear it may issue those subpoenas should Ms. King remain in the case. *See* Ex. H.

This illustrates the impermissible choice Amazon's Family Subpoenas hoist on Plaintiffs: drop your claims or have your families subpoenaed with sweeping document requests. This is not a strategy Amazon should be permitted to pursue absent a clear and demonstrable need for the subpoenaed information. Amazon has come far short of demonstrating such a need.

### IV. CONCLUSION

The Court should issue a protective order barring Amazon's improper and duplicative Family Subpoenas in their entirety.

DATED this 1st day of May, 2025

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: /s/ *Steve W. Berman*
      Steve W. Berman (SBN 12536)
Dana Abelson (SBN 63278)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
           dana.abelson@hbsslaw.com


Ben Harrington (*pro hac vice*)
Benjamin J. Siegel (*pro hac vice*)
John Grant (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: benh@hbsslaw.com
           bens@hbsslaw.com

*Attorneys for Plaintiffs, the Proposed Class, and Nonparties Julie Hoemke, Sabrina Gates, and David Mickey Chu*

**CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7(e)(6), I hereby certify that the foregoing memorandum of law was prepared using Microsoft Word, with Times New Roman typeface. The text of the main body of the memorandum of law is 12-point font. The word count of the memorandum of law (excluding the caption, table of contents, table of authorities, signature block, and this certification), as calculated by the word-processing system used to prepare the document, is 4,181 words. Thus, this brief is in compliance with the word count limit set forth in Local Rule 7(e)(2).

Dated: May 1, 2025                         By: /s/ *Steve W. Berman*
                                                   Steve W. Berman

PLAINTIFFS' MOTION FOR PROTECTIVE ORDER - 13
CASE NO.: 2:21-CV-00898-RSL


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX