The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALVIN GREENBERG, MICHAEL STEINBERG, and CHRISTINA KING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | No. 2:21-CV-00898-RSL<br><br>**DEFENDANT AMAZON.COM, INC.'S RESPONSE TO PLAINTIFFS' CROSS-MOTION TO COMPEL**<br><br>NOTE ON MOTION CALENDAR:<br>June 13, 2025<br><br>Oral Argument Requested<br><br>**REDACTED** |

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.    The Court Should Strike This Unauthorized Cross-Motion. ............................................. 2

II.    Plaintiffs' Cross-Motion Does Not Make All Transactions Or All Products Relevant. ........................................................................................................... 3

III.    Plaintiffs' Arguments Highlight The Inordinate Burden Of Complying With Their Massive Request. ........................................................................ 8

CONCLUSION .............................................................................................................................. 11

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**
**Cases**

*Greenberg v. Amazon.com, Inc.*,
3 Wn.3d 434 (2024) ...............................................................................................1, 4, 6

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
792 F.3d 1121 (9th Cir. 2015) ............................................................................................3

*U.S. ex rel. Meyer v. Horizon Health Corp.*,
565 F.3d 1195 (9th Cir. 2009) ............................................................................................3

**Rules and Statutes**

Fed. R. Civ. P. 26(b)(1) ............................................................................................3

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# INTRODUCTION

Plaintiffs' Cross-Motion to Compel, Dkt. 156 (the "Motion"), is procedurally and substantively wrong. Procedurally, it is an untimely and unauthorized sur-reply that should be struck. Substantively, the Motion is yet another effort by Plaintiffs to abandon the case theory they pled in this Court and argued before the Washington Supreme Court. That case focused on goods essential to health and safety during the Pandemic and the substantial injury test on which the Supreme Court based its decision. Now, Plaintiffs claim their case is about *everything* that was offered or sold on Amazon.com, and they have conditionally disavowed the substantial injury test. *See* Dkt. 152 at 2 ("[I]f the Court ultimately agrees that the substantial-injury test need not be applied here, Plaintiffs will not rely on it to establish unfairness.").

But Plaintiffs' Motion is simply not responsive to Amazon's Motion for a Protective Order (Dkt. 78, the "PO Motion"). The crux of that motion is Amazon's argument that it would be improper to require discovery on sales of products and transactions not placed at issue by Plaintiffs' actually pled claims and class, not the merits of these underlying claims. PO Motion at 6–8. Plaintiffs' Motion does not answer that argument. Instead, Plaintiffs put before the Court cherry-picked documents, ostensibly to demonstrate that Amazon staff were aware of product shortages and atypical prices during the Pandemic. Apparently in service of their opposition to Amazon's Motion to Dismiss and Strike (Dkt. 73), Plaintiffs claim these documents show Amazon was aware of "price gouging" in its store during the Pandemic.

Amazon encourages the Court to read the documents and not accept Plaintiffs' mischaracterization of them. Amazon has never argued that it was unaware of price fluctuations—or bad actors—during the Pandemic. Nor has Amazon professed ignorance of "price gouging"—a term that in at least 37 states is defined by law, subject to specific criteria. *See* Dkt. 73 at 15 n.11; *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 443 (2024). Plaintiffs' claim in this case was that Amazon *itself* deliberately engaged in "price gouging" on essential goods to take advantage of the Pandemic and achieve windfall profits. None of the documents Plaintiffs submit, nor any of the documents Amazon produced, are consistent with that narrative. What they show is the

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

precise opposite: Amazon's staff worked hard to address shortages of essential goods, including by limiting who could buy them and preventing hoarding. And, in coordination with state and federal governments, Amazon combatted excessive price increases more generally. What Plaintiffs do not put forth (and will not find) is evidence that Amazon implemented, encouraged, or even tolerated exploitative price increases *at all*—let alone at a scale that could ever justify their exceptionally burdensome requests.

Plaintiffs' Motion confirms that, pressed now to actually litigate their claims, Plaintiffs have pivoted very far from their original pleadings and arguments before the Washington Supreme Court. In a classic bait and switch, Plaintiffs now demand discovery not just of essential goods, but of all products. They rely on documents that show not efforts to drive up prices, but rather efforts to *control* price increases. Their claims are vague, and their class is uncertifiable. Plaintiffs' hopes for fixing those things rest on their demand for a fishing expedition, trolling through data on billions of irrelevant products and transactions across a six-year period. But Plaintiffs' demand is improper and would impose an immense and unjustifiable burden, requiring, for example, Amazon to create a process for collecting, compiling, and validating a dataset that is estimated to be four times the size of the entire Library of Congress.

The Motion for a Protective Order should be granted, and Plaintiffs' Motion should be denied.

## ARGUMENT

### I. The Court Should Strike This Unauthorized Cross-Motion.

Plaintiffs' Motion should be struck as procedurally improper and untimely. Plaintiffs made no effort before filing it to comply with LCR 7(k)'s meet-and-confer requirement. And, although styled a "cross-motion" on the PO Motion, Plaintiffs' Motion was filed *six months after* briefing on the PO Motion closed—only days before the hearing. *See* Dkt. 131. It is not a "cross-motion" at all. It is an unauthorized sur-reply, non-responsive to Amazon's PO Motion; indeed, it presents more as a sur-reply to Amazon's Motion to Dismiss. Plaintiffs argue, for example, that their Exhibits F and G undermine Amazon's argument that the Washington CPA is unconstitutionally

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

vague to the extent it contemplates a claim for "unfair" pricing. Motion at 3; *see* Dkt. 73 at 13–18. That has *nothing to do* with the PO Motion—which makes no mention at all of Amazon's constitutional vagueness argument and is instead focused on Plaintiffs' doomed class definition. In any case, these and other documents Plaintiffs cite do not change Amazon's vagueness argument; they do not demonstrate any understanding by Amazon of what the Washington CPA forbade. Instead, the documents reflect Amazon's *internal* intolerance for uncompetitive pricing and compliance with other states' explicit price gouging laws (and enforcement of the same on third-party sellers). *See infra* § II. The Motion is an improper attempt to jump straight to a highly misleading and one-sided merits narrative and should be struck. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (finding district court properly denied leave to file supplemental declarations where they were "untimely filed as a result of relators' deliberate choice not to respond fully to the Motion and would amount to an inequitable surreply" (cleaned up)), o*verruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015).

## II.     Plaintiffs' Cross-Motion Does Not Make All Transactions Or All Products Relevant.

Plaintiffs' Motion elides an important fact: Plaintiffs have the documents they exhibit in support of their Motion because Amazon did *not* limit its production of documents to the limited ASINs upon which Plaintiffs' allegations are actually based. PO Motion at 5. Amazon's position does not deprive Plaintiffs of any evidence necessary to evaluate how Amazon responded to the Pandemic, what its approach to pricing was generally, or how it responded to concerns about "price gouging." Tens of thousands of documents have been produced on those topics.

What Amazon's Motion for a Protective Order *is* about is the extensive data that Plaintiffs seek that has nothing to do with their own purchases or even with purchases of the "essential goods" they put at issue in their Second Amended Complaint ("SAC"). At the core of Plaintiffs' Motion is their continued fundamental misrepresentation of what their case is about—and by extension what information is actually discoverable. *See* Fed. R. Civ. P. 26(b)(1) (permitting

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL (2:21-cv-00898-RSL) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

discovery if it "is relevant to any party's claim or defense and proportional to the needs of the case"). The crux of Plaintiffs' claims is not that Amazon could have done more to tamp down price increases during an unprecedented emergency, but rather a slew of inflammatory allegations that Amazon *itself* orchestrated price gouging as a means to "exploit" vulnerable consumers and "reap extraordinary profits." *See, e.g.*, SAC ¶¶ 125, 150, 164. In service of those allegations, Plaintiffs made clear before the Washington Supreme Court and in their subsequently filed SAC that their allegations reached only *essential goods* sold on Amazon.com during the Pandemic. *See* generally PO Motion at 7–8; *see also* Declaration of John Goldmark ("Goldmark Decl.") Ex. A, Plaintiffs' Answering Brief at 13 ("Plaintiffs were among the many that turned to Amazon to obtain *essential goods* during the height of the pandemic"); *id.* at 14 ("Without meaningful alternatives, the other Plaintiffs also bought goods they needed to *remain safe* and fulfill *essential needs*."); *id.* at 19 (alleging "Amazon profiteered by means of grossly inflated prices, unrelated to costs, *on essential goods* that captive consumers needed to keep themselves and families healthy") (all emphases added); Goldmark Decl. Ex. B, WA Sup. Ct. Transcript at 00:36:17.28 (Stephen Berman: "Well, right now, the complaint really focuses on essentials, right?"). On those claims, it is clear that only data about "essential goods" should be relevant and therefore discoverable here.

Plaintiffs' Motion ignores the case they pled. By mischaracterizing a handful of the 84,954 documents Amazon has produced to date, Plaintiffs seek to expand the claims and class in the SAC and thus the scope of discovery. Putting aside that such an expansion by motion is wholly impermissible, the documents do not support such a claim, or discovery thereon, that Amazon was engaged in price gouging on all goods and food items. In fact, they demonstrate precisely the opposite. The documents show that Amazon was working around the clock from the beginning of the Pandemic to identify *and prevent* price increases. *See* Motion at 2–3. Plaintiffs' alarm that Amazon ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Motion at 1, ignores that Amazon sells products in a market where 37 states have enacted *specific* "price gouging" prohibitions that Amazon must account for—including percentage price increase prohibitions of the type that the Washington Supreme Court expressly declined to read into the CPA. *See*

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Greenberg*, 3 Wn.3d at 471 (rejecting the notion that any "certain percentage price increase is unlawful" under the CPA). More fundamentally, *none* of the documents Plaintiffs exhibit demonstrate in the slightest that Amazon itself either engaged in or encouraged price increases or "price gouging," much less did so in an effort to disadvantage customers. In fact, they demonstrate the opposite—efforts by Amazon to *prevent* price increases and respond to unprecedented market conditions.

Plaintiffs cite Exhibits A and B for the obvious proposition that "consumers turn[ed] increasingly to online retail" during the Pandemic. Motion at 2. But the documents show more than that: Amazon's concerted efforts to *protect* its customers, not overcharge them. Exhibit A describes a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Exhibit B demonstrates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Exhibit C shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See also* Pls.' Ex. D at -174252 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A full record will show Amazon's staff worked fervently around the clock to ensure products were available to consumers at reasonable prices during the Pandemic. *See, e.g.*, Goldmark Decl. Ex. C, AMZ-GBG_00024754 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Goldmark Decl. Ex. D at -38223 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Plaintiffs further rely on documents confirming Amazon expanded its pricing surveillance during the Pandemic ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pls.' Ex. E at -13312. Again, this is wholly at odds with Plaintiffs' theory that Amazon was *trying* to price gouge. For example, Exhibit F confirms that Amazon worked with the Washington Attorney General (as it did with other state and federal authorities) to combat bad actors. ▮▮▮ Nothing in Exhibit F either suggests that Amazon tolerated or encouraged price gouging, or that

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL (2:21-cv-00898-RSL) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  Amazon had notice of (or knowingly transgressed) whatever standard of "unfairness" Plaintiffs
2  are trying to impose in this case. Amazon is proud of its extensive collaboration with government
3  agencies and public health organizations to ensure they could get the products they needed to
4  combat the Pandemic. *See* Goldmark Decl. Ex. E, AMZ-GBG_00038287 ▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

7  Plaintiffs' attempts to twist Exhibits E through J to support their claims also fail. These
8  documents refer to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But
9  time and again Plaintiffs wrongfully conflate Amazon's own consumer-centric efforts to drive
10 prices down (and monitor for anomalous prices) with a standard of unfairness under the CPA.
11 Amazon is a private company engaged in commerce in a highly competitive market. The fact that
12 Amazon decided to take down or deemphasize offers for products at prices that it considered too
13 high (or low, for that matter) does not mean that such offers would have been *illegal*. And this is
14 the fundamental error of Plaintiffs' discovery demand. They seem to believe that they can troll
15 Amazon's billions of transactions in hopes of identifying some that might have otherwise been
16 suppressed by some iteration of Amazon's own internal offer surveillance (standards never
17 published to the market or relied on by consumers) and then argue that such offers were necessarily
18 violations of the CPA. Motion at 4. But the Washington Supreme Court rejected a formulaic *per
19 se* standard of unfairness in pricing. *Greenberg*, 3 Wn.3d at 470 (rejecting "rigid 15 percent price
20 increase threshold as a predicate to a price gouging claim").

21 To that end, Plaintiffs try to connect the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ referenced in Exhibit E, and Amazon's collaboration
23 with the Washington AG shown in Exhibit F, to claim Amazon purportedly divined the CPA's
24 definition of "unfair" prices. Motion at 3. But Amazon's internal efforts to provide its customers
25 with competitive pricing cannot serve as a proxy for Washington's legal requirements. ▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27

AMZN'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax



1
2
3    Plaintiffs also misrepresent Exhibits H, I, and J as suggesting sweeping pricing errors.
4  When read in context, these Exhibits identify
5  . *See* Pls' Ex. I
6  . Exhibit J—which Plaintiffs
7  trumpet as evidence that
8  . The potential
9  for abusive pricing fundamentally differs when Amazon, not a third party, controls the price, and
10 it is hardly surprising that
11
12
13
14  . Goldmark Decl. Ex.
15 F, AMZ-GBG_00370123
16  Goldmark Decl. Ex. G, AMZ-
17 GBG_00043163
18  . That, again, is totally inconsistent with Plaintiffs' theory of the case.
19    What is missing from Plaintiffs' short-form, one-sided narrative is any support for their
20 contention that, without a certifiable class and without allegations in the SAC that would implicate
21 Amazon's pricing practices with respect to non-essential goods, Plaintiffs are entitled to
22 production of multiple forms of data covering the ***billions*** of transactions and offers on
23 Amazon.com between 2017 and 2023.  To the extent Plaintiffs show anything at all, it is that
24 Amazon took extensive steps to *prevent* the very conduct Plaintiffs accuse it of, and further to
25 ameliorate the impact of the Pandemic on the pricing and supply of essential items.  As a result,
26 and as Amazon pointed out in its Motion for a Protective Order, the data Plaintiffs seek—
27 irrelevant and burdensome as it would be to produce—would also be only the jumping off point

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL (2:21-cv-00898-RSL) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

for an incomprehensibly expansive investigation into the facts and circumstances of **billions** of transactions. Plaintiffs' Motion thus highlights why, at *least* until the Court resolves the Motion to Dismiss and Strike, discovery should be limited to the actual claims that Plaintiffs pled and the Washington Supreme Court found potentially covered by the CPA.

### III. Plaintiffs' Arguments Highlight The Inordinate Burden Of Complying With Their Massive Request.

Plaintiffs' Motion underscores just how burdensome the discovery they seek would be to produce. They ask the Court to compel, at a minimum, data for six years on:

1) every product offer on Amazon.com;

2) every transaction on Amazon.com; and

3) pricing notices concerning every product on Amazon.com;

*plus*, for a four year period, pricing data including Pricing Error Prevention ("PEP") data, Atypical Pricing – Featured Offer Disqualification ("AP-FOD") data, and Contribution Profit ("CP") data (which tracks profits minus costs and other variable expenses per product). Motion at 5.

These are not off-the-shelf data productions, as Plaintiffs wrongly suggest. The data in question implicates **billions** of products, offers, transactions, and pricing thresholds. Plaintiffs nonetheless assert that Amazon's production burden as to the first three categories is "zero" because Amazon has produced this data in other cases and could simply give it all to Plaintiffs here. *Id.* And they say Amazon has identified no incremental burden in producing the fourth category of data—the exceptional burden of which Amazon describes below.

As for the first three categories of data, Plaintiffs simply fail to address Amazon's arguments in the PO Motion that Plaintiffs are *not entitled* to these vast troves of data that are largely irrelevant to their claims. *See* PO Motion at 6–8. If supersets of these datasets were produced in other litigation, that is because they were *relevant* to that other litigation. Plaintiffs' allegations that Amazon unfairly raised prices on "essential goods" that they "needed to keep themselves and [their] families healthy" do not entitle them to offer or transaction data on everything Amazon ever listed for sale. And in any event, Amazon has previously outlined the

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL (2:21-cv-00898-RSL) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

burden of collecting and producing this data.  PO Motion at 9–11.  Plaintiffs do not dispute that, in the absence of an agreed universe of relevant goods, sorting through this previously produced data to identify that which may be relevant to *their* claims could take *years*.  PO Motion at 2.

The burden associated with the collection and production of the PEP and AP-FOD data is even greater, requiring substantial extra work before any data could be produced.  Plaintiffs admit these datasets "were not produced in other cases," and for good reason.  Unlike the other datasets, which broadly capture static information like transaction data and price offers, PEP and AP-FOD thresholds, and the inputs that inform them, are constantly in flux. ██████████████████████████████████████████████████████████████████████████████, and Plaintiffs have asked for four years' worth of these fluctuations for every product sold on Amazon.com.

AP-FOD and PEP thresholds are designed to flag "atypical pricing" above a certain calculated reference price.  *Id.* ¶ 6.  ████████████████████████████████████████████████████████████████████████████████████████████ *Id.*; *see* Goldmark Decl. Ex. H, AMZ-GBG_00418332 ████████████████████████████████████████████████████████████████████████████████████████████████████████████.  Brown Decl. ¶ 6.  ████████████████████████████████████████████████ *Id.* ████████████████████████████████████████ *Id.*

PEP threshold data and its attributes sought by Plaintiffs are not stored in a central location.  To produce this data with all the characteristics Plaintiffs have requested, Amazon would need to create a new dataset compiling threshold and input data from numerous sources.  *Id.* ¶ 8.  It would then need to validate the data to ensure it was accurately compiled—confirming, among other things, that the data is not compromised by incorrect tables, stale data, or bad table joins.  *Id.* ¶ 11.  Amazon does not currently have a system in place to do so.  It would thus need to establish a process for validating the compiled PEP data, identify a means of running test cases within the

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

data pursuant to this process, create a program or "script" to run the test cases, and then isolate the source of any resulting errors to refine its process. *Id.* AP-FOD threshold data is likewise not stored in a central location with the attributes Plaintiffs seek, and creation of a unified dataset would require similar processes to identify and compile data from multiple databases and then validate the newly created dataset. *Id.* Even then, there is a risk that the resulting datasets will still contain inaccuracies. *Id.* ¶ 12.

Because of this complexity, the burden of complying with Plaintiffs' request cannot be overstated. First, Amazon estimates that Plaintiffs' requests implicate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, resulting in a dataset that early estimates suggest is **40 terabytes**—or roughly four times the size of the printed collection of the Library of Congress—of raw data. *Id.* ¶ 10. It took an Amazon employee six hours just to figure out what the approximate size of the dataset might be. *Id.* And the burden merely begins with this data pull; Amazon would need to engage in the same process of identifying ASINs relevant to Plaintiffs' claims as actually pled that it needs to do for the datasets addressed in the PO Motion. *See* PO Motion at 9–10. PEP and AP-FOD data require the additional validation exercises described above, which would require at least a *month* of full-time work from an Amazon data scientist to complete after the ASIN identification process was done. Brown Decl. ¶ 11. This burden cannot be lessened or diffused among multiple employees due to the nature of the work involved. *Id.* ¶ 13. While Amazon manually validated and produced this data for the nine specific ASINs purchased by the original Named Plaintiffs, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is effectively impossible to similarly validate data for all transactions and offers in any reasonable time period. *Id.*

Plaintiffs may retort that Amazon could simply provide them with uncombined data from the various sources Amazon has explained here. But doing so would actually *increase* the burden—on both parties. First, Plaintiffs cannot combine the data themselves; Amazon would need to provide them with the business logic to do so. *Id.* ¶ 9. There is no preexisting single document containing this logic, and it would take an Amazon employee one to two weeks to

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL (2:21-cv-00898-RSL) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

generate it. *Id.* Plaintiffs would then need to compile the raw, disparate datasets (likely necessitating continued support from Amazon employees), but would be unable to validate the resulting datasets' accuracy—again, even Amazon would require at least a month to assess a representative set of test cases using its internal systems, data, and foundational knowledge. *Id.* ¶ 11. Plaintiffs' compilations of the data are likely to contain errors, but in order to catch and dispute these errors Amazon would need to compile and validate the data itself anyway. In short, providing Plaintiffs with uncompiled data now would only result in duplicative burden later.

Finally, Plaintiffs' tired argument that they need data on all products to refine their class definition, Motion at 4–5, ignores that the class they pled is an impermissible failsafe class. *See* Dkt. 73. As addressed in detail in Amazon's reply in support of the PO Motion, Plaintiffs may not engage in a fishing expedition to support a facially invalid class. Dkt. 85 at 2–3.

## CONCLUSION

For the above reasons, Amazon respectfully requests that the Court strike Plaintiffs' untimely and improper Motion, or in the alternative, deny the Motion on the merits.

DATED: June 9, 2025

Respectfully submitted,

*/s/ John A. Goldmark*
John A. Goldmark, WSBA #40980
MaryAnn T. Almeida, WSBA #49086
Nick Valera, WSBA # 54220
Caitlyn C. Courtney, WSBA #62344
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Email: johngoldmark@dwt.com
    maryannalmeida@dwt.com
    nickvalera@dwt.com
    caitlyncourtney@dwt.com

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

John Freed, *admitted pro hac vice*
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 276-6500
Email: jakefreed@dwt.com

*/s/ Jennifer Kennedy Park*
Jennifer Kennedy Park, *admitted pro hac vice*
Matthew M. Yelovich, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4100
Email: jkpark@cgsh.com
   myelovich@cgsh.com

Ryan Shores, *admitted pro hac vice*
Nowell D. Bamberger, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Email: rshores@cgsh.com
   nbamberger@cgsh.com

Charity E. Lee, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: charitylee@cgsh.com

*Attorneys for Defendant Amazon.com, Inc.*

*I certify that this memorandum contains 3,982 words in compliance with the Local Civil Rules.*

AMAZON'S RESP. TO PLAINTIFFS' CROSS-MOTION TO COMPEL
(2:21-cv-00898-RSL) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax