1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVIN GREENBERG, *et al*.,

               Plaintiffs,

    v.

AMAZON.COM, INC.,

               Defendant.

CASE NO. 2:21-cv-00898-RSL

ORDER DENYING MOTION FOR
PROTECTIVE ORDER AND
GRANTING MOTION TO COMPEL

      This matter comes before the Court on "Amazon's Motion for Protective Order Under Rule 26(c)(1)" (Dkt. # 78) and "Plaintiffs' Cross-Motion to Compel Withheld Data" (Dkt. # 154).[1] Plaintiffs allege that Amazon.com, an on-line retailer, engaged in unlawful price gouging during the COVID-19 pandemic, raising (or allowing third-party vendors to raise) prices on a vast array of products and reaping extraordinary profits. Plaintiffs, five individuals from California, Arizona, and North Carolina, seek to represent a class of:

> All persons who purchased any consumer good or food item, including any listed on Appendix A, on Amazon.com between January 31, 2020 and October 20, 2022 whose price was set at an unfair level. The precise identification of unfair prices and when they were in place will be refined after discovery and expert analysis.

---

[1] This matter can be resolved on the papers submitted. The parties' requests for oral argument are DENIED. Amazon's motion to strike plaintiffs' motion to compel is also DENIED.

ORDER DENYING MOTION FOR PROTECTIVE ORDER
AND GRANTING MOTION TO COMPEL - 1

Dkt. # 66 at ¶ 130. The named plaintiffs purchased items such as cleaning products, dry yeast, flea and tick spray, ramen noodles, rice, hand sanitizer, and distilled water. The appendix referenced in the proposed class definition includes additional items, such as processed and unprocessed foods, face masks, household goods, over-the-counter medicines, ivermectin, computer peripherals, and yoga mats.

In September 2024, plaintiffs served written discovery seeking "[a]ll transactional data for purchases made on Amazon.com," "[a]ll data for product offers on Amazon.com," and "[d]ata sufficient to track the Buy Box price for all products sold on Amazon.com" between January 31, 2017, and the present. Dkt. # 79 at 8 (Request for Production Nos. 11-13). Amazon filed this motion for protective order, arguing that the requests do not seek relevant information insofar as they encompass data related to the offer and sale of goods that (a) were not purchased by the named plaintiffs, (b) are not essential, and/or (c) were available from other sources.

**A. Scope of Discovery Under Rule 26(b)**

Rule 26 of the Federal Rules of Civil Procedure governs the permissible scope of discovery in federal civil litigation. Rule 26(b) sets forth the threshold requirement that the information sought must appear "relevant to any party's claim or defense and proportional to the needs of the case...." The information plaintiffs seek is clearly relevant. Plaintiffs allege that Amazon acted unfairly for purposes of the Washington Consumer Protection Act ("CPA") when it took advantage of a global pandemic and related market disruptions to raise prices at a time when consumers had few other options. The data they seek will enable them to identify which consumer goods and food items saw a price spike during the first few years of the pandemic. While the data will not, standing alone, prove plaintiffs' price gouging claim, establishing that a price increase occurred is a necessary first step.

Amazon argues that the request is impermissibly overbroad because it encompasses consumer goods and food items that are not essential to the purchaser's health and safety.

ORDER DENYING MOTION FOR PROTECTIVE ORDER
AND GRANTING MOTION TO COMPEL - 2

Plaintiffs' burden under the CPA is to show that Amazon's conduct was unfair. The Washington Supreme Court recently made clear that where conduct is alleged to be unfair but is not regulated by statute, plaintiffs "need[] show only that the defendant's conduct is in violation of public interest." *Greenberg v. Amazon.com, Inc*., 3 Wn.3d 434, 459 (2025). A violation of public interest related to price gouging can be shown in a number of ways that do not require plaintiffs to establish that the purchased items were essential for health or safety. *Id.*, at 455-56 (discussing various criteria the Federal Trade Commission has used to make fairness determinations). Amazon asserts that, even if essentiality is not a necessary element of unfairness, plaintiffs are bound by the allegations of the Second Amended Complaint wherein they affirmatively limited their claims to purchases of essential items. A fair reading of the complaint does not support such an interpretation. While some of the products purchased by the named plaintiffs are described in the Second Amended Complaint as "essential," others are simply food or consumer goods that were desired by the purchaser for one reason or another, such as the beef ramen Christina King purchased to ease her mother's anxiety about product shortages. Appendix A, referenced in the proposed class definition, includes many items that may have been "essential" to making a particular recipe or to participating in a desired activity but that can hardly be characterized as indispensable, necessary, or extremely important.

Amazon also suggests that the requests for production are impermissibly overbroad because data regarding all offers and sales of consumer goods and food items will undoubtedly include information regarding products for which there was no price increase during the class period. No evidence is provided for this supposition, and plaintiffs' theory of the case is that Amazon used a global pandemic and ensuing market disruptions as an excuse to increase prices on a wide array of products. The Court will not assume otherwise at this stage of the litigation. Even if there are items whose prices remained relatively stable during the relevant period, the production is relevant in that it will enable plaintiffs

to (1) identify products with significant price fluctuations and (2) test their theory that price-gouging occurred unless products were readily available elsewhere or were simply not in demand during a global pandemic. Amazon offers no other means by which plaintiffs can accomplish these tasks.

Recognizing that the discovery sought is relevant to the class claims asserted in the Second Amended Complaint, Amazon filed a separate motion to strike the class allegations. If successful, the motion to strike would limit the scope of this lawsuit to only the named plaintiffs and the handful of products they purchased during the first few years of the pandemic. Such a limitation would make the vast majority of the transactional data plaintiffs seek largely irrelevant. Given the standard used to evaluate motions to strike class allegations, however,[2] the Court cannot presume that the motion will be successful and will not restrict otherwise permissible discovery simply because the motion might be granted in the future.

With regards to the proportionality requirement, courts consider factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If plaintiffs are going to prove their claim that Amazon engaged in price gouging during the COVID-19 pandemic, they need discovery regarding the prices charged before, during, and after the declared

---

[2] A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But Rule 12(f) does not authorize the resolution of disputed and substantial factual or legal issues. The function of a Rule 12(f) motion is to avoid the expenditure of time and money that would arise from litigating spurious issues (*i.e.*, those that are redundant, immaterial, impertinent, or scandalous), not to act as a substitute for a Rule 12(b) motion. Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023). This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4729176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

ORDER DENYING MOTION FOR PROTECTIVE ORDER
AND GRANTING MOTION TO COMPEL - 4

emergency. Only Amazon has access to the information plaintiffs need. Amazon acknowledges that this litigation involves billions of transactions, suggesting that the amount in controversy is extraordinary. The importance of the issues at stake in the action, the importance of the discovery in resolving those issues, the amount in controversy, defendants' exclusive access to the information, and Amazon's resources all support a finding that the discovery requests are proportional. The only remaining issue is whether the burden or expense of the proposed discovery outweighs its likely benefit, an issue that is discussed below.

**B. Protective Order Under Rule 26(c)**

Even if a discovery request seeks relevant and proportional information, discovery may nevertheless be prohibited under Rule 26(c) upon a showing of "annoyance, embarrassment, oppression, or undue burden or expense" in connection with a particular request. The Court is authorized to "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(D). To establish good cause for a protective order under Rule 26(c), the movant must show "'that specific prejudice or harm will result' if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Amazon argues that responding to the discovery requests would require a manual review of each product page because searching for the categories of goods purchased by the named plaintiffs, such as "face masks", would return hits for items ranging from Halloween masks to N95 respirators to moisturizing face mask products. Dkt. # 80 at ¶¶ 5-12. But plaintiffs have not requested transactional data for the categories of goods they

themselves purchased. Changing the nature, scope, and reach of a discovery request in order to preclude automated searching does not mean that the actual discovery request poses an undue burden.

With regards to the fact that plaintiffs' actual discovery requests are limited to transaction data related to "consumer goods" and "food items," Amazon states that it does not categorize its offerings using those labels. Dkt. # 80 at ¶ 4. Amazon does not say that it has no tools at its disposal to identify what it considers "consumer goods" and/or "food items." Rather, it argues that it would be unfair to require it to perform searches and make productions based on its own understanding of the terms, when plaintiffs could then take issue with that understanding and demand that Amazon start the search process all over again. Amazon's definition of "consumer good" as an item sold for personal consumption, Dkt. # 78 at 10, appears to be consistent with the ordinary use of the phrase. *See* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/consumer-goods (defining "consumer goods" as "products that people buy for their own use"); Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/consumer%20goods (defining "consumer goods" as "goods that directly satisfy human wants"). Plaintiffs offer no alternative definition, nor do they take issue with Amazon's interpretation of the phrase. For purposes of Amazon's search in response to Requests for Production 11-13, "consumer goods" shall include all items sold for personal consumption or use. Because neither party has identified any ambiguity in the phrase "food item," no further clarification is necessary.

The party seeking to defeat discovery on the ground that a request is unduly burdensome must allege specific facts showing the nature and extent of the burden. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Foltz*, 331 F.3d at 1130 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). *See also Raya v. Barka*,

No. 3:19-CV-2295-WQH-AHG, 2022 WL 686460, at *7 (S.D. Cal. Mar. 8, 2022); *Dunlap v. Alaska Radiology Assocs., Inc.*, No. 3:14-CV-00143-TMB, 2019 WL 13193359, at *3 (D. Alaska Mar. 22, 2019); *Awosika v. Target Corp.*, No. 11-0185-RSM, 2011 WL 13048452, at *1 (W.D. Wash. May 26, 2011); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D. Nev. 1997)). Amazon has not argued, much less shown, that searching for or producing offer data, transaction data, pricing notices, and/or "contribution profit" data for all products would be technically difficult or would impose a burden that is out of line with the claims and damages at issue in this case. With regards to the "price error prevention" ("PEP") and "atypical pricing – featured offer disqualification" ("AP-FOD") data, Amazon argues that the raw data would have to be collected from multiple sources and a document created to provide plaintiffs "the necessary business logic and know-how" to compile the data in a reasonably accurate fashion, a task that would take approximately 40-80 hours to complete. Dkt. # 169 at ¶¶ 8-9. If Amazon were to do the compilation, it would take another 40-80 hours. Dkt. # 169 at ¶ 10. Verifying the accuracy of the compilation and ensuring, to the extent possible, that the combined data set reflects the way Amazon's systems worked at any given time would take at least 160 additional hours to complete. Dkt. # 169 at ¶ 11. Given the data's central relevance to this case, the number of people employed by Amazon, and the company's extraordinary technical capabilities and familiarity with the data at issue, the Court finds that a production which may take up to 320 hours (two months of a single employee's time) is not undue in terms of either time or expense.

//

For all of the foregoing reasons, Amazon's motion for protective order (Dkt. # 78) is DENIED and plaintiffs' cross-motion to compel (Dkt. # 154) is GRANTED.

DATED this 18th day of July, 2025.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR PROTECTIVE ORDER
AND GRANTING MOTION TO COMPEL - 8