UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALVIN GREENBERG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant. | CASE NO. 2:21-cv-00898-RSL <br><br> ORDER GRANTING MOTION TO COMPEL DISCLOSURE REGARDING PRESERVATION EFFORTS |

This matter comes before the Court on "Plaintiffs' Motion to Compel Disclosure Related to Amazon's Failure to Preserve Documents." Dkt. 125. Amazon concedes that some documents produced, received, or maintained by employees who were key players in Amazon's efforts to manage pricing issues during the COVID-19 pandemic were deleted under its normal document retention policies. Plaintiffs filed this motion not to request sanctions for spoliation, but to obtain information regarding Amazon's document preservation efforts. This information will, plaintiffs argue, illuminate the scope of the losses, enable the parties to identify replacement custodians who have preserved documents, help determine whether the loss of documents was willful or merely negligent, and inform plaintiffs' decision regarding the need to seek sanctions. Some of the information plaintiffs sought was disclosed in Amazon's opposition papers. The remaining issues involve plaintiffs' demand for copies of the litigation hold notices employees

received and preservation information regarding employees who might be suitable replacement custodians, namely Guarav Tiwari, Nicole Jefferson, Portia Bamiduro, Shantuanu Chakraborty, Raxit Kagalwal, Pranav Bhasin, and Max Morris.

Amazon asserts that any failure to preserve documents was either reasonable or insignificant. In particular, Amazon argues that (a) it had no duty to preserve the documents at issue because it was unaware of their relevance until plaintiffs amended their complaint in 2024 and/or the ESI custodians in this case were identified, (b) it timely triggered an automated back-end preservation system that ensured that all custodial ESI was retained from the date the hold was initiated, (c) any failure to preserve documents was inconsequential in light of Amazon's production in this case, and (d) some of the employees plaintiffs identified as custodians or potential custodians do not have relevant or unique information, making the loss of their documents unimportant. In addition, Amazon asserts that the motion to compel the disclosure of information regarding preservation efforts is premature because the meet and confer process was not yet complete.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

The "duty to preserve evidence is triggered when a party knows or reasonably should know that the evidence may be relevant to pending or future litigation." *E.E.O.C. v. Fry's Elecs., Inc.*, 874 F.Supp.2d 1042, 1044 (W.D. Wash. 2012). Once triggered, this duty extends to any documents or tangible items that the party knows or should know are relevant to the litigation, as well as to documents in the possession of employees who are "key players" in the case. *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) (quoting *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D. Cal. 2012)). Where, as here, a company has a document retention policy in place, the company is obligated to suspend that policy and implement a litigation hold to

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 2

ensure the preservation of relevant documents. *Apple*, 881 F.Supp.2d at 1137 (imposing sanctions for failure to institute litigation hold); *see also In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1070 (N.D. Cal. 2006) (same).

      Amazon's first argument -- that it did not know and could not reasonably have known that documentary evidence regarding its handling of pricing issues during the COVID-19 pandemic would be relevant to plaintiffs' claims -- is not persuasive. In April 2020, a complaint was filed against Amazon alleging that it had failed "to ensure that its pricing does not exploit consumers facing emergency conditions," Dkt. 1 at ¶ 5, violating California's price gouging law, establishing a lack of reasonable care, and unjustly enriching Amazon. *McQueen v. Amazon.com, Inc.*, No. 4:20-cv-02782-JSW, Dkt. 1 (N.D. Cal. Apr. 21, 2020). That California's price-gouging prohibition makes a 10% price increase during a declared state of emergency presumptively unlawful, *McQueen*, Dkt. 1 at ¶ 44, did not convert the claims into a mathematical exercise to be resolved solely by reference to cost and pricing data. The plaintiffs in *McQueen* alleged that Amazon controlled pricing on its own inventory, retained control of pricing decisions related to certain third-party sellers, and directly benefited from the prices set by all third-party sellers. *McQueen*, Dkt. # 1 at ¶¶ 58-60. They also alleged that price gouging on the platform was entirely foreseeable given Amazon's experiences in prior emergency situations and that Amazon failed to take steps to prevent price gouging because it enabled Amazon to generate unprecedented profits during the pandemic. *McQueen*, Dkt. 1 at ¶¶ 68 and 74. Amazon's own pricing policies and decisions, whether it foresaw excessive price increases, what efforts it made to prevent price gouging, and how it responded when the data showed that large price increases were occurring on the platform were clearly at issue. The Court finds that the duty to preserve evidence in the possession of employees who

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 3

managed pricing issues during the pandemic (including the duty to suspend normal document retention/deletion policies as to those employees) arose in April 2020.[1]

In response to plaintiffs' motion to compel disclosures regarding Amazon's preservation efforts, Amazon has produced a table showing which employees were notified that they should be preserving documents for this case and when they were notified. Dkt. 142 at 4-6. No employees received notice of this litigation between April 21, 2020, the date *McQueen* was filed, and October 12, 2020. Six employees received a case-specific litigation hold notice on October 12, 2020. Sixty-four other employees were notified that they should preserve documents between December 19, 2022, and March 10, 2025.[2] That means that for more than two years, only six Amazon employees were required to preserve documents related to plaintiffs' claims. As Amazon points out, "[o]rganizations are not generally required to 'preserve every email or electronic document'" because to do so "'would cripple organizations that almost always are involved in litigation, and make discovery even more costly and time-consuming.'" *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 801–02 (N.D. Cal. 2024) (quoting The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (The Sedona Principles), 19 Sedona Conf. J. 1, 95 (2018)). We are not, however, dealing with the failure to issue litigation holds to a few employees on the periphery of Amazon's pricing team, the loss of a certain type of file or document that slipped through the hold protocols, or even a hold notice that was woefully insufficient. Amazon simply failed to notify anyone of this litigation and the preservation duties it triggered for six months after the complaint was filed and then notified only six

---

[1] Amazon offers no support for the proposition that the duty to preserve did not attach until the parties had negotiated an agreement regarding the discovery of electronically-stored information ("ESI") and identified the custodians whose records would be searched. Such a delay would eviscerate the duty to preserve, resulting in the loss of evidence during the months (or years) it takes to negotiate ESI protocols and identify custodians.

[2] David Cui apparently received two litigation notices. The first was issued on January 9, 2025. The Court assumes that the second notice issued on March 12, 2025, was functionally duplicative.

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 4

employees.[3] Two years and eight months passed before Amazon thought to ask anyone else to preserve their documents, including some of the people Amazon later identified as custodians who were most closely involved in managing pricing issues during the pandemic.[4] The Sedona Principles do not excuse Amazon's failures in this case.

Amazon argues that its failure to timely issue litigation holds for this case was of no moment because some of the employees who ultimately received notices were subject to holds for other litigation, Dkt. 142 at 4, and those holds triggered an automated back-end preservation of their documents. Amazon repeatedly asserts that it has therefore ensured that all custodial ESI from these employees was retained from the date the original hold issued. Dkt. 140 at p. 7, ll. 3-4; p. 7, ll. 6-7; p. 10 at ll. 8-9; p. 13 at ll. 5-6; p. 13, l. 27 - p. 14, l. 2. These assertions are not accurate. Amazon's automated system preserves only a custodian's email, Slack, and Chime records. Dkt. 142 at ¶ 3. Other materials from an employee's electronic devices, desktops, and servers, including Word documents, presentations, notes, spreadsheets, PDFs, *etc.*, were not automatically preserved. Instead, they would be subject to Amazon's general document retention/deletion policies unless and until the employee received a case-specific hold notice telling them what kind of information they must retain. While the automated preservation system might catch documents that were shared through email, Slack, or Chime, Amazon failed to take steps to preserve various sources of ESI held by relevant custodians.[5]

---

[3] Amazon reports that there were "more than 1,200 employees who work directly on Amazon's pricing systems." Dkt. 149-3 at 15.

[4] Amazon proposed twelve initial document custodians under the parties' agreed ESI protocols, describing them as the "considered choices based on our understanding of Amazon personnel most closely involved in managing pricing issues during the pandemic." Dkt. 128-3 at 8. Three of these individuals were notified of this litigation and their related preservation obligations in October 2020 (Chopra, Glenn, and Parakh), and one of them was notified in October 2022 (Palanca). The remaining eight were not notified until December 2024 (Brown, Soni, Noggle, DuBois, Bhutani, Nirmalanda, Buggia, and Mehta). Dkt. 141 at ¶ 3; Dkt. 142 at 4-6.

[5] Even if the automated hold did preserve "all custodial ESI" (it does not), only twenty-one employees were on litigation holds for other litigation, and only ten of them were subject to the hold during the critical April 2020 to October 2020 period.

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 5

That Amazon has produced 75,740 documents and communications in this litigation, that some custodians did not delete all of their documents even in the absence of a litigation hold, and that some records from custodians who did delete their documents have been found in other employees' files does not change the fact that Amazon failed to take steps to preserve years' worth of records from the individuals who were most closely involved in managing its pricing issues during the pandemic. At this point, plaintiffs are attempting to understand the scope of any losses and to develop a work around, if possible. Hopefully the bulk of relevant documents can be recovered as attachments to electronic communications or from other employee files, as Amazon suggests. But the issue here is whether plaintiffs should be given some insight into what was kept and what was lost, not whether the losses caused prejudice.

Amazon maintains that plaintiffs' interest in the documents and communications in the possession of David Cui, Peng Wang, and Isaac Jang is unwarranted because they are data scientists tasked with building the monitoring and pricing systems Amazon's business leaders wanted. These builders would likely have received instructions that could be relevant to plaintiffs' claims, particularly if they showed what problems Amazon recognized, how it planned to address them, and the goals/outcomes it wanted the systems to achieve. Doubts regarding the relevance or uniqueness of the documents in the possession of these three employees does not materially impact the analysis of whether plaintiffs are entitled to disclosures regarding Amazon's preservation efforts.

Finally, Amazon argues that plaintiffs' motion to compel the disclosure of information regarding preservation efforts short-circuited an on-going meet and confer process and should be denied on that ground. The parties met and conferred on April 8, 2025, with Amazon standing by its objections and plaintiffs confirming their intent to move to compel the disclosures which Amazon declined to provide. When plaintiffs contacted Amazon on April 21st to discuss whether information contained in plaintiffs'

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 6

motion needed to be filed under seal, Amazon stated that the parties were not at an impasse and sent a letter promising to provide some, but not all, of the information plaintiffs requested. Plaintiffs' decision to go ahead and file this motion on April 22nd is not unreasonable given the months of unsuccessful negotiations, the fact that disclosures were not timely made, and the lack of agreement regarding various aspects of plaintiffs' requested relief.

At this juncture, Amazon has produced much of the preservation information plaintiffs sought regarding seventy of its employees, including who was put on litigation holds for other litigations (thereby preserving their email, Slack, and Chime communications) and who was put on litigation holds for this litigation (thereby preserving whatever was described in the case-specific hold notice), as well as the dates the holds were issued. All that remains is plaintiffs' request for production of the case-specific litigation hold notices and preservation information for a handful of additional employees Amazon identified as potential custodians in its ESI disclosures.

Plaintiffs acknowledge that litigation hold notices are normally protected by the attorney-client privilege. Disclosure of the hold notices may nevertheless be appropriate "where there is reason for concern that evidence has been lost." *Agne v. Papa John's Int'l, Inc.*, No. 2:10-cv-01139-JCC, 2012 WL 12882903, at *3 (W.D. Wash. Feb. 6, 2012). In such circumstances, production of the hold notices provides a fair and efficient way of ascertaining what material ought to be available (and, conversely, what materials may have been lost prior to the issuance of a hold notice) and is necessary to safeguard the integrity of the judicial system. *United Med. Supply Co. v. U.S.*, 77 Fed. Cl. 257, 258–59 (2007) ("Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. Our adversarial process is designed to tolerate human failings—erring judges can be reversed, uncooperative counsel can be shepherded, and

recalcitrant witnesses compelled to testify. But, when critical documents go missing, judges and litigants alike descend into a world of *ad hocery* and half measures—and our civil justice system suffers."); *Al Otro Lado, Inc. v. Wolf*, No. 3:17-cv-02366-BAS-KSC, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020); *Agne*, 2012 WL 12882903, at *3; *Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009). There is no dispute that evidence has been lost. Plaintiffs will, therefore, "be allowed to take the 'initial step' of discovering the content of the litigation hold notice . . . so that they can 'investigate and possibly prove spoliation'" and determine whether the loss was willful or merely negligent. *Al Otro Lado*, 2020 WL 4432026, at *2 (quoting *City of Colton v. Am. Promotional Events, Inc.*, No. CV-09-06630-PSG-SSX, 2011 WL 13223880, at *5 (C.D. Cal. Nov. 22, 2011)).

With regards to the preservation information related to the issuance of hold notices to employees Amazon identified as potential custodians of relevant documents, Amazon argues only that plaintiffs "never expressed more than a passing interest in" these employees and that it has "already offered more than sufficient replacement custodians." Dkt. 140 at 13. Given Amazon's failure to take steps to preserve evidence from the first three quarters of 2020 and its previous designation of custodians whose documents had been destroyed, full disclosure of preservation information regarding all of the potential custodians will enable plaintiffs to evaluate their remaining options for maximizing productions from the key pandemic period.

For all of the foregoing reasons, plaintiffs motion to compel disclosures regarding Amazon's preservations efforts (as modified in their reply) is GRANTED. Amazon shall, within fourteen days of the date of this Order, produce the litigation hold notices sent regarding this litigation (if different hold notices were sent at different times or to different people, Amazon shall identify which individuals received which notice) and provide the

ORDER GRANTING MOTION TO COMPEL DISCLOSURE
REGARDING PRESERVATION EFFORTS - 8

preservation information described in plaintiffs' reply memorandum (Dkt. 148 at 8) for Tiwari, Jefferson, Bamiduro, Chakraborty, Kagalwal, Bhasin, and Morris.

DATED this 12th day of September, 2025.

*signature*

Robert S. Lasnik
United States District Judge