UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALVIN GREENBERG, *et al.*,

        Plaintiffs,

  v.

AMAZON.COM, INC.,

        Defendant.

CASE NO. 2:21-cv-00898-RSL

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on "Amazon.com, Inc.'s Motion to Dismiss Under Rule 12(b)(6) and Motion to Strike Class Allegations Under Rule 12(f)." Dkt. # 73. Plaintiffs allege that Amazon.com, an on-line retailer, engaged in unlawful price gouging during the COVID-19 pandemic, raising (or allowing third-party vendors to raise) prices on a vast array of products and reaping extraordinary profits. Plaintiffs, three individuals from California and/or Arizona, seek to represent a class of:

> All persons who purchased any consumer good or food item, including any listed on Appendix A, on Amazon.com between January 31, 2020 and October 20, 2022 whose price was set at an unfair level. The precise identification of unfair prices and when they were in place will be refined after discovery and expert analysis.

Dkt. # 66 at ¶ 130. Amazon argues that the class definition is invalid because (a) it defines the class by the alleged legal violation (otherwise known as a "fail-safe" class), (b) it does

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 1

not define "consumer good," "food item," or "unfair," and (c) it fails to plausibly allege a class that can be certified under Fed. R. Civ. P. 23 where unfairness will have to be decided on an individual-by-individual basis. Amazon also argues that the Washington Consumer Protection Act (CPA), as interpreted by the Washington Supreme Court in *Greenberg v. Amazon.com, Inc*., 3 Wn.3d 434 (2025), is unconstitutionally vague and that plaintiffs' negligence and unjust enrichment claims fail as a matter of law.

Having reviewed the memorandum, declarations, and exhibits submitted by the parties[1] as well as the *amici curiae* submissions regarding constitutional vagueness, the Court finds as follows:

**A. Motion to Strike Class Allegations Under Rule 12(f)**

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But Rule 12(f) does not authorize the resolution of disputed and substantial factual or legal issues. *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973–75 (9th Cir. 2010) ("We ... hold that Rule 12(f)

---

[1] To the extent Amazon seeks to insert into the record its own facts or version of events by incorporating the full contents of documents cited in the Second Amended Complaint, the attempt is unavailing. A defendant may seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Rather, the document must be integral to or form the basis of plaintiff's claims. *Ritchie*, 342 F.3d at 908-09. In addition, the document's authenticity must not be in question and there must be no disputed issues as to the document's relevance. *Coto Settlement*, 593 F.3d at 1038. The authenticity of the materials on which Amazon relies in footnotes 1-7 of the motion are not disputed, but the handful of references to those documents in the Second Amended Complaint are not "extensive" and they do not serve as the basis for plaintiffs' claims. Just as importantly, "what inferences a court may draw from an incorporated document should also be approached with caution," especially where the document is offered to contradict or dispute facts alleged in the complaint. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1003 (9th Cir. 2018). A plaintiff could cite a document for many reasons (to show what defendant said on a particular date, to establish speaking authority, or to bolster a specific argument, for example) without vouching for the accuracy of the entire document. In this case, the factual allegations of the Second Amended Complaint could have been asserted without citation to the documents at issue. Their citation in no way clothes the entirety of the documents with an assumption of truth. If defendant intends to prove business practices and conduct that are at odds with plaintiffs' well-pled allegations, it will have to do so through the presentation of contrary evidence on summary judgment, not by incorporating non-integral documents into the complaint on a motion to dismiss. *See Garner v. Amazon.com, Inc*., 603 F. Supp. 3d 985, 993 (W.D. Wash. 2022).

This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 2

...

does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."); *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023) ("In deciding a Rule 12(f) motion to strike, a court should not resolve disputed and substantial factual or legal issues."), *aff'd*, No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8, 2025). The function of a Rule 12(f) motion is to avoid the expenditure of time and money that would arise from litigating spurious issues (*i.e.*, those that are redundant, immaterial, impertinent, or scandalous), not to act as a substitute for a Rule 12(b) motion. Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023). Where there is no hint of impertinence or scandal, a motion to strike will generally be denied "unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation," *i.e.*, that the matter is immaterial. *Rosales v. Citibank, Federal Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D.Cal.2001). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike*." In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

      Judicial reluctance to grant motions to strike is especially evident when defendant seeks to excise class action allegations. "[T]he shape and form of a class action evolves only through the process of discovery," *Hoffman v. Hearing Help Express, Inc*., No. 3:19-cv-05960-RBL, 2020 WL 4729176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted), and motions to strike class allegations are often denied as premature unless defendant shows that the class allegations are insufficient regardless of the facts plaintiffs may develop during discovery, *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 651 (S.D.N.Y. 2025); *Dorian v. Amazon Web Servs., Inc*., No. 2:22-cv-00269-JHC, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022). The Ninth Circuit has summarized its

jurisprudence in this area as standing "for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).[2]

Amazon argues that plaintiffs' proposed class definition is an impermissible fail-safe class, fails to provide objective criteria by which class members could be identified, and fails to allege facts that raise a plausible entitlement to class certification under Rule 23. These challenges go to the legal sufficiency of the class allegations and are not the appropriate focus of a motion to strike under Rule 12(f). *See Whittlestone*, 618 F.3d at 973–75; *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023). They will therefore be considered below under the Rule 12(b)(6) standard.

**B. Motion to Dismiss Class Allegations Under Rule 12(b)(6)**

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

---

[2] With all due respect, the Court declines to adopt the analysis of *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886-RAJ, 2021 WL 1140227 (W.D. Wash. Mar. 24, 2021): the Ninth Circuit case on which it relies did not involve a motion to strike under Rule 12(f). Similarly, *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, No. 2:15-cv-00464-RSL, 2015 WL 9487928, at *1 (W.D. Wash. Sept. 29, 2015), was analyzed under the Rule 12(b)(6) standard, not under Rule 12(f).

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 4

deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

### 1. Fail-Safe Class

Amazon argues that plaintiffs' proposed class definition is an impermissible fail-safe class because it is defined by a legal element of their CPA claim, *i.e.*, whether a person purchased a product at an "unfair" price. An impermissible "fail-safe" class precludes membership "unless the liability of the defendant is established." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016). As the Ninth Circuit explains: "[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th

Cir. 2022) (en banc) (prohibiting classes that are defined "to include only those individuals who were injured by the allegedly unlawful conduct").

Class definitions are often modified at the certification stage. In this case, the class definition to which Amazon objects makes clear that modification is anticipated, and plaintiffs confirm their intent to replace the "unfair" language with a class description that conforms to the evidence and does not reference the CPA's legal standard. One alternative would be to define the class as including all persons who purchased a consumer good or food item on Amazon between January 31, 2020, and October 20, 2022, a definition that is consistent with plaintiffs' theory that Amazon hiked the prices of virtually everything it sold when the pandemic made in-person shopping difficult/dangerous and supply chain interruptions hobbled its competitors.[3] In the alternative, plaintiffs could identify subclasses of people who purchased a particular item at or above a particular price. Both of these possibilities are sufficiently supported by the existing pleading and would not rely on an impermissible fail-safe class.

**2. Objective Criteria**

Amazon argues that the phrases "consumer goods" and "food items" are too ill-defined to objectively identify class members. The Court previously adopted Amazon's proposed definition of "consumer goods" as "all items sold for personal consumption or use" and found that the phrase "food item" was not ambiguous and did not require clarification. Dkt. 177 at 6. To the extent that a class definition based on payment of an "unfair" price provides no objective basis for identifying class members in the first instance, the term will be excised from the class definition following discovery, as discussed above.

---

[3] In its reply memorandum, Amazon argues that plaintiffs' complaint is limited to the purchase of "essential" goods. The Court has already found that a fair reading of the complaint does not limit plaintiffs' claims to purchases of essential items. Dkt. 177 at 3

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 6

### 3. Failure to Plausibly Allege the Requirements of Rule 23(b)

Amazon argues that the allegations of the complaint do not raise a plausible inference that the requirements of Rule 23(b)(2) or (3) can be satisfied in this case. The Court, like the parties, will assume that class certification for injunctive or declaratory relief under Rule 23(b)(2) is not likely given that the allegedly unlawful conduct ended in October 2022. This discussion therefore focuses on the adequacy of the allegations in support of a Rule 23(b)(3) class.

An "adventuresome innovation" created specifically with damages class actions in mind, Rule 23(b)(3) imposes two additional requirements on a putative class beyond the four prerequisites of Rule 24(a), namely predominance and superiority. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Kaplan, *A Prefatory Note*, 10 B.C. IND. & COM. L.REV. 497, 497 (1969)). These additional requirements reflect the concern that in actions for money damages, class-wide adjudication may "not as clearly [be] called for as…in Rule 23(b)(1) and (b)(2) situations [yet] may nevertheless be convenient and desirable." *Id.* (internal quotations and citations omitted).

### 1. Predominance

Under the Rule 23(b)(3) predominance inquiry, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50, 196-197 (5th ed. 2012 (internal quotations marks and alteration omitted))). Although somewhat similar to the commonality prerequisite of Rule 23(a)(2), commonality and the predominance requirement of Rule 23(b)(3) must be analyzed

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 7

separately. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than 23(a)."); *Amchem*, 521 U.S. at 624 (finding that even if named and unnamed plaintiffs' shared asbestos exposure was sufficient to satisfy commonality, too many individual issues regarding the circumstances and subsequent effects of exposure predominated to uphold class certification). Where individual inquiries would overwhelm common issues, certification under Rule 23(b)(3) is inappropriate. *Amchem*, 521 U.S. at 623 (finding disparate circumstances of exposure to asbestos-containing products as well as differences in state law undermined predominance). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*, 577 U.S. at 453.

Defendant argues that each and every class member will have to make an individual showing that (a) the monetary harm they suffered was not outweighed by countervailing benefits to consumers or competitors and (b) they could not have reasonably avoided paying the allegedly unfair prices charged by Amazon (the second and third tests used to determine whether a consumer injury is unfair under 15 U.S.C. § 45(n)). *See also Greenberg*, 3 Wn.3d at 456 (summarizing a 1980 FTC Policy Statement found at https://www.ftc.gov/legal-library/browse/ftc-policy-statement-unfairness). The Court will assume for purposes of this discussion that the substantial injury test of 15 U.S.C. § 45(n) applies. Nevertheless, it would be premature to evaluate and determine the adequacy of plaintiffs' class-wide proof when the class definition has not yet been finalized.

Plaintiffs allege that Amazon and its third-party sellers reaped blockbuster profits during the pandemic and that both consumers and competitors were injured by the price gouging at issue. The allegations give rise to a plausible inference that the changes in market share and inflated prices/profits can be shown by common evidence with regards to particular items, classes of items, or possibly as to the platform as a whole. Similarly, one

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 8

could plausibly infer from the common allegations of product scarcity, public health directives, and the shift to on-line purchasing that class members as a group had no meaningful choice but to purchase from Amazon despite the allegedly unfair prices it was charging. These arguments may not win the day, but they are at least plausible for purposes of a *Twombly*/*Iqbal* analysis.

**B. Constitutional Vagueness**

Amazon and the *amici curiae* argue that the CPA, as interpreted by the Washington Supreme Court and as applied in this case, is unconstitutionally vague.

> Laws that are impermissibly vague offend due process because they contravene two bedrock constitutional norms. *Id*. The first is that "regulated parties should know what is required of them so they may act accordingly." *Id*. The second is that laws must provide proper "precision and guidance" to ensure that "those enforcing the law do not act in an arbitrary or discriminatory way." *Id*. (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). When laws fail to "provide explicit standards for those who apply them," they "impermissibly delegate[ ] basic policy matters ... for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108–09.
>
> Vague laws thus stand in basic opposition to the rule of law. In evaluating whether a law is unconstitutionally vague, we ask whether it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." [*FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 254 (2012)] (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

*Butcher v. Knudsen*, 38 F.4th 1163, 1168–69 (9th Cir. 2022). Amazon argues that earlier decisions upholding the constitutionality of the CPA are not dispositive now that the Washington Supreme Court has decoupled the CPA from the standards established by federal law and that there are no objective or prospective standards for determining whether a price is "unfair" or contrary to public interest for purposes of CPA liability.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 9

"[W]e begin with the general presumption of constitutionality of statutes." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021) (citing *United States v. Morrison*, 529 U.S. 598, 607 (2000)).

### 1. Facial Challenge

"As a general matter, a facial challenge is a challenge to an entire legislative enactment or provision. *See Foti* [*v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), as amended on denial of reh'g (July 29, 1998)] (explaining that a statute is facially unconstitutional if 'it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad') (internal quotation marks omitted)." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The party seeking to invalidate a law as unconstitutionally vague must assess the law's scope, identify which applications of the law are unconstitutional, and measure those applications against the rest. *Moody v. NetChoice, LLC*, 603 U.S. 707, 725 (2024).

Although Amazon specifically asserts a facial challenge to the CPA in its motion, Dkt. 73 at 19 n.10, it does not attempt to show that the statute is unconstitutional in every conceivable application or that the scope of the unconstitutional applications outweighs the remainder. The facial challenge therefore fails.

### 2. As Applied Challenge

The primary focus of Amazon's and *amici curiae's* argument is that the CPA, as applied by the Washington Supreme Court to pricing decisions, is unconstitutionally vague. Absolute certainty in the breadth and application of a law is not required. Courts have long recognized that, given that laws, regulations, and court rulings rely on language to identify proscribed conduct, some inherent vagueness is unavoidable. *See Rose v. Locke*,

423 U.S. 48, 49-50 (1975); *Parker v. Levy*, 417 U.S. 733, 757 (1974); *Grayned*, 408 U.S. at 110; *Miller v. Strahl*, 239 U.S. 426, 434 (1915); *McSherry v. Block*, 880 F.2d 1049, 1054 (9th Cir. 1989). *See also Nash v. United States*, 229 U.S. 373, 377 (1913) (Holmes, J.) ("[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment ...; he may incur the penalty of death."). "The degree of vagueness that the Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement -- depends in part on the nature of the enactment." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). In order to determine whether a particular statute is unconstitutionally vague, courts consider four relevant factors: whether the statute (1) involves only economic regulation; (2) contains only civil penalties; (3) includes a scienter requirement; and (4) threatens constitutionally protected rights. *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995) (construing *Hoffman*, 455 U.S. at 498–500). Discussing these factors, the Supreme Court explained:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.
>
> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise

> of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Hoffman*, 455 U.S. at 498-99 (internal footnotes omitted). Although the CPA does not generally contain a scienter requirement, the three other *Hoffman* factors militate in favor of utilizing a more lenient vagueness standard in this case. In the circumstances presented here, the CPA regulates only economic activity, imposes only civil penalties, and does not inhibit or threaten to inhibit the exercise of constitutionally protected rights. Thus, the degree of vagueness that the Constitution tolerates is greater here than would apply to a criminal statute or to a statute that interferes with First Amendment rights, and the due process concerns regarding fair notice and fair enforcement are somewhat lessened.

All that having been said, the Court finds Amazon's challenge to the clarity of the CPA as applied to pricing unpersuasive for two reasons having nothing to do with the strictness or leniency of the applicable vagueness standard. First, this litigation is not simply about pricing (*i.e.*, did Amazon offer toilet paper at an unreasonable or unjust price), but rather about price gouging (*i.e.*, did Amazon take advantage of a natural disaster or other state of emergency to significantly increase the price of toilet paper). While Amazon and *amici curiae* prefer to argue that a general prohibition on "unfair pricing" is too vague, they barely address whether a prohibition on taking advantage of a crisis to unfairly raise prices is incomprehensible, standardless, or constitutionally infirm. In finding that price gouging may violate the CPA, the Washington Supreme Court specifically distinguished cases in which plaintiff was challenging excessive prices from the situation presented here, where the excessive prices coincided with a declared emergency. *Greenberg*, 3 Wn.3d at 467-68.

Second, plaintiffs allege facts from which one could plausibly infer that Amazon had actual notice that the CPA prohibited price gouging at least as early as March 2020.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 12

Plaintiffs allege or refer to documents showing, *inter alia*, that Amazon had long-standing policies and systems designed to prevent sellers from exploiting an emergency to charge excessively high prices on products or shipping, that Amazon understood that price gouging was injurious to consumers, that Amazon provided information to the Attorney General of Washington ("AG") regarding sellers who charged excessive prices during the COVID-19 pandemic, and that, no later than March 26, 2020, Amazon knew that the AG considered price gouging a violation of the CPA. Amazon denies that it knew that the CPA barred price gouging, but this factual dispute cannot be resolved in the context of a motion to dismiss. If, as plaintiff alleges, Amazon had actual notice that its conduct was prohibited, there would be no due process problem. *See United States v. Omondi*, 818 F. App'x 623, 626 (9th Cir. 2020); *Kashem v. Barr*, 941 F.3d 358, 373 (9th Cir. 2019); *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012).[4]

Amazon argues that, even if it had actual notice that the CPA prohibited price gouging, it neither knew nor should have known (a) that price-gouging could occur in the context of the sale of non-essential, widely available goods or (b) when a price increase in the context of an emergency or crisis crosses the line between fair and unfair. As discussed below, these arguments have some merit to the extent plaintiffs intend to pursue a CPA claim based solely on the assertion that a particular price increase during a public health crisis was "unfair," "in violation of public interest," "unethical, oppressive, or unscrupulous." *Greenberg*, 3 Wn.2d at 459 and 481.

The Washington Supreme Court has long held that the phrases "unfair methods of competition" and "unfair or deceptive acts or practices" have sufficiently well-established meanings in the law to overcome any constitutional challenge of vagueness. *State v. Ralph*

---

[4] The Court recognizes that, in the context of a penal statute, actual notice that conduct is prohibited might not avoid due process concerns if the legislature failed to establish sufficient guidelines for enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 13

*Williams' N. W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 279 (1973); *State v. Reader's Dig. Ass'n, Inc.*, 81 Wn.2d 259, 274 (1972). The FTC Act's prohibition on "unfair methods of competition" survived a vagueness challenge in 1919, with the Seventh Circuit noting that:

> [T]he phrase is no more indefinite than "due process of law." The general idea of that phrase as it appears in constitutions and statutes is quite well known; but we have never encountered what purported to be an all-embracing schedule or found a specific definition that would bar the continuing processes of judicial inclusion and exclusion based upon accumulating experience. If the expression "unfair methods of competition" is too uncertain for use, then under the same condemnation would fall the innumerable statutes which predicate rights and prohibitions upon "unsound mind," "undue influence," "unfaithfulness," "unfair use," "unfit for cultivation," "unreasonable rate," "unjust discrimination," and the like.

*Sears, Roebuck & Co. v. Fed. Trade Comm'n*, 258 F. 307, 310-11 (7th Cir. 1919). For purposes of this litigation, the Court finds that this "gradual process of judicial inclusion and exclusion," guided as it is by federal interpretations of the FTC Act, has generated a well-established test for determining when a price increase during a declared emergency is unfair. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 785 (2013); RCW 19.86.920; *Greenberg*, 3 Wn.2d at 456-58 (explaining the administrative and legislative history of 15 U.S.C. § 45(n)). While the state Supreme Court was unwilling to limit the definition of "unfair acts or practices" under the CPA to only those acts which satisfy the elements of 15 U.S.C. § 45(n), it applied that analysis to the price gouging claims asserted here. It also declined to consider Amazon's constitutional vagueness challenge and, when accused by Amazon of inventing a new unfairness standard out of whole cloth, relied on the "decades old precedent established by the FTC itself," namely § 45(n)'s "substantial injury" test, to rebut the accusation. *Greenberg*, 3 Wn.2d at 464, 470.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 14

Standing alone, proof of a price increase during a declared emergency is not enough to establish that the increase is unfair. The increase could be insubstantial, the retailer could have such limited market share that its attempt to take advantage of an emergency situation could easily be avoided, and/or the cost of the goods sold may have increased in like measure. Plaintiffs' complaint, which includes specific allegations regarding the three elements of the § 45(n) test, implicitly recognizes the need to show more than just a price increase during a declared emergency. If the only standard against which a particular price increase is measured is whether it was "unfair" or "in violation of public interest," the regulated community would have insufficient information regarding what is forbidden and neither the Court nor the jury would have a structure against which to measure Amazon's conduct. Application of the established Section 45(n) criteria, as the state Supreme Court did when reviewing plaintiffs' allegations and Amazon's arguments, avoids the constitutional vagueness problems.[5]

**C. Negligence**

Plaintiffs allege that, based on Amazon's position as the world's largest on-line retailer and its experiences in prior emergencies, it was entirely foreseeable that sellers would use its platform to price gouge during the COVID-19 crisis, that Amazon had the ability to prevent price gouging, that it failed to exercise reasonable and ordinary care to ensure that consumer goods and food items were not sold at excessive prices during the declared public health emergency, and that this failure caused plaintiffs' economic loss. Dkt. 66 at ¶¶ 155-162. Amazon argues that it owed no duties to plaintiffs other than those established in the terms and conditions governing plaintiffs' use of its on-line platform and that the negligence claim is therefore barred by Washington's independent duty doctrine.

---

[5] To the extent Amazon is arguing that losses associated with the purchase of non-essential items were reasonably avoidable and/or that the prices it charged were not unfair, those issues go to the merits of plaintiffs' CPA claim. Whether plaintiffs will be able to satisfy the elements of 15 U.S.C. § 45(n) is not properly before the Court in the context of a motion to dismiss.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 15

Under the independent duty doctrine, "an injury is remediable in tort if it traces back to the breach of a tort duty arising independently from the terms of the contract." *Schwartz v. World Sav. Bank*, No. 2:11-cv-0631-JLR, 2012 WL 993295, at *7 (W.D. Wash. Mar. 23, 2012) (citing *Eastwood v. Horse Harbor Found. Inc.*, 170 Wn.2d 380 (2010)). "The existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243 (2001) (internal quotation omitted). "Where, like here, there is a contract governing an economic relationship, [c]ourts are instead less likely to recognize a duty in tort and more likely to give deference to contract law." *Busey*, 2020 WL 5891907, at *4 (citations omitted).

Plaintiffs identify a number of duties that were allegedly breached by Amazon, such as duties to implement systems that detect excessive price increases, to investigate reports of excessive price increases on the platform, and/or to cap price increases during a pandemic. All of the duties alleged reflect steps Amazon could have, and allegedly should have, taken to curb or prevent price gouging on its website. The question is whether these duties exist and, if so, whether they are independent of the economic relationship governed by Amazon's terms and conditions of use. Amazon invites the Court to assume that any cause of action related to the purchase of an item on its platform arises from the parties' contract. It does not, however, identify any term or condition of use that is implicated here. As discussed above and in the Washington Supreme Court's response to the certified questions, Amazon had an independent statutory duty to avoid unfair acts in trade or commerce, and plaintiffs have adequately alleged both that price gouging is "unfair" and that it was reasonably foreseeable to occur in the context of the COVID-19 pandemic. Because this duty was separate and apart from any contractual obligations Amazon may

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 16

have under its terms of use,[6] the negligence claim is not barred by the independent duty doctrine.

**D. Unjust Enrichment**

Plaintiffs' unjust enrichment claim is based on allegations that Amazon exploited vulnerable consumers who turned to Amazon as a lifeline for consumer goods and food items during a public health crisis, accumulating huge and unjust profits. Dkt. 66 at ¶¶ 163-168.

> Under Washington law, "[u]njust enrichment occurs when one retains money or benefits which in justice and equity belong to another." *Bailie Communications v. Trend Business Sys*. 61 Wn. App. 151, 160 (1991). The three elements required for an unjust enrichment claim are (1) a benefit conferred on one party to another; (2) appreciation and knowledge of the benefit by the party receiving it; and (3) acceptance of the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *See, e.g., Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576 (2007). But unjust enrichment is "the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484 (2008). A plaintiff who is party to a valid contract may not bring a claim for unjust enrichment for issues arising under the contract's subject matter. *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc*., 290 F.3d 1199, 1204 (9th Cir. 2002) (applying Washington law).

*Hold Sec. LLC v. Microsoft Corp*., 705 F. Supp. 3d 1231, 1244 (W.D. Wash. 2023). Amazon argues that the subject matter of its terms and conditions covers pricing insofar as it promises that customers will be charged the price displayed at the time of purchase.

---

[6] Amazon's reliance on *Congdon v. Wells Fargo Bank, N.A*., No. 2:16-cv-1629-RSL, 2017 WL 2443649, at *5 (W.D. Wash. June 6, 2017), and *Busey v. Wells Fargo Bank, N.A*., No. 3:19-cv-05880-RJB-BAT, 2020 WL 5891907, at *4 (W.D. Wash. Oct. 5, 2020), is misplaced. In *Congdon*, the plaintiff alleged that defendant had failed to exercise reasonable care in enforcing the parties' contract, while is *Busey*, the plaintiff failed to identify any non-contractual basis for a duty related to the opening and maintenance of a trust account.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 17

Because plaintiffs generally acknowledge that they paid the asking price, Amazon argues that they received exactly what they contracted for and exactly what the contract required Amazon to provide. Thus, there is no unjust enrichment.

Unjust enrichment is a type of quasi contract in which equity imposes a debt and provides a cause of action where "ties of natural justice" gives rise to an obligation of payment. *Young*, 164 Wn.2d at 484 (*quoting State v. Cont'l Baking Co.*, 72 Wn.2d 138, 143 (1967)). The references in case law to the absence of a contractual relationship do not create an absolute ban on unjust enrichment claims whenever there is an express contract but rather make clear that quasi contractual obligations may arise even if there is no written agreement. *See Pierce Cnty. v. State*, 144 Wn. App. 783, 830 (2008), as amended on denial of reconsideration (July 15, 2008) (noting that a party to an express contract will be permitted to bring an action on an implied contract if the conduct of one or more of the parties removes performance from the confines of the express agreement). Where the written contract explicitly covers the specific subject matter for which equitable relief is sought, courts are generally unwilling to find that the acceptance and retention of the bargained benefits is unequitable. The analysis depends on the facts of the case, however.

Based on the allegations of the complaint and the contract provision identified by Amazon, the Court is unwilling to dismiss the unjust enrichment claim under Rule 12(b)(6). Courts have allowed equitable relief where the agreed and voluntarily paid contractual amount included improper, unauthorized, or illegal fees: in such circumstances, retention of the overcharged amounts may be unjust and restitution would be appropriate. *See Davenport v. Washington Educ. Ass'n*, 147 Wn. App. 704, 729 (2008) (collecting cases). Assuming, for purposes of this motion, that plaintiffs agreed to pay the displayed price, if those prices were unlawful, permitting Amazon to retain the benefit would arguably be unjust.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS - 18

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. 73) is DENIED.

Dated this 5th day of January, 2026.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 19