The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALVIN GREENBERG, MICHAEL STEINBERG, and CHRISTINA KING, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>    Defendant. | No. 2:21-cv-00898-RSL<br><br>**AMAZON'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND .................................................................................. 3

       A.    Amazon Produced Expansive Discovery Covering All Aspects of
             Plaintiffs' Claims. .................................................................. 3

       B.    Amazon Preserved Comprehensive ESI for Key Personnel Throughout the
             Relevant Period. ..................................................................... 4

       C.    Amazon Did Not Intentionally Destroy Any Evidence. ...................... 6

             1.    Amazon's Litigation Hold Practices and Procedures ............... 6

             2.    The Initial Litigation Holds. ........................................ 6

III.   LEGAL STANDARD ............................................................................ 9

IV.    ARGUMENT ..................................................................................... 9

       A.    Rule 37(e) Does Not Apply Because Plaintiffs Cannot Prove Irreplaceable
             "Lost" Discovery. .................................................................. 9

       B.    Plaintiffs Are Not Entitled to Sanctions Under Rule 37(e)(1). ............ 12

             1.    Plaintiffs Fail to Establish Prejudice. ............................. 12

             2.    Rule 37(e)(1) Does Not Permit Plaintiffs' Requested Remedy. ...... 14

       C.    Rule 37(e)(2) Does Not Apply Because There Is No Evidence of
             Amazon's "Intent to Deprive" Plaintiffs of Discoverable Information. ..... 15

       D.    Plaintiffs' Motion Is Premature. .................................................. 18

V.     CONCLUSION ................................................................................... 18

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................................11, 12, 16

*Baker v. O'Reilly*,
  2025 WL 1635253 (W.D. Wash. 2025) .................................................................................13

*Bungie, Inc. v. AimJunkies.com*,
  2023 WL 7184427 (W.D. Wash. 2023) .................................................................................17

*Charlestown Cap. Advisors v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ...........................................................................................14

*Comair Ltd. v. Boeing Co.*,
  2025 WL 472724 (W.D. Wash. 2025) ...................................................................................15

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
  2022 WL 16551632 (E.D. Cal. 2022) ...................................................................................17

*E&J Gallo Winery v. Encana Energy Servs.*,
  2005 WL 8172972 (E.D. Cal. 2005) .....................................................................................16

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
  2024 WL 5058527 (N.D. Cal. 2024), *appeal filed*, No. 25-955 (9th Cir. 2025) ...................17

*Estate of Schuck v. County of San Diego*,
  2025 WL 2180987 (S.D. Cal. 2025) ......................................................................................13

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ...........................................................................................12

*Gregory v. Montana*,
  118 F.4th 1069 (9th Cir. 2024) ................................................................................9, 12, 15, 17

*In re Cathode Ray Tube Antitrust Litig.*,
  2023 WL 5667882 (N.D. Cal. 2023) .....................................................................................17

*In re Google Play Store Antitrust Litig.*,
  664 F. Supp. 3d 981 (N.D. Cal. 2023) ..................................................................................17

*Ingram v. PG&E Co.*,
  690 F. App'x 527 (9th Cir. 2017) ..........................................................................................18

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Jones v. Riot Hosp. Grp. LLC*,
 95 F.4th 730 (9th Cir. 2024) ...................................................................................15, 16

*Lee v. County of Los Angeles*,
 2025 WL 2505484 (C.D. Cal. 2025), *reconsid. denied*, 2025 WL 3211209 (C.D. Cal. 2025)
 ...........................................................................................................................................14

*Leon v. IDX Sys. Corp.*,
 464 F.3d 951 (9th Cir. 2006) ...............................................................................................12

*McQueen v. Amazon.com, Inc.*,
 No. 4:20-cv-02782-JSW (N.D. Cal. Apr. 21, 2020), Dkt. 1 ............................................ *passim*

*Oracle Am. Inc. v. HP Enters. Co.*,
 328 F.R.D. 543 (N.D. Cal. 2018)...........................................................................................9

*PlayUp, Inc. v. Mintas*,
 2024 WL 967904 (D. Nev. 2024) .........................................................................................18

*Rapp v. NaphCare Inc.*,
 2023 WL 4624470 (W.D. Wash. 2023) .................................................................................18

*Rehn v. City of Seattle*,
 2025 WL 1207668 (W.D. Wash. 2025) .................................................................................13

*Ryan v. Editions Ltd. W., Inc.*,
 786 F.3d 754 (9th Cir. 2015) ............................................................................................9, 12

*Saxton v. County of Sonoma*,
 2024 WL 5174215 (N.D. Cal. 2024) .............................................................................9, 10, 12

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
 327 F.R.D. 96 (E.D. Va. 2018) .............................................................................................13

*Su v. USPS*,
 2024 WL 21670 (W.D. Wash. 2024) .....................................................................................17

*Taylor v. Walter Kidde Portable Equip., Inc.*,
 2025 WL 1758347, *17, *R&R adopted by* 2025 WL 1755911 (M.D.N.C. 2025)..................15

*Ungar v. City of New York*,
 329 F.R.D. 8 (E.D.N.Y. 2018), *aff'd*, 2022 WL 10219749 (2d Cir. 2022) ............................13

*Zunum Aero, Inc. v. Boeing Co.*,
 2024 WL 664540 (W.D. Wash. 2024) ...................................................................................12

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**Rules**

Fed. R. Civ. P.
    30(b)(6) ....................................................................................................................4
    37(e) ................................................................................................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

The Court should deny Plaintiffs' motion for spoliation sanctions. Amazon did not intentionally destroy any relevant documents. Nor did Amazon avoid preserving them. Amazon has already produced over 90,000 documents from 21 custodians involved in pricing issues—including 10 senior decision-makers whose electronically stored information ("ESI") was on litigation hold before this lawsuit began. Amazon recently offered to produce documents from five more pricing custodians, but Plaintiffs ignored the offer. Amazon also scoured its systems for other sources of the documents Plaintiffs claim to be missing, and recently identified potentially relevant data from unrelated litigation. Amazon asked Plaintiffs to extend the briefing schedule to process and catalog this data. But Plaintiffs conditioned their approval on unreasonable and unrealistic demands that Amazon could not accept—showing that they are more interested in pursuing sanctions than obtaining the documents they claim to need. Amazon may move to supplement the record once it understands the scope of the newly discovered documents. Regardless, the Court should deny Plaintiffs' motion because they do not, and cannot, meet their burden to show irreplaceable loss of evidence, prejudice, or intent to deprive.

Plaintiffs' core complaint is that there is a six-month gap in preserved communications from Amazon's key custodians. That is false. The custodial ESI of Amazon's retail and third-party pricing leaders—the Vice Presidents and Directors who would necessarily have been involved in any decision to "tak[e] advantage of a crisis to unfairly raise prices," Dkt. 210 at 12—was preserved throughout the relevant period. Their workspaces containing Word documents, PowerPoints, spreadsheets, and PDFs were never subject to automatic deletion. And Amazon has produced comprehensive evidence covering all aspects of Amazon's approach to pricing, efforts to address abusive pricing, and response to the Pandemic's unusual market conditions—including billions of rows of pricing data spanning over six years.

Plaintiffs are thus left to rely on a fallacy: that spoliation sanctions follow automatically unless every potentially relevant employee immediately receives a "case-specific hold." But courts do not impose sanctions for inadvertent process failures. Amazon's delay in issuing a

"case-specific" hold was inadvertent and, in most cases, ultimately inconsequential. All ESI for senior pricing decision-makers was preserved. And Plaintiffs' implausible assertion that another "1,200 pricing employees" should have received holds is contradicted by their counsel's own agreement at the outset of discovery to 16 custodians—not thousands. That agreement reflects the reality that only a small number of senior employees could have directed the conduct Plaintiffs must prove in this case: not just an increase in prices, Dkt. 210 at 15, but rather a *conscious decision* to leverage the Pandemic to price gouge (which never happened). The ten key custodians already on litigation holds were the relevant decision-makers. What matters is that their documents still exist, not whether every potential custodian also received a litigation hold.

Plaintiffs may dislike that Amazon's extensive productions show the opposite of what they claim. But that is not proof of spoliation. Plaintiffs make no showing that irreplaceable evidence has been lost, as required to trigger Rule 37(e), let alone that it prejudiced them, as required for Rule 37(e)(1) sanctions. Indeed, Plaintiffs have not even responded to Amazon's offer to add five more custodians—the very remedy courts frequently use to address imperfect ESI preservation. Plaintiffs likewise cannot show that Amazon intentionally deprived them of evidence, as required for Rule 37(e)(2) adverse-inference sanctions. The record shows Amazon's delay in sending a case-specific hold was inadvertent and promptly remedied.

Moreover, the adverse inferences Plaintiffs demand could *never* be supported by the evidence they claim is missing—even if they could show lost evidence that "cannot be … replaced through additional discovery." Fed. R. Civ. P. 37(e). Plaintiffs do not seek to cure any prejudice, because they do not *want* more custodians, documents, or evidence. They are not aggrieved by Amazon's inadvertent delay in sending a "case-specific" hold or by its selection of recipients. They want a shortcut around the mountain of evidence demonstrating Amazon did not engage in "price gouging" through an adverse inference for evidence that never existed.

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    BACKGROUND

### A.    Amazon Produced Expansive Discovery Covering All Aspects of Plaintiffs' Claims.

Amazon has produced over 90,000 documents (with more coming) from 21 custodians, 10 of whom have been on comprehensive litigation holds since before this case was filed. Decl. of Sam Davenport ¶¶ 7–8. To date, for 2020 alone, Amazon has collected over 1.3 million custodial emails, 22,900 Word documents, 7,700 spreadsheets, 44,100 PDFs, 50,000 Chime messages, and 10,600 Slack messages. *Id.* ¶ 7. From 2019 to March 31, 2023, Amazon has collected almost 5.5 million emails, 82,500 Word documents, 38,800 spreadsheets, 195,000 PDFs, 286,600 Chime messages, and 137,600 Slack messages. *Id.* And again, Amazon is in the process of collecting more from a previously unidentified data source from prior litigation.

Amazon has also produced enormous volumes of data—with more to come—including transaction data, daily offer snapshots, seller enforcement notifications, and profit margin information, for the entire class period and beyond. *Id.*

When Plaintiffs requested 13 additional custodians to address supposed "gaps" in custodial ESI related to retail pricing, Amazon carefully investigated each person's relevance. Amazon agreed to add two requested custodians and voluntarily identified three more—totaling 26 custodians. Decl. of John Goldmark ¶ 4 & Ex. B. Amazon retained *over 500,000 documents* for these five additions for the relevant period. *Id.* Ex. B at 4–6. Two of these individuals were on holds for other prior cases; the remaining three were placed on holds in 2021 and 2022. Davenport Decl. ¶ 11. These additions buttress retail pricing evidence Plaintiffs claimed they need. *See* Decl. of Benjamin Garry ¶ 9; *cf.* Goldmark Decl. Ex. B.

Amazon has not stopped looking for alternative ways to locate relevant evidence. In recent days, those efforts uncovered additional communications for several custodians that had been collected and separately preserved in connection with unrelated litigation. Amazon is actively investigating this additional custodial data. Ingesting, analyzing, and searching this source will take several weeks. Amazon promptly brought this issue to Plaintiffs' attention and asked to further extend its Opposition deadline to afford time for this important process, so that

briefing could proceed on a full record. Goldmark Decl. ¶ 15 & Ex. K. In response, Plaintiffs conditioned any extension on production of any responsive communications within four weeks (which, having not completed processing the documents, Amazon cannot guarantee), and allowing Plaintiffs to depose a Rule 30(b)(6) Amazon witness after Amazon's Opposition but before Plaintiffs' Reply. *Id.* Amazon does not object to transparency on these ongoing efforts, potentially including a tailored deposition, but the Court is not aided by one-sided presentations. Amazon will submit updated information expeditiously.

It is obvious why Plaintiffs are so eager to gin up purported ESI gaps, rather than constructively engage: they know the *actual* evidence disproves their claims. Had Amazon engaged in "price gouging," it is inconceivable that there would be not a single reference to such efforts in over 90,000 produced documents among 21 key custodians, nor in the additional documents Amazon has offered to review from the proposed additional custodians and collect from the additional data source. Amazon's documents lay out in detail its dedicated efforts to *combat* excessive pricing. Plaintiffs want to litigate based on imaginary "lost" evidence instead.

## B. Amazon Preserved Comprehensive ESI for Key Personnel Throughout the Relevant Period.

Amazon's custodians—particularly the 10 with ESI preserved since before this case was filed—are the individuals most likely to have relevant documents.[1] Nine of these custodians were Vice Presidents or Directors—*the key decision-makers* at Amazon. Garry Decl. ¶ 5. These include:

(1) <u>Christa Glenn</u> – Director of Third-Party Pricing and Promotions, led third-party pricing and consumer perception during 2020, including the effort to control excessive third-party pricing;

(2) <u>Rajiv Chopra</u> – Vice President of Software Development for Worldwide Pricing, supervised the Competitive Monitoring Technology team (led by Gitanjali Bhutani) and Competitive Pricing team (led by Avani Parakh);

---

[1] These 10 custodians' documents fully encompass the Court-identified topics relevant to the *McQueen* complaint. *See* Dkt. 190 at 3.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(3)    <u>Doug Herrington</u> – Senior Vice President of North American Consumer General and Administrative, participated in weekly standups on COVID response and directed the Economic Technology team handling Retail supply;

(4)    <u>Dharmesh Mehta</u> – Vice President of Worldwide Customer Trust and Partner Support for Third-Party Sales, led the organization in combatting fraud and abuse, including abusive pricing;

(5)    <u>Eric French</u> – Vice President of U.S. Consumables in Retail, oversaw pricing on products at issue;

(6)    <u>Mike Mathieson</u> – Director of Software Development for Retail Pricing, led the engineering and product teams setting Retail prices and supervised Avani Parakh through May 2020;

(7)    <u>Rohan Oommen</u> – Director of Perfect Order Experience and Selling Partner Trust, led efforts to monitor third-party sales and restrain abusive sellers;

(8)    <u>Ian Simpson</u> – Vice President of Selling Partner Services, developed machine-learning and artificial intelligence models to support pricing, imaging, and seller recommendations; and

(9)    <u>Brian Huseman</u> – Vice President of Legal for Public Policy, responsible for Amazon's spring 2020 blog posts on combatting "price gouging."

*See id.* ¶ 6. The tenth custodian, Jason Noggle (Senior Manager of Selling Partner Risk), led a special projects team investigating and implementing ad hoc pricing rules related to bad-actor third-party sellers, including abusive pricing. *Id.*

Amazon's initial litigation hold focused on these Vice Presidents and Directors because the original *McQueen* Complaint's core allegation was that Amazon implemented a policy to profiteer from the Pandemic and such a decision would necessarily have been made by and communicated among them. *Id.* ¶ 5. Six of the above individuals received that hold along with Parakh.[2]

The remaining custodians, who were not on litigation holds for this case until between 2022 and 2025, took directives from the senior personnel above.[3] *Id.* ¶ 8. Amazon added them as

---

[2] Chopra, French, Glenn, Herrington, Mathieson, Parakh, and Simpson.

[3] Plaintiffs complain that Amazon identified employees in its April 2023 ESI Disclosures who were not on a hold for this case. Mot. 4. But Amazon was required to disclose 25 potential custodians over its objections as to overbreadth and relevance—and it argued to the Court that ten custodians were sufficient. Dkt. 34 at 4–5; Dkt. 45 at 2. That Amazon identified these employees, in response to a Court mandate, does not show they had *unique* information.

custodians in response to Plaintiffs' requests—in several instances over objections that their roles were irrelevant to Plaintiffs' allegations. Goldmark Decl. ¶ 5.

### C.  Amazon Did Not Intentionally Destroy Any Evidence.

#### 1.  Amazon's Litigation Hold Practices and Procedures

Plaintiffs' focus on "case-specific holds" is misleading. When Amazon issues a litigation hold, it suspends all automatic or mandatory deletion policies for the recipient's email, Chime, and Slack data (collectively, "custodial ESI")—the only relevant custodial data sources subject to automatic or mandatory deletion in Amazon's systems. Davenport Decl. ¶ 3.[4] Regardless of the subject matter described in the hold memorandum, custodial ESI is preserved on the back-end, remaining even if a custodian deletes a document. *Id.* Amazon personnel use these custodial ESI channels to communicate and implement their decisions—such as those regarding pricing policies. No automatic deletion policies apply to Amazon employees' electronic working spaces—such as WorkDocs and Quip, where Amazon employees save documents like PDFs, Word documents, spreadsheets, and presentations—and Amazon employees do not manually delete them as a matter of course. Decl. of Laura Marion ¶ 5.

When an employee is not on a litigation hold, Amazon's standard document retention policies apply. *Id.* ¶ 3. Under these policies, ESI is not retained indefinitely—as it would be impractical to do otherwise. *See id.* But with the exception of employees' "Sent" and "Deleted" folders, Amazon does not automatically delete employees' communications, which may remain available indefinitely, subject only to potential email storage limits. *Id.* Even then, many

---

[4] An individual may be covered by multiple holds simultaneously. Such holds operate independently to preserve ESI. Davenport Decl. ¶ 4. Even if someone is removed from a hold for one matter, their ESI will remain preserved so long as they remain on an active hold for another. *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

employees request and receive storage capacity increases, or download their email into PST files in their electronic workspaces. *Id.* ¶¶ 3–4.

### 2. The Initial Litigation Holds.

The *McQueen* Complaint was filed on April 22, 2020, and served on April 27, 2020. Goldmark Decl. ¶ 2. Amazon retained outside counsel a few weeks later. Decl. of Jeff Dean ¶ 2.

On June 1, 2020, two in-house attorneys and a paralegal developed a list of seven people to be placed on litigation hold. Garry Decl. ¶¶ 3–4. The *McQueen* Complaint alleged, at core, that Amazon violated California law by allowing prices of various goods to increase more than 10% during a declared emergency. *McQueen v. Amazon.com, Inc.*, No. 4:20-cv-02782-JSW (N.D. Cal. Apr. 21, 2020), Dkt. 1 ¶ 1. Based on allegations that Amazon's pricing practices reflected a deliberate policy, Amazon focused its litigation hold on the employees who would have been involved in and directed any such policy: Vice Presidents and Directors in the pricing organization. Those senior personnel are the key decision-makers at Amazon and would have made any significant pricing decisions (including the policy or practice alleged in the Complaint). Garry Decl. ¶ 5.

The junior attorney on the internal *McQueen* team suggested the senior attorney send the hold memorandum because the recipient list included more senior-level employees. *See* Dean Decl. ¶ 3; *see* Jensen Decl. ¶ 3. The senior attorney agreed to send the memorandum. Dean Decl. ¶ 3; Jensen Decl. ¶ 3. That attorney was managing many cases during a particularly overwhelming period at the outset of the Pandemic, and mistakenly forgot to send the hold notification. Dean Decl. ¶ 4.

On October 12, 2020, the assigned paralegal discovered the senior attorney had not distributed the June memorandum. Jensen Decl. ¶ 4. After consulting with the junior attorney, the paralegal sent the memorandum to the original list of individuals (except Mathieson, who had since left Amazon) and blind copied Amazon's Legal Collections team, who put those six individuals on litigation holds for *McQueen*. *Id.* All those people, except for Parakh, had been on

holds for other litigation matters predating *McQueen*, meaning their ESI *was already being preserved*. Davenport Decl. ¶¶ 8–9.

Plaintiffs' chart, *see* Mot. 5, inaccurately reflects the landscape of the existing 21 custodians. The below chart corrects the record:



*Cf.* Davenport Decl. ¶¶ 8–11; Garry Decl. ¶¶ 6–9.

As this case evolved over the years, Amazon located—and Plaintiffs identified—other relevant individuals. That those individuals were not put on holds in 2021 or even 2022—long

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

after the "most crucial time" in this case passed, Mot. 7—is immaterial. Amazon held complete custodial ESI for 10 key individuals and preserved tens of thousands of documents for others.

### III.     LEGAL STANDARD

Rule 37(e) provides the sole basis for ESI spoliation sanctions. *See Gregory v. Montana*, 118 F.4th 1069, 1079 (9th Cir. 2024). It permits sanctions only if: (1) the non-movant "failed to take reasonable steps to preserve ESI;" (2) "ESI was lost;" (3) "the ESI cannot be restored or replaced through additional discovery;" *and* (4) the specific requirements of Rule 37(e)(1) or (e)(2) are met. *Saxton v. County of Sonoma*, 2024 WL 5174215, *2 (N.D. Cal. 2024). Plaintiffs must prove these elements. *Id.*

Rule 37(e)(1) permits a court, only "upon finding prejudice to another party from loss of the information," to "order measures no greater than necessary" to remedy it.

Under Rule 37(e)(2)—a "more demanding standard"—if a "party who caused the loss acted with the *intent* to deprive another party of the information's use in the litigation," *Gregory*, 118 F.4th at 1078–79 (citation modified), the court may: (a) "presume that the lost information was unfavorable to the party;" (b) "instruct the jury that it may or must presume the information was unfavorable;" or (c) "dismiss the action or enter a default judgment."

### IV.     ARGUMENT

Plaintiffs are not entitled to any sanctions, much less the wildly disproportionate measures they request, because they do not show irreplaceable loss of evidence causing actual prejudice (Rule 37(e)(1)), or Amazon's intent to deprive them of evidence (Rule 37(e)(2)). The Motion is also premature.

#### A.     Rule 37(e) Does Not Apply Because Plaintiffs Cannot Prove Irreplaceable "Lost" Discovery.

Plaintiffs do not show any material loss under Rule 37, much less lost evidence that "cannot be restored or replaced." *Oracle Am. Inc. v. HP Enters. Co.*, 328 F.R.D. 543, 549, 553 (N.D. Cal. 2018) (denying sanctions where party failed to identify "categories of irreplaceable relevant documents were likely lost"); *see also, e.g.*, *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754,

766 (9th Cir. 2015) (Rule 37(e) sanctions inappropriate where documents can be "obtained … from other sources"). They do not even specify what categories of information they believe are missing, why that evidence is not replaced by other information, or how the absence impairs their claim presentation. They instead ask the Court to *presume* loss implicating Rule 37(e), simply because certain employees were not placed on a litigation hold for this case at certain points in time. *See* Mot. 7–8.

But showing an employee was not on a "case-specific hold" does not establish lost evidence *irreplaceable* "through additional discovery." *Saxton*, 2024 WL 5174215, *2. Plaintiffs cannot dispute that Amazon preserved and produced massive discovery, including comprehensive ESI for ten key pricing decision-makers, nine of whom were Vice Presidents or Directors and another (Noggle) who led a critical Pandemic response team. Produced documents show these individuals drove Pandemic pricing policy. For example, by January 2020, decision-makers including Herrington, Mehta, French, Glenn, and Chopra "quickly align[ed] on an approach" to ensure Amazon "ha[d] the right policy / process in place" to prevent excessive pricing on high-demand products sold by third parties. *See* Goldmark Decl. Ex. C at 381–82. And in March 2020, senior personnel including French, Mathieson, and Chopra directed their teams to implement an automatic price cap at pre-pandemic levels. *Id.* Ex. D at 186–87. Amazon produced documents for multiple other pricing personnel who reported to these leaders, and offered five more replacement custodians in October, which Plaintiffs ignored. *Id.* ¶ 4 & Ex. B.

Plaintiffs' arguments for sanctions ignore the facts and the governing Rule 37(e) standards. First, Plaintiffs misrepresent how Amazon's document retention practices work. They claim "all Amazon employees operated under a policy directing them to delete *every* document not covered by the scope of another hold." Mot. 2. This is false. The subject matter of a litigation hold memorandum does not determine the ESI retained. Davenport Decl. ¶ 3. When an Amazon employee is placed on hold for *any* case, it suspends *all* automatic or mandatory deletion policies for the means of electronic communication among Amazon employees—email, Chime, Slack. *Id.* Even if deleted by a custodian, these communications are preserved on the back-end by the

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

hold. *Id.* Electronic workspaces where Amazon employees save non-communication documents are *not* subject to automatic deletion policies, and Amazon employees do not manually delete them as a matter of practice. Marion Decl. ¶ 5. There is no evidence suggesting that even a single document was lost for any of the VP- or Director-level custodians on hold as of late April 2020. Nor is there evidence suggesting any non-communication document was lost for any other custodian at any time.

Plaintiffs' remaining arguments on the scope and timing of Amazon's holds say nothing about the core question before the Court: whether relevant evidence was irreplaceably lost. *See* Mot. 4–6. Plaintiffs' reference to "1,200 pricing employees," *id.* 1, 3, is misleading. That number approximates the people having any relation to the systems involved in pricing, including functions irrelevant to this case. Garry Decl. ¶ 10. Nothing suggests any of those people's communications could be relevant, let alone all. Indeed, Plaintiffs agreed at the outset of discovery to *sixteen* custodians. Goldmark Decl. ¶ 5.

Where Plaintiffs do address specific custodians, they either fail to address irreplaceability or explain why the custodian is even relevant. For example, Plaintiffs single out Bhutani and Parakh. *See* Mot. 5-6. But Plaintiffs ignore that others with whom Bhutani and Parakh were working closely at the time or who supervised them—such as Chopra and Mathieson—were on holds throughout the period and their relevant communications (volumes of which *include* Bhutani and Parakh) have been produced.[5] It also appears that Bhutani and Parakh are among those for whom additional communications may have been preserved in an alternate data source (Amazon is actively investigating). This case thus stands in stark contrast from *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012), where the court found prejudice

---

[5] *See, e.g.*, Goldmark Decl. Ex. E at 378 (seeking Parakh's and Mathieson's feedback on price cap issue); *id.* Ex. D at 184–86 (asking Mathieson price cap question, copying Parakh); *id.* Ex. I (correspondence among Bhutani, Brown, Glenn, and Chopra discussing program to prevent bad actors from circumventing automated pricing guardrails); *id.* Ex. J at 696 (discussing "COVID Playbook," focusing on concerns about price gouging before a meeting with Herrington, Simpson, Chopra, and Glenn, and seeking additional edits from Parakh, Brown, and Bhutani).

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

because Samsung "produced no email or only a handful of emails from the custodial files of at least 14 key fact witnesses." *Id.* at 1147.[6]

Plaintiffs also cite various employees for whom Amazon has not fully preserved custodial ESI, including Tiwari, Jefferson, Bamiduro, Chakraborty, Kagalwala, Bhasin, and Morris. Mot. 6. But Plaintiffs have not shown that these lower-level employees have relevant or non-duplicative information, and Amazon explained to Plaintiffs why they do not. Goldmark Decl. Ex. A. Most are middle-level employees. *Id.* at 4. Most are ex-employees, and many reside abroad. *Id.* The existing custodians provide extensive documents regarding Amazon's retail business, to which Plaintiffs' suggested additions would add little, if anything. *See id.*

Plaintiffs cannot show any lost evidence "cannot be … replaced through additional discovery," *Gregory*, 118 F.4th at 1078 (citation modified), by simply ignoring the 90,000 documents Amazon has produced, the replacement custodians Amazon has offered, and Amazon's ongoing efforts to identify additional communications. The Court should deny their Motion for this reason alone.

### B.     Plaintiffs Are Not Entitled to Sanctions Under Rule 37(e)(1).

#### 1.     Plaintiffs Fail to Establish Prejudice.

Rule 37(e)(1) requires Plaintiffs to "come forward with plausible, concrete suggestions as to what the destroyed evidence might have been," *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) (citation modified)—not just "generalized and conclusory statement[s]." *Zunum Aero, Inc. v. Boeing Co.*, 2024 WL 664540, *8 (W.D. Wash. 2024). The Court then examines whether the "spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case," *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation modified), considering whether the non-movant has

---

[6] *Apple* and other cases Plaintiffs cite (*Perez*, *Apple II*, *Knickerbocker*), do not apply the current Rule 37(e)(2), which was amended in 2015 to impose the heightened "intent to deprive" standard. *See Gregory*, 118 F.4th at 1080 (citation modified).

"provided … fulsome discovery" otherwise. *Saxton*, 2024 WL 5174215, *3. No prejudice occurs if the lost material is irrelevant or replaceable. *Ryan*, 786 F.3d at 766.

Plaintiffs claim to have suffered "extreme" prejudice, but they provide no plausible or concrete description of the evidence Amazon allegedly destroyed—despite already having over 90,000 documents from 21 pricing custodians. Mot. 1, 7–8. Plaintiffs instead focus on the *absence* of evidence supporting their "price gouging" theory. But the absence of evidence reflects that Plaintiffs' claims lack a factual basis—not that Amazon destroyed evidence. Indeed, Amazon produced tens of thousands of documents from all its key pricing decision-makers, none of which plausibly suggest that documents once existed showing Amazon engaged in "price gouging." The situation here is like *Ungar v. City of New York*, 329 F.R.D. 8, 16 (E.D.N.Y. 2018), *aff'd*, 2022 WL 10219749 (2d Cir. 2022), where the court found no prejudice under Rule 37(e)(1) because there was no "independent, circumstantial evidence that the [lost ESI] would have shown what Plaintiff claims it showed." It is also like *Steve & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 110 (E.D. Va. 2018), where the court denied Rule 37(e)(1) sanctions because "any benefit from ESI beyond that produced" was "almost totally speculative."

Plaintiffs also accuse Amazon of "cherry pick[ing]" senior leaders as custodians. Mot. 9. But that's exactly who Plaintiffs' allegations of widespread, top-down price gouging implicate. Lower-level employees do not dictate Amazon's pricing policies; Amazon's Vice Presidents and Directors make those decisions. Amazon has preserved and produced those decision-makers' communications—which uniformly show they set out to *prevent* excessive pricing. There is no basis to conclude that producing additional (and often duplicative) communications from lower-level employees would support Plaintiffs' claims.

Nor do Plaintiffs' cited cases help them. In those cases, the movants established lost evidence that was both irreplaceable and uniquely important—Plaintiffs do neither. *See, e.g.*, *Rehn v. City of Seattle*, 2025 WL 1207668, *3 (W.D. Wash. 2025) (deleted audio recording central to case); *Baker v. O'Reilly*, 2025 WL 1635253, *7 (W.D. Wash. 2025) (deleted videos of key events needed to evaluate key witness credibility); *Estate of Schuck v. County of San Diego*,

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2025 WL 2180987, *8 (S.D. Cal. 2025) (lost surveillance footage, irreplaceable by testimony), *R&R adopted by* 2025 WL 3033407 (S.D. Cal. 2025); *Lee v. County of Los Angeles*, 2025 WL 2505484, *20 (C.D. Cal. 2025) (irreplaceable deleted text informed "the liability questions in [the] case"), *reconsid. denied*, 2025 WL 3211209 (C.D. Cal. 2025); *Charlestown Cap. Advisors v. Acero Junction, Inc.*, 337 F.R.D. 47, 56, 66 (S.D.N.Y. 2020) (entire email account deleted and most produced materials were "irrelevant").

In contrast, Plaintiffs possess the key evidence central to their allegations—including custodial ESI from the key decision-makers in Amazon's pricing organization covering the "critical" period, thousands of documents that included the later-added custodians during this period; thousands of PDFs,[7] Word documents, presentations, and documents reflecting Amazon's pricing strategy and decisions[8] during this period; and billions of rows of pricing data. And they have the opportunity to depose Amazon's witnesses, which they have not yet done. Plaintiffs do not and (cannot) explain how any purported "loss" will impair their ability to present their case.

### 2.    Rule 37(e)(1) Does Not Permit Plaintiffs' Requested Remedy.

Even if Plaintiffs could establish irreplaceable loss and prejudice (they have done neither), Rule 37(e)(1) forecloses the wildly disproportionate relief they request. The Court may only impose sanctions "no greater than necessary to cure the prejudice" caused by the loss of ESI. Fed. R. Civ. P. 37(e)(1). But Plaintiffs seek sanctions untethered to any supposed prejudice, in direct violation of the Rule.

Plaintiffs request, for example, that the Court bar Amazon from offering any evidence (documents or testimony) from witnesses during periods they were not on a "case-specific" hold. *See* Mot. 8-9. Yet for many of those employees, *there was no loss of ESI at all*—and they were on existing holds. Plaintiffs' proposed remedy is thus wholly disconnected from any alleged

---

[7] *See* Goldmark Decl. Ex. F at 256 (broadly distributed biweekly flash updates "highlight[ed] Price gouging prevention actions being taken across W[orld Wide] Pricing on account of" Pandemic).

[8] *See, e.g.*, Goldmark Decl. Exs. G, H at 163–64 (scheduling March 2020 meeting with key decision-makers regarding "approach to prevent price gouging," attaching overview of various pandemic-related pricing problems).

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

prejudice. Plaintiffs will have a *full record* on which to challenge those employees' testimony, so no remedy under Rule 37(e)(1) is necessary or appropriate. Plaintiffs' proposed remedy is also facially defective. Amazon had no obligation to impose a litigation hold before late April 2020. Yet Plaintiffs would preclude Amazon from offering documents and testimony about pricing practices in place months or years before Amazon had an obligation to preserve anything.

Plaintiffs' requested remedies are also improper because they seek sanctions available only under Rule 37(e)(2). The commentary to the 2015 Amendments to Rule 37 cautions that:

> Care must be taken … to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive …. **An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense** ….

*Id.* (emphasis added). But Plaintiffs ask the Court to issue terminating sanctions by denying Amazon any ability to defend itself. For example, Plaintiffs would bar Amazon from arguing that it "made a good faith effort to prevent price gouging," Mot. 9, as the evidence shows.

To the extent any remedy is appropriate (none is), it is unfair for Plaintiffs to ask the Court to fashion one without a fully developed record of what evidence was or was not preserved and what it may show. Because that record does not yet exist, Plaintiffs' motion and requested remedies are premature. *See* § IV.D, *infra*; *see also, e.g.*, *Taylor v. Walter Kidde Portable Equip., Inc.*, 2025 WL 1758347, \*17, *R&R adopted by* 2025 WL 1755911 (M.D.N.C. 2025) ("A motion for sanctions is an improper vehicle for the parties to attempt to litigate the underlying merits of a pending action.").

### C.    Rule 37(e)(2) Does Not Apply Because There Is No Evidence of Amazon's "Intent to Deprive" Plaintiffs of Discoverable Information.

Rule 37(e)(2)'s "more demanding standard" permits stronger sanctions only if a "party who caused the loss acted with the *intent* to deprive another party of the information's use in the litigation." *Gregory*, 118 F.4th at 1078–79 (citation modified). "[I]ntent" under Rule 37(e)(2) "involv[es] the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Courts consider

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"the timing of destruction, affirmative steps taken to delete evidence, and selective preservation" among other factors when evaluating intent. *Id.*; *see also Comair Ltd. v. Boeing Co.*, 2025 WL 472724, *2 (W.D. Wash. 2025) (no intent to deprive from failure to issue litigation holds where "missing documents [were] wide in scope rather than selective"). "[N]egligence or even gross negligence is insufficient." *Jones*, 95 F.4th at 735.

There is *zero* indication Amazon intended to deprive Plaintiffs of evidence. All the facts are to the contrary. After service in *McQueen*, Amazon promptly identified the senior employees with decision-making authority over pricing and prepared a litigation hold for them. The attorney tasked with sending the hold inadvertently neglected to do so, Dean Decl. ¶ 4, but the error was detected a few months later and corrected immediately, Jensen Decl. ¶ 4. One employee's mistake during a crisis does not show deliberate suppression of evidence. That is all the record shows; there is no evidence anyone at Amazon deliberately deleted anything, much less did so knowing its relevance to this case. What Plaintiffs describe as "deletions" are no more than imperfect preservation coupled with the industry-standard policy that employees not indefinitely retain immaterial communications. *See Jones*, 95 F.4th at 735.

Plaintiffs also complain that the holds Amazon issued for this case were "unduly limited." Mot. 10. But Plaintiffs' quibble with Amazon's good-faith judgment about proper hold recipients does not show "intent to deprive." The preservation duty "extends to those employees likely to have relevant information—the key players in the case." *Apple*, 881 F. Supp. 2d at 1137 (citation modified). Amazon preserved ESI for its "key players"—those most likely to have documents relevant to allegedly systemic price gouging and who were *the* decision-makers for the events underlying Plaintiffs' claims. Garry Decl. ¶ 5; *see E&J Gallo Winery v. Encana Energy Servs.*, 2005 WL 8172972, *3 (E.D. Cal. 2005) (no spoliation where movant made "no attempt to connect" the unpreserved custodians to "missing relevant information"). Further, since before this case was filed, 10 of the 21 custodians' ESI was preserved for other matters. Davenport Decl. ¶ 8.

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' complaint that Amazon failed to update its hold after the July 2021 Complaint amendment fares no better. Plaintiffs do not explain why Amazon's hold needed updating after July 2021 or how any update would preserve more or different information (it would not). Plaintiffs themselves identify the most "critical period" as April to October 2020, Mot. 1–2, and their allegations concern early 2020 purchases, *see generally* Dkt. 66.

The facts here are far different than in Plaintiffs' cases. *See* Mot. 10–11. Two involve selective destruction and obstruction. *See Bungie, Inc. v. AimJunkies.com*, 2023 WL 7184427, *8 (W.D. Wash. 2023) (defendant "took steps to delete" evidence, made misrepresentations about control over evidence, and committed "harassing and evasive deposition conduct"); *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993–94 (N.D. Cal. 2023) (false assertions about preservation efforts "intended to subvert" discovery). One confirms that Rule 37(e) sanctions are *inappropriate* where, as here, there is no evidence the defendant took affirmative action to prevent discovery. *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2024 WL 5058527, *9 (N.D. Cal. 2024), *appeal filed*, No. 25-955 (9th Cir. 2025).[9]

By contrast, Amazon has continuously cooperated with Plaintiffs' requests for replacement custodians, researching job responsibilities and hold status of almost 30 additional proposed custodians. In all, there was an inadvertent breakdown in process, a reasonable choice of initial custodians, and good-faith efforts by Amazon to add custodians to supplement any perceived loss—with no material change in the evidence available to Plaintiffs. *Gregory*, 118 F.4th at 1078–79. Rule 37(e)(2)'s "demanding standard" simply cannot be met here.

Finally, Plaintiffs' requested mandatory adverse-inference instruction would be wildly inappropriate. That would effectively prevent Amazon from defending itself and tell the jury to assume facts directly contrary to the robust 90,000-plus document evidentiary record. *See, e.g.*, Goldmark Decl. Ex. E at 378 (by April 2020, Amazon implemented price caps for over 1.5

---

[9] Plaintiffs' other cases do not compel a different outcome. *Su v. USPS*, 2024 WL 21670, *5–6 (W.D. Wash. 2024) involved irreplaceably lost evidence and intentional deletion of evidence after issuance of a litigation hold. *In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667882, *4–5 (N.D. Cal. 2023), a motion to compel case, involved likely irreplaceable loss of key evidence.

million Retail ASINs to ensure customers would not be exposed to high prices on certain essential goods). As Plaintiffs' own authority points out, draconian sanctions are available only where a party is "obstructed from proving its case." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, *23 (E.D. Cal. 2022). In *Rapp v. NaphCare Inc.*, 2023 WL 4624470 (W.D. Wash. 2023), for example, the court gave only a permissive adverse-inference instruction, despite evidence of "intent to deprive," noting evidence deleted under retention policy was not "the most critical" so default judgment would "disproportionate[ly] reward" plaintiffs. *Id.* *2–5.

### D.    Plaintiffs' Motion Is Premature.

Plaintiffs' Motion is ultimately premature. Document and data production is ongoing. There is *still* an outstanding Amazon offer to add five more custodians, the appropriate remedy to address any preservation gaps. And Amazon's ongoing efforts recently identified additional communications set aside in connection with unrelated litigation. This discovery reflects Amazon's efforts to proactively do what Rule 37 itself contemplates in service of the search for truth: cure any gaps in available discovery with *additional* discovery, preferred over more draconian sanctions. Amazon is now ingesting and searching this new source to determine the extent of additional relevant custodial data. Goldmark Decl. ¶ 15.

But Plaintiffs are uninterested in the truth; they know reality is fatal to their claims. They brought this Motion without a full record on which to evaluate the appropriateness of the sanctions they seek. *See, e.g.*, *Ingram v. PG&E Co.*, 690 F. App'x 527, 530 (9th Cir. 2017) (affirming order "denying [plaintiff's] request for an adverse inference at the summary judgment stage"); *PlayUp, Inc. v. Mintas*, 2024 WL 967904, *1 (D. Nev. 2024) (spoliation motions requesting adverse jury instruction are "premature when presented … earlier in the case" because "relief is specific to trial") (collecting cases).  And now they insist on pressing ahead in the face of changed facts on the ground, even though they will not take their first deposition for weeks and the remedy they seek (preclusion of evidence at trial) will not be relevant for many months if not considerably longer (if their case even survives that long).

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## V.    CONCLUSION

The Court should deny the Motion.

DATED this 16th day of January, 2026.

Respectfully submitted,

By: */s/ John A. Goldmark*
     John A. Goldmark, WSBA #40980
     MaryAnn T. Almeida, WSBA #49086
     Nick Valera, WSBA # 54220
     Caitlyn C. Courtney, WSBA #62344
     DAVIS WRIGHT TREMAINE LLP
     920 Fifth Avenue, Suite 3300
     Seattle, WA 98104-1610
     Telephone: (206) 622-3150
     Email: johngoldmark@dwt.com
           maryannalmeida@dwt.com
           nickvalera@dwt.com
           caitlyncourtney@dwt.com

     John Freed, *admitted pro hac vice*
     DAVIS WRIGHT TREMAINE LLP
     50 California Street, 23rd Floor
     San Francisco, CA 94111
     Telephone: (415) 276-6500
     Email: jakefreed@dwt.com

By: */s/ Jennifer Kennedy Park*
     Jennifer Kennedy Park, *admitted pro hac vice*
     Matthew M. Yelovich, *admitted pro hac vice*
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
     1841 Page Mill Road, Suite 250
     Palo Alto, CA 94304
     Telephone: (650) 815-4100
     Email: jkpark@cgsh.com
           myelovich@cgsh.com

     Ryan Shores, *admitted pro hac vice*
     Nowell D. Bamberger, *admitted pro hac vice*
     CLEARY GOTTLIEB STEEN & HAMILTON LLP
     2112 Pennsylvania Avenue, NW
     Washington, DC 20037
     Telephone: (202) 974-1500
     Email: rshores@cgsh.com
           nbamberger@cgsh.com

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Charity E. Lee, *admitted pro hac vice*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: charitylee@cgsh.com

*Attorneys for Defendant Amazon.com, Inc.*

*I certify that this memorandum contains 6,268 words in compliance with the Local Civil Rules and Dkt. 212.*

AMAZON'S OPP. TO PLS.' MOT. FOR SANCTIONS
(2:21-cv-00898-RSL) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax